# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### (Southern Division)

| | | |
|---|---|---|
| MORCOR FINANCIAL, LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:21-cv-00370-KD-B** |
| | ) | |
| LUCIDA CONSTRUCTION CO., | ) | |
| LLC, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION TO VACATE ARBITRATION AWARD

Pursuant to 9 U.S.C. § 10(a)(1), Lucida Construction Company, LLC ("Defendant") moves this Court to vacate the arbitration award in favor of Morcor Financial, LLC ("Morcor") and this Court's corresponding entry of judgment, based on Morcor's fraud. In support of this Motion, Defendant shows this Court as follows:

## BACKGROUND

On December 17, 2021, this Court confirmed an arbitration award and entered final judgment in favor of Morcor. (Docs. 11 & 12.) On January 14, 2022, Defendant moved to alter or amend the judgment based on the Court's award of post-judgment interest (Doc. 14), which the Court denied on April 1, 2022. (Doc. 16.) Since bringing that motion, Defendant has been made aware of additional circumstances which warrant vacatur of the arbitration award on grounds of fraud.

1

As background, Defendant entered into a contract with Morcor, who Defendant believed was the owner of property in Washington County, Alabama, to construct a charter school (the "Project"). (*See* Exhibit A, Lucida/Morcor Contract.) Defendant later learned that the true owner was Woodland Charter Holdings, LLC ("Woodland"), an affiliate entity of Morcor. (*See* Exhibit B, Deeds into Woodland.) Defendant also learned that American Charter Development, LLC ("ACD"), another affiliate of Morcor, entered into a separate contract with Morcor, whereby Morcor agreed to allegedly act as the consultant on the project. (*See* Exhibit C, ACD/Morcor Contract.)

Defendant had filed a complaint against Morcor with the Alabama Licensing Board for General Contractors ("Board"), alleging that Morcor was acting as a general contractor or contract manager without a license. The investigator found sufficient cause to conclude that Morcor was acting without a license, in violation of the rules and laws of Alabama. (*See* Exhibit D, Investigator's Report.) In light of the pending arbitration between the parties, the Board did not rule on the matter.

In the arbitration proceedings, Morcor admitted that it was not a licensed general contractor under Ala. Code § 34-8-1. But Morcor skirted this issue by arguing that it did not perform work which made it a "general contractor" under Alabama law. (*Id.* at 4, 9-16.) The arbitration panel chose to disregard application of Ala. Code § 34-8-1 by merely brushing it aside on the grounds that Lucida failed

to meet the burden on this issue (*see* Exhibit E, Arbitration Award, at ¶K).  Of course, if ACD had supported Lucida's position, the outcome would have been different.

On February 11, 2022, Cincinnati Casualty Company ("CinFin") filed a declaratory judgment action against ACD and Morcor in the United States District Court for the Southern District of Alabama, Case No. 22-cv-000066, seeking a declaration that CinFin did not owe a duty to defend or indemnify Morcor in connection with a lawsuit filed by ACD against Morcor pending in the State of Utah ("CinFin Complaint").  (*See* Exhibit F, CinFin Complaint.)  Specifically, on November 10, 2021, ACD filed a complaint against Morcor in the Fourth Judicial District Court for Utah County in the State of Utah, styled *American Charter Development, LLC v. Morcor Financial, LLC*, Case No. 210401539, alleging various breaches based on the contract between ACD and Morcor related to the Project ("ACD Complaint").  (*See* Exhibit G, ACD Complaint.)  In the ACD Complaint, ACD alleges in paragraph 47:

> 47. Morcor acted as ACD's agent in selecting and hiring Lucida, supervising and managing Lucida's work, entering into a contract with Lucida for the design and construction of the Project and fulfilling all obligations under that contract, appropriating and handling ACD's funds, informing Lucida and others as to the relationship between the relevant parties involved in the Project, **ensuring that it was properly licensed in the state of Alabama and that the Project was compliant with all other laws and regulations**, communicating with Lucida and others on the Project, keeping ACD apprised of progress on the Project, resolving its conflict with Lucida, and performing other administrative and professional services as an agent of ACD related to the Project.

*Id.* at ¶47 (emphasis added). ACD then claims that Morcor breached these duties. *See, e.g.*, *id.* at ¶¶48-50. The only required license to which ACD could be referring is the one provided by the Board. There was no required local licensing, and Morcor was registered with the Alabama Secretary of State as a foreign corporation. Thus, ACD admits the same thing Defendant stated in the arbitration proceedings—that Morcor failed to obtain the required general contractor's license in Alabama for the Project.

Various facts demonstrate that an agency relationship between Morcor and ACD exists. Morcor and ACD are run by the same individuals—Mike and McKay Morley, who, upon information and belief, are father and son.[1] Both are, or have been listed at some point in time, as the managers for Morcor (*see* Exhibit H, Articles of Organization of Morcor Financial, LLC). Additionally, in filings with various states, Morcor and ACD have made certain admissions:

1. In response to allegation 2 of the CinFin Complaint, Morcor admitted that Mike Morley and McKay Morley are the members of Morcor. (*See* Ex. G at ¶2; Exhibit I, Morcor Answer to CinFin Complaint; *See also* ECF Dkt. No. 3, Petitioner's Disclosure Statement.)

---

[1] In fact, ACD is run by the Morley family. *See* "The Team," AM. CHARTER DEV., *available at* https://www.amercd.com/about-american-charter-development/meet-the-team/ (last visited Apr. 11, 2022). ACD's website lists team members as: Mike Morley, CEO; Taft Morley, COO; Packer Morley, Senior VP of Real Estate Development; and Hunter Morley, Director of Asset Management.

2.     In its Articles of Organization, Morcor represented that Mike Morley and McKay Morley are also the managers of Morcor. (*See* Exhibit J, Articles of Incorporation of Morcor Financial, LLC.)

3.     In 2017, Morcor represented to the North Carolina Secretary of State that ACD was the manager of Morcor, and that McKay Morley was the manager of ACD. (*See* Exhibit K, Morcor's Application for Certificate of Authority for Limited Liability Company, at 2.)

4.     In 2018, Mike Morley represented to the Arizona Secretary of State that he was the sole member and manager of ACD. (*See* Exhibit L, ACD Amendment of Articles of Organization of ACD.)

5.     The office location for both Morcor and ACD is 775 West 1200 North, Suite 100, Springville, UT 84663.[2] (*See, e.g.*, Exhibit. J, Articles of Organization of Morcor Financial, LLC; Exhibit M, Alabama Secretary of State, ACD Foreign Limited Liability Company Report; Exhibit N, Alabama Secretary of State, Morcor Foreign Limited Liability Company Report; *see also* Ex. C, ACD/Morcor Contract (showing that

---

[2] To continue the loop of the Morley entities involved in the Project, ACD (which Mike Morley manages) is the manager of American Charter Development Holdings, LLC ("ACDH"), another Morley entity. ACDH and Mike Morley are the members of Woodland Charter Holdings, LLC, which is the entity that is the true owner of the Project and also has the same address as Morcor and ACD. Also, in the contract between ACD and Morcor (*see* Ex. C), Morcor and ACD use the same address, Mike Morley signed for ACD, McKay Morley signed for Morcor, and Taft Morley is listed as the "owner's representative" of ACD (*see id.* at §1.2.1).

ACD and Morcor share not only the same office space, but also the same phone and fax numbers).)

Beyond the fact that both Morcor and ACD are managed, owned, and/or run by the same family, ACD describes Morcor as its "agent." (*See* Ex. G at ¶47.)  ACD also functions as the agent of Morcor.

Equally important is the fact that Mike Morley and ACD were intimately involved in the Project, but never raised the licensure issue with the Board when they had the opportunity to do so.  (*See* Exhibit O, Letter from the Board to Mike Morley of ACD.)  Instead, counsel for Morcor (not ACD) asked why the Board sent the letter to ACD.  (*See* Exhibit P, Email exchange between Robert Fleming, counsel for Morcor and Tiffany Loveless.)  Further, a simple reading of the Arbitration Award reveals that Mike Morley, as the principal for ACD, was intimately involved in the day-to-day activities of the Project.  (*See* Ex. E at 6, ¶P.1. and n.9; 8, ¶¶S. 1, 2 and 5; and 10, ¶¶AA. and CC.1 and 2.)  And these are just the items included in the Arbitration Award, but there is additional documentation showing communications between Defendant, Morcor, and ACD regarding the Project.[3]

Additionally, Mike Morley testified under oath at the Revocation Hearing on May 28, 2020 before the Alabama Public Charter School Commission, showing his

---

[3] In fact, Mark Morley, another Morley family member and an attorney, was involved in the matter representing Morcor and arguably the entire Morley empire.  For example, Mark Morley represented both Morcor and ACD in connection with this project.

thorough knowledge with the Project.  (*See* Exhibit R, Transcript of Mike Morley's testimony.)

The allegation in the ACD Complaint by ACD, an agent of Morcor, regarding Morcor's failure to obtain appropriate licensure constitutes an admission under Rule 801(d)(2)(D) of the Federal Rules of Evidence and demonstrates that Morcor committed fraud in the arbitration proceedings.  Defendant thus seeks to vacate the arbitration award, confirmed by this Court, pursuant to 9 U.S.C. § 10(a)(1).

## STANDARD

The Federal Arbitration Act, 9 U.S.C. § 1, *et al.* (the "FAA"), provides that an arbitration award may be vacated "where the award was procured by corruption, fraud, or undue means . . . ." 9 U.S.C. § 10(a)(1).  The moving party has the burden to set forth sufficient grounds to vacate an arbitration award.  *O.R. Sec., Inc. v. Prof'l Planning Assocs.*, 857 F.2d 742, 748 (11th Cir. 1988).  *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir. 1988), provides the test to establish grounds for vacatur in cases of fraud in the Eleventh Circuit:

> In reviewing cases under § 10(a), courts have relied upon a three part test to determine whether an arbitration award should be vacated for fraud.  First, the movant must establish the fraud by clear and convincing evidence.  Second, the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration.  Third, the person seeking to vacate the award must demonstrate that the fraud materially related to an issue in the arbitration.

*Id.* at 1383 (internal citations omitted). Regarding the third prong, "the fraud materially relates to an issue in the arbitration if it impacts the arbitrator's decision." *Wholesalecars.com v. Hutcherson*, No. 2:16-cv-00155-KOB, 2018 U.S. Dist. LEXIS 50371, at *7 (N.D. Ala. Mar. 27, 2018); *see also Forsythe Int'l, S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1022 (5th Cir. 1990) ("The statute does not provide for vacatur in the event of any fraudulent conduct, but only 'where the *award was procured* by corruption, fraud, or undue means.' 9 U.S.C. § 10(a) (emphasis added). We read this language as requiring a nexus between the alleged fraud and the basis for the panel's decision.").

A motion to vacate an arbitration award must generally be brought "within three months after the award is filed or delivered." 9 U.S.C.S. § 12. The Eleventh Circuit holds that "unless Congress states otherwise, equitable tolling should be read into every federal statute of limitations." *Ellis v. GMAC*, 160 F.3d 703, 706 (11th Cir. 1998). Equitable tolling principles apply "when a plaintiff untimely files due to extraordinary circumstances that are both beyond her control and unavoidable even with diligence" and are found where there is "some affirmative misconduct, such as fraud, misinformation or deliberate concealment." *Hunt v. Ga. Dep't of Cmty. Affairs*, 490 F. App'x 196, 198 (11th Cir. 2012).

# **ARGUMENT**

Vacatur is warranted in this case by the clear and convincing evidence that Morcor committed fraud in the arbitration proceedings. ACD's allegation in the ACD Complaint, attributable to Morcor through the agency relationship of these entities, constitutes an admission that Morcor is indeed subject to Ala. Code § 34-8-1, a fact which Morcor fraudulently argued against in the arbitration proceedings. Indeed, it appears that the filing of the ACD Complaint was orchestrated by ACD and Morcor so Morcor could make a claim against Defendant's Commercial Liability Policy with CinFin. Evidence of ACD's admission was not discoverable upon the exercise of due diligence prior to or during the arbitration or at the time of the entry of the Judgment, as the admission only came to light after the CinFin Complaint was filed in February 2022. And the fraud materially related to an issue in the arbitration, as Morcor's deceit in its arguments to the Board and the arbitration panel that it was not required to have a license as a general contractor, which caused the arbitration panel to ignore the licensure issue, and would have precluded Morcor's recovery entirely. Finally, this Motion is timely filed within three months of Defendant's discovery of Morcor's fraud, so equitable tolling principles should apply.

## I. ACD's Allegation in Paragraph 47 of the ACD Complaint Constitutes an Admission under Utah Law.

Under Utah law, "a party's admission of fact in a pleading is normally treated as a **conclusive admission** that the party is not later permitted to contradict, even with evidence from other sources." *Luna v. Luna*, 474 P.3d 966, 970 (Utah 2020) (citation omitted; emphasis added). Such an admission is a judicial admission:

> A judicial admission is a formal waiver of proof that relieves an opposing party from having to prove the admitted fact. It also bars the party who made the admission from disputing it. The effect of a judicial admission is that once it has been made, the party cannot present any evidence that contradicts that statement.

*Dale K. Barker Co. PC CPA Profit Sharing Plan v. Turner*, 500 P.3d 940, 948 (Utah App. 2021) (citing *Luna*, 474 P.3d 966). Utah courts apply this to a plaintiff's allegations in its pleadings. *See Stephenson v. Elison*, 405 P.3d 733, 742 (Utah App. 2017); *accord Rutherford v. Talisker Canyons Fin. Co., LLC*, 333 P.3d 1266, 1270 n.6 (Utah App. 2014).

In the ACD Complaint in Utah state court, ACD alleged that Morcor was not properly licensed and that Morcor's lack of licensure constituted a breach of its duties. These allegations constitute an admission by ACD under Utah law, where the admission was made, and as demonstrated below, this admission by ACD is properly attributed to Morcor.

## II. Admissions of ACD, an Agent of Morcor, are Admissible Against Morcor under Rule 801(d)(2)(D) of the Federal Rules of Evidence.

A statement is not hearsay when it is offered against an opposing party and the statement "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed . . . ." Fed. R. Evid. 801(d)(2)(D); *see also Brown v. Metro. Atlanta RTA*, 261 F. App'x 167, 173 n.7 (11th Cir. 2008) ("[U]nder Fed. R. Evid. 801(d)(2)(D), 'a statement by [a] party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, . . . is deemed an admission by a party opponent and is excluded from the definition of hearsay.'" (citing *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 557 (11th Cir. 1998)). "Agent" is not defined under the rule, so the Eleventh Circuit "assume[s] that Congress intended to refer to general common law principles of agency . . . ." *Brown*, 261 F. App'x at 173 n.7 (citing *Harcros Chems.*, 158 F.3d at 558 n.9). "The Rule requires the proffering party to lay a foundation to show that the declarant was an agent." *Funderburk v. Fannie Mae*, 654 F. App'x 476, 477 (11th Cir. 2016). The statement need not be within the declarant's "speaking authority"—instead, the statement must relate to a matter within the agent's scope of authority. *See Guy v. Wal-Mart Stores E.*, No. 1:18-360-KD-MU, 2019 U.S. Dist. LEXIS 192672, at *18 (S.D. Ala. Nov. 6, 2019). In the context of business organizations, because such entities speak through individuals, statements by corporate officials may constitute admissions by a corporate defendant. *See, e.g.*, *United States v. Bhimani*, 492 F. Supp. 3d 376, 387 (M.D. Pa.

2020) (citing *United States v. Brothers Constr. Co.*, 219 F.3d 300, 310-11 (4th Cir.),
*cert. denied*, 531 U.S. 1037, 121 S. Ct. 628, 148 L. Ed. 2d 537 (2000)).

Courts have further found that statements by one entity may be considered admissions under Rule 801(d)(2)(D) against an affiliate entity.  To illustrate, in *In re Soundview Elite Limited*, 543 B.R. 78 (Bankr. S.D.N.Y. 2016), one man, Mr. Fletcher, owned several investment companies.  One of Mr. Fletcher's companies, Elite, made investments in another Fletcher-owned company, Composite.  *Id.* at 82. In Elite's bankruptcy proceedings, the trustee brought suit against Composite, seeking the net value of Elite's investment.  *Id.*  In deciding the trustee's motion for summary judgment, Composite attacked as hearsay various communications put into evidence by the trustee.  *Id.* at 101-06.  The court found the majority of the communications admissible under Rule 801(d)(2)(D), including emails by employees of another affiliate entity (Richcourt USA), which provided administrative services to Composite.  *See id.* at 102-03; *see also id.* at 103 (noting the email reflected the "collective effort" of Composite and affiliated entities).  The court further found admissible against Composite statements by an attorney for Mr. Fletcher during argument for a motion on behalf of Mr. Fletcher and others.  *Id.* at 105.  When Composite argued the attorney was speaking only for Elite, the court responded: "He [the attorney] was taking directions from the same Mr. Fletcher, who

until displaced by the Trustee on the . . . Debtors' side, was managing both [entities]." *Id.*

Another court found that a "close functional relationship" among affiliate entities served as a basis to allow comments by employees of one entity to constitute admissions by another entity under Rule 801(d)(2)(D). *See United States v. Am. Tel. & Tel. Co.*, Civil Action No. 74-1698., 1981 U.S. Dist. LEXIS 9527, at *12-13 (D.D.C. Apr. 9, 1981). The court noted that the employees of the various affiliate entities had a "close identification" with one another, both in the minds of the public and within their industry. *Id.*

And in *United States v. Agne*, 214 F.3d 47 (1st Cir. 2000), the First Circuit found statements by an employee of one entity admissible in an action involving criminal charges against the owner based on the owner's actions through an affiliate entity. In that case, the defendant owner faced criminal fraud charges based on his conduct through his company, Pump Sales. *Id.* at 50. The "agent" was an employee of Intesco, an affiliate of Pump Sales, also run by the owner. *Id.* The *Agne* court found that statements by the agent, who had been hired by the owner, who served as a point of contact for relations between Intesco and Pump Sales, and who was involved in the business transaction which led to the owner's criminal charges, were admissible. *Id.* at 55.

Similar grounds for finding an agency relationship between Morcor and ACD exist here. As evidenced above, Morcor and ACD are both run by the same father/son pair, Mike and McKay Morley, and operate out of the same offices using the same phone and fax numbers. (*See, e.g.*, Exs. H, J, K, L, M and N.) ACD even goes so far as to describe Morcor as its "agent" (*see* Ex. G, ACD Complaint, at ¶47), and functionally, ACD serves as an agent for Morcor, as evidenced by Mike Morley's involvement in the communications regarding and day-to-day operations of the Project, in his roles for Morcor and ACD.

As Morcor's agent for the duration of the Project, ACD's admission relating to a matter within the scope of that agency (i.e., Morcor's licensure for purposes of the Project), made while ACD and Morcor are run by the same Morley family members and continue work together in the same capacity, constitutes an admission under Rule 801(d)(2)(D). This case parallels *In re Soundview Elite Limited*, where statements of employees of one entity were admissible against an affiliate entity, where the companies were engaged in business transactions together. And as with the attorney's arguments found admissible in that case, ACD's attorney in the ACD Complaint "was taking directions from the same [Morley family members], who . . . [were] managing both [entities]." *See In re Soundview Elite Limited*, 543 B.R. at 105. Additionally, Morcor and ACD share more than the "close functional relationship" described in the *AT&T* case—indeed here, there is not only "close

identification" between the two entities but the *same* identification. The same individuals, Mike and McKay Morley, run both entities—entities which were running the same Project, using the same contact information. Now, one of those entities is admitting that Morcor was not properly licensed, a fact which those same individuals leading Morcor vehemently contested in the arbitration proceedings, but which they now make an issue in an apparent effort to obtain insurance coverage. What was once the death nail to Morcor's claims against Defendant is now a weapon that ACD and Morcor felt free to use in connection with an insurance claim. But for the filing of the Declaratory Action by CinFin, Defendant would have never known of ACD's Utah lawsuit or its admission that Morcor was not properly licensed. ACD's statement regarding this matter is rightly attributable to Morcor under Rule 801(d)(2)(D).

## III. The Admission Regarding Morcor's Licensure Establishes that Fraud was Committed in the Arbitration Proceedings, and Vacatur is Appropriate under 9 U.S.C. § 10(a)(1).

As noted above, the Federal Arbitration Act permits vacatur of an arbitration award "where the award was procured by corruption, fraud, or undue means . . . ." 9 U.S.C. § 10(a)(1). The Eleventh Circuit in *Bonar*, the case providing the test to demonstrate grounds for vacatur based on fraud, found the test met where an expert in arbitration committed perjury as to his credentials. 835 F.2d at 1383. First, there was clear and convincing evidence from letters from relevant authorities that the

expert did not have the academic record or work experience he claimed. *Id.* at 1384. Second, the fraud could not have been discovered before or during the arbitration hearing, as there was no pre-hearing exchange of witness lists, so the opposing party could not investigate the expert's credentials in advance. *Id.* Third, the fraud materially related to an issue in the arbitration, as the expert testified regarding the only issue before the arbitrators, and their written award reflected the influence of his testimony. *Id.* at 1384-85.

A recent case found the *Bonar* test for § 10(a)(1) met where a party and its counsel procured perjured testimony and intentionally misrepresented the record before an arbitration panel. (*See* Exhibit Q, Order Granting Motion to Vacate Arbitration Award and Denying Cross Motion to Confirm Arbitration Award in *Legget v. Wells Fargo Clearing Services*, No. 2019cv328949 (Super. Ct. of Fulton Cnty., Ga., Jan. 25, 2022).) In *Legget*, transcripts of the hearing, not available until after the close of arbitration, established by clear and convincing evidence that a witness for Wells Fargo used a delay in the proceedings to change his testimony. (*See id.* at 31.) The court found the arbitrators were misled by the witness's later, perjured testimony, testimony which was supported by counsel for Wells Fargo, resulting in an award in favor of Wells Fargo. (*Id.* at 32.) Fraud under § 10(a)(1) was further found where Wells Fargo withheld a key document supporting the case against it until after the close of evidence. (*Id.* at 32-33.)

The *Bonar* test is likewise met in this case. The admission by Morcor's agent, ACD, establishes by clear and convincing evidence that Morcor fraudulently presented to the arbitration panel that it did not require a license from the Board for its work on the Project, seeking to evade the bar on its recovery pursuant to Alabama law. (*See* Ex. G at ¶ 47.) Now, attempting to obtain insurance coverage, Morcor's agent, ACD, admits that Morcor's lack of licensure breached Morcor's duties on the Project. This back-handed attempt to avoid a collection bar and then change hands as it suits the Morley family constitutes fraud. Regarding the second part of the *Bonar* test, the evidence of Morcor's fraud could not have been discovered until after the arbitration, as the admission in the ACD Complaint occurred months after the Arbitration Award,[4] and this admission only came to light when the CinFin Complaint was filed in February 2022. (*See generally id.*) And as to the third part of the test, the fraud materially related to an issue in the arbitration, as without Morcor's fraud, Morcor would not have prevailed before the panel—instead, its recovery would have been barred. Accordingly, the *Bonar* test for vacatur is met.

---

[4] As discussed in Section IV, *infra*, further demonstrating a fraudulent scheme, the ACD Complaint appears to have been specifically timed to try to avoid a challenge under 9 U.S.C. § 10, as it was filed mere days after the three-month timeframe for motions to vacate. However, as explained below, equitable tolling principles apply to prevent Morcor from escaping the result of its fraud on the arbitration panel.

**IV.    Equitable Tolling Applies to Defendant's Motion.**

As noted above, generally, motions to vacate arbitration awards are filed within three months of the award's filing or delivery.  *See* 9 U.S.C.S. § 12.  The award in this case was filed on July 29, 2021.  (*See* Exhibit E, Arbitration Award.) Morcor quickly filed its Petition to Confirm Arbitration Award on August 24, 2021. (Doc. 1.)  Glaringly, the admission in the ACD Complaint was made on November 10, 2021, *just 12 days after the general vacatur statute of limitations would have expired*.  (*See* Ex. G.)  It appears that ACD and Morcor *specifically waited* to file the ACD Complaint and seek insurance coverage from Defendant's insurer, in an attempt to defeat the three-month FAA timeframe.  Defendant had no reason to monitor Morcor and ACD's country-wide legal filings following the arbitration and only discovered Morcor's fraud when Defendant's insurer instituted its own complaint months later on February 11, 2022.  (*See* Ex. F.)

The Eleventh Circuit has yet to address whether equitable tolling principles apply to Section 12 of the FAA, and other circuit courts are split on the issue. *Compare Move, Inc. v. Citigroup Glob. Mkts.*, 840 F.3d 1152, 1158 (9th Cir. 2016) ("[W]e hold that the FAA is subject to the established doctrine of equitable tolling."), *with Cigna Ins. Co. v. Huddleston*, No. 92-1252, 1993 U.S. App. LEXIS 40575, at *35 (5th Cir. Feb. 16, 1993) (rejecting an equitable tolling exception to section 12

of the FAA).[5]   However, the Eleventh Circuit applies equitable tolling to every

federal statute of limitations, unless there is legislative direction to the contrary (*see*

*Ellis*, 160 F.3d at 706), and cases in other contexts indicate the Eleventh Circuit

would consider the argument under these circumstances.  *See id.* at 708 (applying

equitable tolling to the Truth in Lending Act so as not to "reward those perpetrators

who concealed their fraud long enough to time-bar their victims' remedies"); *Hunt*,

490 F. App'x at 198 (considering equitable tolling argument in the context of ADA

and Rehabilitation Act claims).  Additionally, a district court in the Eleventh Circuit,

while noting some courts' rejection of equitable tolling to the FAA, ultimately

considered the doctrine (thought it found no extraordinary reason for failure to

comply with the three-month timeline).  *See Belz v. Morgan Stanley Smith Barney,*

*LLC*, No. 3:13-cv-636-J-34MCR, 2014 U.S. Dist. LEXIS 28906, at *28-29 (M.D.

Fla. Mar. 5, 2014).

In light of other courts' application of equitable tolling under the FAA amidst

fraud and the Eleventh Circuit's general application of the doctrine to federal

statutes, the facts of this case supply the extraordinary circumstances warranting

---

[5] *See also Choice Hotels Int'l, Inc. v. Shiv Hosp., LLC*, 491 F.3d 171, 177 (4th Cir. 2007) (noting the Fourth Circuit previously assumed "for the sake of argument" that equitable tolling applied to the FAA); *Ford Dealer Comput. Servs. v. Highland Lincoln Mercury, Inc.*, No. 06-X-50344, 2008 U.S. Dist. LEXIS 25814, at *7-8 (E.D. Mich. Mar. 31, 2008) ("Although the Sixth Circuit has not expressly held in a published opinion that equitable tolling applies to the FAA, the panel the panel in *Merrill Lynch* applied the factors set forth in *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988) to determine whether equitable tolling should be applied in that case.") (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Berry*, 92 F. App'x 243 (6th Cir. 2004)).

equitable tolling. ACD and Morcor's deceit in the arbitration proceedings, deliberately concealing their own knowledge that Morcor should have obtained appropriate licensing from the Board, especially in light of the current strategy to change that position to receive insurance coverage, was fraudulent. Compounding Morcor's fraud before the arbitration panel, ACD and Morcor timed the filing of the ACD Complaint and efforts to obtain insurance coverage until three months after the arbitration award was rendered. Upon discovering this fraud through Defendant's insurer's filing in February 2022, Defendant brings this Motion to Vacate within three months of discovering Morcor's fraud. Accordingly, application of equitable tolling principles is warranted.

## CONCLUSION

On the basis of the foregoing authorities, Defendant respectfully requests that this Court vacate the arbitration award in favor of Morcor on the basis of fraud, pursuant to 9 U.S.C. § 10(a)(1).

Respectfully submitted this 27th day of April, 2022.

/s/  Clark R. Hammond
Clark R. Hammond
chammond@wallacejordan.com
Counsel for Defendant

**OF COUNSEL**
WALLACE, JORDAN, RATLIFF & BRANDT, LLC
Synovus Center
800 Shades Creek Parkway, Suite 400
Birmingham, Alabama 35209
Telephone: 205.870.0555

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have on April 27, 2022 by way of the Court's electronic noticing system, which delivers notice to the following:

John M. Mastin, Jr.
Smith, Currie & Hancock LLP
245 Peachtree Center Avenue, NE
Suite 2700, Marquis One Tower
Atlanta, Georgia 30303-1227
(404) 275-6149
jmmastin@smithcurrie.com

Clifford C. Brady
Brady Radcliff & Brown LLP
63 South Royal Street
Mobile, Alabama 36602
(251) 405-0077
cbrady@brblawyers.com

*/s/ Clark R. Hammond*
OF COUNSEL