# EXHIBIT C



Southeast Case Management Center
2200 Century Parkway
Suite 300
Atlanta, GA 30345
Telephone: (404)325-0101
Fax: (877)395-1388

July 19, 2021

John Mastin, Jr., Esq.
Smith Currie & Hancock, LLP
245 Peachtree Center Avenue NE
2700 Marquis 1 Tower
Atlanta, GA 30303-1227
Via Email to: jmmastin@smithcurrie.com

Clark R. Hammond, Esq.
Wallace Jordan Ratliff & Brandt, LLC
800 Shades Creek Parkway, Suite 800
PO Box 530910
Birmingham, AL 35209
Via Email to: chammond@wallacejordan.com

Re:     Case Number: 02-20-0010-8513
        Morcor Financial, LLC v. Lucida Construction Company, LLC

Dear Parties:

By direction of the arbitrator(s) we herewith transmit to you the duly executed Award in the above matter. This serves as a reminder that there is to be no direct communication with the arbitrator(s). All communication shall be directed to the American Arbitration Association (the AAA).

A financial reconciliation has been conducted and each party will receive a separate financial accounting for this matter.

If a party has an outstanding balance, that party will receive an invoice/statement each month until the balance is paid.  Invoice/statements will only reflect credits made as of the date of mailing.  You may register, view your balance and make payments on our website at www.adr.org.

Note that the financial reconciliation reflects costs as they were incurred during the course of the proceeding. Any apportionment of these costs by the arbitrator, pursuant to the Rules, will be addressed in the award and will be stated as one party's obligation to reimburse the other party for costs incurred. Any outstanding balances the parties may have with the AAA for the costs incurred during the arbitration proceedings remain due and payable to the AAA even after the final award is issued, and regardless of the apportionment of these costs between the parties in the award.

In the normal course of our administration, the AAA may maintain certain documents in our electronic records system. Such electronic records are not routinely destroyed and do not constitute a complete case file.

We appreciate your selection of the AAA as your alternative dispute resolution provider in this matter. As always, please do not hesitate to contact me if you have any questions.

Sincerely,

/s/ Bryan A. Corbett

Bryan Corbett
Director of ADR Services
Direct Dial: (678)686-6010
Email: bryancorbett@adr.org

cc:    Robert O. Fleming, Jr., Esq.
       Clifford C. Brady, Esq.

       Richard D. Conner, Esq.
       C. Allen Gibson Jr., Esq.
       John T. Blankenship, Esq.

**American Arbitration Association**
**Construction Industry Arbitration Tribunal**

| | | |
|---|---|---|
| Morcor Financial, LLC, | ) | |
| ("Morcor"), | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | **AAA Case No.: 02-20-0010-8513** |
| | ) | **Before: (the "Panel")** |
| Lucida Construction Company, LLC, | ) | |
| ("Lucida"), | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

## <u>Award</u>

The undersigned Arbitrators having been designated in accordance with the arbitration agreement entered into between the above-named parties, Morcor Financial, LLC ("Morcor", or "Claimant") and Lucida Construction Company, LLC ("Lucida" or "Respondent"), (together "Parties"), and dated November 27, 2018, and having being confirmed by the American Arbitration Association ("AAA") and having been approved by the Parties and having been sworn to hear the evidence and render an award, do hereby issue this Award addressing the claims and counterclaims of the Parties.  This matter is being administered under the Construction Industry Arbitration Rules as amended and in effect July 1, 2015.

## I.    <u>Parties and Counsel</u>

   A.  Claimant

      1.  Claimant Morcor was represented by Lead Counsel:

         John Mastin, Esq.
         Smith Currie & Hancock, LLP
         245 Peachtree Center Avenue NE
         2700 Marquis 1 Tower
         Atlanta, GA 30303

{C0443009.1}

B. Respondent

    1. Respondent Lucida was represented by Counsel:

        Clark R. Hammond, Esq.
        Wallace Jordan Ratliff & Brandt, LLC
        800 Shades Creek Parkway, Suite 800
        Birmingham, AL 35209

## II.     <u>Arbitrators</u>

A. The Panel for this case was comprised of:

    1. John T. Blankenship, Esq.
        2179 Edward Curd Lane
        Suite 100
        Franklin, TN 37067

    2. Richard Conner, Esq.
        Conner Gwyn Schenk, PLLC
        306 E. Market Street, Suite One
        Greensboro, NC  27401

    3. C. Allen Gibson Jr., Esq.
        PO Box 999
        Charleston, SC 29402

B. Mr. Blankenship served as chair.

## III.     <u>Proceedings</u>

A. The final hearing commenced remotely via the Zoom platform on April 26 and continued on consecutive days until concluding April 29, 2021, as scheduled.

B. During the preliminary stages, the Panel held periodic preliminary hearings/status conferences to establish procedural and scheduling protocols,[1] and addressed several motions filed the Parties.

C. In the final hearing, Morcor called two (2) fact witnesses and an expert witness.

---

[1] For example, Scheduling Order/Procedural Directive No. 3, which memorialized a preliminary hearing conducted on November 20, 2020, established that the Panel would issue a reasoned award in accordance with the parties' request.

1. Morcor's fact witnesses were McKay Morley (the Manager of Morcor) and Jason Guffey (the Project Manager).

2. Morcor's expert witness was Ryan Ott with Rogers & Willard general contractors.

D. Lucida called one fact witness, Mike Addison (the CEO of Lucida).  Lucida did not call an expert witness.

E. All witnesses were each separately duly sworn by the Panel prior to offering their testimony.

F. The Parties elected to not have a court reporter. The hearings went smoothly albeit remotely, and counsel represented their respective Parties competently and professionally.

1. After the hearings concluded, counsel submitted summaries of their respective final damage claims,[2] post-hearing briefs and briefs for and against Morcor's request for an award of attorneys' fees.

2. Upon receipt of such submittals the Panel declared the hearings closed on June 3, 2021, but, with consent of the Parties, the closing date was extended to June 18, 2021, establishing an Award due date of July 19, 2021.

G. During the proceedings in the arbitration and in preparation of the Award the Panel relied on Alabama Law, as provided for in the Contract.

IV.   <u>**Project and Disputes**</u>

A. The disputes arose out of a contract dated as of November 27, 2018, between Claimant Morcor and Respondent Lucida whereby Lucida was to provide the design services and construction work on a charter school, Woodland Prep., in Washington County, Alabama

---

[2] Each party submitted a final "Claims Matrix" as requested by the Panel.

(the "Project").   Morcor and Lucida executed an *AIA Document A141- 2014 Standard Form of Agreement Between Owner and Design Builder* (the "Contract").[3]

B. Under the Contract Morcor was identified as the Owner and Lucida was identified as the Design-Builder.  In the Contract the term "Owner" means the Owner or the Owner's authorized representative, Jason Guffey – Project Manager.  The term "Design-Builder" means the Design-Builder or the Design-Builder's authorized representative, Mike Addison.

C. A Design Build Amendment to establish the Contract Sum, referenced in the Contract, was not executed between Morcor and Lucida.  However, throughout the hearing, both Parties referred to the Contract Sum as totaling $4,023,381.25 calculated as follows:

   1. Original Contract (Sitework Allowance and GMP Facility Construction) $3,911,573.00

   2. Total Change Orders (1 through 5) + $111,808.00

   3. Revised Contract Sum = $ 4,023,381.25.

D. Morcor stated in its Pre-Hearing Brief that the unpaid Contract balance after Lucida Pay App 9 was $1,038,483.97.

E. The Contract did not establish dates for submission of periodic applications of payment ("Pay Apps") by Lucida, but Lucida submitted at varying intervals a total of nine (9) Pay Apps during its work on the Project.   Morcor paid in full on a timely basis all Pay Apps that were submitted by Lucida.

F. The Contract at Article 9.5.1 established liquidated damages of $500 per day for failure to achieve substantial completion on time.

---

[3] Exhibit No. M-001. [Morcor Exhibits will be referenced by the prefix "M", and Lucida Exhibits by the prefix "L."]

G. Among its other provisions, the Contract at Article 13.2.2 sets out the grounds for termination for cause and the applicable damages recoverable as the result of a proper termination for cause.

H. Morcor entered into a separate agreement with American Charter Development, LLC ("ACD") whereby Morcor was ACD's "Consultant/Owner's Rep." and was to perform all ACD's responsibilities.[4]

I. The overall Project included design and construction of sitework (including 36 parking spaces) and vertical construction of two (2) one-story buildings on approximately 10.66 acres, consisting of:

  1. an administrative building containing a lobby, offices, a break room, a reception area, restrooms, a cafeteria/gym, a kitchen, storage, a janitor closet, electrical room, a library, an IT room and a nurse's room (the "Administrative Building"); and

  2. a classroom building containing classrooms, rest rooms, storage, electrical rooms, a teacher's lounge and offices (the "Classroom Building").

J. At the time of the Contract Lucida was properly licensed as a general contractor under Alabama law.

K. Morcor was not licensed as a general contractor under Alabama law.   Although Lucida presented this as a complete defense (voiding the Contract) in motions/briefing early and often (e.g., Lucida's motions for summary judgment and the initial affirmative defense asserted in its Prehearing Brief), there was a dearth of evidence presented on this issue/defense.

---

[4] Exhibit M-068.

L.  Lucida entered into a separate agreement for professional design services with Mussman Architects, Greenville, SC. [5]

M.  Lucida entered into various subcontracts and vendor agreements in performing Lucida's obligations under the Contract.

N.  July 15, 2019 was the original substantial completion date established in the Contract. The Project suffered delays, and the substantial completion date was extended 203 days to February 3, 2020, by Change Orders 1 through 5 to the Contract.

O.  On March 16, 2020, Jason Duffey furnished Mike Addison and the Morleys[6] with a construction schedule update along with photos in which Mr. Duffey pointed out that "he had visited the site, it was wet and muddy and raining, and in spite of the wet weather the crews are continuing to work to push ahead at every point they can." [7]

P.  On April 6, 2020, Mr. Guffey furnished an update for the Project along with photos, in which he noted among other things that the parking area was 100% to grade, that curb and gutter was 15% complete with the first run to be poured on Monday, and that the Admin and Classroom Buildings remained at varying stages of completion.[8]

    1.  That same morning, Mike Morley requested a detailed update on delays and an updated schedule.[9]

---

[5] Exhibit M-069
[6] Meaning/referring to McKay Morley, Manager of Morcor, and Mike Morley, Manager of ACD.
[7] Exhibit No. L-19.
[8] Exhibit L-21, pp. 2-6.
[9] *Id* at pp. 1-2.

2. On or about May 15, 2020, Lucida furnished its "Completion Schedule Update."[10] The Update forecasted July 20, 2020, as the date for a Certificate of Occupancy for the Project.[11]

Q. On or about May 28, 2020, Morcor received Pay App 9 from Lucida in the amount of $1,135,822.37.[12]

1. As with prior Pay Apps from Lucida, Pay App 9 included a Conditional Release of Lien ("CRL"). The CRL was signed under oath on April 30, 2020, by Mr. Addison, as President of Lucida.[13]

2. In the CRL Mr. Addison expressly represented that "… [Lucida} shall, within ten days after receipt of payment [in the amount of $1,135,822.37], pay for all labor, materials, equipment or services furnished to the Project by [Lucida] through [04/30/2020]."[14]

R. On June 25, 2020, Morcor made its final payment to Lucida under Pay App 9 in the amount of $635,822.37.

1. Earlier, on June 9, 2020, Morcor had advanced a $500,000.00 partial payment to Lucida under Pay App 9.

2. Thus, as of June 25, 2020, Lucida had received full payment under Pay App 9 in the amount of $1,135,822,37.

---

[10] Exhibit L-27.
[11] *Id.*
[12] Exhibit M-15.
[13] *Id* at p. 4 of 319.
[14] *Id.*

S.  The record indicates the events leading up to payment of Pay App 9 as follows:

    1.  On June 5, 2020, Mr. Addison indicated to Mike Morley that Mr. Addison needed to get the Pay App 9 funded so that Lucida get all of the subs paid.[15]  Mr. Addison indicated that he had every one of them engaged and committed,[16]  and that he would meet with the subs immediately after payment with "checks in hand."[17]

    2.  In response, Mike Morley indicated that Morcor was committed to the project and getting it funded as quickly as possible.[18]

    3.  Mr. Addison responded that he was "tapped out" on the project; and that he had enormous pressures from the subs to get them paid.[19]

    4.  On June 5, 2020, Lorie Addison, Lucida's Treasurer, informed Wendy O'Keefe and Mr. Guffey, both of Morcor, that Ms. Addison had informed the subs today that they would receive payment on Monday.[20]

    5.  On June 9, 2020, Mike Morley informed Mr. Guffey that he (Mike Morley) was planning to send Mike Addison a half million dollars today to cover Mr. Addison's immediate needs with his subcontractors' out-of-pocket.[21]  Mike Morley went on to indicate that Mike Addison needs to perform.[22]

T.  Wire transfers from Morcor to Lucida were verified as follows: $500,000.00 on June 9, 2020;[23] and $635,822.37 on June 25, 2020.[24]

---

[15] Exhibit M-115, p. 2 of 2.
[16] *Id.*
[17] *Id.*
[18] *Id* pp. 1 of 2 and 2 of 2.
[19] *Id,* p. 1 of 2.
[20] Exhibit M-117.
[21] Exhibit M-119.
[22] *Id.8*
[23] Exhibit M-26.
[24] Exhibit M-27.

U. Mr. Addison was asked during the hearing while under cross examination by Morcor's counsel whether the money received by Lucida under Pay App 9 was used by Lucida to pay the subcontractors and suppliers. Mr. Addison answered "No." When asked further by Mr. Mastin whether Lucida still had the money that was paid, Mr. Addison answered "No." Mr. Addison testified that he used the money paid by Morcor under Pay App 9 for Lucida's expenses on the Project.

V. On May 28, 2020, a hearing was held before the Alabama Public Charter School Commission (the "Commission") involving revocation of the charter contract for Woodland Prep.

    1. ACD appeared at the hearing through its attorney Chuck Dauphin.

    2. The transcript of the hearing does not indicate that either of the Parties in this arbitration were represented or offered testimony during the hearing. [25]

W. On June 8, 2020, ACD submitted its first draw request to Wendy Youngblood at Bank of OZK.[26]

X. June 8, 2020 – July 15, 2020, photos taken by Mr. Guffey illustrate site erosion washouts under curb and gutter.[27]

Y. On June 9, 2020, the Commission voted to revoke Woodland Prep's charter.[28] By order of the Circuit Court of Montgomery, Alabama dated March 3, 2021, the Commission's revocation was affirmed.[29]

---

[25] Exhibit L-31.
[26] Exhibits L-34 and L-35.
[27] Exhibit L-108.
[28] Exhibit L-43.
[29] Exhibit L-91.

Z.  Mike Addison testified that on June 11, 2020, he met with Mr. Guffey and McKay Morley and "they talked about reducing the Contract scope of work and a plan going forward to get the Classroom Building into a shell condition."

AA.  On June 22, 2020, Mike Morley, in the context of arranging access to the Project for Bank OZK's inspector, instructed Mr. Guffey to, "Please have Mike just show the Buildings and keep his mouth shut about any action going on between the authorizer in the school."[30]

BB.  On June 22, 2020, Jill Hanson with GLE Associates, Inc. inspected Project status and in her Inspection Field Report Number 1 dated June 23, 2020, informed Wendy Youngblood of Bank OZK that the Project was 77% complete, that a September 30, 2020 Project completion time frame was attainable, and recommended disbursement of $1,135,822.37 to fully fund Pay App 9.[31]

CC.  Salient events on and following the final payment of Pay App 9, June 25, 2020, were:

1.  The same day, Mike Morley informed Mr. Guffey via email that "MorCor needs to send a demand to get this project completed or we need to terminate Mike For cause and not pay him another dime and find a local contractor to finish the site work and closing in the classroom building."[32]   In the email Mr. Morley instructed Mr. Guffey (cc to McKay Morley and Taft Morley) to advise him on "how we should proceed to protect our interests and to get this contractor either to perform equitably or to move him out of the way and mitigate the damages."[33]

2.  Four days later, on June 29, 2020, Mr. Guffey informed Taft Morley, Mike Morley and McKay Morley via email that he (Mr. Guffey) had met with Mr. Addison.  Mr.

---

[30] Exhibit L-38; "Mike" meaning Mike Addison.
[31] Exhibit L-39.
[32] Exhibit M-122.
[33] *Id.*

Guffey indicated in the email that Mr. Addison informed him that Lucida's plan would be forthcoming no later than June 30.

DD. By letter dated June 30, 2020, Mike Addison furnished Mr. Guffey with what Mr. Addison referred to in the letter as Lucida's "preliminary road map in order to get the project back in production and completed to the stage requested in our June 12, 2020 meeting," and Mr. Addison referenced conversations with Mr. Guffey occurring on June 26, 2020.  In the letter Mr. Addison also indicated his intent "to implement the following measures to get the project back in full operation (re-mobilization) and to the desired status (Administration Completed, Site Complete, Classroom Building 'dried in'.)"[34]

EE. On June 30, McKay Morley indicated to Mr. Guffey via email his dissatisfaction with the plan received from Mr. Addison, characterizing it as "This is the worst recovery plan I have ever seen."[35]

FF. On July 2, 2020, Mark Morley transmitted via email to Lucida's counsel, Mr. Hammond, and Mike Addison Morcor's Notice of Termination of the Contact. [36]

  1. In the Notice attached to the email, Mr. Morley recited that the termination was given pursuant to Section 13.2.2 the Contract, that the termination was for cause (citing "…repeated failure to supply contractors and/or workers to faithfully and expeditiously complete the Project within the committed contract time, and for Lucida's substantial breaches of the provision of the Construction Contract."). [37]

  2. In the Notice Morcor informed Lucida that: "It is the sincere desire of Morcor to simply have the Project completed pursuant to the Construction Contract.

---

[34] *Exhibit M-124.*
[35] Exhibit M-125.
[36] Exhibit M-126.
[37] *Id.*

Accordingly, in the event that Lucida desires to mitigate its potential damages associated with a termination for cause, you may contact me on or before **2:00 Eastern Time on July 10, 2020**…with a recovery schedule (including dates for the work to be completed) for the completion of the construction."[38]

GG.  On July 9, 2020, at 3:30 p.m., Mark Morley sent a follow up email to Mr. Hammond and Mr. Addison in which he stated, *inter alia,* that: "…it remains the desire of Morcor Financial, LLC ("Morcor") to have Lucida Construction Company, LLC ("Lucida") mitigate its damages and submit a recovery schedule to be reviewed by Morcor.  Morcor has no desire to seek reimbursement for any deficiency on the Project (as defined in the Notice) in the event of a cost increase, if another contractor is employed to complete the Project.  But, in the event that Lucida refuses to mitigate its damages, or does not submit an acceptable recovery plan, Morcor will have no choice but to employ a third party contractor and seek reimbursement for any cost increase from Lucida."[39]

HH.  On July 9, 2020, Lucida responded via email to the Notice, through Lucida's attorney, objecting to the validity of the termination as not in compliance with the terms of the Contract.  Lucida requested in the email, among other things, that Morcor withdraw its "defective termination notice."[40]  Lucida did not submit a recovery schedule.

II.  On July 14, 2020, Mr. Guffey of Morcor furnished to Corey Torres of Bauma Construction ("Bauma") via email a scope of work to finish the Project.  The scope of work included in the email specified finishing all site work, completing the Administration Building and a dry-in of the Classroom Building.  In the email Mr. Guffey stated among other things, "If

---

[38] *Id.*
[39] Exhibit M-127.
[40] Exhibit M-128.

you are interested, let me know and I will schedule to meet you on site so we can tour the facility to finalize the scope."[41]

JJ.   On July 22, 2020, Lucida transmitted a letter via email stating that the "letter shall serve as our official notice of rejection for your stated Termination of Contract (for Cause) … as well as our official Notice of Termination to Owner for breach of contract."[42]

KK.   On August 7, 2020, a Petition Seeking Reversal of Commission's Order Revoking the School's Charter was filed by ACD and others in the Circuit Court of Montgomery County, Alabama.[43]

LL.   On August 14, 2020, Bauma submitted to Taft Morley Bauma's proposal to complete the Project in approximately five (5) months, commencing on September 7, 2020, and reaching substantial completion of Bauma's work by approximately January 31, 2021. [44]

1.   The scope of work in Bauma's proposal was completion of site work, completion of the Administration Building and completion of the Classroom Building to a "Cold Dark Shell".[45]

2.   Also, in its submission to Mr. Morley, Bauma proposed to perform its scope of work on a Cost-Plus basis.  Bauma proposed to be paid the direct costs of the work as defined in ConsensusDocs 235, staff travel cost of $33,170.00 monthly, general conditions of $18,471.00 monthly, overhead of $15,000.00 monthly and profit of $25,000.00 monthly.

3.   Bauma's proposal was based on list of "Assumptions and Qualifications."[46]

---

[41] Exhibit L-45.
[42] Exhibit L-62.
[43] Exhibit L-75.
[44] Exhibit L-76.
[45] *Id.*
[46] *Id.*

4.   An Agreement was executed between Morcor and Bauma as of August 21, 2020 (the "Bauma Agreement"),[47] which was consistent in contract form, scope of work and pricing as contained in Bauma's earlier proposal.

MM. On August 27, 2020, Joe Durfee informed Mr. Guffey via email that "we [Bauma] see the total cost to complete to be approximately $2mm (that would put our total OH&P between 8-10% depending on a 4 or 5 month duration)."[48]

NN. On September 14, 2020, Mr. Guffey informed McKay and Taft Morley, and others that, "With Hurricane Sally was "charging at the project, I wanted to confirm that we have hurricane protection on our Woodlands Project in Chatom, AL."[49]

OO.   By letter dated January 14, 2021 to Mr. Guffey, Joe Durfee of Bauma estimated the amount of $204,726.00 for restoring the Project site and removal/replacement of damaged curb and gutter following significant rain events.[50]  Bauma performed the work and invoiced Morcor during November 2020 through March, 2021 under Bauma's Pay Apps 1 – 4 totaling during $235,903.00.[51]

PP.   Under cover letter dated February 3, 2021, Ryan Ott of Rogers & Willard furnished to Morcor's attorney, John Mastin, Mr. Ott's budget pricing in the amount of $3,066,020.00 as being the cost to complete the entire Project per design documents prepared by Mussman Architects dated March 1, 2019.[52]

---

[47] Exhibit M-154.
[48] Exhibit L-81.
[49] Exhibit L-84. By "protection" Mr. Guffey was referring to insurance coverage.
[50] Exhibit L-89.
[51] Exhibits M-156-159.
[52] Exhibit M-29.

1. Under the same letter Mr. Ott furnished an alternate price in the amount of $1,886,705.00 to complete the Project with partial completion of the Classroom Building.[53]

2. Mr. Ott presented and explained his budget pricing during his expert testimony at the hearing on April 28, 2021.   While testifying, Mr. Ott stated that the alternate price included completion of site work, completion of the Administrative Building and complete of the Classroom Building to a "cold dark shell" exclusive of HVAC and upfit.  Mr. Ott pointed out during his testimony that costs for materials and labor had increased since February 3, 2021, the date of his budget pricing.  Further, Mr. Ott testified that his employer Rogers & Willard would not undertake the Project due to difficulty getting vendors and subcontractors and due to neighborhood opposition to the school.

QQ. By its final judgment filed on March 3, 2021, the Circuit Court affirmed the Commission's order revoking the school's charter.[54]

RR. On April 2, 2021, Morcor conveyed the amount of $206,191.04 to Bauma via wire transfer.[55]

SS. The record indicates that on or about July 22, 2020, approximately one (1) month after receiving payment of Pay App 9, Lucida sent a Notice "To All Subcontractors"  as their "…official notification of our Termination of the Contract with the Owner on the…" Woodland Prep Charter School Project.[56]  In the letter Lucida informed the subcontractors,

---

[53] *Id.*
[54] *Supra,* note 26.
[55] Exhibit M-160.
[56] Exhibit M-135.

*inter alia*, that it had "relayed" to the Owner that it wanted to meet with each sub and pay each their current amount due through the end of April.[57]

TT.  The record indicates that from July 16, 2020, through September 21, 2020, Morcor received Mechanics and Materialmen's liens from five (5) subcontractors totaling approximately $342,589.44.[58]

    1.  Additionally, the record indicates that Lucida's subcontractor, Lower Alabama Heating Cooling and Refrigeration, LLC, is seeking an additional $28,201.65 from Morcor and ACD (the amount prayed for in its Cross-Claim against Morcor and ACD of $144,928.40, less the amount of the lien of its supplier, Mingledorff, Inc.'s in the amount of $116,726.75).[59]

    2.  Thus, Morcor has been exposed to potential liability of at least $370,791.09 from downstream subcontractors and/or suppliers of Lucida.[60]

## V.  Contentions/Claims of the Parties

A.  <u>Morcor Claims</u>.  According to its post-hearing submittal dated May 24, 2021 summarizing damages, Morcor seeks an award of $3,119,581.90 for completion costs, refund of certain payments made to Lucida, liquidated damages, attorneys' fees, costs and expenses and interest.

B.  <u>Lucida Claims</u>.  Lucida asserts affirmative defenses to Morcor's claims, seeks an award that the termination of Lucida for cause was improper, and, according to is post-hearing

---

[57] *Id.*
[58] Exhibits M-54-65.
[59] *See,* Exhibits M-63, 64, and 66.
[60] It is assumed that the lien amount claimed by Mingledorff is subsumed in the total amount sued for by Lower Alabama.

submittal dated April 25, 2021 summarizing damages, Lucida seeks counterclaim damages of $632,316.63,[61] including interest.

## VI.   **Panel Findings and Reasons for the Award**

The following paragraphs summarize the Panel's findings and its reasons for this Award:

### A. **Termination**

1. The panel finds that substantial completion was not achieved by February 3, 2020. There was no change order extending the Contract substantial completion date beyond February 3, 2020.

2. During March, April, May and into June 2020 (the "Time Period"), Lucida's completion was further delayed. The evidence at the hearing conflicted as to the causes of such delay. The panel finds that unanticipated wet weather and a failure by Lucida to prosecute and/or expedite the work combined to cause the delays. The record indicates and the Panel finds that during the Time Period, Morcor and Lucida continued working together in an effort to overcome delays, and to mitigate damages.

3. Neither Morcor nor Lucida offered independent expert analysis of critical path delays during the Time Period or otherwise. The lack of such expert analysis notwithstanding, the Panel finds that during the Time Period:

   a. Lucida did not expeditiously prosecute the work as it should have;

   b. Morcor did not threaten or assess LD's;

   c. Lucida did not request an extension of the substantial completion date;

   d. the substantial completion date of February 3, 2020 was not extended due to weather conditions or for other reasons;

   e. Lucida did not request payment for additional compensation for delays or extra work;

   f. Lucida did not submit separate Pay Apps for periods ending in January, February or March 2020, but instead submitted only one (1) Pay App, No. 9 (dated 05/28/2020) for the period January through April 30, 2020;

   g. Lucida waited until 5/28/2020 to submit Pay App No. 9, and this inexplicable delay in applying for payment caused a delay and/or failure in

---

[61] Lucida final Claims Matrix received May 24, 2021.

payments by Lucida to subcontractors who had performed work during the Time Period;

h. such delay and/or failure in payments to subcontractors caused or contributed to controversy between Lucida and its subcontractors whereby some subcontractors would not continue performance pending payment in full; and

i. as an experienced general contractor Lucida should have anticipated that a delay in billing to Morcor would, at a minimum, delay Lucida's payments to subcontractors, and such delayed payment to subcontractors would interfere with Lucida's obligation and ability to expedite the work.

4. The Panel finds that in early June 2020 Project circumstances were materially altered when on June 9, 2020, the Commission revoked the school's charter.

5. The Panel finds that during the Time Period, at least up until June 9, 2020, Morcor and Lucida intended that the Project be fully completed according to the Contract.

6. The Panel finds that immediately after June 9, 2020:

a. Morcor took steps to mitigate damages to Morcor that could arise from the revocation;

b. Morcor decided to reduce the Contract scope of work pertaining to the Classroom Building;

c. Morcor paid Lucida in full for Pay App 9;

d. Morcor endeavored for approximately two (2) weeks to work with Lucida to implement a reduction in scope and expedite the work;

e. on June 30, 2020, Morcor lost trust and confidence in Lucida's ability to expedite the work, and that by said date Lucida, without just cause, had abandoned the work; and

f. Lucida had failed to pay, contrary to its sworn representations, its subcontractors for non-defective work, despite being paid by Morcor for said work[62]

g. Accordingly, the Panel finds that Morcor had more than sufficient grounds to terminate Lucida for cause.

---

[62] Exhibits M-122-124.

7. The Panel finds that the terms of Morcor's Notice of Termination of the Contract dated July 2, 2020[63] substantially complies with the requirements of Article 13.2.2 of the Contract in all material respects.[64]

    a. Lucida was given effectively eight (8) days to provide a plan to cure its default under the Notice, and within said period, Morcor, under no contractual requirement or mandate to do so, urged Lucida to complete the work and avoid the possibility of deficiency damages.[65]

    b. Lucida made no effort whatsoever to respond in any reasonable manner to the opportunity to cure ("mitigate") afforded it.

    c. Accordingly, Lucida's complaint that it was not given the contractually mandated seven (7) days notice and opportunity to cure, and its attendant affirmative defense, ring hollow.

    d. Under these circumstances, the Panel finds that Morcor properly terminated Lucida for cause and Morcor is entitled to monetary compensation from Lucida.

8. The Panel finds that, the Contract having been properly terminated for cause, Lucida is not entitled to further payment, and finds that Lucida's counterclaim damages are, therefore, denied in full.

9. The Panel finds that Lucida, despite making it the battle cry in its defense of this case until the final hearing, failed to carry its burden of proof in the final hearing to establish Morcor's lack of standing and inability to recover any damages due to it being an unlicensed contractor in the state of Alabama.

10. The Panel finds that Morcor did not carry its burden of proof to establish that delays caused **solely** by Lucida during the Time Period were critical to Project completion (on

---

[63] *Supra,* note 32.

[64] The evidence was irrefutable that Lucida failed to pay subcontractors for whom it had been paid by Morcor, which resulted in liens and lawsuits that Morcor was compelled to defend.  Accordingly, though not specifically stated in the Notice of Termination, the Panel finds that said failure was, in part, the cause for its "…repeated failure to supply contractors and/or workers to faithfully and expeditiously complete the Project within the committed contract time, and, moreover, would fall within, "…Lucida's substantial breaches of the provision of the Construction Contract" as stated in the Notice.

[65] *Supra,* note 34.

the critical path), and, therefore, finds that Morcor is not entitled to liquidated damages as claimed by Morcor.

11. Having elected to terminate Lucida for cause, Morcor's recovery against Lucida is governed by Article 13.2.2.4 of the Contract.

## B. **Attorney's Fees**

1. The Panel finds that Morcor's argument that the indemnity provisions 3.1.14 authorizes a fee award is not well taken and is, therefore, denied except for fees incurred in defending claims brought by third parties namely, the lien claims, and lawsuits referenced herein pursuant to Section 3.1.16.4 of the Contract. Likewise, any reliance by Morcor on Alabama Code §8-29-6 is not well taken as Morcor is not a qualifying claimant/payee under said statute. Accordingly, the Panel finds that Morcor is entitled to receive the sum of $144,132.16 for fees, costs and expenses reasonably and necessarily incurred in defending said third party claims, consisting of $59,609.68 billed to Morcor by the Brady Radcliff & Brown LLP firm ("BRB") and $84,522.48 billed to Morcor by the Smith, Currie & Hancock LLP firm ("SCH"). The Panel examined in detail the contents of Morcor's request for attorneys' fees, including a detailed review and analysis of every attorneys' fee invoice. It was determined that all of BRB's work related to defending third party claims. SCH's invoices often included more than one activity in each time entry, some being related to third party claims and others to work associated with the arbitration proceeding. Since these combined/grouped time entries were not broken out between activities, the Panel's calculation of the fees of SCH that are recoverable was based on the Panel's collaborative efforts to reasonably determine what amount of time was related to the third-party claims. Once this analysis was completed, the Panel extrapolated the requisite fee amounts accordingly. The fees of Rogers & Willard, Inc., Morcor's expert for the arbitration proceeding, are not recoverable under the Contract and are, therefore, denied.

## C. **Damage Award to Morcor**

1. The contractual starting point for determining the damages or compensation for Morcor is the costs of finishing the Work and other damages incurred by Morcor and not

expressly waived, as required under Article 13.2.2.4.   The problem is that Morcor introduced no evidence of actual costs to finish the original scope of work.

2. However, it would be wholly inequitable to deny any compensation to Morcor for its proper termination of the Contract due to Lucida's myriad substantial breaches of same. Therefore, the Panel develops an equitable remedy pursuant to the AAA Rules. Specifically, Rule R-48 (a) of the Construction Industry Rules of the AAA states, "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, **equitable relief** and specific performance of a contract." (emphasis supplied).

3. Our analysis of an equitable remedy starts with considering Morcor's evidence of the potential costs of finishing the project.  The sole evidence of the potential costs is that submitted by Mr. Ott in his budget estimate on behalf of Morcor.  The Panel finds that Mr. Ott's alternate price is based on partial completion of the Classroom Building.  The Panel finds that Mr. Ott's alternate price in the amount of $1,886,705.00 is based on a detailed analysis performed by a qualified and experienced expert construction cost estimator, that it substantially satisfies and establishes in all material respects the Owner's "…costs of finishing the Work…" in accordance with §13.2.2.4 of the Contract, and that it is, therefore, properly considered by the Panel as evidence in determining the costs to finish. Additionally, the Panel takes notice that Lucida offered no appreciable evidence to contradict Mr. Ott's expert opinions and alternate price.

4. The Panel finds that the unpaid balance of the Contract is $1,038,483.00.  The Panel finds that the costs to finish the Work (as that term is used in the Contract) is $1,886,705.00.  The Panel finds that "other damages incurred by the Owner" (Morcor) "and not expressly waived…" are $187,681.00 comprised of the amounts unpaid by Lucida to Bagby & Russell and Lower Alabama.   The damages calculation is as follows:

| | |
|---|---|
| Costs to finish the Work: | $1,886,705.00 |
| Other damages: | $   187,681.00 |
| | |
| Sub-Total | $ 2,074,386.00 |
| Unpaid balance of the Contract: | ($1,038,483.00) |
| | |
| **Total:** | **$ 1,035,903.00** |

The Sub-Total exceeds the unpaid balance of the Contract by the amount of $1,035,903.00—the "Total." Therefore, under Article 13.2.2.4 of the Contract, $1,035,903.00 shall be paid by Lucida to Morcor.

D. **Prejudgment Interest**

1. Morcor is entitled to recover from Lucida Pre-Award Interest in the amount of $42,363.37. This is calculated as follows:

   a. the net cost to complete is $848,222.00 ($1,886,705.00 less $1,038,483.00) which was determined as of February 12, 2021 - the date of the Rogers and Willard estimate;

   b. February 12 – July 19 is 157 days;

   c. $848,222.00 x 0.075[66] divided by 365 = $174.29/day x 157 = $27,363.53;

   d. the unpaid subcontractors amount of $187,681.00 accrued as of June 25, 2020;

   e. June 25, 2020 – July 19 is 389 days;

   f. $187,681.00 x 0.075 divided by 365 = $38.56/day x 389 = $14,999.84.[67]

E. **Arbitration Costs**

The Panel determines that the administrative fees and expenses of the American Arbitration Association totaling $25,900.00 should be borne AS INCURRED, and the compensation and expenses of the Panel totaling $120,240.50 should be borne EQUALLY, provided, however, that Morcor should remit $24,140.50, representing the overage of Panel compensation and expenses (amount of final Panel invoices in excess of the amount on deposit with AAA) in accordance with its prior agreement to advance said

---

[66] The 0.075 is equivalent to 7.5% interest per annum per Ala. Code Section 8-8-10.
[67] *Id.*

Panel fees.  Therefore, Lucida should reimburse Morcor the sum of $53,295.25, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Morcor, upon demonstration by Morcor that these incurred costs have been paid.

F.  **Award**

Accordingly, the Panel Awards as follows:

1.  Lucida shall pay to Morcor on its claims, the sum of ONE MILLION THIRTY-FIVE THOUSAND NINE HUNDRED THREE DOLLARS AND NO CENTS ($1,035,903.00), on or before August 19, 2021;

2.  Lucida shall pay Morcor prejudgment interest in the amount of FORTY-TWO THOUSAND THREE HUNDRED SIXTY-THREE DOLLARS AND THIRTY-SEVEN CENTS ($42,363.37), on or before August 19, 2021;

3.  Lucida shall pay Morcor attorney's fees in the amount of ONE HUNDRED FORTY-FOUR THOUSAND ONE HUNDRED THIRTY-TWO DOLLARS AND SIXTEEN CENTS ($144,132.16), on or before August 19, 2021;

4.  The Panel determines that the administrative fees and expenses of the American Arbitration Association totaling $25,900.00 shall be borne AS INCURRED, and the compensation and expenses of the Panel totaling $120,240.50 shall be borne EQUALLY, provided, however, that Morcor shall remit $24,140.50, representing the overage of Panel compensation and expenses (amount of final Panel invoices in excess of the amount on deposit with AAA) in accordance with its prior agreement to advance said Panel fees.  Therefore, Lucida shall reimburse Morcor the sum of $53,295.25, representing that portion of said fees and expenses in excess of the apportioned costs

previously incurred by Morcor, upon demonstration by Morcor that these incurred costs have been paid.

5.  In the event that all or any of the sums specified in the above paragraphs of this Award are not paid as provided herein, the unpaid sums shall bear interest from August 19, 2021, at the statutory rate on judgments in Alabama of 7.5% per annum until paid; and

6.  This Award is in full settlement of all claims and counterclaims submitted to this arbitration.  All claims and counterclaims not expressly granted herein are denied.

This Award may be executed in counterparts by either an original, electronic, facsimile, or scanned pdf signature, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.

July 18, 2021
_____
Date                                                 John T. Blankenship, Panel Chair


_____          _____
Date                                                 Richard Conner, Panel Member


_____          _____
Date                                                 C. Allen Gibson Jr., Panel Member

_____          _____
Date                                John T. Blankenship, Panel Chair


July 19, 2021                       *Richard Conner*
_____          _____
Date                                Richard Conner, Panel Member


*July 19, 2021*                    _____
_____
Date                                C. Allen Gibson Jr., Panel Member