**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| THE CINCINNATI CASUALTY COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO._____ |
| | ) | |
| MORCOR FINANCIAL, LLC, | ) | |
| AMERICAN CHARTER DEVELOPMENT, LLC, | ) | |
| AND LUCIDA CONSTRUCTION COMPANY, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff The Cincinnati Casualty Company and hereby states its Complaint for Declaratory Judgment against Defendants Morcor Financial, LLC, American Charter Development, LLC, and Lucida Construction Company, LLC as follows:

### I.  THE PARTIES

1.     Plaintiff The Cincinnati Casualty Company (hereinafter "CCC") is a corporation organized under the laws of the State of Ohio, with its principal place of business in Fairfield, Ohio, which is authorized to engage in the business of selling insurance in the State of Alabama.

2.     Defendant Morcor Financial, LLC (hereinafter "Morcor") is a limited liability company organized under the laws of the State of Utah, with its principal place of business in Springville, Utah. Morcor is registered to do business in and transacts business in the State of Alabama. Morcor has two members: McKay Morley and Mike Morley who are both residents and citizens of Utah.

3.      Defendant American Charter Development, LLC (hereinafter "ACD") is a limited liability company organized under the laws of the State of Arizona, with its principal place of business in Springville, Utah. ACD is registered to do business in and transacts business in the State of Alabama. ACD has one member: Mike Morley who is a resident and citizen of Utah.

4.      Defendant Lucida Construction Company, LLC (hereinafter "Lucida") is a limited liability company organized under the laws of the State of Alabama, with its principal place of business in Montgomery, Alabama. Lucida has two members: Michael J. Addison and Lorie G. Addison who are both residents and citizens of Alabama.

## II.  JURISDICTION AND VENUE

5.      This action is brought pursuant to 28 U.S.C. § 2201 for a declaration of rights and obligations of CCC under certain insurance policies issued to Lucida with respect to a contractual dispute between Lucida, Morcor, and ACD arising from a construction project located in Washington County, Alabama.

6.      This Court has jurisdiction pursuant 28 U.S.C. §1332 because there is complete diversity amongst the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs as demonstrated herein.

7.      Venue is proper under 28 U.S.C. §1391(b)(2) as the construction project and events giving rise to this dispute are located/occurred in this judicial district. Therefore, a substantial part of the events giving rise to this dispute occurred within the Southern District.

## III.  STATEMENT OF FACTS

**A.      The Policy**

8.      CCC issued a commercial insurance policy providing Commercial General Liability (hereinafter "CGL") and Commercial Umbrella Liability (hereinafter "Umbrella")

coverage to named insured Lucida, bearing Policy No. ENP 046 05 30, with a policy period of October 17, 2018 to November 1, 2019 (hereinafter referred to collectively with all renewals as the "Policy"). A true and accurate copy of the Policy (liability portions only) is attached as Exhibit "A".

9.    The Policy was renewed for the CGL for the policy period of November 1, 2019 to November 1, 2020, but the Umbrella was not renewed. A true and accurate copy of the renewal policy (liability portions only) is attached as Exhibit "B".

12.    The Policy was also renewed for the policy period of November 1, 2020 to November 1, 2021. A true and accurate copy of the renewal policy (liability portions only) is attached as Exhibit "C".

13.    The CGL's insuring agreement provides coverage for "bodily injury", "property damage", or "personal and advertising injury" caused by an "occurrence" that takes place within the "coverage territory" and within the policy period as those terms are defined by the Policy, subject to certain exclusions and conditions. *See, e.g.,* Ex. A at 19.

14.    The Umbrella's insuring agreement similarly provides umbrella or excess coverage for "bodily injury", "personal and advertising injury", or "property damage" caused by an "occurrence" that takes place in the "coverage territory" as those terms are defined by the Policy, subject to certain exclusions and conditions. *See, e.g.,* Ex. A at 84.

15.    The CGL also includes certain additional insured coverage, which is limited to "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by the performance of Lucida's ongoing operations or by Lucida's work and included in the "products-completed operations hazard" subject to other terms, conditions, exclusions. *See, e.g.,* Ex. A at 75-77.

**B.      The Project**

16.      This case arises from the construction of a charter school named "Woodland Preparatory" which was being constructed in Washington County, Alabama (hereinafter the "Project").

17.      Two limited liability companies with common ownership, ACD and Morcor, have been operating as the ownership entities for the construction of the Project.

18.      Lucida was hired by Morcor as the design-builder for the Project. In connection therewith, Lucida and Morcor executed an AIA Document A141 – 2014 Standard Form of Agreement Between Owner and Design Builder, which is dated November 27, 2018.

19.      The original contract sum for the Project was $3,911,573. During the course of construction, Morcor and Lucida executed change orders increasing the contract sum to $4,023.381.25.

20.      Upon information and belief, construction on the Project began in 2019.

21.      By letter dated July 1, 2020, Morcor terminated Lucida as the design-builder on the Project for failure to complete the Project and/or failure to keep the construction of the Project on schedule.

22.      ACD and/or Morcor hired another design-builder to replace Lucida and complete the Project.

23.      Lucida's failure to complete the Project and/or failure to keep the construction of the Project on schedule generated two legal actions which are the subjects of this complaint for declaratory judgment (collectively, the "Underlying Actions").

C. **The AAA Arbitration**

24.     In 2020, Morcor instituted an arbitration proceeding against Lucida captioned *Morcor Financial, LLC v. Lucida Construction Company, LLC* and bearing Case No. 02-20-0010-8513 before the American Arbitration Association's Construction Industry Arbitration Tribunal (hereinafter, the "AAA Arbitration").

25.     In the AAA Arbitration, Morcor sought an award of $3,119,581.90 for completion costs, refund of certain payments made to Lucida, liquidated damages, attorneys' fees, costs, and expenses and interest.

26.     On July 19, 2021, the AAA Panel issued an award in the arbitration against Lucida in Morcor's favor in the amount of $1,275,693.78 ($1,035,903.00 in compensatory damages plus $239,790.78 for prejudgment interest, costs, and fees). A copy of the AAA Award is attached as Exhibit "D".

27.     According to the findings set forth in the AAA Award, the compensatory damages awarded constitute the increased costs to Morcor to complete the Project over the original contract sum with Lucida and amounts incurred by Morcor for claims made by Lucida's subcontractors due to Lucida's non-payment. *See* Ex. D at 21-24.

28.     On August 24, 2021, Morcor filed with this Court its Petition to Confirm Arbitration Award in a lawsuit styled *Morcor Financial, LLC v. Lucida Construction Company, LLC*, under Civil Action No. 21-00370-KD-B.

29.     On December 17, 2021, this Court confirmed the AAA award and issued a judgment against Lucida and in Morcor's favor in the amount of $1,275,693.78 ($1,035,903.00 in compensatory damages plus $239,790.78 for prejudgment interest, costs, and fees) (hereinafter the "Morcor Judgment"). A copy of the Morcor Judgment is attached as Exhibit "E".

30.     Lucida moved to alter or amend the judgment on January 14, 2022, which is currently pending before the Court. However, Lucida's motion is limited to contesting the amount of interest applied in the judgment.

**D.     The ACD Lawsuit**

31.     On or about November 10, 2021, ACD filed a lawsuit against Morcor in the Fourth Judicial District for Utah County, State of Utah, styled *American Charter Development, LLC v. Morcor Financial, LLC,* bearing Case No. 210401539 (hereinafter the "ACD Lawsuit"). A copy of ACD's Complaint filed in the ACD Lawsuit is attached as Exhibit "F".

32.     ACD alleges it agreed to develop the Woodland Prep charter school in Chatom, Alabama, and it hired Morcor as the owner's representative for the construction of the Project.

33.     ACD alleges it agreed to pay Morcor eight percent (8%) of the total cost of the work on the Project.

34.     ACD alleges Morcor hired Lucida as the design-builder for the Project.

35.     ACD alleges Morcor failed to properly manage and coordinate work on the Project and failed to timely complete the Project for occupation.

36.     ACD alleges causes of action against Morcor for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duties. Each cause of action is generally premised on the allegation that Morcor failed to properly manage and coordinate the work on the Project.

37.     ACD seeks damages against Morcor for costs to resolve all subcontractor and material supplier claims, costs to secure and stabilize the Project site, increased costs to complete the Project, increased financing costs, loss of the developer fee, lost lease revenue, attorneys' fees,

and interest. While ACD's alleged damages are not specifically alleged, it seeks an amount exceeding $300,000.

**E.      Dispute Of The Parties**

38.      A real justiciable dispute exists between the parties as to CCC's coverage obligations, if any, arising from the Underlying Actions.

39.      While Lucida did not request a defense or indemnity from CCC with respect to the AAA Arbitration, Morcor demanded CCC pay the Morcor Judgment under the Policy.

40.      Morcor has also demanded that CCC defend and potentially indemnify it for the ACD Lawsuit under the Policy.

41.      CCC denied coverage for both the Morcor Judgment and the ACD Lawsuit because neither the Morcor Judgment nor the ACD Lawsuit trigger CCC's obligations under the Policy.

## IV.  GROUNDS FOR DECLARATORY RELIEF

## COUNT I – DECLARATION OF NO COVERAGE FOR THE MORCOR JUDGMENT

42.      CCC adopts and incorporates by reference the factual allegations set forth above in paragraphs 8-41.

43.      On July 19, 2021, the AAA Panel issued an award in the AAA Arbitration against Lucida in Morcor's favor in the amount of $1,275,693.78 ($1,035,903.00 in compensatory damages plus $239,790.78 for prejudgment interest, costs, and fees). *See* Ex. D.

44.      The Award is premised on Lucida's failure to perform its contractual responsibilities under the agreement between Morcor and Lucida. *Id.* In particular, the AAA Panel found Morcor was entitled to terminate Lucida for cause because Lucida failed to perform the work in a timely manner and failed to pay its subcontractors. Thus, the AAA Panel determined Mocor was entitled to contractual damages as a result of Lucida's breach of the parties' agreement.

45.     On December 17, 2021, this Court confirmed the AAA award and issued a judgment against Lucida and in Morcor's favor in the amount the AAA Award..

46.     For the following reasons, the Policy does not provide coverage for the Morcor Judgment, and CCC has no obligation to indemnify Lucida for the Morcor Judgment:

a.     Lucida is not entitled to coverage for the Morcor Judgment because it failed to satisfy certain conditions precedent to coverage under the Policy, including the duty to provide timely notice of the claim.

b.     The Policy provides liability coverage for three types of damages: "bodily injury", "property damage", and "personal and advertising injury". The damages that comprise the Morcor Judgment do not fall within the Policy's definitions for any of these types of damages.

c.     The Policy only provides coverage for "bodily injury" or "property damage" caused by an "occurrence". The claims that comprise the Morcor Judgment do not meet the Policy's definition of an "occurrence".

d.     The claims and damages that comprise the Morcor Judgment are precluded from coverage under the Policy by the following exclusions in the CGL:

i.     The exclusion for Damage to Property

ii.     The exclusion for Damage to Your Work

iii.     The exclusion for Damage to Your Product

iv.     The exclusion for Damage to Impaired Property or Property Not Physically Injured.

v.     The exclusion (added via endorsement) for Contractor's Professional Liability.

     e.     The claims and damages that comprise the Morcor Judgment are precluded from coverage under the Policy by the following exclusions in the Umbrella:

         i.     The exclusion for Damage to Your Work

         ii.     The exclusion for Damage to Your Product

         iii.     The exclusion for Damage to Impaired Property or Property Not Physically Injured

         iv.     The exclusion for Contractual Liability

         v.     The exclusion (added via endorsement) for Contractor's Limitations.

     f.     For the Umbrella, the damages that comprise the Morcor Judgment occurred outside of the policy period.

47.     Therefore, CCC seeks a declaration that it is not obligated to afford coverage for or indemnify Lucida with respect to the Morcor Judgment due to the terms and conditions of the Policy.

**COUNT II – DECLARATION OF NO COVERAGE FOR THE ACD LAWSUIT**

48.     CCC adopts and incorporates by reference the factual allegations set forth above in paragraphs 8-41.

49.     On or about November 10, 2021, ACD filed the ACD Lawsuit against Morcor in the Fourth Judicial District for Utah County, State of Utah.

50.     The ACD Lawsuit is premised on the allegation that Morcor breached its contractual obligations and/or fiduciary duties to ACD by failing to properly manage and coordinate the work on the Project and failing to timely complete the Project for occupation.

51.     The ACD Lawsuit seeks damages against Morcor for costs to resolve all subcontractor and material supplier claims, costs to secure and stabilize the Project site, increased costs to complete the Project, increased financing costs, loss of the developer fee, lost lease revenue, attorneys' fees, and interest.

52.     Morcor tendered the ACD Lawsuit to CCC by email from its counsel dated November 23, 2021.

53.     For the following reasons, the Policy does not provide coverage for the ACD Lawsuit and CCC has no obligation to defend or indemnify Morcor for the ACD Lawsuit:

a.     Morcor does not qualify as a named or additional insured under the Policy with respect to the claims alleged in the ACD Lawsuit.

b.     Morcor failed to satisfy conditions precedent to coverage under the Policy, including the duty to provide timely notice of the claim.

c.     The Policy provides liability coverage for three types of damages: "bodily injury", "property damage", and "personal and advertising injury". The damages that are alleged in the ACD Lawsuit do not fall within the Policy's definitions for any of these types of damages.

d.     The Policy only provides coverage for "bodily injury" or "property damage" caused by an "occurrence".  The claims alleged in the ACD Lawsuit do not meet the Policy's definition of an "occurrence".

e.     The claims and damages alleged in the ACD Lawsuit are precluded from coverage under the Policy by the following exclusions in the CGL:

i.     The exclusion for Damage to Property

ii.     The exclusion for Damage to Your Work

   iii. The exclusion for Damage to Your Product

   iv. The exclusion for Damage to Impaired Property or Property Not Physically Injured

   v. The exclusion for Contractual Liability

   vi. The exclusion (added via endorsement) for Contractor's Professional Liability.

  f. The claims and damages alleged in the ACD Lawsuit are precluded from coverage under the Policy by one or more of the exclusions in the Umbrella:

   i. The exclusion for Damage to Your Work

   ii. The exclusion for Damage to Your Product

   iii. The exclusion for Damage to Impaired Property or Property Not Physically Injured.

   iv. The exclusion (added via endorsement) for Contractor's Limitations.

  g. For the Umbrella, the damages alleged in the ACD Lawsuit occurred outside of the policy period.

54. Therefore, CCC seeks a declaration that it is not obligated to afford coverage for or defend or indemnify Morcor with respect to the ACD Lawsuit due to the terms and conditions of the Policy.

## V. PRAYER FOR RELIEF

WHEREFORE, CCC respectfully requests this Court issue a declaratory judgment in its favor declaring:

1.      That there is no coverage under the Policy for the claims asserted against Lucida in the AAA Arbitration;

2.      That CCC has no duty to indemnify Lucida with respect to the Morcor Judgment;

3.      That there is no coverage for Morcor under the Policy for the claims asserted against it in the ACD Lawsuit;

4.      That CCC has no duty to defend and/or indemnify Morcor for the ACD Lawsuit under the Policy.

CCC further requests this Court grant any other relief that the Court deems just and equitable under the circumstances, including but not limited to CCC's costs and attorneys' fees incurred in connection with this Complaint for Declaratory Judgment and such other relief to which it may be entitled.

Respectfully submitted,

Date: February 11, 2022             */s/ Brandon J. Clapp*
                                   F. Lane Finch, Jr. (asb-0027-i58f)
                                   Brandon J. Clapp (asb-3990-d82w)
                                   *Attorneys for The Cincinnati Casualty Company*

**OF COUNSEL**:
**Swift, Currie, McGhee & Hiers, LLP**
2 North 20th Street, Suite 1405
Birmingham, AL 35203
T: (205) 314-2401
lane.finch@swiftcurrie.com
brandon.clapp@swiftcurrie.com

**PLEASE SERVE DEFENDANTS VIA U.S. CERTIFIED MAIL AS FOLLOWS:**

Lucida Construction Company, LLC
c/o Michael J. Addison
4170 Lomac Street
Montgomery, AL 36106

Morcor Financial, LLC
c/o Cogency Global, Inc.
2 N. Jackson Street, Suite 605
Montgomery, AL 36104

American Charter Development, LLC
c/o Cogency Global, Inc.
2 N. Jackson Street, Suite 605
Montgomery, AL 36104

4885-3781-4541, v. 1



# The Cincinnati Casualty Company
### A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: **DIRECT BILL**

| POLICY NUMBER | **ENP 046 05 30 / EBA 046 05 30** |
|---|---|

**NAMED INSURED** LUCIDA CONSTRUCTION CO LLC
                 63 BRIDGE ST # A
**ADDRESS**      PIKE ROAD, AL 36064-3880
(Number & Street,
Town, County,
State & Zip Code)

This is a true and certified copy of the
General Liability portion of the policy:

*Jennifer Baker*
Jennifer Baker, Assistant Vice President

**Previous Policy Number:**
ENP0460530

**Policy Period:**   At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
    Policy number: **ENP 046 05 30**          FROM: **10-17-2018**   TO: **11-01-2019**

**Automobile and / or Garage**
    Policy number: **EBA 046 05 30**          FROM: **10-17-2018**   TO: **11-01-2018**

Agency   **COBBS ALLEN 01-113**
City   **MOUNTAIN BROOK, AL**

### Legal Entity / Business Description

**LIMITED LIABILITY COMPANY**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA108 | 12/09 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4493 | 09/17 | NOTICE TO POLICYHOLDERS – EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") EDITION 09 17 |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4135 | 08/16 | POLICY DELIVERY |
| IA4219AL | 08/16 | ALABAMA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4226 | 03/02 | NOTICE TO POLICY HOLDERS FUNGI OR BACTERIA EXCLUSION ENDORSEMENTS |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4377AL | 09/07 | ALABAMA CHANGES - ACTUAL CASH VALUE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAQ532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAQ554 | 05/10 | GENERAL FLOATER COVERAGE PART DECLARATIONS |
| CAQ516 | 03/09 | CRIME AND FIDELITY COVERAGE PART DECLARATIONS (COMMERCIAL ENTITIES) |
| AAQ505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |

IAQ509 01 12

FORMS APPLICABLE TO ALL COVERAGE PARTS:
USQ513    05/10  COMMERCIAL UMBRELLA LIABILITY COVERAGE PART DECLARATIONS
HC502     01/18  CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS

---

`10-18-2018 12:54`

Countersigned _____  By _____
                        (Date)                          (Authorized Representative)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

  **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

  **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

  **4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

  **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

  **6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections and Surveys**

  **1.** We have the right to:

    **a.** Make inspections and surveys at any time;

    **b.** Give you reports on the conditions we find; and

    **c.** Recommend changes.

  **2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **a.** Are safe or healthful; or

    **b.** Comply with laws, regulations, codes or standards.

  **3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

  **4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

  **1.** Is responsible for the payment of all premiums; and

  **2.** Will be the payee for any return premiums we pay.

**F. Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER: <u>ENP 046 05 30 / EBA 046 05 30</u>                    Effective Date: <u>10-17-2018</u>

Named Insured: <u>LUCIDA CONSTRUCTION CO LLC</u>

### THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
### PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | Short Term 10-17-2018 TO 11-01-2018 | Annuals |
|---|---|---|
| Commercial Property Coverage Part | $ 34 | $ 846 |
| Commercial General Liability Coverage Part | $ 970 | $ 23,684 |
| Commercial Auto Coverage Part | $ 8 | $ 186 |
| Commercial Umbrella / Excess Liability Coverage Part | $ 420 | $ 10,246 |
| DATA DEFENDER COVERAGE PART | $ 7 | $ 143 |
| CRIME AND FIDELITY COVERAGE PART | $ 10 | $ 250 |
| GENERAL FLOATER | $ 128 | $ 3,125 |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| Terrorism Coverage | $ 11 | $ 289 |
| Installment Charge | $ | $ |
| ANNUAL TOTAL | $ 1,588 | $ 38,769 |

## PAYMENTS

| | First Installment | Remaining Installment(s) |
|---|---|---|
| MONTHLY | * | * |

### *SEE BILLING STATEMENT MAILED SEPARATELY

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IA 108 12 09

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| <u>LOC.</u> | <u>STREET ADDRESS</u> | <u>CITY</u> | <u>STATE</u> | <u>ZIP CODE</u> |
|---|---|---|---|---|
| 1 | 4 BOARDWALK | | | |
| | PIKE ROAD, AL 36064-3837 | | | |

IA 904 04 04

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

Your policy may contain coverage for certain losses caused by terrorism.

**Premium:**

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

- Refer to the SUMMARY OF PREMIUMS CHARGED or DECLARATIONS PAGE for the portion of your premium that is attributable to coverage for terrorist acts certified under the Act.

**Federal Participation:**

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

- Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals a percentage, as specified in the Schedule below, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

- **Schedule:**

| Federal Share of Terrorism Losses | |
|---|---|
| **Percentage** | **Calendar Year** |
| 85% | 2015 |
| 84% | 2016 |
| 83% | 2017 |
| 82% | 2018 |
| 81% | 2019 |
| 80% | 2020 |

**Cap on Insurer Participation:**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**NOTE:** **IF YOUR POLICY IS A RENEWAL POLICY, THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER TO RENEW THE POLICY AND (2) AT THE TIME THE RENEWAL IS COMPLETED.**

**IA 4236 01 15**

# NOTICE TO POLICYHOLDERS - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") EDITION 09 17

This is a summary of the major changes found in the new edition of the Commercial General Liability Broadened Endorsements. NO COVERAGE IS PROVIDED BY THIS SUMMARY. Nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverages that you are provided. If there is any conflict between the policy and this summary, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

The major areas within the General Liability and Commercial Umbrella endorsements that broaden coverage, are highlighted below. This notice does not reference every editorial change made in the endorsements.

**Forms: GA243, GA346, GA347, GA369, GA370, GA373, GA374, GA375, GA376, US3005, US3043, US3044, US3045, XS311, XS312, XS321 and XS322.**

**Broadening of Coverage**

Created an exception for drainable (water managed) EIFS on Noncombustible, Masonry Noncombustible, Modified Fire Resistive and Fire Resistive, non-residential structures, subject to a $5,000 per occurrence retention for real property.

**IA 4493 09 17**

# THE CINCINNATI INSURANCE COMPANY
# THE CINCINNATI CASUALTY COMPANY
# THE CINCINNATI INDEMNITY COMPANY

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.  The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
CRIME AND FIDELITY COVERAGE PART**

**A.   Special Per Occurrence Deductible**

    **1.**   If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

        **a.**   The Commercial Inland Marine Coverage Part, and

        **b.**   The Crime and Fidelity Coverage Part;

        the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

    **2.**   This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.:**

        **a.**   * **Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible**

            * **Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement**

            **Windstorm or Hail Percentage Deductible Form**

            **Earthquake and Volcanic Eruption Endorsement**

            **Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)**

            **Flood Coverage Endorsement**

            **Equipment Breakdown Coverage (Including Production Equipment)**

            **Equipment Breakdown Coverage (Excluding Production Equipment)**

            * **Temperature Change Coverage Form**

            **Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud**

            **Crime Expanded Coverage (XC®) Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration**

            **Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud**

      **\***   Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms

        **b.**   ☒ **Other**   GENERAL FLOATER

**B.   Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1. **COMMERCIAL PROPERTY CONDITIONS,**
2. **COMMERCIAL INLAND MARINE CONDITIONS,**
3. **COMMERCIAL CRIME COVERAGE FORM,**
4. **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5. **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY DELIVERY

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS PACKAGE POLICY**
**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL AUTO COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL OUTPUT PROGRAM - PROPERTY COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**CONTRACTOR'S ERRORS AND OMISSIONS COVERAGE PART CLAIMS-MADE**
**CONTRACTOR'S LIMITED POLLUTION LIABILITY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**
**DENTIST'S PACKAGE POLICY**
**ELECTRONIC DATA LIABILITY COVERAGE PART**
**EMPLOYEE BENEFIT LIABILITY COVERAGE PART**
**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE PART**
**EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE PART**
**FARM COVERAGE PART**
**GOLF COURSE CHEMICAL APPLICATION LIMITED LIABILITY COVERAGE PART**
**HOLE-IN-ONE COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**MACHINERY AND EQUIPMENT COVERAGE PART**
**MANUFACTURER'S ERRORS AND OMISSIONS COVERAGE PART CLAIMS-MADE**
**MORTGAGEHOLDERS ERRORS AND OMISSIONS COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCT WITHDRAWAL COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**
**UNDERGROUND STORAGE TANK POLICY**

**Common Policy Declarations** is amended to include the following:

The first Named Insured listed in the Declarations agrees to accept delivery of the policy on behalf of all Named Insureds. Delivery of this policy, any endorsements, or notices pertaining to this policy by us to the first Named Insured shall be deemed delivered to all Named Insureds and Additional Insureds.

**IA 4135 08 16**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance under the following:

**CHEMICAL DRIFT LIMITED LIABILITY COVERAGE FORM – CLAIMS-MADE**
**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**CONTRACTORS ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE**
**CONTRACTORS' LIMITED POLLUTION LIABILITY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**
**EMPLOYEE BENEFIT LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE PART**
**EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE PART**
**FARM COVERAGE PART**
**HOLE-IN-ONE COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**MACHINERY AND EQUIPMENT COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**
**RAILROAD PROTECTIVE LIABILITY COVERAGE PART**
**SEPTIC SYSTEMS DESIGN AND INSPECTION ERRORS AND OMISSIONS COVERAGE PART**

**A.** Paragraph **5.** of the **CANCELLATION** Common Policy Condition is replaced by the following:

**5.** If the policy is cancelled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following condition is added:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least 30 days prior to:

**a.** The expiration date of this policy; or

**b.** The anniversary date of this policy, if the policy is written for a term of more than one year.

**IA 4219 AL 08 16**

# NOTICE TO POLICY HOLDERS
# FUNGI OR BACTERIA EXCLUSION ENDORSEMENTS

## RESTRICTIONS OF COVERAGE

This is a summary of the new fungi or bacteria liability exclusion endorsements.  NO COVERAGE IS PRO-VIDED BY THIS SUMMARY.  Nor can it be construed to replace any provision of your policy.  YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverage that you are provided.  If there is any conflict, between the policy and this summary, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

Your policy now specifically excludes coverage for fungi, including mold, and bacteria liability claims.  The definition of fungi included within the forms is:

"Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

We are introducing these new endorsements in response to the increasing frequency and severity of claims.  Other exclusions and language in the policy may address some elements of injury or damage arising from "fungi", including mold, or bacteria exposure.  To avoid any confusion we are introducing separate exclusion-ary language.

These endorsements vary only with respect to the Coverage Form to which they apply.  The endorsements exclude your liability to others arising from:

- Injury or damage caused by "fungi" or bacteria;
- The treatment of conditions resulting from "fungi" or bacteria;
- Information given or which should have been given about "fungi" or bacteria; and
- Any obligation to share damages with, or repay anyone due to injury or damage arising from "fungi" or bacteria.

The exclusion applies regardless of any other concurrent cause or the sequence in which injury or damage develops.

The only exception to the exclusion of "fungi", including mold, or bacteria is with regard to "fungi", including mold, or bacteria intended for human ingestion.

**IA 4226 03 02**

000013

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act and any amendments and extensions thereto**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Cap On Losses from Certified Acts of Terrorism**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that ex-

ceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion, does not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or Endorsement such as losses excluded by:

**1.** Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

**2.** Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

**3.** Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss.

**D. Sunset Clause**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

Includes copyrighted material of ISO Properties, Inc. and American Association of Insurance Services, with their permission.
000014

**IA 4238 01 15**

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

Secretary                                                              President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

**IA 4338 05 11**

**IA 4377 AL 09 07**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
FARM COVERAGE PART
NETWORK SYSTEM COVERAGE PART

The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

 © ISO Properties, Inc., 2006

000016

# THE CINCINNATI CASUALTY COMPANY

**A Stock Insurance Company**

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: **ENP 046 05 30**

Named Insured is the same as it appears in the Common Policy Dedarations

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 | |
| GENERAL AGGREGATE LIMIT | $2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 | |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | ANY ONE PERSON OR ORGANIZATION |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | | ANY ONE |
| $100,000 limit unless otherwise indicated herein: | $ SEE GA233 | PREMISES |
| MEDICAL EXPENSE LIMIT | | |
| $5,000 limit unless otherwise indicated herein: | $ SEE GA233 | ANY ONE PERSON |

| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | A - Area<br>B - Payroll<br>C - Gross Sales<br>D - Units<br>E - Other | Products / Completed Operations | All Other | Products / Completed Operations | All Other |
| CONTRACTORS - EXECUTIVE SUPERVISOR (AL) INCL PROD AND/OR COMP OP | 91580 | B 375,000 | | 17.037 | | 6,389 |
| CONTRACTORS - SUBCONTRACTED WORK (AL) | 91585 | E 6,500,000 TOTAL COST | .874 | 1.502 | 5,681 | 9,763 |
| BI EXCEPTIONS TO POLLUTANT EXCLUSION | 20410 | | | 2% | | 323 |
| AUTOMATIC ADD. INSURED - CONTRACTORS OPERATIONS | 29923 | | | 3.5% | | 764 |
| CONTRACTORS BROADENED COVERAGE | 29975 | | | 3.5% | | 764 |

The General Liability Coverage Part is subject to an annual minimum premium.

TOTAL ANNUAL PREMIUM  $ 23,684

## FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:

| | | |
|---|---|---|
| GA101 | 12/04 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| GA4251 | 01/06 | NOTICE TO POLICYHOLDERS - MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS |
| GA4497 | 09/17 | NOTICE TO POLICYHOLDERS COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENTS EDITION 09 17 |
| GA4499 | 09/17 | NOTICE TO POLICYHOLDERS COMMERCIAL GENERAL LIABILITY COVERAGE PROFESSIONAL LIABILITY EXCLUSIONS EDITION 09 17 |
| CG0300 | 01/96 | DEDUCTIBLE LIABILITY INSURANCE |
| CG2279 | 04/13 | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| GA233 | 09/17 | CONTRACTORS' COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT |
| GA3024 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

| | | |
|---|---|---|
| GA346 | 09/17 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") – BROAD FORM WITH SPECIFIED EXCEPTIONS |
| GA382 | 03/02 | FUNGI OR BACTERIA EXCLUSION |
| GA4250 | 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS |
| GA472 | 09/17 | CONTRACTORS ADDITIONAL INSURED - AUTOMATIC STATUS WHEN REQUIRED IN WRITTEN CONTRACT, AGREEMENT, PERMIT OR AUTHORIZATION |
| GA478 | 12/04 | BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

      No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

   c. "Bodily injury" or "property damage" which:

      (1) Occurs during the "coverage term"; and

      (2) Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

      includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

   d. You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

      (3) First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

      (4) Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

      (5) Becomes aware, or reasonably should have become aware, of a

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000019

condition from which "bodily injury" or "property damage" is substantially certain to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured sustained in the "workplace";

(2) An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

(3) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraphs **(1)** or **(2)** above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollutant**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, Paragraph **(a)** does not apply to:

1) "Bodily injury" to any person injured while on any premises, site or location owned or occupied by, or rented or loaned to, you provided:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000020

**a)** The injury is caused by the inadequate ventilation of vapors;

**b)** The person injured is first exposed to such vapors during the policy period; and

**c)** Within 30 days of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

This exception **1)** shall apply only to Named Insureds; we shall have no duty to defend or pay damages for any person or organization that is not a Named Insured. However, this paragraph does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

For the purpose of the exception granted in Paragraph **1)** only, vapors means any gaseous or airborne irritant or airborne contaminant, including smoke, fumes, vapor or soot, but excluding asbestos, which is discharged, dispersed, emitted, released or escapes from materials, machinery or equipment used in the service or maintenance of the premises. Vapors does not mean any gaseous or

airborne irritants or contaminants used in a manufacturing process or which is the product or by-product of any manufacturing process;

**2)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to this Coverage Part as an additional insured with respect to your ongoing operations or "your work" performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**1)** Any insured; or

**2)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, Paragraph **(d)** does not apply to:

**1)** "Bodily injury" or "property damage" arising out of the discharge, dispersal, seepage, migration, release, es-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

000021

cape or emission of fuels, lubricants or other operating fluids, or exhaust gases, which are needed to perform, or are the result of, the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted with the intent to cause "bodily injury" or "property damage" or with the knowledge that "bodily injury" or "property damage" is substantially certain to occur, or if such fuels, lubricants or other operating fluids, or exhaust gases, are brought on or to the premises, site or location with such intent to escape, seep or migrate, or be discharged, dispersed, released or emitted as part of the operations being performed by such insured, contractor or subcontractor;

**2)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the op-

erations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, Paragraphs **(2)(a)** and **(b)** do not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000022

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.   Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.   War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.   Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of an insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire or explosion) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days, for which the amount we will pay is limited to the Damage To Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.   Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000023

**l.   Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.   Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.   Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.   Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.   Asbestos**

"Bodily injury" or "property damage" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q.   Employment-Related Practices**

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**r.   Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, prior to the "coverage term" in which such "bodily injury" or "property damage" occurs or begins to occur.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that "bodily injury" or "property damage" has occurred or has begun to occur at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

GA 101 12 04        Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000024                                                                   Page 6 of 22

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

**(3)** First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

**(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

**s.    Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**t.    Distribution of Material in Violation of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **q.** do not apply to "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the Damage to Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

**b.** This insurance applies to "personal and advertising injury" only if:

**(1)** The "personal and advertising injury" is caused by an offense arising out of your business; and

**(2)** The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and

**(3)** Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph **1.d.** below, that the offense had been committed or had begun to be committed, in whole or in part.

**c.** "Personal and advertising injury" caused by an offense which:

**(1)** Was committed during the "coverage term"; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000025

**(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have been committed;

includes any continuation, change or resumption of that offense after the end of the "coverage term" in which it first became known by you.

**d.** You will be deemed to know that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

**(3)** First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

**(4)** Becomes aware, or reasonably should have become aware, by any means, other than as described in **(3)** above, that the offense had been committed or had begun to be committed; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior to Coverage Term**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the later of the following:

**(1)** The inception of this Coverage Part; or

**(2)** The "coverage term" in which insurance coverage is sought.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" is caused by or arises out of an offense committed subsequent to the execution of the contract or agreement. When a claim for such "personal and advertising injury" is made, we will defend that claim, provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

**f. Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality or Performance of Goods - Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, pat-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000026

ent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.   Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **17. a., b.** and **c.** of "personal and advertising injury" under **SECTION V - DEFINITIONS**.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.   Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board any insured hosts, owns, or over which any insured exercises control.

**l.   Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.   Employment Related Practices**

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation

or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**n.   Pollutant**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

**o.   Pollutant-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**p.   Asbestos**

"Personal and advertising injury" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q.   Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that a "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part, prior to the "coverage term" in which such offense

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000027

was committed or began to be committed.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that a "personal and advertising injury" offense has been committed or has begun to be committed at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

(1) Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

(3) First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

(4) Becomes aware, or reasonably should have become aware, by any means other than as described in (3) above, that the "personal and advertising injury" offense had been committed or had begun to be committed; or

(5) Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

r.  **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

s.  **Distribution of Material in Violation of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b.  The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c.  Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C. MEDICAL PAYMENTS**

1.  **Insuring Agreement**

a.  We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within three years of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b.  We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2.  **Exclusions**

We will not pay expenses for "bodily injury":

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000028

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury on Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation and Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletic Activities**

To any person injured while officiating, coaching, practicing for, instructing or participating in any physical exercises or games, sports, or athletic contests or exhibitions of an athletic or sports nature.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", in-

cluding actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay and which falls within the applicable limit of insurance. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000029

you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

    **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

    **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

    **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

    **(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

    **(a)** Owned, occupied or used by; or

    **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,

    you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Insurance under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** **a.** The General Aggregate Limit is the most we will pay for the sum of:

**(1)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

**(2)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(3)** Damages under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY.**

This General Aggregate Limit will not apply if either the Location General Aggre-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000030

gate Limit of Insurance, Paragraph **2.b.**, or the Construction Project General Aggregate Limit of Insurance, Paragraph **2.c.** applies.

**b.** A separate Location General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each location owned by, or rented or leased to you and is the most we will pay for the sum of:

**(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS,**

which can be attributed to operations at only a single location owned by, or rented or leased to you.

**c.** A separate Construction Project General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each construction project and is the most we will pay for the sum of:

**(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

which can be attributed only to ongoing operations and only at a single construction project.

**d.** Only for the purpose of determining which General Aggregate Limit of Insurance, **2.a., 2.b.,** or **2.c.**, applies:

**(1)** Location means premises involving the same or connecting lots, or premises, whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**(2)** Construction project means a location you do not own, rent or lease where ongoing improvements, alterations, installation, demolition or maintenance work is performed by you or on your behalf. All connected ongoing improvements, alterations, installation, demolition or maintenance work performed by you or on

your behalf at the same location for the same persons or organizations, no matter how often or under how many different contracts, will be deemed to be a single construction project.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.a.** above, the Personal and Advertising Injury Limit is the most we will pay under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2. or 3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**; and

**b.** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS**;

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage to Premises Rented to You Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire or explosion, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under **COVERAGE C. MEDICAL PAYMENTS** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000031

a "personal and advertising injury" offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable

under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the later of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar insurance for "your work";

**(b)** That is Fire or Explosion insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000032

premises rented to you or temporarily occupied by you with permission of the owner; or

   **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g. Aircraft, Auto or Watercraft**.

**(2)** Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations, or the products and completed operations, for which the insured has been added as an additional insured by attachment of an endorsement.

**(3)** Any other insurance:

   **(a)** Whether primary, excess, contingent or on any other basis, except when such insurance is written specifically to be excess over this insurance; and

   **(b)** That is a consolidated (wrap-up) insurance program which has been provided by the prime contractor/project manager or owner of the consolidated project in which you are involved.

When this insurance is excess, we will have no duty under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance

shown in the Declarations of this Coverage Part.

   **c.** **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**6.** **Premium Audit**

   **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If:

   **(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

   **(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us.

   **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7.** **Representations**

By accepting this Coverage Part, you agree:

   **a.** The statements in the Declarations are accurate and complete;

   **b.** Those statements are based upon representations you made to us; and

   **c.** We have issued this Coverage Part in reliance upon your representations.

**8.** **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000033

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**10. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Part and any other Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "personal and advertising injury" offense, the aggregate maximum limit of insurance under all the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable limit of insurance under any one Coverage Form, Coverage Part or policy. This condition does not apply to any Coverage Form, Coverage Part or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Part.

**11. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

**2.** "Authorized representative" means:

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are "authorized representatives".

**(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

**(3)** A limited liability company, your members and your managers are "authorized representatives".

**(4)** An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

**(5)** A trust, your trustees are "authorized representatives".

**b.** Your "employees":

**(1)** Assigned to manage your insurance program; or

**(2)** Responsible for giving or receiving notice of an "occurrence", "personal and advertising injury" offense, claim or "suit";

are also "authorized representatives".

**3.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**4.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000034

12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**6.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication,

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement to which we agree.

**7.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**8.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**9.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**10.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**11.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**12.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations, within 50 feet of any rail-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000035

road property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

  **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

  **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities;

**(4)** That indemnifies an advertising, public relations or media consulting firm for "personal and advertising injury" arising out of the planning, execution or failure to execute marketing communications programs. Marketing communications programs include but are not limited to comprehensive marketing campaigns; consumer, trade and corporate advertising for all media; media planning, buying, monitoring and analysis; direct mail; promotion; sales materials; design; presentations; point-of-sale materials; market research; public relations and new product development;

**(5)** Under which the insured, if an advertising, public relations or media consulting firm, assumes liability for "personal and advertising injury" arising out of the insured's rendering or failure to render professional services, including those services listed in Paragraph **(4)**, above;

**(6)** That indemnifies a web-site designer or content provider, or Internet search, access, content or service provider for injury or damage arising out of the planning, execution or failure to execute Internet services. Internet services include but are not limited to design, production, distribution, maintenance and administration of web-sites and web-banners; hosting web-sites; registering domain names; registering with search

engines; marketing analysis; and providing access to the Internet or other similar networks; or

  **(7)** Under which the insured, if a web-site designer or content provider, or Internet search, access, content or service provider, assumes liability for injury or damage arising out of the insured's rendering or failure to render Internet services, including those listed in Paragraph **(6)**, above.

**13.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**14.** "Loading or unloading" means the handling of property:

  **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

  **b.** While it is in or on an aircraft, watercraft or "auto"; or

  **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **b.** Vehicles maintained for use solely on or next to premises you own or rent;

  **c.** Vehicles that travel on crawler treads;

  **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

  **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000036

permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**18.** "Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** The insured uses, generates or produces the "pollutant".

**19.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed; or

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000037

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a schedule, states that products-completed operations are included.

**20.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**21.** "Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

**22.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**23.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**24.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of "occurrence".

**25.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**26.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000038

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (Broad Form)

1.  The insurance does not apply:

    **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

    **(1)** With respect to which an insured under this Coverage Part is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this Coverage Part not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

    **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured, or **(b)** has been discharged or dispersed therefrom;

    **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

    **(3)** The "bodily injury" or "property damage" arises out of the furnishing by

an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2.  As used in this exclusion:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "special nuclear material" or "by-product material".

    "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

    "Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

    "Nuclear facility" means:

    **A.** Any "nuclear reactor";

    **B.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **C.** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**D.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000040

# NOTICE TO POLICYHOLDERS - MOBILE EQUIPMENT
# SUBJECT TO MOTOR VEHICLE INSURANCE LAWS

This is a notice of a change in your policy.  NO COVERAGE IS PROVIDED BY THIS NOTICE nor can it be construed to replace any provisions of your policy.  YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE for complete information on the coverage you are provided.  If there is any conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**GA 4250** Mobile Equipment Subject to Motor Vehicle Insurance Laws has been added to your policy.

This endorsement revises the definitions of "mobile equipment" and "auto" to those definitions used prior to the introduction of Commercial General Liability Form, **GA 101 12 04.**  This endorsement only applies if you have no Auto Coverage Form in force or the land vehicle does not meet the definition of auto in your Auto Coverage Form.

**GA 4251 01 06**

# NOTICE TO POLICYHOLDERS
# COMMERCIAL GENERAL LIABILITY
# BROADENED ENDORSEMENTS EDITION 09 17

This is a summary of the major changes found in the new editions of the Commercial General Liability Broadened Endorsements. NO COVERAGE IS PROVIDED BY THIS SUMMARY. Nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverages that you are provided. If there is any conflict, between the policy and this summary, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

The major areas within the endorsements that broaden or reduce coverage, and other changes, are highlighted below. This notice does not reference every editorial change made in the endorsements.

The following endorsements are similar but are designed for different types of risk:

**GA 210 09 17 Commercial General Liability Broadened Endorsement**

**GA 227 09 17 Commercial General Liability Extended Endorsement**

**GA 233 09 17 Contractors' Commercial General Liability Broadened Endorsement**

All of the above forms have the following changes:

**Broadening of Coverage:**

- The Limit of Insurance for Supplementary Payments bail bonds is increased from $1,000 to $2,500 and loss of earnings is increased from $350 to $500.

- Good Samaritan coverage is added for "employees" or "volunteer workers", other than an employed or volunteer medical doctor, for providing first aid or good samaritan services during work hours.

- Nonowned Aircraft coverage is added provided the pilot in command holds a current certificate, the aircraft is rented with a trained, paid crew and the aircraft does not transport persons or cargo for a charge.

- The definition of "bodily injury" is updated to include disability, humiliation, shock, fright, mental anguish or mental injury.

- The Expected or Intended Injury exclusion is updated to include coverage for property damage resulting from the use of reasonable force to protect persons or property.

- Former Employees as Insureds coverage is added to provide that any of your former "employees", directors, managers, members, partners or "executive officers" are insureds for acts within the scope of their employment by you or for duties related to the conduct of your business.

- Additional Insured coverage is added for Mortgagee, Assignee or Receiver with respect to their liability as mortgagee, assignee or receiver and arising out of the ownership, maintenance or use of the premises by you.

**Clarification of Coverage:**

- Employee Benefit Liability - "First effective date" definition is introduced into the prior acts coverage.

- Under Damage to Premises Rented to You, editorial updates were made to Water Damage Legal coverage to coincide with Water Damage Legal coverage provided in ISO's **CP 10 30 10 12** Causes of Loss - Special Form.

- The additional insured coverage built into the Broadened endorsements is revised to indicate that coverage is provided to the additional insured if required by written contract or written agreement, coverage to the additional insured will be afforded to the extent permissible by law and to the extent the named insured is required by the contract or agreement to provide insurance for the additional insured. Additionally, if coverage provided to the additional insured is required by written contract or written agreement, the limits of insurance of the named insured's policy that are available to an additional insured will be limited to the extent required by the written contract or written agreement or the amount of insurance available under the applicable Limits of Insurance shown in the Declarations, whichever is less.

**Reduction of Coverage:**

**GA 4497 09 17**                                000042                                **Page 1 of 2**

- For Automatic Additional Insured coverage, coverage has been removed for oral contracts or agreements.

The following additional changes apply to the **GA 233 09 17** Contractors' Commercial General Liability Broadened Endorsement:

## Voluntary Property Damage and Care, Custody or Control Coverage

### Reduction of Coverage:

- Introduced Voluntary Property Damage Aggregate Limit (equal to 5 times the Occurrence Limit).

- Voluntary Property Damage now explicitly states that we only cover the cost to repair or replace.

- Under Voluntary Property Damage if insured repairs/replaces at our request, the amount we pay will not include any profit or overhead.

- Voluntary Property Damage - Coverage A exclusions apply except those specified. Previously only the Expected or Intended exclusion applied.

- Voluntary Property Damage - Removed loss of use from definition of property damage, and specified property damage does not include disappearance, abstraction or theft.

### Clarification of Coverage:

- Voluntary Property Damage's consent must be written.

- Any payment we make under Voluntary Property Damage is not an admission of liability by the named insured or by us.

- Voluntary Property Damage and Care, Custody, or Control - We have no duty to defend.

## Contractors' Automatic Additional Insured Coverage

Previously this coverage was provided in the **GA 233**. This coverage will now be provided by the automatic attachment of **GA 472 09 17** Contractors Additional Insured - Automatic Status When Required in Written Contract, Agreement, Permit or Authorization when the **GA 233** is purchased:

### Broadening of Coverage:

- Coverage is no longer restricted to entities for whom work is performed by you.

### Reduction of Coverage:

- Coverage has been removed for oral contracts.

### Clarification of Coverage:

- Expressly address, in part, claims alleging negligence or other wrongdoing in the hiring, employment, training, supervision or monitoring of others by any insured.

- Expressly states the exclusion applies only in your capacity as an engineer, architect or surveyor and not within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

# NOTICE TO POLICYHOLDERS
# COMMERCIAL GENERAL LIABILITY COVERAGE
# PROFESSIONAL LIABILITY EXCLUSIONS EDITION 09 17

This is a summary of the major changes found in the new editions of the Commercial General Liability Professional Liability Exclusions.  NO COVERAGE IS PROVIDED BY THIS SUMMARY.  Nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverages that you are provided.  If there is any conflict, between the policy and this summary, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

The major areas within the endorsements that broaden or reduce coverage, and other changes, are highlighted below. This notice does not reference every editorial change made in the endorsements.

## Clarification of Coverage:

The following endorsements are revised to expressly address, in part, claims alleging negligence or other wrongdoing in the hiring, employment, training, supervision or monitoring of others by any insured:

- CG 20 07 04 13    **Additional Insured - Engineers, Architects or Surveyors**
- CG 20 31 04 13    **Additional Insured - Engineers, Architects or Surveyors**
- CG 20 32 04 13    **Additional Insured - Engineers, Architects or Surveyors Not Engaged By the Named Insured**
- CG 21 16 04 13    **Exclusion - Designated Professional Services**
- CG 21 52 04 13    **Exclusion - Financial Services**
- CG 21 56 04 13    **Exclusion - Funeral Services**
- CG 21 57 04 13    **Exclusion - Counseling Services**
- CG 21 58 04 13    **Exclusion - Professional Veterinarian Services**
- CG 21 59 04 13    **Exclusion - Diagnostic Testing Laboratories**
- CG 22 24 04 13    **Exclusion - Inspection, Appraisal and Survey Companies**
- CG 22 32 04 13    **Exclusion - Professional Services - Blood Banks**
- CG 22 33 04 13    **Exclusion - Testing or Consulting Errors and Omissions**
- CG 22 34 04 13    **Exclusion - Construction Management Errors and Omissions**
- CG 22 36 04 13    **Exclusion - Products and Professional Services (Druggists)**
- CG 22 37 04 13    **Exclusion - Products and Professional Services (Optical and Hearing Aid Establishments)**
- CG 22 39 04 13    **Exclusion - Camps or Campgrounds**
- CG 22 43 04 13    **Exclusion - Engineers, Architects or Surveyors Professional Liability**
- CG 22 44 04 13    **Exclusion - Services Furnished by Health Care Providers**
- CG 22 45 04 13    **Exclusion - Specified Therapeutic or Cosmetic Services**
- CG 22 48 04 13    **Exclusion - Insurance and Related Operations**
- CG 22 71 04 13    **Colleges or Schools (Limited Form)**
- CG 22 72 04 13    **Colleges or Schools**
- CG 22 75 04 13    **Professional Liability Exclusion - Computer Software**
- CG 22 76 04 13    **Professional Liability Exclusion - Health or Exercise Clubs or Commercially Operated Health or Exercise Facilities**
- CG 22 77 04 13    **Professional Liability Exclusion - Computer Data Processing**

**GA 4499 09 17**

**Page 1 of 2**

- **CG 22 79 04 13**      **Exclusion - Contractors - Professional Liability**
- **CG 22 80 04 13**      **Limited Exclusion - Contractors - Professional Liability**
- **CG 22 87 04 13**      **Exclusion - Adult Day Care Centers**
- **CG 22 88 04 13**      **Professional Liability Exclusion - Electronic Data Processing Services and Computer Consulting or Programming Services**
- **CG 22 90 04 13**      **Professional Liability Exclusion - Spas or Personal Enhancement Facilities**
- **CG 22 91 04 13**      **Exclusion - Telecommunication Equipment or Service Providers Errors and Omissions**
- **CG 22 96 04 13**      **Limited Exclusion - Personal and Advertising Injury - Lawyers**
- **CG 22 98 04 13**      **Exclusion - Internet Service Providers and Internet Access Providers Errors and Omissions**
- **CG 22 99 04 13**      **Professional Liability Exclusion - Web Site Designers**
- **CG 23 01 04 13**      **Exclusion - Real Estate Agents or Brokers Errors or Omissions**
- **GA 241 09 17**        **Construction Project Management Protective Liability Coverage**
- **GA 3001 09 17**       **Teacher's Professional Services Exclusion**
- **GA 3002 09 17**       **Exclusion - Contractors - Professional Liability**
- **GA 3014 09 17**       **Exclusion - Law Enforcement Activities Other Than Municipal, County or State Law Enforcement Agencies**
- **GA 303 09 17**        **Exclusion - Professional Services - Governmental Operations or Community Services**
- **GA 3039 09 17**       **Exclusion - Executive Recruiters Professional Services**
- **GA 395 09 17**        **Travel Agents Errors and Omissions Exclusion**
- **GA 396 09 17**        **Exclusion - Lawyers Professional**
- **GA 4105 09 17**       **Cosmetology or Barbering School Amendatory Endorsement**
- **GA 4106 09 17**       **Cosmetologists and Barbers Amendatory Endorsement**
- **GA 4396 09 17**       **Additional Insured - Home Care Provider**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

### SCHEDULE

| COVERAGE | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM | or   PER OCCURRENCE |
| Bodily Injury Liability | $ SEE BELOW | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Bodily Injury Liability and/or | | |
| Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement.  If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused.)

```
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PREMISES/OPERATIONS FOR CLASS 91580
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PRODUCTS/COMP. OPS FOR CLASS 91580
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PREMISES/OPERATIONS FOR CLASS 91585
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PRODUCTS/COMP. OPS FOR CLASS 91585
```

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis.  Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above.  The deductible amount stated in the Schedule above applies as follows:

  **1.   PER CLAIM BASIS.**  If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

  **a.**  Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

  **b.**  Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

  **c.**  Under Bodily Injury Liability and/or Property Damage Liability Coverage

Combined, to all damages sustained by any one person because of:

  **(1)**  "Bodily injury";

  **(2)**  "Property damage"; or

  **(3)**  "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

  **2.   PER OCCURRENCE BASIS.**  If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

  **a.**  Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

  **b.**  Under Property Damage Liability Coverage, to all damages because of "property damage"; or

  **c.**  Under Bodily Injury Liability and/or Property Damage Liability Coverage

Copyright, Insurance Services Office, Inc., 1994
000046

Combined, to all damages because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

**1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

000047

COMMERCIAL GENERAL LIABILITY
CG 22 79 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph **3.** below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

© Insurance Services Office, Inc., 2012
000048

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTORS' COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.   Endorsement - Table of Contents:**

| Coverage: | Begins on Page: |
|---|---|
| 1.   Employee Benefit Liability Coverage | 3 |
| 2.   Unintentional Failure To Disclose Hazards | 9 |
| 3.   Damage To Premises Rented To You | 9 |
| 4.   Supplementary Payments | 10 |
| 5.   Medical Payments | 10 |
| 6.   180 Day Coverage For Newly Formed Or Acquired Organizations | 10 |
| 7.   Waiver Of Subrogation | 11 |
| 8.   Automatic Additional Insured - Specified Relationships: | 11 |
| •   Managers Or Lessors Of Premises; | |
| •   Lessor Of Leased Equipment; | |
| •   Vendors; | |
| •   State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations Relating To Premises; and | |
| •   Mortgagee, Assignee Or Receiver | |
| 9.   Property Damage To Borrowed Equipment | 14 |
| 10.  Employees As Insureds - Specified Health Care Services And Good Samaritan Services | 15 |
| 11.  Broadened Notice Of Occurrence | 15 |
| 12.  Nonowned Aircraft | 15 |
| 13.  Bodily Injury Redefined | 15 |
| 14.  Expected Or Intended Injury Redefined | 15 |
| 15.  Former Employees As Insureds | 15 |
| 16.  Voluntary Property Damage Coverage And Care, Custody Or Control Liability Coverage | 16 |
| 17.  Broadened Contractual Liability - Work Within 50' Of Railroad Property | 17 |
| 18.  Alienated Premises | 17 |

**B.   Limits Of Insurance:**

The Commercial General Liability Limits of Insurance apply to the insurance provided by this endorsement, except as provided below:

**1.   Employee Benefit Liability Coverage**

Each Employee Limit:   $1,000,000
Aggregate Limit:          $3,000,000
Deductible Amount:      $      1,000

**3.   Damage To Premises Rented To You**

The lesser of:

**a.**   The Each Occurrence Limit shown in the Declarations; or

**b.**   $500,000 unless otherwise stated $ _____

**4.   Supplementary Payments**

**a.**   Bail Bonds:          $2,500

---

GA 233 09 17

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000049

Page 1 of 17

**b.**   Loss Of Earnings: $   500

**5.   Medical Payments**

Medical Expense Limit: $ 10,000

**9.   Property Damage To Borrowed Equipment**

Each Occurrence Limit:   $10,000
Deductible Amount:        $    250

**16.   Voluntary Property Damage Coverage** (Coverage **a.**) **And Care**, **Custody Or Control Liability Coverage** (Coverage **b.**)

**Limits Of Insurance**
Coverage **a.**
$1,000 Each Occurrence
$5,000 Aggregate
Coverage **b.** $5,000 Each Occurrence unless otherwise stated $ _____

**Deductible Amount** (Each Occurrence)
Coverage **a.** $250
Coverage **b.** $250 unless otherwise stated $ _____

| COVERAGE | PREMIUM BASIS<br>**(a)**  Area<br>**(b)**  Payroll<br>**(c)**  Gross Sales<br>**(d)**  Units<br>**(e)**  Other | RATE<br>(For Limits in Excess of $5,000) | ADVANCE PREMIUM<br>(For Limits in Excess of $5,000) |
|---|---|---|---|
| **b.**  Care,   Custody   Or Control | | | $ |
| TOTAL ANNUAL PREMIUM | | | $ |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000050

## C. Coverages

### 1. Employee Benefit Liability Coverage

a. The following is added to **Section I - Coverages:**

**Employee Benefit Liability Coverage**

**(1) Insuring Agreement**

(a) We will pay those sums that the insured becomes legally obligated to pay as damages caused by any act, error or omission of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any claim or "suit" that may result. But:

1) The amount we will pay for damages is limited as described in **Section III - Limits Of Insurance**; and

2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments**.

(b) This insurance applies to damages only if the act, error or omission, is negligently committed in the "administration" of your "employee benefit program"; and

1) Occurs during the policy period; or

2) Occurred prior to the "first effective date" of

this endorsement provided:

a) You did not have knowledge of a claim or "suit" on or before the "first effective date" of this endorsement.

You will be deemed to have knowledge of a claim or "suit" when any "authorized representative";

i) Reports all, or any part, of the act, error or omission to us or any other insurer;

ii) Receives a written or verbal demand or claim for damages because of the act, error or omission; and

b) There is no other applicable insurance.

**(2) Exclusions**

This insurance does not apply to:

(a) **Bodily Injury, Property Damage Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

(b) **Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

(c) **Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000051

**(d) Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**(e) Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any claim based upon:

**1)** Failure of any investment to perform;

**2)** Errors in providing information on past performance of investment vehicles; or

**3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**(f) Workers' Compensation And Similar Laws**

Any claim arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**(g) ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**(h) Available Benefits**

Any claim for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**(i) Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**(j) Employment-Related Practices**

Any liability arising out of any:

**(1)** Refusal to employ;

**(2)** Termination of employment;

**(3)** Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment - related practices, acts or omissions; or

**(4)** Consequential liability as a result of **(1)**, **(2)** or **(3)** above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(3) Supplementary Payments**

**Section I - Coverages, Supplementary Payments - Coverages A And B** also apply to this Coverage.

**b. Who Is An Insured**

As respects **Employee Benefit Liability Coverage**, **Section II - Who Is An Insured** is replaced by the following:

**(1)** If you are designated in the Declarations as:

**(a)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(b)** A partnership or joint venture, you are an insured. Your members, your part-

ners, and their spouses are also insureds but only with respect to the conduct of your business.

**(c)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(d)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(e)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**(2)** Each of the following is also an insured:

**(a)** Each of your "employees" who is or was authorized to administer your "employee benefit program";

**(b)** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed; or

**(c)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**(3)** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organi-

zation. However, coverage under this provision:

**(a)** Is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**(b)** Does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**c.** Limits Of Insurance

As respects **Employee Benefit Liability Coverage**, **Section III - Limits Of Insurance** is replaced by the following:

**(1)** The Limits of Insurance shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** and the rules below fix the most we will pay regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought;

**(c)** Persons or organizations making claims or bringing "suits";

**(d)** Acts, errors or omissions; or

**(e)** Benefits included in your "employee benefit program".

**(2)** The Aggregate Limit shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**(3)** Subject to the limit described in **(2)** above, the Each Employee Limit shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(a)** An act, error or omission; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000053

**(b)** A series of related acts, errors or omissions, regardless of the amount of time that lapses between such acts, errors or omissions;

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program."

**(4) Deductible Amount**

**(a)** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the Deductible Amount stated in the Declarations as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

**(b)** The Deductible Amount stated in the Declarations applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**(c)** The terms of this insurance, including those with respect to:

**1)** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or claim;

apply irrespective of the application of the Deductible Amount.

**(d)** We may pay any part or all of the Deductible Amount to effect settlement of any claim or "suit" and, upon no-

tification of the action taken, you shall promptly reimburse us for such part of the Deductible Amount as we have paid.

**d. Additional Conditions**

As respects **Employee Benefit Liability Coverage, Section IV - Commercial General Liability Conditions** is amended as follows:

**(1)** Item **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a claim. To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers re-

GA 233 09 17     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     Page 6 of 17

000054

ceived in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**(2)** Item **5. Other Insurance** is replaced by the following:

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **c.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

**b. Method Of Sharing**

If all of the other insurance permits contribu-

tion by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**c. No Coverage**

This insurance shall not cover any loss for which the insured is entitled to recovery under any other insurance in force previous to the effective date of this Coverage Part.

**e. Additional Definitions**

As respects **Employee Benefit Liability Coverage, Section V - Definitions** is amended as follows:

**(1)** The following definitions are added:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Interpreting the "employee benefit programs";

**c.** Handling records in connection with the "employee benefit programs"; or

**d.** Effecting, continuing or terminating any "employee's" participation in

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000055

any benefit included in the "employee benefit program".

However, "administration" does not include:

**a.** Handling payroll deductions; or

**b.** The failure to effect or maintain any insurance or adequate limits of coverage of insurance, including but not limited to unemployment insurance, social security benefits, workers' compensation and disability benefits.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow "employees" to elect to pay for certain benefits with pre-tax dollars.

**3.** "Employee benefit programs" means a program providing some of all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

**a.** Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

**c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits; and

**d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies.

**4.** "First effective date" means the date upon which coverage was first effected in a series of uninterrupted renewals of insurance coverage.

**(2)** The following definitions are deleted in their entirety and replaced by the following:

**8.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**21.** "Suit" means a civil proceeding in which money damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000056

**2. Unintentional Failure To Disclose Hazards**

**Section IV - Commercial General Liability Conditions, 7. Representations** is amended by the addition of the following:

Based on our dependence upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not reject coverage under this Coverage Part based solely on such failure.

**3. Damage To Premises Rented To You**

**a.** The last Paragraph of **2. Exclusions** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

Exclusions **c.** through **q.** do not apply to "property damage" by fire, explosion, lightning, smoke or soot to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the **Damage To Premises Rented To You** Limit as described in **Section III - Limits Of Insurance.**

**b.** The insurance provided under **Section I - Coverage A - Bodily Injury And Property Damage Liability** applies to "property damage" arising out of water damage to premises that are both rented to and occupied by you.

**(1)** As respects Water Damage Legal Liability, as provided in Paragraph **3.b.** above:

The exclusions under **Section I - Coverage A - Bodily Injury And Property Damage Liability**, **2. Exclusions**, other than **i. War** and the **Nuclear Energy Liability Exclusion (Broad Form)**, are deleted and the following are added:

This insurance does not apply to:

**(a)** "Property damage":

**(i)** Assumed in any contract or agreement; or

**(ii)** Caused by or resulting from any of the following:

**1)** Wear and tear;

**2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**3)** Smog;

**4)** Mechanical breakdown, including rupture or bursting caused by centrifugal force;

**5)** Settling, cracking, shrinking or expansion;

**6)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals; or

**7)** Presence, growth, proliferation, spread or any activity of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**(b)** "Property damage" caused directly or indirectly by any of the following:

**(i)** Earthquake, volcanic eruption, landslide or any other earth movement;

**(ii)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(iii)** Water under the ground surface pressing on, or flowing or seeping through:

**1)** Foundations, walls, floors or paved surfaces;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000057

**2)** Basements, whether paved or not; or

**3)** Doors, windows or other openings.

**(c)** "Property damage" caused by or resulting from water that leaks or flows from plumbing, heating, air conditioning, fire protection systems, or other equipment, caused by or resulting from freezing, unless:

**(i)** You did your best to maintain heat in the building or structure; or

**(ii)** You drained the equipment and shut off the water supply if the heat was not maintained.

**(d)** "Property damage" to:

**(i)** Plumbing, heating, air conditioning, fire protection systems, or other equipment or appliances; or

**(ii)** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet or ice, whether driven by wind or not.

**c. Limit Of Insurance**

With respect to the insurance afforded in Paragraphs **3.a.** and **3.b.** above, the **Damage To Premises Rented To You** Limit as shown in the Declarations is amended as follows:

**(1)** Paragraph **6.** of **Section III - Limits Of Insurance** is replaced by the following:

**6.** Subject to Paragraph **5.** above, the **Damage To Premises Rented To You** Limit is the most we will pay under **Coverage A - Bodily Injury And Property Damage Liability** for damages because of "property damage" to any one premises:

**a.** While rented to you, or temporarily occupied by

you with permission of the owner;

**b.** In the case of damage by fire, explosion, lightning, smoke or soot, while rented to you; or

**c.** In the case of damage by water, while rented to and occupied by you.

**(2)** The most we will pay is limited as described in Section **B. Limits Of Insurance**, **3. Damage To Premises Rented To You** of this endorsement.

**4. Supplementary Payments**

Under **Section I - Supplementary Payments - Coverages A And B:**

**a.** Paragraph **2.** is replaced by the following:

Up to the limit shown in Section **B. Limits Of Insurance**, **4.a.** Bail Bonds of this endorsement for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**b.** Paragraph **4.** is replaced by the following:

All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to the limit shown in Section **B. Limits Of Insurance**, **4.b.** Loss Of Earnings of this endorsement per day because of time off from work.

**5. Medical Payments**

The Medical Expense Limit of Any One Person as stated in the Declarations is amended to the limit shown in Section **B. Limits Of Insurance**, **5. Medical Payments** of this endorsement.

**6. 180 Day Coverage For Newly Formed Or Acquired Organizations**

**Section II - Who Is An Insured** is amended as follows:

Subparagraph **a.** of Paragraph **3.** is replaced by the following:

**a.** Insurance under this provision is afforded only until the 180th day after

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000058

you acquire or form the organization or the end of the policy period, whichever is earlier;

**7.   Waiver Of Subrogation**

**Section IV - Commercial General Liability Conditions, 9. Transfer Of Rights Of Recovery Against Others To Us** is amended by the addition of the following:

We waive any right of recovery we may have against any person or organization against whom you have agreed to waive such right of recovery in a written contract or agreement because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a written contract or agreement with that person or organization and included in the "products-completed operations hazard". However, our rights may only be waived prior to the "occurrence" giving rise to the injury or damage for which we make payment under this Coverage Part. The insured must do nothing after a loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce those rights.

**8.   Automatic Additional Insured - Specified Relationships**

**a.**   The following is added to **Section II - Who Is An Insured**:

**(1)**   Any person(s) or organization(s) described in Paragraph **8.a.(2)** of this endorsement (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of a written contract, written agreement, written permit or written authorization.

**(2)**   Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein:

**(a)   Managers Or Lessors Of Premises**

The manager or lessor of a premises leased to you with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you, subject to the following additional exclusions:

This insurance does not apply to:

**(i)**   Any "occurrence" which takes place after you cease to be a tenant in that premises;

**(ii)**   Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

**(b)   Lessor Of Leased Equipment**

Any person or organization from whom you lease equipment when you and such person(s) or organization(s) have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance. Such person(s) or organization(s) are insureds only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s). A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends. However, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**(c)   Vendors**

Any person or organization (referred to below as vendor) with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000059

vendor's business, subject to the following additional exclusions:

**(i)** The insurance afforded the vendor does not apply to:

    **1)** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

    **2)** Any express warranty unauthorized by you;

    **3)** Any physical or chemical change in the product made intentionally by the vendor;

    **4)** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

    **5)** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

    **6)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

    **7)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

    **8)** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

        **a)** The exceptions contained in Paragraphs **(c) (i) 4)** or **6)** of this endorsement; or

        **b)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**(ii)** This insurance does not apply to any insured person or organization:

    **1)** From whom you have acquired such products, or any ingredient, part

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000060

or container, entering into, accompanying or containing such products; or

2) When liability included within the "products-completed operations hazard" has been excluded under this Coverage Part with respect to such products.

**(d) State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations Relating To Premises**

Any state or governmental agency or subdivision or political subdivision with which you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, subject to the following additional provision:

This insurance applies only with respect to the following hazards for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization in connection with premises you own, rent or control and to which this insurance applies:

**(i)** The existence, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away openings, sidewalk vaults, street banners or decorations and similar exposures; or

**(ii)** The construction, erection or removal of elevators; or

**(iii)** The ownership, maintenance or use of any elevators covered by this insurance.

**(e) Mortgagee, Assignee Or Receiver**

Any person or organization with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you. However, this insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**(3)** The insurance afforded to additional insureds described in Paragraph **8.a.(1)** of this endorsement:

**(a)** Only applies to the extent permitted by law; and

**(b)** Will not be broader than that which you are required by the written contract, written agreement, written permit or written authorization to provide for such additional insured; and

**(c)** Does not apply to any person, organization, vendor, state, governmental agency or subdivision or political subdivision, specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part, provided such other provision or endorsement covers the injury or damage for which this insurance applies.

**b.** With respect to the insurance afforded to the additional insureds described in Paragraph **8.a.(1)** of this endorsement, the following is added to **Section III - Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**(1)** Required by the written contract, written agreement, written permit or written authorization described

in Paragraph **8.a.(1)** of this endorsement; or

**(2)** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**c.** **Section IV - Commercial General Liability Conditions** is amended to include the following:

**Automatic Additional Insured Provision**

This insurance applies only if the "bodily injury" or "property damage" occurs, or the "personal and advertising injury" offense is committed:

**(1)** During the policy period; and

**(2)** Subsequent to your execution of the written contract or written agreement, or the issuance of a written permit or written authorization, described in Paragraph **8.a.(1)**.

**d.** **Section IV - Commercial General Liability Conditions** is amended as follows:

Condition **5. Other Insurance** is amended to include:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured per Paragraph **8.a.(1)** of this endorsement provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract, agreement, permit or authorization described in **8.a.(2)** of this endorsement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

**9.** **Property Damage To Borrowed Equipment**

**a.** The following is added to **Exclusion 2.j. Damage To Property** under Sec-

tion **I - Coverage A - Bodily Injury And Property Damage Liability:**

Paragraphs **(3)** and **(4)** of this exclusion do not apply to tools or equipment loaned to you, provided they are not being used to perform operations at the time of loss.

**b.** With respect to the insurance provided by this section of the endorsement, the following additional provisions apply:

**(1)** The Limits of Insurance shown in the Declarations are replaced by the limits designated in Section **B. Limits Of Insurance, 9. Property Damage To Borrowed Equipment** of this endorsement with respect to coverage provided by this endorsement. These limits are inclusive of and not in addition to the limits being replaced. The Limits of Insurance shown in Section **B. Limits Of Insurance, 9. Property Damage To Borrowed Equipment** of this endorsement fix the most we will pay in any one "occurrence" regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought; or

**(c)** Persons or organizations making claims or bringing "suits".

**(2)** Deductible Clause

**(a)** Our obligation to pay damages on your behalf applies only to the amount of damages for each "occurrence" which are in excess of the Deductible Amount stated in Section **B. Limits Of Insurance, 9. Property Damage To Borrowed Equipment** of this endorsement. The limits of insurance will not be reduced by the application of such deductible amount.

**(b)** **Section IV - Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit,** applies to each claim or "suit" irrespective of the amount.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000062

(c) We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

## 10. Employees As Insureds - Specified Health Care Services And Good Samaritan Services

Paragraph **2.a.(1)(d)** under **Section II - Who Is An Insured** does not apply to:

**a.** Your "employees" who provide professional health care services on your behalf as a duly licensed nurse, emergency medical technician or paramedic in the jurisdiction where an "occurrence" or offense to which this insurance applies takes place; or

**b.** Your "employees" or "volunteer workers", other than an employed or volunteer doctor, providing first aid or good samaritan services during their work hours for you will be deemed to be acting within the scope of their employment by you or performing duties related to the conduct of your business.

## 11. Broadened Notice Of Occurrence

Paragraph **a.** of Condition **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** under **Section IV - Commercial General Liability Conditions** is replaced by the following:

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

This requirement applies only when the "occurrence" or offense is known to an "authorized representative".

## 12. Nonowned Aircraft

The following is added to **Exclusion 2.g. Aircraft, Auto Or Watercraft** under **Section I - Coverage A - Bodily Injury And Property Damage Liability**:

This exclusion does not apply to an aircraft you do not own, provided that:

**a.** The pilot in command holds a current effective certificate, issued by a duly constituted authority of the United States of America or Canada, designating that person as a commercial or airline transport pilot;

**b.** The aircraft is rented with a trained, paid crew; and

**c.** The aircraft does not transport persons or cargo for a charge.

## 13. Bodily Injury Redefined

**Section V - Definitions, 4.** "Bodily injury" is replaced by the following:

**4.** "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

## 14. Expected Or Intended Injury Redefined

The last sentence of **Exclusion 2.a. Expected Or Intended Injury** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

## 15. Former Employees As Insureds

The following is added to Paragraph **2.** under **Section II - Who Is An Insured:**

**2.** Each of the following is also an insured:

Any of your former "employees", directors, managers, members, partners or "executive officers", including but not limited to retired, disabled or those on leave of absence, but only for acts within the scope of their employment by you or for duties related to the conduct of your business.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000063

## 16. Voluntary Property Damage Coverage

### a. Coverage D - Voluntary Property Damage Coverage

**Section I - Coverages** is amended to include the following:

#### (1) Insuring Agreement

**(a)** We will pay the cost to repair or replace "property damage" to property of others arising out of operations incidental to your business when:

**1)** Damage is caused by you; or

**2)** Damage occurs while in your possession.

At your written request, we will make this payment regardless of whether you are at fault for the "property damage".

If you, at our request, replace, or make any repairs to, damaged property of others, the amount we will pay under **Voluntary Property Damage Coverage** will be determined by your actual cost to replace or repair the damaged property, excluding any profit or overhead.

Any payment we make under **Voluntary Property Damage Coverage** shall not be interpreted as an admission of liability by you or by us.

It shall be your duty, not our duty, to defend any claim or "suit" to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered.

**(b)** This insurance applies to "property damage" only if:

**1)** The "property damage" takes place in the "coverage territory"; and

**2)** The "property damage" occurs during the policy period.

#### (2) Exclusions

This insurance does not apply to "property damage" that would be excluded by **Coverage A - Bodily Injury And Property Damage Liability, 2. Exclusions**, except for **j. Damage To Property**, paragraphs **(3), (4), (5)** and **(6)**, **k. Damage To Your Product**, and **l. Damage To Your Work**.

#### (3) Definitions

For purposes of **Voluntary Property Damage Coverage** only, the following definitions under **Section V - Definitions** are replaced by the following:

**16.** "Occurrence" means an incident, including continuous or repeated exposure to substantially the same general harmful conditions that result in "property damage".

**20.** "Property damage" means physical injury to tangible property. "Electronic data" is not tangible property, and "property damage" does not include disappearance, abstraction or theft.

### b. Care, Custody Or Control Liability Coverage

For purposes of the coverage provided by **Care, Custody Or Control Liability Coverage** in this endorsement only:

**(1)** **Section I - Coverage A - Bodily Injury And Property Damage Liability, 2. Exclusions, j. Damage To Property**, Subparagraphs **(3), (4)** and **(5)** do not apply to "property damage" to the property of others described therein.

**(2)** It shall be your duty, not our duty, to defend any claim or "suit" to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered.

This Paragraph **(2)** supersedes any provision in the Coverage Part to the contrary.

**(3)** "Property damage" for which **Care, Custody Or Control Liability Coverage** provides cover-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000064

age shall be deemed to be caused by an "occurrence" but shall not serve to limit or restrict the applicability of any exclusion for "property damage" under this Coverage Part.

c.   **Limits Of Insurance And Deductibles**

For purposes of the coverage provided by **Voluntary Property Damage Coverage** and **Care, Custody Or Control Liability Coverage, Section III – Limits Of Insurance** is amended to include the following:

(1)   The Limits of Insurance shown in the Declarations are replaced by the limits designated in Section **B. Limits Of Insurance, 16. Voluntary Property Damage Coverage And Care, Custody Or Control Liability Coverage,** in this endorsement. These limits are inclusive of, and not in addition to, the limits being replaced. The Limits of Insurance shown in the Schedule fix the most we will pay regardless of the number of:

(a)   Insureds;

(b)   Claims made or "suits" brought; or

(c)   Persons or organizations making claims or bringing "suits".

(2)   (a)   Subject to **(3)** below, the **Voluntary Property Damage Coverage,** Each Occurrence Limit Of Insurance is the most we will pay for the sum of damages under **Voluntary Property Damage Coverage**;

(b)   The **Care, Custody Or Control Liability Coverage,** Each Occurrence Limit Of Insurance is the most we will pay for the sum of damages under **Care, Custody Or Control Liability Coverage**;

because of all "property damage" arising out of any one "occurrence".

(3)   The **Voluntary Property Damage Coverage,** Aggregate Limit Of Insurance is the most we will pay for the sum of all damages under **Voluntary Property Damage Coverage.** This limit applies separately to each "coverage term".

(4)   **Deductible Clause**

(a)   Our obligation to pay damages on your behalf applies only to the amount of damages for each "occurrence" which are in excess of the Deductible Amount stated for the applicable coverage in the Schedule. The limits of insurance will not be reduced by the application of such Deductible Amount.

(b)   **Section IV – Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit,** applies to each claim or "suit" irrespective of the amount.

(c)   We may pay any part or all of the Deductible Amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the Deductible Amount as has been paid by us.

17.   **Broadened Contractual Liability – Work Within 50' Of Railroad Property**

**Section V – Definitions, 12.** "Insured contract" is amended as follows:

a.   Paragraph **c.** is replaced by the following:

c.   Any easement or license agreement;

b.   Paragraph **f.(1)** is deleted in its entirety.

18.   **Alienated Premises**

**Exclusion 2.j. Damage to Property,** Paragraph **(2)** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** does not apply if the premises are "your work".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000065

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** Exclusion **2.s.** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**s. Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal and Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access or Disclosure of Confidential or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000066

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM WITH SPECIFIED EXCEPTIONS

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Except with respect to work performed by or on behalf of any insured begun before 10-17-2017 the following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability**:

    **1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" that arises out of, is caused by, or is attributable to, whether in whole or in part, an "EIFS/DEFS incident":

    **2.** Exclusion **1.** above also applies to any "bodily injury", "property damage" or "personal and advertising injury":

        **a.** For which an additional insured added by attachment of an endorsement to this Coverage Part is legally obligated to pay damages;

        **b.** For which any insured assumes liability in any part of any contract or agreement, regardless of whether such contract or agreement is an "insured contract";

        **c.** Arising out of, caused by, or attributable to, whether in whole or in part, warranties or representations made at any time with respect to the fitness, quality, durability or performance of a "wall finish system"; and

        **d.** Arising out of, caused by, or attributable to, whether in whole or in part, the providing of or failure to provide any warnings or instructions with regard to a "wall finish system".

    **3.** Exclusions **1.** and **2.** above apply only if the injury or damage is caused, directly or indirectly, in whole or in part, by water-related or moisture-related entry into, or dry rot of, a structure to which a "wall finish system" has been installed and only if that water-related or moisture-related entry, or dry rot, is caused, directly or indi-

rectly, in whole or in part, by the "wall finish system."

    **4.** Regardless of the applicability of Paragraph **3.** above, exclusions **1.** and **2.** above do not apply to an "EIFS/DEFS incident" if all three of the following conditions are met:

        **a.** The "wall finish system" is a "drainable or water managed system"; and

        **b.** The substrate that forms a part of the "wall finish system", or to which the "wall finish system" is attached, is noncombustible, such as gypsum sheathing, or is one of the following types of construction:

            **(1)** Noncombustible construction meaning structures where the exterior walls and the floors are constructed of, and supported by, metal, gypsum or other noncombustible materials; or

            **(2)** Masonry noncombustible construction meaning structures where the exterior walls are constructed of masonry materials such as adobe, brick, concrete, gypsum block, hollow concrete block, stone, tile or similar materials, with the floors and roof being metal or other noncombustible materials; or

            **(3)** Modified fire resistive or fire resistive construction meaning structures where the exterior walls and the floors and roof are constructed of masonry or fire resistive materials having a fire resistance rating of one hour or more; and

        **c.** The structure on which the "wall finish system" is installed is not intended for "residential" occupancy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000067

**B.** For purposes of this endorsement, the following is added to **Section III - Limits Of Insurance**:

   **1. Deductible Amount**

     **a.** Our obligation to pay damages under this insurance applies only to the amount of damages for each "EIFS/DEFS incident" which are in excess of a deductible amount of $5,000. The limits of insurance will not be reduced by the application of such deductible amount.

     **b.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

   **2. Limit Reduction**

     Paragraph **2.**, the General Aggregate Limit, Paragraph **3.**, the Products-Completed Operations Aggregate Limit, Paragraph **5.**, the Each Occurrence Limit, Paragraph **6.**, the Damage To Premises Rented To You Limit, and Paragraph **7.**, the Medical Expense Limit, of **Section III - Limits Of Insurance**, if applicable, will be reduced by the amount of damages we pay for all "bodily injury" and "property damage" arising out of an "EIFS/DEFS incident."

**C.** For purposes of this endorsement only, **Section IV - Commercial General Liability Conditions**, **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is replaced by the following:

   **2. Duties In The Event Of Incident, Claim Or Suit**

     **a.** You must see to it that we are notified as soon as practicable of an "EIFS/DEFS incident" that may result in a claim, irrespective of the amount. To the extent possible, notice should include:

       **(1)** What the incident was and when it occurred; and

       **(2)** The names and addresses of anyone who may suffer damages as a result of the incident.

     **b.** If a claim is made or "suit" is brought against any insured, you must:

       **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

       **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

     **c.** You and any other involved insured must:

       **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

       **(2)** Authorize us to obtain records and other information;

       **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

       **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an incident to which this insurance may also apply.

     **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**D.** For the purpose of this endorsement only, **Section V - Definitions** is amended to include the following:

   **1.** The following definitions are added:

     **a.** "Direct-applied exterior finish system" (commonly referred to as DEFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

       **(1)** A rigid or semi-rigid substrate;

       **(2)** The adhesive and/or mechanical fasteners used to attach the substrate to the structure including any water-durable exterior wall substrate;

       **(3)** A reinforced or unreinforced base coat or mesh;

       **(4)** A finish coat providing surface texture to which color may be added; and

       **(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose;

     that interact to form an energy efficient wall.

b. "Drainable or water managed system" means a "wall finish system":

(1) With a secondary weather-resistant barrier that protects the substrate; and

(2) That includes a drainage feature that is specifically designed to channel water to the outside of the "wall finish system".

c. "Exterior insulation and finish system" (commonly referred to as synthetic stucco or EIFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

(1) A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

(2) The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

(3) A reinforced or unreinforced base coat or mesh;

(4) A finish coat providing surface texture to which color may be added; and

(5) Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose;

that interact to form an energy efficient wall.

d. "EIFS/DEFS incident" means an incident that would not have occurred, in whole or in part, but for:

(1) The design, manufacture, sale, service, handling, construction, fabrication, preparation, installation, application, maintenance, disposal or repair, including remodeling, service, correction, or replacement, of a "wall finish system", or any part thereof, including any method or procedure used to correct problems with installed or partially installed "wall finish systems"; or

(2) Any work or operations conducted by or on behalf of any insured on or to a "wall finish system", or any component thereof, or any component of a building or structure to which a "wall finish system" attaches, that results, directly or indirectly, in the intru-

sion of water or moisture, including any resulting development or presence of "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

e. "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

f. "Residential" means:

(1) A structure used, or intended, in whole or in part, for the purpose of human habitation, and includes, but is not limited to, single-family housing, multi-family housing, tract homes, condominiums, cooperatives, townhomes, townhouses, planned-unit developments and timeshares;

(2) A structure converted, or being converted, in whole or in part, into condominiums or cooperatives; and

(3) Common areas and grounds, appurtenant structures and facilities, of the structures described in **D.1.f.(1)** and **(2)** above, except a public street, public road, public right of way, or public utility easement located on or near such common areas and grounds.

"Residential" does not include:

(1) Hospitals, jails or prisons; and

(2) Provided there is no individual ownership of units and that such was not, in whole or in part, at any time, marketed, sold, occupied or used as single-family housing, multi-family housing, or as a condominium, cooperative, townhouse, townhome or timeshare:

(a) Government housing on military bases;

(b) College/university dormitories;

(c) Apartments;

(d) Long-term care facilities;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000069

    **(e)** Assisted living facilities;

    **(f)** Nursing homes; and

    **(g)** Hotels or motels.

**g.** "Wall finish system" means:

    **(1)** An "exterior insulation and finish system";

    **(2)** A "direct-applied exterior finish system"; or

    **(3)** Any energy efficient exterior cladding or finish system substantially similar to Paragraph **D.1.g.(1)** or **(2)** above.

**2.** Definition **21.** "Suit" is replaced by the following:

**21.** "Suit" means a civil proceeding in which damages because of an "EIFS/DEFS incident" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

    **c.** An appeal of a civil proceeding.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000070

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to Paragraph **2.** Exclusions of **SECTION I - COVERAGES. COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**2.  Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" caused directly or indirectly, in whole or in part, by any actual, alleged or threatened:

**(1)** Inhalation of;

**(2)** Ingestion of;

**(3)** Contact with;

**(4)** Absorption of;

**(5)** Exposure to;

**(6)** Existence of; or

**(7)** Presence of,

any "fungi" or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually;

**b.** Any loss, cost or expense associated in any way with, or arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, mitigating or disposing of, or in any way responding to, investigating, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity;

**c.** Any liability, with respect to "fungi" or bacteria, arising out of, resulting from, caused by, contributed to, or in any way related to any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with:

**(1)** The existence of "fungi" or bacteria;

**(2)** The prevention of "fungi" or bacteria;

**(3)** The remediation of "fungi" or bacteria;

**(4)** Any operation described in Paragraph **A. 2. b.** above;

**(5)** "Your product"; or

**(6)** "Your work"; or

**d.** Any obligation to share damages with or repay any person, organization or entity, related in any way to the liability excluded in Paragraphs **A. 2. a., b.** or **c.** above;

regardless of any other cause, event, material, product and / or building component that contributed concurrently or in any sequence to the injury or damage.

However this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for human ingestion.

**B.** The following exclusion is added to Paragraph **2.** Exclusions of **SECTION I - COVERAGES. COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**:

**2.  Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" caused directly or indirectly, in whole or in part, by any actual, alleged or threatened:

**(1)** Inhalation of;

**(2)** Ingestion of;

**(3)** Contact with;

**(4)** Absorption of;

**(5)** Exposure to;

**(6)** Existence of; or

**(7)** Presence of,

Includes copyrighted material of ISO Properties, Inc., with its permission.
000071

any "fungi" or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually;

**b.** Any loss, cost or expense associated in any way with, or arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, mitigating or disposing of, or in any way responding to, investigating, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity;

**c.** Any liability, with respect to "fungi" or bacteria, arising out of, resulting from, caused by, contributed to, or in any way related to any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with:

**(1)** The existence of "fungi" or bacteria;

**(2)** The prevention of "fungi" or bacteria;

**(3)** The remediation of "fungi" or bacteria;

**(4)** Any operation described in Paragraph **B. 2. b.** above;

**(5)** "Your product"; or

**(6)** "Your work"; or

**d.** Any obligation to share damages with or repay any person, organization or entity, related in any way to the liability excluded in Paragraphs **B. 2. a.**, **b.** or **c.** above;

regardless of any other cause, event, material, product and / or building component that contributed concurrently or in any sequence to the injury or damage.

However this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for human ingestion.

**C.** For the purposes of this endorsement, **SECTION V - DEFINITIONS** is amended to include the following:

"Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Includes copyrighted material of ISO Properties, Inc., with its permission.
000072

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g.** Aircraft, Auto or Watercraft is replaced by the following:

This insurance does not apply to:

**g.** **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises that you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.**

**(2)** or **f. (3)** of the definition of "mobile equipment".

**B.** **SECTION II - WHO IS AN INSURED** is amended to include:

**4.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**C.** **SECTION V - DEFINITIONS, 3.** "Auto" and **15.** "Mobile equipment" are replaced by the following:

**3.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

Includes copyrighted material of ISO Properties, Inc., with its permission
000073

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted;

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**D.** This endorsement does not apply to any liability arising from an "occurrence" caused by or arising from any land vehicle if:

    **1.** You have an Auto Coverage Form in force at the time of the "occurrence"; and

    **2.** The land vehicle meets the definition of auto in your Auto Coverage Form or policy, regardless of whether or not such land vehicle is:

        **a.** A covered auto under such Auto Coverage Form or policy; or

        **b.** Specifically described on a schedule of covered autos on your Auto Coverage Form or policy.

Includes copyrighted material of ISO Properties, Inc., with its permission
000074

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTORS ADDITIONAL INSURED - AUTOMATIC STATUS WHEN REQUIRED IN WRITTEN CONTRACT, AGREEMENT, PERMIT OR AUTHORIZATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A. Additional Insured - Owners, Lessees Or Contractors - Automatic Status For Other Parties When Required In Written Contract Or Agreement With You**

 1. **Section II - Who Is An Insured** is amended to include as an additional insured any person or organization you have agreed in writing in a contract or agreement to add as an additional insured on this Coverage Part. Such person(s) or organization(s) is an additional insured only with respect to liability for:

     a. "Bodily injury", "property damage" or "personal and advertising injury" *caused, in whole or in part, by* the performance of your ongoing operations by you or on your behalf, under that written contract or written agreement. Ongoing operations does not apply to "bodily injury" or "property damage" occurring after:

         (1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

         (2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project; and

     b. "Bodily injury" or "property damage" *caused, in whole or in part, by* "your work" performed under that written contract or written agreement and included in the "products-completed operations hazard", but only if:

         (1) The Coverage Part to which this endorsement is attached provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard"; and

         (2) The written contract or written agreement requires you to provide additional insured coverage included within the "products-completed operations hazard" for that person or organization.

         If the written contract or written agreement requires you to provide additional insured coverage included within the "products-completed operations hazard" for a specified length of time for that person or organization, the "bodily injury" or "property damage" must occur prior to the expiration of that period of time in order for this insurance to apply.

         If the written contract or written agreement requires you to provide additional insured coverage for a person or organization per ISO additional insured endorsement form number CG 20 10, without specifying an edition date, this Paragraph **b.** does not apply to that person or organization.

 2. If the written contract or written agreement described in Paragraph **1.** above specifically requires you to provide additional insured coverage to that person or organization:

     a. *Arising out of* your ongoing operations or *arising out of* "your work"; or

     b. By way of an edition of an ISO additional insured endorsement that includes *arising out of* your ongoing operations or *arising out of* "your work";

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000075

then the phrase *caused, in whole or in part, by* in Paragraph **A.1.a.** and/or Paragraph **A.1.b.** above, whichever applies, is replaced by the phrase *arising out of.*

**3.** With respect to the insurance afforded to the additional insureds described in Paragraph **A.1.**, the following additional exclusion applies:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

   **a.** The preparing, approving or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of, or the failure to render, any professional architectural, engineering or surveying services.

**4.** This Paragraph **A.** does not apply to additional insureds described in Paragraph **B.**

**B. Additional Insured - State Or Governmental Agency Or Subdivision Or Political Subdivision - Automatic Status When Required In Written Permits Or Authorizations**

**1. Section II - Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision you have agreed in writing in a contract, agreement, permit or authorization to add as an additional insured on this Coverage Part. Such state or governmental agency or subdivision or political subdivision is an additional insured only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision issued, in writing, a contract, agreement, permit or authorization.

**2.** With respect to the insurance afforded to the additional insureds described in Paragraph **B.1.**, the following additional exclusions apply:

This insurance does not apply to:

   **a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

   **b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard."

**C.** The insurance afforded to additional insureds described in Paragraphs **A.** and **B.**:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract, written agreement, written permit or written authorization to provide for such additional insured; and

**3.** Does not apply to any person, organization, state, governmental agency or subdivision or political subdivision specifically named as an additional insured for the same project in the schedule of an endorsement added to this Coverage Part.

**D.** With respect to the insurance afforded to the additional insureds described in Paragraphs **A.** and **B.**, the following is added to **Section III - Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the written contract, written agreement, written permit or written authorization described in Paragraphs **A.** and **B.**; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**E. Section IV - Commercial General Liability Conditions** is amended to add the following:

**Automatic Additional Insured Provision**

This insurance applies only if the "bodily injury" or "property damage" occurs, or the "personal and advertising injury" offense is committed:

**1.** During the policy period; and

**2.** Subsequent to your execution of the written contract or written agreement, or the issuance of a written permit or written authorization, described in Paragraphs **A.** and **B.**

**F.** Except when **G.** below applies, the following is added to **Section IV - Commercial General Liability Conditions, 5. Other Insurance,** and supersedes any provision to the contrary:

**When Other Additional Insured Coverage Applies On An Excess Basis**

This insurance is primary to other insurance available to the additional insured described in Paragraphs **A.** and **B.** except:

1. As otherwise provided in **Section IV - Commercial General Liability Conditions, 5. Other Insurance, b. Excess Insurance**; or

2. For any other valid and collectible insurance available to the additional insured as an additional insured by attachment of an endorsement to another insurance policy that is written on an excess basis. In such case, this insurance is also excess.

**G.** The following is added to **Section IV - Commercial General Liability Conditions, 5. Other Insurance,** and supersedes any provision to the contrary:

**Primary Insurance When Required By Written Contract, Agreement, Permit Or Authorization**

Except when wrap-up insurance applies to the claim or "suit" on behalf of the additional insured, this insurance is primary to any other insurance available to the additional insured described in Paragraphs **A.** and **B.** provided that:

1. The additional insured is a Named Insured under such other insurance; and

2. You have agreed in writing in a contract, agreement, permit or authorization described in Paragraph **A.** or **B.** that this insurance would be primary to any other insurance available to the additional insured.

As used in this endorsement, wrap-up insurance means any insurance provided by a consolidated (wrap-up) insurance program.

**Primary And Noncontributory Insurance When Required By Written Contract, Agreement, Permit Or Authorization**

Except when wrap-up insurance applies to the claim or "suit" on behalf of the additional insured, this insurance is primary to and will not seek contribution from any other insurance available to the additional insured described in Paragraphs **A.** and **B.** provided that:

1. The additional insured is a Named Insured under such other insurance; and

2. You have agreed in writing in a contract, agreement, permit or authorization described in Paragraph **A.** or **B.** that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

As used in this endorsement, wrap-up insurance means any insurance provided by a consolidated (wrap-up) insurance program.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000077

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

For purposes of insurance provided by this endorsement:

1. **Sudden and Accidental Exception**

   Exclusion **f. Pollutant, (1)(a)** and **(1)(d)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** do not apply to "bodily injury" provided:

   **a.** The "release" of "pollutants" from which the "bodily injury" arises is "sudden" and "accidental"; and

   **b.** The injured person's first exposure to such "pollutants" occurred during the policy period; and

   **c.** The injured person is clinically diagnosed or treated by a physician for the "bodily injury" caused by exposure to such "pollutants" within one year of such first exposure.

2. **Amendment to On Premises Exception**

   The on premises exception to the Pollutant Exclusion, **f.(1)(a)1) c)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, is deleted in its entirety and replaced by the following:

   **c)** Within one year of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

3. **Off Premises Exception**

   Exclusion **f. Pollutant (1)(d)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" that is caused by "gaseous or airborne pollutants" provided:

   **a.** The injured person's first exposure to "gaseous or airborne pollutants" occurred during the policy period; and

   **b.** The injured person is clinically diagnosed or treated by a physician for the "bodily injury" caused by the exposure to "gaseous or airborne pollutants" within one year of such first exposure.

4. **Amended Who Is An Insured**

   As respects the insurance provided by Paragraphs **1.** and **3.** of this endorsement, the **Sudden and Accidental Exception** and the **Off Premises Exception**, **SECTION II - WHO IS AN INSURED** is deleted in its entirety and replaced by the following:

   The coverage afforded shall apply only to Named Insureds.  We shall have no duty to defend or pay damages for any person or organization that is not a Named Insured.

5. **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS 5.  Other Insurance b. Excess Insurance** is amended to include the following:

   The insurance provided by Paragraphs **1. Sudden and Accidental Exception** and **3. Off Premises Exception**, of this endorsement is excess over any other valid and collectible insurance, whether primary, excess, contingent or on any other basis, except insurance written specifically to cover as excess over the limits of insurance that apply in this endorsement.

6. As respects the insurance provided by Paragraphs **1.** and **3.** of this endorsement, **SECTION V - DEFINITIONS** is amended to add the following:

   1. "Accidental" means unintended and unexpected.

   2. "Gaseous or airborne pollutants" means "pollutants" which:

      **(a)** Are a gas, smoke, fume, vapor or other similar airborne substance; and

      **(b)** Are the result of the "release" of such "pollutants" from materials, machinery or equipment brought on or to the "work site" by any Named Insured or any "employees", contractors or subcontractors working di-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000078

rectly or indirectly on any Named In-
sured's behalf.

"Gaseous or airborne pollutants" does
not include asbestos or lead.

3.  "Release" means actual discharge, dis-
persal, seepage, migration, release, es-
cape or emission.

4.  "Sudden" means abrupt, immediate and
brief as well as unexpected and without
prior notice.   "Sudden" has a temporal
element which requires that the "release"
of "pollutants" begins and ends within a
brief period of time.   A "release" of a

"pollutant" which results from a series of
ongoing events which constitute a course
of conduct or course of business is not
"sudden".

5.  "Work site" means any premises, site or
location while a Named Insured or a
Named Insured's "employees", contrac-
tors or subcontractors are performing op-
erations directly or indirectly on the
Named Insured's behalf, provided the
premises, site or location is not owned or
occupied by or rented or loaned to a
Named Insured.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000079

# THE CINCINNATI CASUALTY COMPANY

## COMMERCIAL UMBRELLA LIABILITY COVERAGE
## PART DECLARATIONS

Previous Policy Number **ENP0460530**

Attached to and forming part of POLICY NUMBER    **ENP 046 05 30**          Effective Date:  **10-17-2018**

**NAMED INSURED** is the same as it appears in the Common Policy Declarations unless another entry is made here.

**LIMITS OF INSURANCE**

$      **3**,000,000 Each Occurrence Limit          $       **3**,000,000 Aggregate Limit

**ADVANCE PREMIUM** $       **10,246**

Applicable to Premium, if box is checked:
- ☐ Subject to Annual Adjustment
- ☐ Subject to Audit (see Premium Computation Endorsement for Rating Basis)

### SCHEDULE OF UNDERLYING INSURANCE

| Insurer, Policy Number & Period: | Underlying Insurance: | Underlying Limits: |
|---|---|---|
| **(a)** | Employer's Liability | Bodily Injury by Accident:<br>$                    Each Accident<br>Bodily Injury by Disease:<br>$                    Each Employee<br>Bodily Injury by Disease:<br>$                    Policy Limit |
| **(b) CINCINNATI CAS. CO.**<br>  **ENP 046 05 30**<br>  **10-17-2018 TO 11-01-2019** | ☒ Commercial General Liability Including:<br>☒ Products-Completed Operations Coverage<br><br>☐ Cemetery Professional<br>☐ Druggist Professional<br>☐ Funeral Service Provider<br>☐ Pedorthists Professional<br><br>or<br><br>☐ Business Liability Including:<br>☐ Funeral Service Provider<br>☐ Druggist Professional | Bodily Injury and Property Damage Liability:<br>$   **1,000,000** Each Occurrence Limit<br>$   **2,000,000** General Aggregate Limit<br>$   **2,000,000** Products-Completed Operations Aggregate Limit<br><br><br>Personal and Advertising Injury Limit:<br>$   **1,000,000** Any One Person or Organization |
| **(c) CINCINNATI CAS. CO.**<br>  **EBA 046 05 30**<br>  **10-17-2018 TO 11-01-2019** | Automobile Liability Including:<br>☐ Owned Autos<br>☒ Non-Owned Autos<br>☒ Hired Autos<br>☐ Any Auto | Bodily Injury Liability Limit:<br>$                    Each Person<br>$                    Each Occurrence<br>Property Damage Liability Limit:<br>$                    Each Occurrence<br>or<br>Bodily Injury Liability and / or Property Damage Liability or Both Combined Limit:<br>$   **1,000,000** Each Occurrence |

| | | | | |
|---|---|---|---|---|
| (d) | Professional | $ | | |
| | | $ | | Aggregate |

| | | | | |
|---|---|---|---|---|
| (e) CINCINNATI CAS. CO.<br>ENP 046 05 30<br>10-17-2018 TO 11-01-2019 | Employee Benefit Liability | $ | 1,000,000 | Each Employee Limit |
| | | $ | 3,000,000 | Aggregate Limit |
| (f) | Liquor Liability | $ | | Each Common Cause Limit |
| | | $ | | Aggregate Limit |

**Other**

---

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:**

| | | |
|---|---|---|
| US101UM | 12/04 | COMMERCIAL UMBRELLA - TABLE OF CONTENTS |
| US4060 | 12/04 | NOTICE TO POLICYHOLDERS COMMERCIAL UMBRELLA POLICY PROGRAM |
| US4063 | 01/06 | NOTICE TO POLICYHOLDERS - MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - LIMITATION |
| US3010 | 09/17 | CONTRACTORS LIMITATIONS - INCLUDING EXCESS WRAP-UP COVERAGE |
| US302 | 12/04 | POLLUTANT EXCLUSION - OTHER THAN AUTO |
| US3043 | 09/17 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM WITH SPECIFIED EXCEPTIONS |
| US3048 | 12/04 | FUNGI OR BACTERIA EXCLUSION |
| US3093 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| US4062 | 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - LIMITATION |
| US407 | 12/04 | EMPLOYEE BENEFIT LIABILITY |
| US4098 | 04/10 | OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT |

---

# COMMERCIAL UMBRELLA - TABLE OF CONTENTS

**Coverage Part Provision:**                                                       **Begins on Page:**

Preamble ........................................................................................................ 3

**SECTION I - COVERAGE:** ..................................................................... 3

   **A.**  **Insuring Agreement** ............................................................. 3

   **B.**  **Exclusions:** ........................................................................ 4

       **1.**  Asbestos ............................................................................. 4
       **2.**  Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights ......................................... 4
       **3.**  Contractual Liability ......................................................... 4
       **4.**  Damage to Impaired Property or Property Not Physically Injured........ 4
       **5.**  Damage to Property ......................................................... 4
       **6.**  Damage to Your Product................................................... 4
       **7.**  Damage to Your Work...................................................... 4
       **8.**  Distribution of Material in Violation of Statutes .................. 5
       **9.**  Electronic Chatrooms or Bulletin Boards........................ 5
      **10.**  Electronic Data................................................................ 5
      **11.**  Employer's Liability Limitation ........................................ 5
      **12.**  Employment-Related Practices........................................ 5
      **13.**  Expected or Intended Injury ............................................ 5
      **14.**  Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses ......................... 6
      **15.**  Infringement of Copyright, Patent, Trademark or Trade Secret ............ 6
      **16.**  Pollutant - Auto............................................................... 6
      **17.**  Pollutant - Other Than Auto............................................ 7
      **18.**  Recall of Products, Work or Impaired Property ............... 9
      **19.**  Unauthorized Use of Another's Name or Product............ 9
      **20.**  Uninsured / Underinsured Motorist ................................ 9
      **21.**  War .................................................................................. 9
      **22.**  Workers' Compensation ................................................. 9

   **C.**  **Defense and Supplementary Payments** ........................... 9

**SECTION II - WHO IS AN INSURED** ................................................... 10

**SECTION III - LIMITS OF INSURANCE** .............................................. 11

**SECTION IV - CONDITIONS:** ............................................................... 12

       **1.**  Appeals............................................................................ 12
       **2.**  Audit................................................................................. 13
       **3.**  Bankruptcy....................................................................... 13
       **4.**  Duties in the Event of Occurrence, Claim or Suit ........... 13
       **5.**  First Named Insured....................................................... 13
       **6.**  Legal Action Against Us and Loss Payments................. 13
       **7.**  Liberalization .................................................................. 14
       **8.**  Maintenance of Underlying Insurance ............................ 14
       **9.**  Other Insurance .............................................................. 14
      **10.**  Premium .......................................................................... 14
      **11.**  Representations............................................................... 14
      **12.**  Separation of Insureds ................................................... 14
      **13.**  Transfer of Rights of Recovery Against Others to Us ..... 15
      **14.**  When We Do Not Renew ................................................ 15

**SECTION V - DEFINITIONS:** ............................................................... 15

       **1.**  "Advertisement".............................................................. 15
       **2.**  "Authorized representative"............................................. 15
       **3.**  "Auto".............................................................................. 15
       **4.**  "Bodily injury".................................................................. 16
       **5.**  "Coverage term".............................................................. 16
       **6.**  "Coverage territory".......................................................... 16

US 101 UM 12 04         Includes copyrighted material of ISO Properties, Inc., with its permission.         Page 1 of 22

000082

**Coverage Part Provision:**                                                     **Begins on Page:**

    **7.**   "Electronic data" ........................................................................................ 16
    **8.**   "Employee" ................................................................................................ 16
    **9.**   "Executive officer" .................................................................................... 16
    **10.**  "Hostile fire" .............................................................................................. 16
    **11.**  "Impaired property" ................................................................................... 16
    **12.**  "Insured contract" .................................................................................... 16
    **13.**  "Leased worker" ....................................................................................... 17
    **14.**  "Loading or unloading" ............................................................................. 17
    **15.**  "Mobile equipment" .................................................................................. 18
    **16.**  "Occurrence" ............................................................................................ 18
    **17.**  "Personal and advertising injury" ............................................................. 18
    **18.**  "Pollutants" .............................................................................................. 19
    **19.**  "Products-completed operations hazard" ................................................. 19
    **20.**  "Property damage" ................................................................................... 19
    **21.**  "Subsidiary" ............................................................................................. 19
    **22.**  "Suit" ....................................................................................................... 19
    **23.**  "Temporary worker" ................................................................................. 20
    **24.**  "Ultimate net loss" ................................................................................... 20
    **25.**  "Underlying insurance" ............................................................................. 20
    **26.**  "Underlying limit" ...................................................................................... 20
    **27.**  "Workplace" ............................................................................................. 20
    **28.**  "Your product" .......................................................................................... 20
    **29.**  "Your work" .............................................................................................. 20

    **NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT** ....................................................... 21

**US 101 UM 12 04**              Includes copyrighted material of ISO
Properties, Inc., with its permission.          **Page 2 of 22**
000083

# COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS.**

## SECTION I - COVERAGE

### A. Insuring Agreement

1. We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

   **a.** Which is in excess of the "underlying insurance"; or

   **b.** Which is either excluded or not insured by "underlying insurance".

2. This insurance applies to "bodily injury", "personal and advertising injury" or "property damage" only if:

   **a.** The "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   **b.** The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations; or

   **c.** The "personal and advertising injury" results from an "occurrence" that takes place during the policy period shown in the Declarations; and

   **d.** Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, or a "personal and advertising injury" offense is committed, you did not know, per Paragraph **5.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, or

that the "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part.

3. "Bodily injury" or "property damage" which:

   **a.** Occurs during the "coverage term"; and

   **b.** Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have occurred;

   includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

4. "Personal and advertising injury" caused by an offense which:

   **a.** Was committed during the "coverage term"; and

   **b.** Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have been committed;

   includes any continuation, change or resumption of that "personal and advertising injury" offense after the end of the "coverage term" in which it first became known by you.

5. You will be deemed to know that "bodily injury" or "property damage" has occurred, or that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

   **a.** Reports all, or any part, of the "bodily injury", "personal and advertising injury" or "property damage" to us or any other insurer;

   **b.** Receives a written or verbal demand or claim for damages because of the "bodily injury", "personal and advertising injury" or "property damage";

   **c.** First observes, or reasonably should have first observed, the "bodily injury" or "property damage", or the offense that caused the "personal and advertising injury";

   **d.** Becomes aware, or reasonably should have become aware, by any means, other than as described in **c.** above, that "bodily injury" or "prop-

Includes copyrighted material of ISO
Properties, Inc., with its permission.
000084

erty damage" had occurred or had begun to occur, or that the "personal and advertising injury" offense had been committed or had begun to be committed; or

**e.** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury", "personal and advertising injury" or "property damage" is substantially certain to occur.

**6.** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE.**

No other obligation or liability to pay sums or perform acts or services is covered, unless expressly provided for under **SECTION I - COVERAGE, C. Defense and Supplementary Payments.**

**B. Exclusions**

This insurance does not apply to:

**1. Asbestos**

Any liability arising out of, attributable to or any way related to asbestos in any form or transmitted in any manner.

**2. Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights**

"Personal and advertising injury":

**a.** Arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**b.** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**c.** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement"; or

**d.** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**3. Contractual Liability**

Any liability for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "bodily injury", "personal

and advertising injury" or "property damage":

**a.** That the insured would have in the absence of the contract or agreement; or

**b.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury", "personal and advertising injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

**4. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**a.** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**b.** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**5. Damage to Property**

"Property damage" to property owned by any insured, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

**6. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**7. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Includes copyrighted material of ISO Properties, Inc., with its permission.
000085

8. **Distribution of Material in Violation of Statutes**

Any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

9. **Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

10. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

11. **Employer's Liability Limitation**

Any liability arising from any injury to:

a. An "employee" of the insured sustained in the "workplace";

b. An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

c. The spouse, child, parent, brother or sister of that "employee" as a consequence of **a.** or **b.** above.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply when such insurance is provided by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance, or

would have been provided by such listed "underlying insurance" except for the exhaustion by payment of claims of its limits of insurance, and then only for such hazards for which coverage is provided by such "underlying insurance", unless otherwise excluded by this Coverage Part.

12. **Employment-Related Practices**

Any liability arising from any injury to:

a. A person arising out of any:

(1) Refusal to employ that person;

(2) Termination of that person's employment; or

(3) Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

b. The spouse, child, parent, brother or sister of that person as a consequence of any injury to that person at whom any of the employment-related practices described in Paragraphs **(1), (2),** or **(3)** above is directed.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

13. **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually intended or expected.

However, this exclusion does not apply to:

a. "Bodily injury" resulting from the use of reasonable force to protect persons or property; or

b. "Bodily injury" or "property damage" resulting from the use of reasonable force to prevent or eliminate danger

Includes copyrighted material of ISO Properties, Inc., with its permission.
000086

in the operation of "autos" or water-craft.

**14. Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses**

"Personal and advertising injury":

**a.** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**b.** Arising out of oral or written publication of material whose first publication took place before the later of the following:

**(1)** The inception of this Coverage Part; or

**(2)** The "coverage term" in which insurance coverage is sought;

**c.** Arising out of a criminal act committed by or at the direction of the insured; or

**d.** Committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, Paragraph **d.** does not apply to Paragraphs **17.a., b., c., d.** and **i.** of "personal and advertising injury" under **SECTION V - DEFINITIONS.**

For the purposes of Paragraph **d.**, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**15. Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement in your "advertisement", of copyright, trade dress or slogan.

**16. Pollutant - Auto**

**a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

**(1)** That are, or that are contained in any property that is:

**(a)** Being transported or towed by, handled, or handled for movement into, onto or from, an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

**(b)** Otherwise in the course of transit by or on behalf of the insured; or

**(c)** Being stored, disposed of, treated or processed in or upon an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

**(2)** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the insured for movement into or onto an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; or

**(3)** After the "pollutants" or any property in which the "pollutants" are contained are moved from an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion to the place where they are finally delivered, disposed of or abandoned by the insured.

Paragraph **(1)** above does not apply to "bodily injury" or "property damage" arising from fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their

Includes copyrighted material of ISO Properties, Inc., with its permission.
000087'

behalf in any other fashion or its parts, if:

**(a)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(b)** The "bodily injury" or "property damage" does not arise out of the operation of any equipment listed in Paragraphs **f.(2)** and **(3)** of the definition of "mobile equipment".

However, this exception to Paragraph **(1)** does not apply if the fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed, emitted or released.

Paragraphs **(2)** and **(3)** above do not apply to an "occurrence" that occurs away from premises owned by or rented to an insured with respect to "pollutants" not in or upon an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; and

**(b)** The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**b.** Any liability caused by "pollutants" and arising from the operation, maintenance, use, "loading or unloading" of an "auto", for which insurance coverage is excluded by "underlying insurance".

### 17. Pollutant - Other Than Auto

**a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

**(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

However, Paragraph **a.(1)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, but only to the extent insurance is provided at the "underlying limit" specified in the Schedule of Underlying Insurance for the "underlying insurance" listed and subject to all its terms, limitations and conditions:

**(a)** "Bodily injury", if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

**(b)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to your "underlying insurance" as an additional insured with respect to your ongoing operations or "your work" performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(c)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(2)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

Includes copyrighted material of ISO Properties, Inc., with its permission.
000088

**(3)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

**(4)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations, if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

However, Paragraph **a.(4)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, but only to the extent insurance is provided at the "underlying limit" specified in the Schedule of Underlying Insurance for the "underlying insurance" listed and subject to all its terms, limitations and conditions:

**(a)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by

such insured, contractor or subcontractor;

**(b)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(c)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(5)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations, if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

**b.** "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

**c.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph **c.** does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement,

Includes copyrighted material of ISO Properties, Inc., with its permission.
000089

or such claim or "suit" by or on behalf of a governmental authority.

**d.** Any liability caused by "pollutants", for which insurance coverage is excluded by "underlying insurance".

**18. Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**a.** "Your product";

**b.** "Your work"; or

**c.** "Impaired Property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**19. Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag or any other similar tactics to mislead another's potential customers.

**20. Uninsured / Underinsured Motorist**

Any liability or obligation to any insured or anyone else under any uninsured motorist, underinsured motorist, automobile no-fault or first party personal injury law.

**21. War**

Any liability, however caused, arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**22. Workers' Compensation**

Any liability or obligation of the insured under any workers' compensation, unemployment compensation, disability benefits or similar law. However, this exclusion does not apply to liability of others assumed by you under an "insured contract" in existence at the time of "occurrence".

**C. Defense and Supplementary Payments**

**1.** We will have the right and duty to defend the insured against any "suit" seeking damages because of "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies. We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result when:

**a.** The applicable limits of the "underlying insurance" and any other insurance have been exhausted by payment of claims; or

**b.** Damages are sought for "bodily injury", "personal and advertising injury" or "property damage" which are not covered by "underlying insurance" or other insurance.

**2.** Our right and duty to defend ends when the applicable Limits of Insurance, as stated in the Declarations, has been exhausted by payment of claims.

**3.** We have no duty to investigate, settle or defend any claim or "suit" other than those circumstances described in Paragraph **C.1.** However, we do have the right to participate in the investigation, settlement or defense of any claim or "suit" to which this insurance applies. If we exercise this right, we will do so at our expense.

**4.** If there is no underlying insurer or other insurance obligated to do so, we will pay the following when we provide a defense:

**a.** All expenses we incur.

**b.** The cost of bail bonds up to $3,000. We do not have to furnish these bonds.

**c.** The cost of bonds to appeal a judgment or award in any claim or "suit" we defend and the cost of bonds to

Includes copyrighted material of ISO Properties, Inc., with its permission.
000090

release attachments, but only for bond amounts within the applicable Limits of Insurance. We do not have to furnish these bonds.

**d.** Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including the actual loss of earnings.

**e.** All costs taxed against the insured in the "suit".

**5.** If there is no underlying insurer obligated to do so, we will pay the following for an "occurrence" to which this insurance applies, even if we have no duty to provide a defense:

**a.** Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay and which falls within the applicable Limit of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on the period of time after the offer.

**b.** All interest awarded against the insured on the full amount of any judgment that accrues:

**(1)** After entry of the judgment; and

**(2)** Before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**6.** The payments described in Paragraphs **4.** and **5.** above will not reduce the Limits of Insurance provided by this Coverage Part when defense or supplementary payments provided by the "underlying insurance" do not reduce their Limits of Insurance. However, when defense or supplementary payments provided by the "underlying insurance" reduce their Limits of Insurance then such expense payments paid by us will reduce the Limits of Insurance provided by this Coverage Part.

**7.** If we are prevented by law or otherwise from carrying out any of the provisions of **SECTION I - COVERAGE, C. Defense and Supplementary Payments**, we will pay any expense incurred with our written consent.

## SECTION II - WHO IS AN INSURED

**1.** Except for liability arising out of the ownership, maintenance, occupancy or use of an "auto":

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(2)** A partnership or joint venture, you are an insured. Your members, partners and their spouses are also insureds, but only with respect to the conduct of your business.

**(3)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(4)** An organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders. Each of the following is also a Named Insured:

**(a)** Any "subsidiary" company of such organization, including any "subsidiary" of such "subsidiary":

**1)** Existing at the inception of this Coverage Part; or

**2)** Formed or acquired on or after the inception of this Coverage Part.

**(b)** Any other company controlled and actively managed by such organization or any "subsidiary" thereof:

**1)** At the inception of this Coverage Part; or

**2)** If the control and active management thereof is acquired on or after the inception of this Coverage Part.

**(5)** A trust, you are an insured. Your trustees are also insureds, but only

Includes copyrighted material of ISO Properties, Inc., with its permission.
000091

with respect to their duties as trustees.

**b.** Each of the following is also an insured:

**(1)** Any "employee" of yours while acting within the scope of their duties as such.

**(2)** Any person or organization while acting as your real estate manager.

**(3)** Any person or organization having proper temporary custody of your property if you die, but only:

**(a)** With respect to liability arising out of the maintenance or use of that property; and

**(b)** Until your legal representative has been appointed.

**(4)** Your legal representative if you die, but only with respect to duties as such.

**2.** Only with respect to liability arising out of the ownership, maintenance, occupancy or use of an "auto":

**a.** You are an insured.

**b.** Anyone else while using with your permission an "auto" you own, hire or borrow is also an insured except:

**(1)** The owner or any other person or organization (except your "executive officers" or principals) from whom you hire or borrow an "auto", unless such persons or organizations are insureds in your "underlying insurance" listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is provided by such "underlying insurance". This exception does not apply if the "auto" is a trailer or semi-trailer connected to an "auto" you own.

**(2)** Your "employee", if the "auto" is owned by that "employee" or a member of his or her household, unless:

**(a)** Such "employee" is an insured with respect to that "auto" in the "underlying insurance" listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is provided by such "underlying insurance"; or

**(b)** The "bodily injury" or "property damage" is sustained by a co-"employee" of such "employee".

**(3)** Someone using an "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos", unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from an "auto".

**c.** Anyone liable for the conduct of an insured described in Paragraphs **2.a.** and **b.** above is also an insured, but only if they are provided insurance coverage for such liability by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance and then only for such hazards for which coverage is provided by such "underlying insurance".

**3.** At your option and subject to the terms of this insurance, any additional insureds not addressed by Paragraphs **1.** and **2.** above covered in the "underlying insurance" listed in the Schedule of Underlying Insurance are also insureds, but only to the extent that insurance is provided for such additional insureds thereunder.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for all damages:

**a.** Included in the "products-completed operations hazard";

**b.** Because of "bodily injury" by disease sustained by your "employees" arising out of and in the course of their employment by you; or

Includes copyrighted material of ISO
Properties, Inc., with its permission.
000092

c. Because of "bodily injury", "personal and advertising injury" or "property damage" not included within **a.** or **b.** above. However, this Aggregate Limit will not apply to damages which are not subject to an Aggregate Limit in the "underlying insurance".

The Aggregate Limit applies separately to **a.**, **b.** and **c.** The Aggregate Limit described in **c.** will apply only to damages not subject to **a.** or **b.** above.

3. Subject to the Limit of Insurance described in **2.c.** above:

a. Only in the event that "underlying insurance" specifically listed in the Schedule of Underlying Insurance provides an annual Aggregate Limit of Insurance for damages that would not be subject to **2.a.** or **b.** above that is applicable separately to each:

(1) Location owned by, or rented or leased to you solely with respect to damages which are the result of a claim or "suit" for "bodily injury" or "property damage" which can be attributed to operations at only a single location, then the Aggregate Limit described in **2.c.** above applies separately to each location owned by, or rented or leased to you.

(2) Of your construction projects solely with respect to damages which are the result of a claim or "suit" for "bodily injury" or "property damage" which can be attributed only to ongoing operations and only at a single construction project, then the Aggregate Limit described in **2.c.** above applies separately to each of your construction projects.

b. Only with respect to the application of Limits of Insurance described in **3.a.** above, the following terms location and construction project will have the following meanings:

(1) Location means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

(2) Construction project means a location you do not own, rent or lease where ongoing improvements, alterations, installation, demolition or maintenance work is performed by you or on your behalf. All connected ongoing improvements, alterations, installation, demolition or maintenance work performed by you or on your behalf at the same location for the same persons or entities, no matter how often or under how many different contracts, will be deemed to be a single construction project.

4. Subject to the limits described in **2.** and **3.** above, the Each Occurrence Limit is the most we will pay for the "ultimate net loss":

a. In excess of the applicable limits of "underlying insurance"; or

b. If an "occurrence" is not covered by "underlying insurance", but covered by the terms and conditions of this Coverage Part,

Because of all "bodily injury", "personal and advertising injury" and "property damage" arising out of any one "occurrence".

We will not pay more than the Limit of Insurance shown in this Coverage Part's Declarations for each "occurrence" because any Personal Umbrella Liability Policy(ies) is / are attached to this policy.

5. Subject to the limits described in **2.**, **3.** and **4.** above and to the terms and conditions of the "underlying insurance":

a. If the limits of "underlying insurance" have been reduced by payment of claims, this Coverage Part will continue in force as excess of the reduced "underlying insurance"; or

b. If the limits of "underlying insurance" have been exhausted by payment of claims, this Coverage Part will continue in force as "underlying insurance".

6. The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

## SECTION IV - CONDITIONS

1. **Appeals**

If the insured or any insurer who provides the applicable "underlying insurance" elects not to appeal a judgment which exceeds the "underlying limit", we may elect to do so at our own expense. We shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall this provision increase our liability beyond:

a. Our applicable Limits of Insurance for all "ultimate net loss"; or

b. Our applicable Defense and Supplementary Payments as described in **SEC-**

Includes copyrighted material of ISO Properties, Inc., with its permission.
000093

TION I - COVERAGE, C. Defense and Supplementary Payments; and

c.  The expense of such appeal.

**2.  Audit**

If this Coverage Part is subject to Audit, as indicated in the Declarations, then the following Condition applies:

a.  The premium shown in the Premium Computation Endorsement as Advance Premium is a deposit premium. At the close of each audit period, we will compute the earned premium for that period. If:

  (1)  The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

  (2)  The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

  However, in no event will the earned premium be less than the Minimum Premium stated in the Premium Computation Endorsement.

b.  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**3.  Bankruptcy**

Bankruptcy or insolvency of the insured or the insured's estate shall not relieve us of any obligations under this Coverage Part.

**4.  Duties in the Event of Occurrence, Claim or Suit**

a.  You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim or "suit". To the extent possible, notice should include:

  (1)  How, when and where the "occurrence" took place;

  (2)  The names and addresses of any injured persons and witnesses; and

  (3)  The nature and location of any injury or damage arising out of the "occurrence".

  This requirement applies only when the "occurrence" is known to an "authorized representative".

b.  If a claim is made or "suit" is brought against any insured that is likely to involve this Coverage Part, you must:

  (1)  Immediately record the specifics of the claim or "suit" and the date received; and

  (2)  Notify us as soon as practicable.

  This requirement will not be considered breached unless the breach occurs after such claim or "suit" is known to an "authorized representative".

c.  You and any other involved insured must:

  (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

  (2)  Authorize us to obtain records and other information;

  (3)  Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

  (4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**5.  First Named Insured**

The person or organization first named in the Declarations will act on behalf of all other insureds where indicated in this Coverage Part.

**6.  Legal Action Against Us and Loss Payments**

a.  No legal action may be brought against us unless there has been full compliance with all the terms of this Coverage Part nor until the amount of the insured's obligation to pay has been finally determined as provided below. No person or organization has any right under this Coverage Part to bring us into any action to determine the liability of the insured.

b.  We shall be liable for payment of the "ultimate net loss" for any "occurrence" to which this Coverage Part applies:

  (1)  For "occurrences" not covered by "underlying insurance"; or

Includes copyrighted material of ISO Properties, Inc., with its permission.

000094

**(2)** In excess of the "underlying limit" applicable to the "occurrence" only after the insurers who provide the applicable "underlying insurance" have paid or become obligated to pay the amount of the "underlying limit" applicable to the "occurrence".

Our payment will be made following final determination of the amount of the insured's obligation to pay either by final judgment against the insured or by written agreement with the insured, the claimant, the underlying insurers and us.

**7. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

Will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**8. Maintenance of Underlying Insurance**

**a.** While this Coverage Part is in effect, the insured shall maintain in force the "underlying insurance" listed in the Schedule of Underlying Insurance as collectible insurance. The terms, conditions and endorsements of "underlying insurance" will not materially change and renewals or replacements of "underlying insurance" will not be more restrictive in coverage.

**b.** Limits of "underlying insurance" will not be reduced, except for any reduction or exhaustion in the aggregate limits of insurance due to payment of claims which are in accordance with **SECTION I - COVERAGE, A. Insuring Agreement**, Paragraph **2.** of this Coverage Part.

**c.** In the event you fail or neglect to maintain "underlying insurance" as required, this Coverage Part will apply as though such "underlying insurance" was in force and collectible at the time a claim is presented to us which is in accordance with **SECTION I - COVERAGE, A. Insuring Agreement**, Paragraph **2.** of this Coverage Part.

**d.** The limits of "underlying insurance" shall be deemed applicable, regardless of any defense which the insurer who provides the "underlying insurance" may assert because of the insured's failure to comply with any Condition of the policy or the inability of the insurer to pay by reason of bankruptcy or insolvency.

**9. Other Insurance**

This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

**10. Premium**

The premium for this Coverage Part shall be as stated in the Declarations. The advance and anniversary premiums are not subject to adjustment, except as stated in the Declarations, or as stated in an endorsement issued by us to form a part of this Coverage Part.

You shall maintain records of such information as is necessary for premium computation, and shall, if requested by us, send copies of such records to us at the end of the "coverage term" and at such times during the policy period as we may direct.

**11. Representations**

**a.** By acceptance of this Coverage Part, you agree that the statements in the Declarations are your agreements and representations, that this Coverage Part is issued in reliance upon the truth of such representations and that this Coverage Part embodies all agreements existing between you and us or any of our agents relating to this insurance.

**b.** However, to the extent that the following applies in the "underlying insurance" listed specifically in the Schedule of Underlying Insurance, it will also apply to this Coverage Part:

Based on our reliance upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of this Coverage Part, we will not reject coverage under this Coverage Part based solely on such failure.

**12. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

Includes copyrighted material of ISO Properties, Inc., with its permission.
000095

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

### 13. Transfer of Rights of Recovery Against Others to Us

**a.** If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**b.** Any recoveries shall be applied as follows:

**(1)** First, we will reimburse anyone, including the insured, the amounts actually paid by them that were in excess of our payments;

**(2)** Next, we will be reimbursed to the extent of our actual payment; and

**(3)** Lastly, any amounts left after meeting the obligations outlined in **(1)** and **(2)** above will be distributed to anyone else known to us at the time a recovery is made and who is legally entitled to such recovery.

Expenses incurred in the recovery shall be apportioned among all interests in the ratio of their respective recoveries as finally settled. If there is no recovery as a result of our attempts, we shall bear all of the recovery expenses.

**c.** If prior to an "occurrence" to which this Coverage Part would apply, you and the issuer of your applicable "underlying insurance" listed specifically in the Schedule of Underlying Insurance waive any right of recovery against a person or organization for injury or damage, we will also waive any rights we may have against such person or organization.

### 14. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

**2.** "Authorized representative" means:

**a.** If you are:

**(1)** An individual, you and your spouse are "authorized representatives".

**(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

**(3)** A limited liability company, your members and your managers are "authorized representatives".

**(4)** An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

**(5)** A trust, your trustees are "authorized representatives".

**b.** Your "employees" assigned to manage your insurance program, or assigned to give or receive notice of an "occurrence", claim or "suit" are also "authorized representatives".

**3.** "Auto" means:

**a.** Any land motor vehicle, trailer or semitrailer designed for travel on public roads; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

"Auto" does not include "mobile equipment".

4. "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

5. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

   a. The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

      (1) The day the policy period shown in the Declarations ends; or

      (2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

   b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

6. "Coverage territory" means anywhere.

7. "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

9. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any similar governing document.

10. "Hostile fire" means one that becomes uncontrollable or breaks out from where it was intended to be.

11. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement,

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

12. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business, other than a contract or agreement pertaining to the rental or lease of any "auto", (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

   g. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employ-

Includes copyrighted material of ISO Properties, Inc., with its permission.
000097

Paragraphs **f.** and **g.** do not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing. However, if such liability is insured by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, this Paragraph **(1)** shall not apply for such hazards for which insurance coverage is afforded by such "underlying insurance";

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities;

**(4)** That indemnifies an advertising, public relations or media consulting firm for "personal and advertising injury" arising out of the planning, execution or failure to execute marketing communications programs. Marketing communications programs include but are not limited to comprehensive marketing campaigns; consumer, trade and corporate advertising for all media; media planning, buying, monitoring and analysis; direct mail; promotion; sales materials; design; presentations; point-of-sale materials; market research; public relations and new product development;

**(5)** Under which the insured, if an advertising, public relations or media consulting firm, assumes liability for "personal and advertising injury" arising out of the insured's rendering or failure to render professional services, including those services listed in Paragraph **(4)**, above;

**(6)** That indemnifies a web-site designer or content provider, or Internet search, access, content or service provider for injury or damage arising out of the planning, execution or failure to execute Internet services. Internet Services include but are not limited to design, production, distribution, maintenance and administration of web-sites and web-banners; hosting web-sites; registering domain names; registering with search engines; marketing analysis; and providing access to the Internet or other similar networks;

**(7)** Under which the insured, if a web-site designer or content provider, or Internet search, access, content or service provider, assumes liability for injury or damage arising out of the insured's rendering or failure to render Internet services, including those listed in Paragraph **(6)**, above;

**(8)** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**(9)** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of an "auto" over a route or territory that person or organization is authorized to serve by public authority.

**13.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**14.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

Includes copyrighted material of ISO Properties, Inc., with its permission.
000098

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**16.** "Occurrence" means:

**a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage"; or

**b.** An offense that results in "personal and advertising injury".

All damages arising from the same accident, continuous or repeated exposure to substantially the same general harmful conditions, act or offense shall be deemed to arise from one "occurrence" regardless of:

**(1)** The frequency of repetition;

**(2)** The number or kind of media used; or

**(3)** The number of claimants.

**17.** "Personal and advertising injury" means injury, including "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** Abuse of process;

**d.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**e.** Defamation of character, including oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

Includes copyrighted material of ISO Properties, Inc., with its permission.
000099

**f.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**g.** The use of another's advertising idea in your "advertisement";

**h.** Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

**i.** Discrimination, unless insurance coverage therefor is prohibited by law or statute.

**18.** "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.   "Pollutants" include, but are not limited to, substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** The insured uses, generates or produces the "pollutant".

**19.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned.   However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the site has been completed, if your contract calls for work at more than one site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**20.** "Property damage" means:

**a.** Physical injury to or destruction of tangible property including all resulting loss of use.   All such loss of use shall be deemed to occur at the time of the physical injury or destruction that caused it; or

**b.** Loss of use of tangible property that is not physically injured.   All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**21.** "Subsidiary" means any organization in which more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors is owned or controlled, directly or indirectly, in any combination, by one or more of the Named Insureds.

**22.** "Suit" means a civil proceeding in which money damages because of "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies are alleged.  "Suit" includes:

**a.** An arbitration proceeding in which such money damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such money damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

Includes copyrighted material of ISO Properties, Inc., with its permission.
000100

**23.** "Temporary worker" means a person who is furnished to you to:

    **a.** Substitute for a permanent "employee" on leave; or

    **b.** Meet seasonal or short-term workload conditions.

**24.** "Ultimate net loss" means the sum actually paid or payable in the settlement or satisfaction of the insured's legal obligation for damages, covered by this insurance, either by adjudication or compromise. "Ultimate net loss" does not include Defense and Supplementary Payments as described in **SECTION I - COVERAGE, C. Defense and Supplementary Payments** of this Coverage Part.

**25.** "Underlying insurance" means the insurance listed in the Schedule of Underlying Insurance and the insurance available to the insured under all other insurance policies applicable to the "occurrence". "Underlying insurance" also includes any type of self-insurance or alternative method by which the insured arranges for funding of legal liabilities that affords coverage that this Coverage Part covers.

**26.** "Underlying limit" means the total of the applicable limits of all "underlying insurance" less the amount, if any, by which the applicable limit of the applicable policy listed in the Schedule of Underlying Insurance has been reduced solely by payment of loss resulting from claims which are in accordance with **SECTION I - COVERAGE, A. Insuring Agreement**, Paragraph **2.** of this Coverage Part.

**27.** "Workplace" means that place and during such hours to which the "employee" sustaining injury was assigned by you, or any other person or entity acting on your behalf, to work on the date of "occurrence".

**28.** "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product; and

        **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**29.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)** The providing of or failure to provide warnings or instructions.

Includes copyrighted material of ISO Properties, Inc., with its permission.
000101

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**

**A.** **SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

This insurance does not apply to:

1. Any liability:

   **a.** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **b.** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(1)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(2)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Any liability resulting from the "hazardous properties" of "nuclear material", if

   **a.** The "nuclear material" **(1)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(2)** has been discharged or dispersed therefrom,

   **b.** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   **c.** The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if

such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **c.** applies only to "property damage" to such "nuclear facility" and any property thereat.

**B.** **SECTION V - DEFINITIONS** is hereby modified to add the following definitions:

1. "Hazardous properties" include radioactive, toxic or explosive properties;

2. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

3. "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

4. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

5. "Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

6. "Nuclear facility" means:

   **a.** Any "nuclear reactor";

   **b.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", **(3)** or handling, processing or packaging "waste";

   **c.** Any equipment or device used for the processing, fabricating or alloying of "special nuclear materials", if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of

Includes copyrighted material of ISO Properties, Inc., with its permission.
000102

plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**d.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**7.** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**8.** "Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of ISO Properties, Inc., with its permission.
000103

# NOTICE TO POLICYHOLDERS
# COMMERCIAL UMBRELLA POLICY PROGRAM

This is a summary of the major changes found in the new edition of the Commercial Umbrella Coverage Form.  NO COVERAGE IS PROVIDED BY THIS SUMMARY nor can it be construed to replace any provision of your policy.  YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE for complete information on the coverages you are provided.  If there is any conflict between the policy and this summary, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

The areas within the policy that broaden, reduce or clarify coverage are highlighted below.  We have followed the policy sequence of provisions in setting out this material.

## I.   BROADENING OF COVERAGE

**A.**   Section **I**, **B.** Exclusions:

Revised the **Pollutant - Other Than Auto** exclusion to provide additional exceptions, in addition to heating equipment, for equipment used to cool, dehumidify and heat water in a building.

**B.**   Section **I**, **C.** Defense and Supplementary Payments:

Revised coverage for post-judgment interest so that it applies to the full amount of a judgement in lieu of only that amount within our Limit of Insurance.

**C.**   Section **IV** - Conditions:

Revised the **Liberalization** Condition so that it applies to changes made 60 days, in lieu of 45, prior to the inception of the policy period.

## II.  CLARIFICATION OF COVERAGE

**A.**   Section **I**, **B.** Exclusions:

**1.**   Added the **Distribution of Material in Violation of Statutes** exclusion.

**2.**   Added the **Electronic Data** exclusion.

**3.**   Added total pollutant exclusion verbiage to the **Pollutant - Other Than Auto** exclusion for the "personal and advertising injury" hazard, although any liability arising from "pollutants" excluded by "underlying insurance" was already excluded.

**4.**   Replaced the verbiage in the **War** exclusion with more restrictive language previously added by a mandatory endorsement.

**B.**   Section **I**, **C.** Defense and Supplementary Payments revised to clarify that:

**1.**   The amount of pre-judgment interest covered is only the amount attributable to the portion of a judgement that falls within the applicable Limit of Insurance; and

**2.**   Defense and Supplementary Payments do not reduce the limit of insurance, unless such payments reduce the "underlying insurance" limit of insurance.  Such as when the assumed defense obligations to an indemnitee reduce the underlying Commercial General Liability Limits of insurance.

**C.**   Section **II** - Who Is An Insured:

Paragraph **1.c.,** which addressed "mobile equipment" subject to motor vehicle registration has been deleted, as such vehicles are now considered "autos", and as such is addressed by Paragraph **2.** of this Section.

**D.**   Section **IV** - Conditions:

Revised the **Other Insurance** Condition to reinforce the fact that:

**1.**   Coverage is excess of all other insurance, except that written specifically to be excess of this policy; and

**2.**   This policy will not contribute its Limit of Insurance until all other insurance, except that written specifically to be excess of this policy, has been exhausted.

**E.**   Section **V** - Definitions:

**1.**   The definition of "auto" has been revised to include, in addition to motor vehicles and trailers designed to travel on public roads, any other land vehicle subject to motor vehicle insurance law in the jurisdiction where it is licensed and garaged.

**2.**   The definition of "mobile equipment" has been revised to clarify that:

**a.** Self-propelled vehicles with certain types of permanently attached vehicles will be considered "autos"; and

**b.** The definition does not include vehicles subject to motor vehicle laws, as such vehicles are considered "autos".

**III. REDUCTIONS OF COVERAGE**

Section **V** - Definitions

The definition of "pollutant" is amended to specifically mention petroleum in addition to petroleum products and petroleum by-products.

# NOTICE TO POLICYHOLDERS - MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - LIMITATION

This is a notice of a change in your policy. NO COVERAGE IS PROVIDED BY THIS NOTICE nor can it be construed to replace any provisions of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE for complete information on the coverage you are provided. If there is any conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**US 4062** Mobile Equipment Subject to Motor Vehicle Insurance Laws - Limitation has been added to your policy.

This endorsement makes the umbrella follow-form to the primary insurance with respect to mobile equipment subject to motor vehicle insurance laws. This eliminates possible gaps and arguments over which underlying policy, i.e., CGL or auto, should apply to such mobile equipment. Other coverage gaps may still exist arising from the revised definitions of "mobile equipment" and "auto".

**US 4063 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTORS LIMITATIONS - INCLUDING EXCESS WRAP-UP COVERAGE

This endorsement modifies insurance provided under the following:

> **COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph **1.**) is modified as follows:

**I.** The following exclusions are hereby added:

  **A.** This insurance does not apply to:

    **1.** "Property damage" to:

      **a.** Leased, rented, or borrowed equipment; or

      **b.** Property being transported, installed, erected, or worked upon by the insured or any contractors or subcontractors working directly or indirectly on any insured's behalf.

    **2.** Any liability arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

      **a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; or

      **b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

    Professional services include:

      **a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

      **b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury", "property damage" or "personal and advertising injury", involved the professional services described in Paragraph **I.A.2.**

However, to the extent coverage is provided by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is afforded by such "underlying insurance", professional services shall not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

  **B.** The following exclusions apply, unless insurance is provided to the insured by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, but only to the extent insurance is provided at the "underlying limit" scheduled for such "underlying insurance" and subject to all its limitations and exclusions:

This insurance does not apply to:

    **1.** "Property damage" arising out of:

      **a.** Blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000107

**b.** The collapse of or structural injury to any building or structure due to:

**(1)** Grading of land, excavating, burrowing, filling or backfilling, tunneling, pile driving, cofferdam work or caisson work; or

**(2)** Moving, shoring, underpinning, raising, or demolition of any building or structure or removal or rebuilding of any structural support thereof.

**2.** "Property damage" to wires, conduit, pipes, drains, sewers, tanks, tunnels or other similar property, or any apparatus in connection therewith, below the surface of the ground, if such "property damage" is caused by and occurs during the use of mechanical equipment for the purpose of grading of land, paving, excavating, drilling, burrowing, filling, backfilling, or pile driving.

**3.** Any liability arising out of any project insured at any time under an owner or contractor controlled insurance program (often referred to as a wrap-up plan or program) or similar insurance plan or program.

**II.** Exclusion **3. Contractual Liability** (Exclusion **1.c.** in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made) is deleted and replaced by the following:

This insurance does not apply to:

Any liability for which any insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply if such liability is insured by valid and collectible "underlying insurance", as listed and described in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is afforded by such "underlying insurance".

**III.** Exclusion **7. Damage to Your Work** (Exclusion **1.g.** in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made) is deleted and replaced by the following:

This insurance does not apply to:

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor, provided such liability is insured by valid and collectible "underlying insurance", as listed and described in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is afforded by such "underlying insurance".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000108

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLLUTANT EXCLUSION - OTHER THAN AUTO

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph **1.**) is modified as follows:

Exclusion **17. Pollutant - Other Than Auto** (Exclusion **1.q.** in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made) is hereby deleted and replaced by the following:

**Pollutant - Other Than Auto**

This insurance does not apply to:

**a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

    **(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

    **(2)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **(3)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    **(4)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

Subparagraphs **a.(1)** and **a.(4)** do not apply:

    **(a)** To "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

    **(b)** If insurance is provided to the insured by "underlying insurance" specifically listed in the Schedule of Underlying Insurance at the "underlying limit" scheduled, but only to the extent "bodily injury" or "property damage" coverage is provided by that "underlying insurance" specifically listed in the Schedule of Underlying Insurance and subject to all its terms and conditions.

    **(5)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

**b.** "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape emission of "pollutants" at any time.

**c.** Any loss, cost or expense arising out of any:

    **(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(2)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

    **d.** Any liability caused by "pollutants" excluded by "underlying insurance".

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM WITH SPECIFIED EXCEPTIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**A.** **SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: subparagraph **1.**) is modified to add the following:

**1.** This insurance does not apply to any liability that arises out of, is caused by, or is attributable to, whether in whole or in part, an "EIFS/DEFS incident".

**2.** Exclusion **1.** above also applies to any liability:

**a.** For which any insured assumes liability in any part of any contract or agreement, regardless of whether such contract or agreement is an "insured contract";

**b.** Arising out of, caused by, or attributable to, whether in whole or in part, warranties or representations made at any time with respect to the fitness, quality, durability or performance of a "wall finish system"; and

**c.** Arising out of, caused by, or attributable to, whether in whole or in part, the providing of or failure to provide any warnings or instructions with regard to a "wall finish system".

**3.** Exclusions **1.** and **2.** above apply only if the injury or damage is caused, directly or indirectly, in whole or in part, by water-related or moisture-related entry into, or dry rot of, a structure to which a "wall finish system" has been installed and only if that water-related or moisture-related entry, or dry rot, is caused, directly or indirectly, in whole or in part, by the "wall finish system".

**4.** Regardless of the applicability of Paragraph **3.** above, exclusions **1.** and **2.** above do not apply to an "EIFS/DEFS incident" if all four of the following conditions are met:

**a.** The "wall finish system" is a "drainable or water managed system"; and

**b.** The substrate that forms a part of the "wall finish system", or to which the "wall finish system" is attached, is non-combustible, such as gypsum sheathing, or is one of the following types of construction:

**(1)** Non-combustible construction meaning structures where the exterior walls and the floors are constructed of, and supported by, metal, gypsum or other non-combustible materials; or

**(2)** Masonry non-combustible construction meaning structures where the exterior walls are constructed of masonry materials such as adobe, brick, concrete, gypsum block, hollow concrete block, stone, tile or similar materials, with the floors and roof being metal or other non-combustible materials; or

**(3)** Modified fire resistive or fire resistive construction meaning structures where the exterior walls and the floors and roof are constructed of masonry or fire resistive materials having a fire resistance rating of one hour or more; and

**c.** The structure on which the "wall finish system" is installed is not intended for "residential" occupancy.

**d.** "Underlying insurance" at the "underlying limit" listed in the Schedule of Underlying Insurance applies to the "EIFS/DEFS incident" described in **4.a.**, **b.** and **c.** above.

**B.** For purposes of this endorsement, the following is added to **SECTION III - LIMITS OF INSURANCE**:

**Limit Reduction**

Paragraph **2.**, the Aggregate Limit and Paragraph **4.**, the Each Occurrence Limit will be reduced by the amount of damages we pay for

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000110

all "bodily injury", "personal and advertising injury" or "property damage" arising out of an "EIFS/DEFS incident".

**C.** For purposes of this endorsement only, **SECTION IV - CONDITIONS, 4. Duties in the Event of Occurrence, Claim or Suit** is deleted in its entirety and replaced by the following:

> **4.** **Duties in the Event of Incident, Claim or Suit**
>
> > **a.** You must see to it that we are notified as soon as practicable of an "EIFS/DEFS incident" that may result in a claim, irrespective of the amount. To the extent possible, notice should include:
> >
> > > **(1)** What the incident was and when it occurred; and
> > >
> > > **(2)** The names and addresses of anyone who may suffer damages as a result of the incident.
> >
> > **b.** If a claim is made or "suit" is brought against any insured, you must:
> >
> > > **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
> > >
> > > **(2)** Notify us as soon as practicable.
> >
> > You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
> >
> > **c.** You and any other involved insured must:
> >
> > > **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
> > >
> > > **(2)** Authorize us to obtain records and other information;
> > >
> > > **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
> > >
> > > **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an incident to which this insurance may also apply.
> >
> > **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**D.** For the purpose of this endorsement only, **SECTION V - DEFINITIONS** is amended as follows:

> **1.** The following definitions are added:

> > **a.** "Direct-applied exterior finish system" (commonly referred to as DEFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:
> >
> > > **(1)** A rigid or semi-rigid substrate;
> > >
> > > **(2)** The adhesive and/or mechanical fasteners used to attach the substrate to the structure including any water-durable exterior wall substrate;
> > >
> > > **(3)** A reinforced or unreinforced base coat or mesh;
> > >
> > > **(4)** A finish coat providing surface texture to which color may be added; and
> > >
> > > **(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose;
> >
> > that interact to form an energy efficient wall.
> >
> > **b.** "Drainable or water managed system" means a "wall finish system":
> >
> > > **(1)** With a secondary weather-resistant barrier that protects the substrate; and
> > >
> > > **(2)** That includes a drainage feature that is specifically designed to channel water to the outside of the "wall finish system".
> >
> > **c.** "Exterior insulation and finish system" (commonly referred to as synthetic stucco or EIFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:
> >
> > > **(1)** A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;
> > >
> > > **(2)** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;
> > >
> > > **(3)** A reinforced or unreinforced base coat or mesh;
> > >
> > > **(4)** A finish coat providing surface texture to which color may be added; and
> > >
> > > **(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose;
> >
> > that interact to form an energy efficient wall.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

000111

**d.** "EIFS/DEFS incident" means an incident that would not have occurred, in whole or in part, but for:

**(1)** The design, manufacture, sale, service, handling, construction, fabrication, preparation, installation, application, maintenance, disposal or repair, including remodeling, service, correction, or replacement, of a "wall finish system", or any part thereof, including any method or procedure used to correct problems with installed or partially installed "wall finish systems"; or

**(2)** Any work or operations conducted by or on behalf of any insured on or to a "wall finish system", or any component thereof, or any component of a building or structure to which a "wall finish system" attaches, that results, directly or indirectly, in the intrusion of water or moisture, including any resulting development or presence of "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**e.** "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**f.** "Residential" means:

**(1)** A structure used, or intended, in whole or in part, for the purpose of human habitation, and includes, but is not limited to, single-family housing, multi-family housing, tract homes, condominiums, cooperatives, townhomes, townhouses, planned-unit developments and timeshares;

**(2)** A structure converted, or being converted, in whole or in part, into condominiums or cooperatives; and

**(3)** Common areas and grounds, appurtenant structures and facilities, of the structures described in **(1)** and **(2)** above, except a public street, public road, public right of way, or public utility

easement located on or near such common areas and grounds.

"Residential" does not include:

**(1)** Hospitals, jails or prisons; and

**(2)** Provided there is no individual ownership of units and that such was not, in whole or in part, at any time, marketed, sold, occupied or used as single-family housing, multi-family housing, or as a condominium, cooperative, townhouse, townhome or timeshare:

**(a)** Government housing on military bases;

**(b)** College/university dormitories;

**(c)** Apartmetns;

**(d)** Long-term care facilities;

**(e)** Assisted living facilities;

**(f)** Nursing homes; and

**(g)** Hotels or motels.

**g.** "Wall finish system" means:

**(1)** An "exterior insulation and finish system";

**(2)** A "direct-applied exterior finish system"; or

**(3)** Any energy efficient exterior cladding or finish system substantially similar to Paragraph **g.(1)** or **(2)** above.

**2.** Definition **22.** Suit is deleted in its entirety and replaced by the following:

**22.** "Suit" means a civil proceeding in which damages because of an "EIFS/DEFS incident" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000112

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART - CLAIMS MADE**

**I.** **SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph **1.**) is modified to add the following:

This insurance does not apply to:

**a.** Any liability caused directly or indirectly, in whole or in part, by any actual, alleged or threatened:

**(1)** Inhalation of;

**(2)** Ingestion of;

**(3)** Contact with;

**(4)** Absorption of;

**(5)** Exposure to;

**(6)** Existence of; or

**(7)** Presence of,

any "fungi" or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually;

**b.** Any loss, cost or expense associated in any way with, or arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, mitigating or disposing of, or in any way responding to, investigating, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity;

**c.** Any liability, with respect to "fungi" or bacteria, arising out of, resulting from, caused by, contributed to, or in any way related to

any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with:

**(1)** The existence of "fungi" or bacteria;

**(2)** The prevention of "fungi" or bacteria;

**(3)** The remediation of "fungi" or bacteria;

**(4)** Any operation described in Paragraph **b.** above;

**(5)** "Your product"; or

**(6)** "Your work"; or

**d.** Any obligation to share damages with or repay any person, organization or entity, related in any way to the liability excluded in Paragraphs **a.**, **b.** or **c.** above;

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to the injury or damage.

However this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for human ingestion.

**II.** For the purposes of this endorsement, **SECTION V - DEFINITIONS** is amended to include the following:

"Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

US 3048 12 04                    Includes copyrighted material of ISO
                                 Properties, Inc., with its permission.
                                 000113

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

> **COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph **1.**) is modified to delete Exclusion **10. Electronic Data** in its entirety and replace it with the following:

This insurance does not apply to:

**10. Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

Any liability arising out of:

**a.** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**b.** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **a.** or **b.** above.

However, this exclusion does not apply:

**(1)** To damages because of "bodily injury", unless Paragraph **a.** above applies; and

**(2)** When such insurance is provided by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance, or would have been provided by such listed "underlying insurance" except for the exhaustion by payment of claims of its limits of insurance, and then only for such hazards for which coverage is provided by such "underlying insurance", unless otherwise excluded by this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000114

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - LIMITATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only:  Subparagraph **1.**) is modified to add the following:

This insurance does not apply to:

Any liability arising out of the ownership, maintenance, occupancy, operation, use, "loading or unloading" of any land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law, unless such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is afforded by such "underlying insurance", unless otherwise excluded by this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
000115

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFIT LIABILITY

This endorsement modifies insurance provided under the following:

> **COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

This policy is modified to add the following:

**I.**    **SECTION I - COVERAGE, A. Insuring Agreement(s)** is modified to add the following:

**EMPLOYEE BENEFIT LIABILITY:**

We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages because of any negligent act, error or omission of the insured or any other person for whose acts the insured is legally liable arising out of the administration of the insured's employee benefit pro-grams.

This insurance applies only to negligent acts, errors or omissions:

**a.**    Whose damages are in excess of the "underlying insurance" provided by an Employee Benefit Lia-bility policy listed in the Schedule of Underlying Insurance; and

**b.**    Which occur during the policy period.

**II.**    **SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only:  Subparagraph **1.**) is modified to add the following exclusion:

This insurance does not apply to:

Any liability arising out of employee benefit programs unless such liability is covered by valid and collecti-ble "underlying insurance" as listed in the Schedule of Underlying Insurance, and then only for such haz-ards for which coverage is afforded by such "underlying insurance".

**US 407 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION - IV CONDITIONS** is amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**US 4098 04 10**

# THE CINCINNATI CASUALTY COMPANY
A Stock Insurance Company

# CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

| | |
|---|---|
| Attached to and forming part of POLICY NUMBER: `ENP 046 05 30` | Effective Date `10-17-2018` |

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:** `10-17-2018`

## Limits of Insurance and Deductible

| | Insuring Agreement | Annual Aggregate | | Sublimit | Deductible |
|---|---|---|---|---|---|
| **A** | Response Expenses | $50,000 | | | $1,000 |
| | | | Forensic IT Review | $25,000 | |
| | | | Legal Review | $25,000 | |
| | | | PR Services | $25,000 | |
| **B** | Defense and Liability | $50,000 | | | $1,000 |
| | | | Regulatory Fines and Penalties | $25,000 | |
| | | | PCI Fines and Penalties | $25,000 | |
| **C** | Identity Recovery | $25,000 | | | $250 |
| | | | Lost Wages and Child and Elder Care | $5,000 | |
| | | | Mental Health Counseling | $1,000 | |
| | | | Miscellaneous Unnamed Costs | $1,000 | |

| **TOTAL ANNUAL PREMIUM** | $143 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 28 |
| 2 YEAR | 56 |
| 3 YEAR | 74 |
| 4 YEAR | 93 |
| 5 YEAR | 102 |
| 6 YEAR | 111 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| HC102 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE FORM |
| HC477AL | 08/16 | ALABAMA CHANGES - LEGAL ACTION AGAINST US |

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

### TABLE OF CONTENTS

| Coverage Part Provision: | | Begins on Page: |
|---|---|---|

Preamble ......................................................................................................................... 3

**SECTION I - COVERAGES** ............................................................................................ 3

A.  Insuring Agreements ................................................................................................ 3

    1.  Insuring Agreement A - Response Expenses ..................................................... 3
    2.  Insuring Agreement B - Defense and Liability ..................................................... 5
    3.  Insuring Agreement C - Identity Recovery ........................................................... 5

B.  Exclusions .................................................................................................................. 5

    1.  Applicable to Insuring Agreements **A** and **B** ........................................................ 5

        a.  Contractual Liability ..................................................................................... 5
        b.  Criminal Investigations or Proceedings ..................................................... 5
        c.  Deficiency Correction ................................................................................... 5
        d.  Extortion ......................................................................................................... 6
        e.  Fraudulent, Dishonest or Criminal Acts ..................................................... 6
        f.  Non-monetary Relief ..................................................................................... 6
        g.  Previously Reported Data Compromises ..................................................... 6
        h.  Prior Data Compromises ............................................................................... 6
        i.  Prior or Pending Litigation ........................................................................... 6
        j.  Reckless Disregard ....................................................................................... 6
        k.  Uninsurable ..................................................................................................... 6
        l.  Willful Complicity ........................................................................................... 6

    2.  Applicable to Insuring Agreement **C** ....................................................................... 6

        a.  Fraudulent, Dishonest or Criminal Acts ..................................................... 6
        b.  Professional or Business Identity ............................................................... 6
        c.  Unreported Identity Theft ............................................................................. 6

    3.  Applicable to Insuring Agreements **A, B** and **C** ................................................... 6

        a.  Nuclear ........................................................................................................... 6
        b.  War ................................................................................................................. 6

**SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE** ........................................ 7

**SECTION III - DEFENSE AND SETTLEMENT** ............................................................. 8

**SECTION IV - CONDITIONS** ......................................................................................... 8

    1.  Bankruptcy ............................................................................................................. 8
    2.  Due Diligence ......................................................................................................... 8
    3.  Duties in the Event of a Claim, Regulatory Proceeding or Loss ....................... 9
    4.  Help Line ................................................................................................................. 10
    5.  Legal Action Against Us ....................................................................................... 10
    6.  Legal Advice ........................................................................................................... 10
    7.  Liberalization ......................................................................................................... 10
    8.  Office of Foreign Assets Control (OFAC) Compliance ....................................... 11
    9.  Other Insurance ..................................................................................................... 11
    10. Pre-Notification Consultation .............................................................................. 11
    11. Representations ..................................................................................................... 11
    12. Separation of Insureds ......................................................................................... 11
    13. Service Providers ................................................................................................... 11
    14. Services ................................................................................................................... 11
    15. Subrogation ............................................................................................................ 12
    16. Valuation - Settlement ........................................................................................... 12
    17. When We Do Not Renew ......................................................................................... 12

HC 102 01 18          Includes copyrighted material of Insurance Services Office, Inc. with its permission.          Page 1 of 17

000120

## TABLE OF CONTENTS (CONT'D)

**Coverage Part Provision:**                                                            **Begins on Page:**

**SECTION V - EXTENDED REPORTING PERIODS** ...........................................................................12

**SECTION VI - DEFINITIONS** ...........................................................................................................13

1.  "Affected individual" ...........................................................................................13
2.  "Authorized representative" ...............................................................................13
3.  "Claim" ................................................................................................................13
4.  "Coverage term" ................................................................................................13
5.  "Coverage territory" ..........................................................................................14
6.  "Data compromise liability" ...............................................................................14
7.  "Defense costs" .................................................................................................14
8.  "Employee" .........................................................................................................14
9.  "Executive" .........................................................................................................15
10. "Identity recovery case manager" .....................................................................15
11. "Identity recovery expenses" .............................................................................15
12. "Identity recovery insured" ................................................................................16
13. "Identity theft" ...................................................................................................16
14. "Insured" ............................................................................................................16
15. "Loss" .................................................................................................................16
16. "Named insured" ................................................................................................16
17. "Personal data compromise" .............................................................................16
18. "Personally identifying information" ..................................................................17
19. "Personally sensitive information" .....................................................................17
20. "Policy period" ...................................................................................................17
21. "Regulatory proceeding" ...................................................................................17

HC 102 01 18                    Includes copyrighted material of Insurance                    Page 2 of 17
                                Services Office, Inc. with its permission.
                                              000121

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DE-DUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

**1. Insuring Agreement A - Response Expenses**

**a.** Coverage under Insuring Agreement **A** - Response Expenses applies only if all of the following conditions are met:

**(1)** There has been a "personal data compromise"; and

**(2)** Such "personal data compromise" is first discovered by you during the "coverage term"; and

**(3)** Such "personal data compromise" took place in the "coverage territory"; and

**(4)** Such "personal data compromise" is reported to us within 60 days after the date it is first discovered by you.

**b.** If the conditions listed in **a.** above have been met, then we will provide coverage for the following expenses when they arise directly from the "personal data compromise" described in **a.** above and are necessary and reasonable. Coverages **(4)** and **(5)** apply only if there has been a notification of the "personal data

compromise" to "affected individuals" as covered under coverage **(3)**.

**(1) Forensic IT Review**

Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

This does not include costs to analyze, research or determine any of the following:

**(a)** Vulnerabilities in systems, procedures or physical security;

**(b)** Compliance with PCI or other industry security standards; or

**(c)** The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(2) Legal Review**

Professional legal counsel review of the "personal data compromise" and how you should best respond to it. If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000122

Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(3) Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

**(4) Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals":

**(a)** The following services apply to any "personal data compromise".

**1)** Informational Materials

A packet of loss prevention and customer support information.

**2)** Help Line

A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in **(b)1)** and **2)** below.

Note, calls by "affected individuals" or their representatives to the Help Line do not constitute the making of a "claim" under Insuring Agreement **B** - Defense and Liability.

**(b)** The following additional services apply to "personal data compromise" events involving "personally identifying information".

**1)** Credit Report and Monitoring

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

**2)** Identity Restoration Case Management

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

**(5) PR Services**

We will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships. We will only pay for such fees and expenses when such a public relations firm review and response is reasonably necessary to avert or mitigate material damage to your business relationships from the "personal data compromise".

Such fees and expenses include costs to implement public relations recommendations of such public relations firm. However, when such recommendations include advertising and special promotions designed to retain your relationship with "affected individuals", we will not pay for promotions:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000123

**(a)** Provided to any of your "ex-ecutives" or "employees"; or

**(b)** Costing more than $25 per "affected individual".

**2. Insuring Agreement B - Defense and Liability**

**a.** Coverage under Insuring Agreement **B** - Defense and Liability applies only if all of the following conditions are met:

**(1)** During the "coverage term" or any applicable Extended Report-ing Period, you first receive no-tice of a "claim" or "regulatory proceeding" which arises from a "personal data compromise" that:

**(a)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy peri-od";

**(b)** Took place in the "coverage territory"; and

**(c)** Was submitted to us and covered under Insuring Agreement **A** - Response Expenses; and

**(2)** Such "claim" or "regulatory pro-ceeding" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" "defense costs" and "data com-promise liability" directly arising from the "claim" or "regulatory proceeding".

**c.** All "claims" or "regulatory proceed-ings" caused by a single "personal data compromise" will be deemed to have been made at the time that no-tice of the first of those "claims" or "regulatory proceedings" is received by you.

**3. Insuring Agreement C - Identity Recov-ery**

**a.** Coverage under Insuring Agreement **C** - Identity Recovery applies only if all of the following conditions are met:

**(1)** There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this Coverage Part; and

**(2)** Such "identity theft" is first dis-covered by the "identity recovery insured" during the "coverage term"; and

**(3)** Such "identity theft" took place in the "coverage territory"; and

**(4)** Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured".

**b.** If the conditions listed in **a.** above have been met, then we will provide the following to the "identity recovery insured":

**(1)** Services of an "identity recovery case manager" as needed to re-spond to the "identity theft"; and

**(2)** Reimbursement of necessary and reasonable "identity recov-ery expenses" incurred as a di-rect result of the "identity theft".

**B. Exclusions**

**1.** Applicable to Insuring Agreements **A** and **B** only:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Contractual Liability**

An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclu-sion shall not apply to:

**(1)** Any liability that an "insured" would have incurred in the ab-sence of such contract or agreement; or

**(2)** Any PCI fines or penalties explic-itly covered under Insuring Agreement **B** – Defense and Li-ability.

**b. Criminal Investigations or Pro-ceedings**

Any criminal investigations or pro-ceedings.

**c. Deficiency Correction**

Costs to research or correct any defi-ciency. This includes, but is not limit-ed to, any deficiency in your sys-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000124

tems, procedures or physical security that may have contributed to a "personal data compromise".

**d. Extortion**

Any extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

**e. Fraudulent, Dishonest or Criminal Acts**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

**f. Non-monetary Relief**

That part of any "claim" seeking any non-monetary relief.

**g. Previously Reported Data Compromises**

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

**h. Prior Data Compromises**

Any "personal data compromise" first occurring before the Retroactive Date shown in the Declarations, or any "claim" arising from a "personal data compromise" that first occurred prior to the Retroactive Date shown in the Declarations.

**i. Prior or Pending Litigation**

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

**j. Reckless Disregard**

Your reckless disregard for the security of "personally identifying information" or "personally sensitive information" in your care, custody or control.

**k. Uninsurable**

Any amount not insurable under applicable law.

**l. Willful Complicity**

The "insured's" intentional or willful complicity in a "personal data compromise".

**2.** Applicable to Insuring Agreement **C** only:

This insurance does not apply to:

**a. Fraudulent, Dishonest or Criminal Acts**

Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any "authorized representative" of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

**b. Professional or Business Identity**

The theft of a professional or business identity.

**c. Unreported Identity Theft**

An "identity theft" that is not reported in writing to the police.

**3.** Applicable to Insuring Agreements **A, B** and **C**:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Nuclear**

Nuclear reaction or radiation or radioactive contamination, however caused.

**b. War**

**(1)** War, including undeclared or civil war or civil unrest;

**(2)** Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000125

## SECTION II - LIMITS OF INSURANCE AND DE-DUCTIBLE

**A.** Insuring Agreement **A** - Response Expenses:

**1.** The most we will pay under Insuring Agreement **A** - Response Expenses is the Response Expenses Limit of Insurance stated in the Declarations.

**2.** The Response Expenses Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Response Expenses arising out of all "personal data compromise" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

**3.** A "personal data compromise" may be first discovered by you in one "coverage term" but cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "personal data compromise" will be subject to the Response Expenses Limit of Insurance applicable to the "coverage term" when the "personal data compromise" was first discovered by you.

**4.** The most we will pay under Insuring Agreement **A** - Response Expenses for Forensic IT Review, Legal Review and PR Services coverages for "loss" arising from any one "personal data compromise" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.** PR Services coverage is also subject to a limit per "affected individual" as described in Section **I., A.1.b.(5)** PR Services.

**5.** Coverage for Services to "affected individuals" is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals" or the period required by law, whichever is longer. Notwithstanding the foregoing, coverage for Identity Restoration Case Management services initiated within such period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

**6.** Response Expenses coverage is subject to the Response Expenses Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount in order to respond effectively to a "personal data compromise" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**B.** Insuring Agreement **B** - Defense and Liability:

**1.** The most we will pay under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) is the Limit of Insurance stated in the Declarations.

**2.** The Insuring Agreement **B** - Defense and Liability Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for all "loss" covered under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) arising out of all "claims".

**3.** The most we will pay under Insuring Agreement **B** – Defense and Liability for "data compromise liability" and "defense costs" related to Regulatory Fines and Penalties and PCI Fines and Penalties coverages arising from any one "claim" or "regulatory proceeding" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.**

**4.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Defense and Liability Limit for the immediately preceding "coverage term".

**5.** The Insuring Agreement **B** - Defense and Liability coverage is subject to the Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "claim" or "regulatory proceeding" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim", "loss" or "regulatory proceeding" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**C.** Insuring Agreement **C** - Identity Recovery:

**1.** Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the Limit of Insurance available for "identity recovery expenses".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000126

2. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Annual Aggregate Limit of Insurance stated in the Declarations per "identity recovery insured". Regardless of the number of "identity theft" incidents, this limit is the most we will pay for the total of all "loss" arising out of all "identity thefts" suffered by one "identity recovery insured" which are first discovered by the "identity recovery insured" during the "coverage term". If an "identity theft" is first discovered in one "coverage term" and continues into other "coverage terms", all "loss" arising from such "identity theft" will be subject to the aggregate Limit of Insurance applicable to the "coverage term" when the "identity theft" was first discovered.

3. Legal costs as provided under Item **d.** of the definition of "identity recovery expenses" are part of, and not in addition to, the aggregate limit described in Paragraph **2.**

4. Item **e.** (Lost Wages) and Item **f.** (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

5. Item **g.** (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate limit described in Paragraph **2.** Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

6. Item **h.** (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

7. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Identity Recovery Deductible stated in the Declarations. Each "identity recovery insured" shall be responsible for such deductible amount only once during each "coverage term". This deductible applies only to "identity recovery expenses".

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

1. We will have the right and duty to select counsel and defend the "insured" against any "claim" or "regulatory proceeding" covered by Insuring Agreement **B** - Defense and Liability, regardless of whether the allegations of such "claim" or "regulatory proceeding" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" or "regulatory proceeding" seeking damages or other relief not insured by Insuring Agreement **B** - Defense and Liability.

2. We may, with your written consent, make any settlement of a "claim" or "regulatory proceeding" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" or "regulatory proceeding" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

3. We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim" or "regulatory proceeding", after the Insuring Agreement **B** - Defense and Liability Limit of Insurance has been exhausted.

4. We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance which accrues:

    a. After entry of judgment; and

    b. Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Defense and Liability Limit of Insurance.

    These interest payments shall be in addition to and not part of the Defense and Liability Limit.

## SECTION IV – CONDITIONS

1. **Bankruptcy**

    Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

2. **Due Diligence**

    You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000127

comply with, reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security;

**c.** Maintaining and updating at appropriate intervals backups of computer data;

**d.** Protecting transactions, such as processing credit card, debit card and check payments; and

**e.** Appropriate disposal of files containing "personally identifying information" or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

**3.** **Duties in the Event of a Claim, Regulatory Proceeding or Loss**

**a.** If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim" or "regulatory proceeding", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

**(1)** The specific details, including the date, of the circumstance;

**(2)** The alleged injuries or damage sustained or which may be sustained;

**(3)** The names of potential claimants; and

**(4)** The manner in which the "insured" first became aware of the circumstance.

Any subsequent "claim" or "regulatory proceeding" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" or "regulatory proceeding" is brought against any "insured", you must:

**(1)** Immediately record the specifics of the "claim" or "regulatory proceeding" and the date received; and

**(2)** Provide us with written notice, as soon as practicable, but in no event

more than 60 days after the date the "claim" or "regulatory proceeding" is first received by you.

**(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "regulatory proceeding";

**(4)** Authorize us to obtain records and other information;

**(5)** Cooperate with us in the investigation, settlement or defense of the "claim" or "regulatory proceeding";

**(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" or "defense costs" to which this insurance may also apply; and

**(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim" or "regulatory proceeding".

**c.** In the event of a "personal data compromise" covered under Insuring Agreement **A** - Response Expenses, you must see that the following are done:

**(1)** Notify the police if a law may have been broken.

**(2)** Notify us as soon as practicable, but in no event more than 60 days after the "personal data compromise". Include a description of any property involved.

**(3)** As soon as possible, give us a description of how, when and where the "personal data compromise" occurred.

**(4)** As often as may be reasonably required, permit us to:

**(a)** Inspect the property proving the "personal data compromise";

**(b)** Examine your books, records, electronic media and records and hardware;

**(c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

**(d)** Make copies from your books, records, electronic media and records and hardware.

**(5)** Send us signed, sworn proof of loss containing the information we request

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000128

to investigate the "personal data compromise". You must do this within 60 days after our request. We will supply you with the necessary forms.

**(6)** Cooperate with us in the investigation of the "personal data compromise" or settlement of the "loss".

**(7)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

**(8)** Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our prior written consent.

**(9)** Promptly send us any legal papers or notices received concerning the "personal data compromise" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4.   Help Line**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-866-219-9831**. The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

**a.** Information and advice for how to respond to a possible "identity theft"; and

**b.** Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records

that support his or her claim for "identity recovery expenses".

**5.   Legal Action Against Us**

**a.** No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

**(2)** To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**6.   Legal Advice**

We are not your legal advisor. Our determination of what is or is not covered under this Coverage Part does not represent advice or counsel from us about what you should or should not do.

**7.   Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current "policy period". We will make no additional premium charge for this additional coverage during the interim.

### 8. Office of Foreign Assets Control (OFAC) Compliance

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

### 9. Other Insurance

**a.** If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part by reference in such other policy to this policy's policy number.

**b.** When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

### 10. Pre-Notification Consultation

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under this Coverage Part for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under Condition **12.** Service Providers. You must provide the following at our pre-notification consultation with you:

**a.** The exact list of "affected individuals" to be notified, including contact information.

**b.** Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

**c.** The scope of services that you desire for the "affected individuals". For example, coverage may be structured to provide fewer services in order to make those services available to more "affected individuals" without exceeding the available Response Expenses Limit.

### 11. Representations

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

### 12. Separation of Insureds

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom a "claim" is made.

### 13. Service Providers

**a.** We will only pay under this Coverage Part for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Coverage Part. We will not unreasonably withhold such approval.

**b.** Prior to the Pre-Notification Consultation described in the Pre-Notification Consultation Condition above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

**(1)** Such alternate service provider must be approved by us;

**(2)** Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

**(3)** Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

### 14. Services

The following conditions apply as respects any services provided to you or any "affected indi-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000130

vidual" or "identity recovery insured" by us, our designees or any service firm paid for in whole or in part under this Coverage Part:

**a.** The effectiveness of such services depends on the cooperation and assistance of you, "affected individuals" and "identity recovery insureds".

**b.** All services may not be available or applicable to all individuals. For example, "affected individuals" and "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

**c.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**d.** Except for the services of an "identity recovery case manager" under Insuring Agreement **C** - Identity Recovery, which we will provide directly, you will have a direct relationship with the professional service firms paid for in whole or in part under this Coverage Part. Those firms work for you.

## 15. Subrogation

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, shall be distributed as follows:

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

## 16. Valuation - Settlement

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United

States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

## 17. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - EXTENDED REPORTING PERIODS

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

**a.** You or we cancel this Coverage Part;

**b.** You or we refuse to renew this Coverage Part; or

**c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

**a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Automatic Extended Reporting Period for any "personal data compromise" occurring on or after the Retroactive Date shown on the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

**b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Supplemental Extended Reporting Period

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000131

for any "personal data compromise" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

**c.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods shall be part of, and not in addition to, the Defense and Liability Limit of Insurance for the immediately preceding "coverage term".

## SECTION VI - DEFINITIONS

**1.** "Affected individual" means any person whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this Coverage Part. This definition is subject to the following provisions:

    **a.** "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

    **b.** An "affected individual" may reside anywhere in the world.

**2.** "Authorized representative" means a person or entity authorized by law or contract to act on behalf of an "identity recovery insured".

**3.** "Claim":

    **a.** Means:

        **(1)** A civil proceeding in which it is alleged that the claimant suffered damages arising from:

            **(a)** A "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses section of this Coverage Part and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses; or

            **(b)** The violation of a governmental statute or regulation arising from a "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses.

        **(2)** "Claim" includes:

            **(a)** An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent;

            **(b)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

            **(c)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

    **b.** Does not include any demand or action brought by or on behalf of someone who is:

        **(1)** Your "executive";

        **(2)** Your owner or part-owner; or

        **(3)** A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action. "Claim" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual".

**4.** "Coverage term" means the following individual increment, or if a multi-year "policy period", increments, of time, which comprise the "policy period" of this Coverage Part:

    **a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000132

address shown in the Declarations on the earlier of:

**(1)** The day the "policy period" shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Coverage territory" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses, anywhere in the world.

**b.** With respect to Insuring Agreement **B** - Defense and Liability, anywhere in the world, however, "claims" must be brought in the United States (including its territories and possessions), Puerto Rico or Canada.

**c.** With respect to Insuring Agreement **C** - Identity Recovery, anywhere in the world

**6.** "Data compromise liability":

**a.** Means the following, when they arise from a "claim" or "regulatory proceeding":

**(1)** Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

**(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

**(3)** Pre-judgment interest on that part of any judgment paid by us.

**b.** Also includes any Payment Card Industry (PCI) fine or penalty imposed under a contract to which you are a party when such fine or penalty arises from a "claim". PCI Fines and Penalties do not include any increased transaction costs.

**c.** Also includes any fine or penalty imposed by law, to the extent such fine or penalty is legally insurable under the law of the applicable jurisdiction when such fine or penalty arises from a "regulatory proceeding".

**d.** Does not include:

**(1)** Civil or criminal fines or penalties imposed by law, except for civil fines and penalties expressly covered under paragraphs **b.** and **c.** above;

**(2)** Taxes; or

**(3)** Matters which may be deemed uninsurable under the applicable law.

**e.** With respect to fines and penalties and punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

**(1)** Is where those fines, penalties or damages were awarded or imposed;

**(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

**(3)** Is where you are incorporated or you have your principal place of business; or

**(4)** Is where we are incorporated or have our principal place of business.

**7.** "Defense costs":

**a.** Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" or "regulatory proceeding" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

**b.** Does not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

**8.** "Employee" means any natural person, other than an "executive", who was, now is or will be:

**a.** Employed on a full- or part-time basis by you;

**b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

**c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties relat-

ed to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **8.b.**; or

**d.** Your volunteer worker, which includes unpaid interns.

**9.** "Executive" means any natural person who was, now is or will be:

**a.** The owner of a sole proprietorship that is a "named insured"; or

**b.** A duly elected or appointed:

**(1)** Director;

**(2)** Officer;

**(3)** Managing Partner;

**(4)** General Partner;

**(5)** Member (if a limited liability company);

**(6)** Manager (if a limited liability company); or

**(7)** Trustee,

of a "named insured".

**10.** "Identity recovery case manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured". This includes, with the permission and cooperation of the "identity recovery insured", written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**11.** "Identity recovery expenses" means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft" suffered by an "identity recovery insured":

**a.** Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft".

**b.** Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft".

**c.** Costs for credit reports from established credit bureaus.

**d.** Fees and expenses for an attorney approved by us for the following:

**(1)** The defense of any civil suit brought against an "identity recovery insured".

**(2)** The removal of any civil judgment wrongfully entered against an "identity recovery insured".

**(3)** Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

**(4)** Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

**(5)** The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured".

**e.** Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self-employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

**f.** Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**g.** Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**h.** Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft".

**(1)** Such costs include:

**(a)** Costs by the "identity recovery insured" to recover control over his or her personal identity.

**(b)** Deductibles or service fees from financial institutions.

**(2)** Such costs do not include:

**(a)** Costs to avoid, prevent or detect "identity theft" or other loss.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000134

**(b)** Money lost or stolen.

**(c)** Costs that are restricted or excluded elsewhere in this Coverage Part or policy.

**12.** "Identity recovery insured" means the following:

**a.** When the entity insured under this Coverage Part is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the "named insured".

**b.** When the "named insured" under this Coverage Part is a partnership, the "identity recovery insureds" are the current partners.

**c.** When the "named insured" under this Coverage Part is a corporation or other form of organization, other than those described in **a.** or **b.** above, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be:

**(1)** The chief executive of the insured entity; or

**(2)** As respects a religious institution, the senior ministerial employee.

**d.** The legally recognized spouse of any individual described in **a.**, **b.** or **c.** above.

An "identity recovery insured" must always be an individual person. The "named insured" under this Coverage Part is not an "identity recovery insured".

**13.** "Identity theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

**14.** "Insured" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses any "named insured".

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** Any "named insured"; and

**(2)** Any "employee" or "executive" of a "named insured", but:

**(a)** Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

**(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

**c.** With respect to Insuring Agreement **C** - Identity Recovery any "named insured".

**15.** "Loss" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses:

Those expenses enumerated in Section **I**, **A.**, Paragraph **1.b.**

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** "Defense costs"; and

**(2)** "Data compromise liability".

**c.** With respect to Insuring Agreement **C** - Identity Recovery, "identity recovery expenses".

**16.** "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

**17.** "Personal data compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss, theft, accidental release or accidental publication involves "personally identifying information", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

**a.** At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

**(1)** You; or

**(2)** A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, pro-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

cessing, transmission or transportation of such information.

**b.** "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

**(1)** The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

**(2)** Such disposal or abandonment must take place during the time period for which this Coverage Part is effective.

**c.** "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

**d.** All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

**18.** "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual" or "identity recovery insured". This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

**19.** "Personally sensitive information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

**20.** "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

**21.** "Regulatory proceeding" means an investigation, demand or proceeding alleging a violation of law or regulation brought by, or on behalf of, the Federal Trade Commission, Federal Communications Commission or other administrative or regulatory agency, or any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000136

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - LEGAL
# ACTION AGAINST US

This endorsement modifies insurance provided under the following:

     **CINCINNATI CYBER DEFENSE™ COVERAGE PART**
     **CINCINNATI DATA DEFENDER™ COVERAGE PART**
     **CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

Paragraph **b.** of the Legal Action Against Us Condition is deleted in its entirety and replaced by the following:

**b.**   You may not bring any legal action against us involving "loss":

    **(1)**  Unless you have complied with all the terms of this insurance; and

    **(2)**  Unless the action is brought within the time limitations prescribed by Alabama law.

**HC 477 AL 08 16**           Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000137

# THE CINCINNATI CASUALTY COMPANY
## LIABILITY PREMIUM ADJUSTMENT STATEMENT

INSURED:   LUCIDA CONSTRUCTION CO LLC                    POLICY NO:   ENP 0460530

AGENT:   Cobbs Allen (01113)

| POLICY PERIOD | | |
|---|---|---|
| From 10/17/17  To  10/17/18 | | |
| TERM OF AUDIT | | |
| From 10/17/17  To  10/17/18 | | |

ADDITIONAL PREMIUMS ARE DUE

UPON PRESENTATION OF A STATEMENT

* * * DIRECT BILL * * *

PREMIUM BASIS
A. Area
B. Payroll
C. Sales
E. Cost/ Each/ Other

| CLASS# CODE | CLASSIFICATION | PREMIUM BASIS | | RATES | | DEPOSIT PREMIUM | | EARNED PREMIUM | | DIFFERENCE | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Prod/ Comp. | All Other | Prod/ Comp. | All Other | Prod/ Comp. | All Other | Prod/ Comp. | All Other |
| 91580 AL | EXECUTIVE SUPERVISOR | B | 254462 | 0.000 | 15.977 | 0 | 5991 | 0 | 4066 | 0 | -1925 |
| 91585 AL | SUBCONTRACTORS-NOC | E | 3218031 | 0.820 | 1.408 | 7892 | 13552 | 2639 | 4531 | -5253 | -9021 |
| 20410 AL | B.I. EXCEPTIONS TO POLLUTANT EXCLUSIONS | | 10746 | 0.000 | 0.020 | 0 | 391 | 0 | 215 | 0 | -176 |
| 29970 AL | AUTOMATIC ADDITIONAL INSURED-CONTRACTOR | | 15098 | 0.000 | 0.035 | 0 | 960 | 0 | 528 | 0 | -432 |
| 29975 AL | CONTRACTORS BROADENED COVERAGE | | 15098 | 0.000 | 0.035 | 0 | 960 | 0 | 528 | 0 | -432 |
| 91342 AL | CARPENTRY-NOC | B | 211535 | 8.021 | 10.010 | 0 | 0 | 1697 | 2117 | 1697 | 2117 |
| 91560 AL | CONCRETE CONSTRUCTION | B | 2378 | 6.578 | 13.346 | 0 | 0 | 16 | 32 | 16 | 32 |

| | | |
|---|---|---|
| Total Earned Premium: | $4,352 | $12,017 |
| Deposit Premium: | $7,892 | $21,854 |
| Additional/Return Premium: | ($3,540) | ($9,837) |
| Net Refund Due: | ($13,377) | |

IA 405 03 94

(Prepared by: Jean Keller)  01/07/2019

# THE
# CINCINNATI INSURANCE COMPANIES

☐ THE CINCINNATI INSURANCE COMPANY   ☐ THE CINCINNATI INDEMNITY COMPANY
☒ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**   LUCIDA CONSTRUCTION CO LLC

**Policy Number:**   ENP 046 05 30

**Policy Period:**   10-17-2017 to 10-17-2018

**Effective Date of Change:**   10-17-2017

**Endorsement Number:**   1

**Agency Name:**   COBBS ALLEN 01-113
MOUNTAIN BROOK, AL

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies.   Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $**   NONE
This premium   is for the time period of   10-17-2017   to   10-17-2018.   You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
COBBS ALLEN
115 OFFICE PARK DR STE 200
MOUNTAIN BROOK, AL 35223-2423

205-414-8100

### This is not a bill. No payment is necessary at this time.

**IA 4319 08 07**

000139

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage Policy Number | All Other Policy Number  **ENP 046 05 30** | Effective Date of Endorsement  **10-17-2017** |

Issued to   **LUCIDA CONSTRUCTION CO LLC**

Agent **COBBS ALLEN 01-113**
     **MOUNTAIN BROOK, AL**                                       Endorsement #  **1**

---

**PREMIUM INFORMATION**

---

Premium Due at Endorsement Effective Date **REFER TO IA4319** _____

Subsequent Monthly Installments Increased by          $ _____

Revised Monthly Installment Payment(s)               $ _____

---

**It is agreed that the policy is amended as indicated by**   ☒

☐ **Policy Installment Premium Amended to:**
   ☐ Annual      ☐ Semi-Annual      ☐ Quarterly

☐ **Named Insured**


☒ **Mailing Address**
   **63 BRIDGE ST # A**
   **PIKE ROAD, AL 36064-3880**


☐ **Form(s) Added**


☐ **Form(s) Deleted**

---

**All Other Reason for Change**

---

**Auto / Garage Reason for Change**

---

**12-05-2017 09:33**



# The Cincinnati Casualty Company

A Stock Insurance Company

**Headquarters**: 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address**: P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ◼ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: **DIRECT BILL**

| POLICY NUMBER | **ENP 046 05 30 / EBA 046 05 30** |
|---|---|

**NAMED INSURED**  LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC
PO BOX 230607
**ADDRESS**  MONTGOMERY, AL 36123-0607
(Number & Street,
Town, County,
State & Zip Code)

This is a true and certified copy of the
General Liability portion of the policy:

*Jennifer Baker*
Jennifer Baker, Assistant Vice President

**Previous Policy Number:**
ENP0460530

**Policy Period:**  At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: **ENP 046 05 30**      FROM: **11-01-2019**   TO: **11-01-2020**

**Automobile and / or Garage**
Policy number: **EBA 046 05 30**      FROM: **11-01-2019**   TO: **11-01-2020**

Agency   **COBBS ALLEN 01-113**
City   **MOUNTAIN BROOK, AL**

**Legal Entity / Business Description**

LIMITED LIABILITY COMPANY

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4135 | 08/16 | POLICY DELIVERY |
| IA4219AL | 08/16 | ALABAMA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4377AL | 09/07 | ALABAMA CHANGES - ACTUAL CASH VALUE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAQ532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAQ559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MAQ573 | 06/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| AAQ505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |
| HC503 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS |

`10-22-2019 12:54`

Countersigned _____ By _____
                        (Date)                              (Authorized Representative)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections and Surveys

**1.** We have the right to:

    **a.** Make inspections and surveys at any time;

    **b.** Give you reports on the conditions we find; and

    **c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **a.** Are safe or healthful; or

    **b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

## F. Transfer of Your Rights and Duties Under this Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998
000003

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER:  **ENP 046 05 30 / EBA 046 05 30**          Effective Date: **11-01-2019**

Named Insured:  **LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC**

## THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
## PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | |
|---|---|
| Commercial Property Coverage Part | $ 409 |
| Commercial General Liability Coverage Part | $ 21,223 |
| Commercial Auto Coverage Part | $ 200 |
| Commercial Umbrella / Excess Liability Coverage Part | $ |
| **DATA DEFENDER COVERAGE PART** | $ 143 |
| **NETWORK DEFENDER COVERAGE PART** | $ 187 |
| **CONTRACTORS EQUIPMENT SCHEDULED** | $ 1,112 |
| **CONTRACTORS EQUIPMENT SUPPLEMENTAL COVERAGES** | $ 2,813 |
| **ELECTRONIC DATA PROCESSING EQUIPMENT** | $ 288 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Terrorism Coverage | $ 198 |
| Installment Charge | $ |
| **ANNUAL TOTAL** | $ 26,573 |

**PAYMENTS**

| | First Installment | Remaining Installment(s) |
|---|---|---|
| **MONTHLY** | * | * |

**\*SEE BILLING STATEMENT MAILED SEPARATELY**

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IA 102 A 09 08

000004

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 4170 LOMAC ST | MONTGOMERY, | AL | 36106-3726 |

IA 904 04 04

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

Your policy may contain coverage for certain losses caused by terrorism.

## Premium:

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

- Refer to the SUMMARY OF PREMIUMS CHARGED or DECLARATIONS PAGE for the portion of your premium that is attributable to coverage for terrorist acts certified under the Act.

## Federal Participation:

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

- Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals a percentage, as specified in the Schedule below, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

- **Schedule:**

| Federal Share of Terrorism Losses | |
| --- | --- |
| **Percentage** | **Calendar Year** |
| 85% | 2015 |
| 84% | 2016 |
| 83% | 2017 |
| 82% | 2018 |
| 81% | 2019 |
| 80% | 2020 |

## Cap on Insurer Participation:

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**NOTE: IF YOUR POLICY IS A RENEWAL POLICY, THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER TO RENEW THE POLICY AND (2) AT THE TIME THE RENEWAL IS COMPLETED.**

**IA 4236 01 15**

# THE **CINCINNATI INSURANCE COMPANY**
# THE **CINCINNATI CASUALTY COMPANY**
# THE **CINCINNATI INDEMNITY COMPANY**

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.  The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

**A. Special Per Occurrence Deductible**

  **1.** If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

  **a.** The Commercial Inland Marine Coverage Part, and

  **b.** The Crime and Fidelity Coverage Part;

  the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

  **2.** This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.:**

  **a.** * **Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible**

  * **Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement**

  **Windstorm or Hail Percentage Deductible Form**

  **Earthquake and Volcanic Eruption Endorsement**

  **Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)**

  **Flood Coverage Endorsement**

  **Equipment Breakdown Coverage (Including Production Equipment)**

  **Equipment Breakdown Coverage (Excluding Production Equipment)**

  * **Temperature Change Coverage Form**

  **Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud**

  **Crime Expanded Coverage (XC® ) Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration**

  **Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud**

  * Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms

  **b.** ☒ **Other**    ELECTRONIC DATA PROCESSING
  CONTRACTORS EQUIPMENT - SCHEDULED EQUIPMENT
  CONTRACTORS EQUIPMENT - EQUIPMENT LEASED OR
  RENTED FROM OTHERS

**B.   Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1. **COMMERCIAL PROPERTY CONDITIONS,**
2. **COMMERCIAL INLAND MARINE CONDITIONS,**
3. **COMMERCIAL CRIME COVERAGE FORM,**
4. **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5. **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY DELIVERY

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS PACKAGE POLICY**
**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL AUTO COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL OUTPUT PROGRAM - PROPERTY COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**CONTRACTOR'S ERRORS AND OMISSIONS COVERAGE PART CLAIMS-MADE**
**CONTRACTOR'S LIMITED POLLUTION LIABILITY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**
**DENTIST'S PACKAGE POLICY**
**ELECTRONIC DATA LIABILITY COVERAGE PART**
**EMPLOYEE BENEFIT LIABILITY COVERAGE PART**
**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE PART**
**EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE PART**
**FARM COVERAGE PART**
**GOLF COURSE CHEMICAL APPLICATION LIMITED LIABILITY COVERAGE PART**
**HOLE-IN-ONE COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**MACHINERY AND EQUIPMENT COVERAGE PART**
**MANUFACTURER'S ERRORS AND OMISSIONS COVERAGE PART CLAIMS-MADE**
**MORTGAGEHOLDERS ERRORS AND OMISSIONS COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCT WITHDRAWAL COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**
**UNDERGROUND STORAGE TANK POLICY**

**Common Policy Declarations** is amended to include the following:

The first Named Insured listed in the Declarations agrees to accept delivery of the policy on behalf of all Named Insureds. Delivery of this policy, any endorsements, or notices pertaining to this policy by us to the first Named Insured shall be deemed delivered to all Named Insureds and Additional Insureds.

**IA 4135 08 16**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance under the following:

**CHEMICAL DRIFT LIMITED LIABILITY COVERAGE FORM – CLAIMS-MADE**
**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**CONTRACTORS ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE**
**CONTRACTORS' LIMITED POLLUTION LIABILITY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**
**EMPLOYEE BENEFIT LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE PART**
**EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE PART**
**FARM COVERAGE PART**
**HOLE-IN-ONE COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**MACHINERY AND EQUIPMENT COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**
**RAILROAD PROTECTIVE LIABILITY COVERAGE PART**
**SEPTIC SYSTEMS DESIGN AND INSPECTION ERRORS AND OMISSIONS COVERAGE PART**

**A.** Paragraph **5.** of the **CANCELLATION** Common Policy Condition is replaced by the following:

   **5.** If the policy is cancelled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following condition is added:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least 30 days prior to:

   **a.** The expiration date of this policy; or

   **b.** The anniversary date of this policy, if the policy is written for a term of more than one year.

**IA 4219 AL 08 16**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act and any amendments and extensions thereto**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Cap On Losses from Certified Acts of Terrorism**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion, does not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or Endorsement such as losses excluded by:

   **1.** Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

   **2.** Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

   **3.** Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss.

**D. Sunset Clause**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

Includes copyrighted material of ISO Properties, Inc. and American Association of Insurance Services, with their permission.
000012

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

Secretary                                    President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

**IA 4338 05 11**

IA 4377 AL 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
FARM COVERAGE PART
NETWORK SYSTEM COVERAGE PART

The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

© ISO Properties, Inc., 2006
000014

# THE CINCINNATI CASUALTY COMPANY

**A Stock Insurance Company**

# COMMERCIAL GENERAL LIABILITY COVERAGE
# PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: **ENP 046 05 30**

Named Insured is the same as it appears in the Common Policy Declarations

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 | |
| GENERAL AGGREGATE LIMIT | $2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 | |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | ANY ONE PERSON OR ORGANIZATION |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | | ANY ONE |
| $100,000 limit unless otherwise indicated herein: | $ SEE GA233 | PREMISES |
| MEDICAL EXPENSE LIMIT | | |
| $5,000 limit unless otherwise indicated herein: | $ SEE GA233 | ANY ONE PERSON |

| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | A - Area<br>B - Payroll<br>C - Gross Sales<br>D - Units<br>E - Other | Products / Completed Operations | All Other | Products / Completed Operations | All Other |
| CONTRACTORS - EXECUTIVE SUPERVISOR (AL) INCL PROD AND/OR COMP OP | 91580 | B 375,000 | | 25.691 | | 9,634 |
| CONTRACTORS - SUBCONTRACTED WORK (AL) | 91585 | E 2,500,000 TOTAL COST | 1.713 | 2.253 | 4,283 | 5,633 |
| BI EXCEPTIONS TO POLLUTANT EXCLUSION | 20410 | | | 2% | | 305 |
| AUTOMATIC ADD. INSURED - CONTRACTORS OPERATIONS | 29923 | | | 3.5% | | 684 |
| CONTRACTORS BROADENED COVERAGE | 29975 | | | 3.5% | | 684 |

The General Liability Coverage Part is subject to an annual minimum premium.

TOTAL ANNUAL PREMIUM  $ 21,223

## FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:

| | | |
|---|---|---|
| GA101 | 12/04 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0300 | 01/96 | DEDUCTIBLE LIABILITY INSURANCE |
| CG2279 | 04/13 | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| GA233 | 09/17 | CONTRACTORS' COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT |
| GA3024 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| GA369 | 09/17 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM WITH SPECIFIED EXCEPTIONS |
| GA382 | 03/02 | FUNGI OR BACTERIA EXCLUSION |
| GA4250 | 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS |

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

| | | |
|---|---|---|
| GA472 | 09/18 | CONTRACTORS ADDITIONAL INSURED - AUTOMATIC STATUS WHEN REQUIRED IN WRITTEN CONTRACT, AGREEMENT, PERMIT OR AUTHORIZATION |
| GA478 | 12/04 | BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

**c.** "Bodily injury" or "property damage" which:

**(1)** Occurs during the "coverage term"; and

**(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

**d.** You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

**(3)** First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

**(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

**(5)** Becomes aware, or reasonably should have become aware, of a

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000017

condition from which "bodily injury" or "property damage" is substantially certain to occur.

e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2.  Exclusions

This insurance does not apply to:

### a.  Expected or Intended Injury

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b.  Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)  That the insured would have in the absence of the contract or agreement; or

(2)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract".  Such defense payments will not reduce the limits of insurance.

### c.  Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1)  Causing or contributing to the intoxication of any person;

(2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d.  Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e.  Employer's Liability

"Bodily injury" to:

(1)  An "employee" of the insured sustained in the "workplace";

(2)  An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

(3)  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraphs (1) or (2) above.

This exclusion applies:

(1)  Whether the insured may be liable as an employer or in any other capacity; and

(2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f.  Pollutant

(1)  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

(a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  However, Paragraph (a) does not apply to:

1)  "Bodily injury" to any person injured while on any premises, site or location owned or occupied by, or rented or loaned to, you provided:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000018

**a)** The injury is caused by the inadequate ventilation of vapors;

**b)** The person injured is first exposed to such vapors during the policy period; and

**c)** Within 30 days of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

This exception **1)** shall apply only to Named Insureds; we shall have no duty to defend or pay damages for any person or organization that is not a Named Insured. However, this paragraph does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

For the purpose of the exception granted in Paragraph **1)** only, vapors means any gaseous or airborne irritant or airborne contaminant, including smoke, fumes, vapor or soot, but excluding asbestos, which is discharged, dispersed, emitted, released or escapes from materials, machinery or equipment used in the service or maintenance of the premises. Vapors does not mean any gaseous or

airborne irritants or contaminants used in a manufacturing process or which is the product or by-product of any manufacturing process;

**2)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to this Coverage Part as an additional insured with respect to your ongoing operations or "your work" performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**1)** Any insured; or

**2)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, Paragraph **(d)** does not apply to:

**1)** "Bodily injury" or "property damage" arising out of the discharge, dispersal, seepage, migration, release, es-

GA 101 12 04     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     Page 3 of 22

000019

cape or emission of fuels, lubricants or other operating fluids, or exhaust gases, which are needed to perform, or are the result of, the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted with the intent to cause "bodily injury" or "property damage" or with the knowledge that "bodily injury" or "property damage" is substantially certain to occur, or if such fuels, lubricants or other operating fluids, or exhaust gases, are brought on or to the premises, site or location with such intent to escape, seep or migrate, or be discharged, dispersed, released or emitted as part of the operations being performed by such insured, contractor or subcontractor;

**2)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the op-

erations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, Paragraphs **(2)(a)** and **(b)** do not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000020

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.    Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.    War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by

governmental authority in hindering or defending against any of these.

**j.    Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of an insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire or explosion) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days, for which the amount we will pay is limited to the Damage To Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.    Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000021

**l.  Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**  "Your product";

**(2)**  "Your work"; or

**(3)**  "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.  Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.  Asbestos**

"Bodily injury" or "property damage" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q.  Employment-Related Practices**

"Bodily injury" to:

**(1)**  A person arising out of any:

**(a)**  Refusal to employ that person;

**(b)**  Termination of that person's employment; or

**(c)**  Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)**  The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)**  Whether the insured may be liable as an employer or in any other capacity; and

**(2)**  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**r.  Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, prior to the "coverage term" in which such "bodily injury" or "property damage" occurs or begins to occur.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that "bodily injury" or "property damage" has occurred or has begun to occur at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000022

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

**(3)** First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

**(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

**s.  Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**t.  Distribution of Material in Violation of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **q.** do not apply to "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the Damage to Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.  Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

**b.** This insurance applies to "personal and advertising injury" only if:

**(1)** The "personal and advertising injury" is caused by an offense arising out of your business; and

**(2)** The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and

**(3)** Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph **1.d.** below, that the offense had been committed or had begun to be committed, in whole or in part.

**c.** "Personal and advertising injury" caused by an offense which:

**(1)** Was committed during the "coverage term"; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000023

**(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have been committed;

includes any continuation, change or resumption of that offense after the end of the "coverage term" in which it first became known by you.

**d.** You will be deemed to know that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

**(3)** First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

**(4)** Becomes aware, or reasonably should have become aware, by any means, other than as described in **(3)** above, that the offense had been committed or had begun to be committed; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**2.** **Exclusions**

This insurance does not apply to:

**a.** **Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b.** **Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.** **Material Published Prior to Coverage Term**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the later of the following:

**(1)** The inception of this Coverage Part; or

**(2)** The "coverage term" in which insurance coverage is sought.

**d.** **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e.** **Contractual Liability**

"Personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" is caused by or arises out of an offense committed subsequent to the execution of the contract or agreement. When a claim for such "personal and advertising injury" is made, we will defend that claim, provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

**f.** **Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g.** **Quality or Performance of Goods - Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h.** **Wrong Description of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i.** **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, pat-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000024

ent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.    Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)**  Advertising, broadcasting, publishing or telecasting;

**(2)**  Designing or determining content of web-sites for others; or

**(3)**  An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **17. a., b.** and **c.** of "personal and advertising injury" under **SECTION V - DEFINITIONS**.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.    Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board any insured hosts, owns, or over which any insured exercises control.

**l.    Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.   Employment Related Practices**

"Personal and advertising injury" to:

**(1)**  A person arising out of any:

**(a)**  Refusal to employ that person;

**(b)**  Termination of that person's employment; or

**(c)**  Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation

or discrimination directed at that person; or

**(2)**  The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)**  Whether the insured may be liable as an employer or in any other capacity; and

**(2)**  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**n.    Pollutant**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

**o.    Pollutant-Related**

Any loss, cost or expense arising out of any:

**(1)**  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)**  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**p.    Asbestos**

"Personal and advertising injury" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q.    Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that a "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part, prior to the "coverage term" in which such offense

GA 101 12 04                    Includes copyrighted material of Insurance                    Page 9 of 22
Services Office, Inc., with its permission.
000025

was committed or began to be committed.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that a "personal and advertising injury" offense has been committed or has begun to be committed at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

(1) Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

(3) First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

(4) Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that the "personal and advertising injury" offense had been committed or had begun to be committed; or

(5) Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**r.  War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**s.  Distribution of Material in Violation of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C. MEDICAL PAYMENTS**

**1.  Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within three years of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2.  Exclusions**

We will not pay expenses for "bodily injury":

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000026

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury on Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation and Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletic Activities**

To any person injured while officiating, coaching, practicing for, instructing or participating in any physical exercises or games, sports, or athletic contests or exhibitions of an athletic or sports nature.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay and which falls within the applicable limit of insurance. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by

you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by; or

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Insurance under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2. a.** The General Aggregate Limit is the most we will pay for the sum of:

**(1)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

**(2)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(3)** Damages under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY.**

This General Aggregate Limit will not apply if either the Location General Aggre-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000028

gate Limit of Insurance, Paragraph **2.b.**, or the Construction Project General Aggregate Limit of Insurance, Paragraph **2.c.** applies.

**b.** A separate Location General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each location owned by, or rented or leased to you and is the most we will pay for the sum of:

**(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS,**

which can be attributed to operations at only a single location owned by, or rented or leased to you.

**c.** A separate Construction Project General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each construction project and is the most we will pay for the sum of:

**(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

which can be attributed only to ongoing operations and only at a single construction project.

**d.** Only for the purpose of determining which General Aggregate Limit of Insurance, **2.a., 2.b.,** or **2.c.**, applies:

**(1)** Location means premises involving the same or connecting lots, or premises, whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**(2)** Construction project means a location you do not own, rent or lease where ongoing improvements, alterations, installation, demolition or maintenance work is performed by you or on your behalf. All connected ongoing improvements, alterations, installation, demolition or maintenance work performed by you or on

your behalf at the same location for the same persons or organizations, no matter how often or under how many different contracts, will be deemed to be a single construction project.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.a.** above, the Personal and Advertising Injury Limit is the most we will pay under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2. or 3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**; and

**b.** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS**;

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage to Premises Rented to You Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire or explosion, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under **COVERAGE C. MEDICAL PAYMENTS** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000029

a "personal and advertising injury" offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable

under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar insurance for "your work";

**(b)** That is Fire or Explosion insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000030

premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g. Aircraft, Auto or Watercraft**.

**(2)** Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations, or the products and completed operations, for which the insured has been added as an additional insured by attachment of an endorsement.

**(3)** Any other insurance:

**(a)** Whether primary, excess, contingent or on any other basis, except when such insurance is written specifically to be excess over this insurance; and

**(b)** That is a consolidated (wrap-up) insurance program which has been provided by the prime contractor/project manager or owner of the consolidated project in which you are involved.

When this insurance is excess, we will have no duty under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance

shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**6. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If:

**(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

**(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7. Representations**

By accepting this Coverage Part, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this Coverage Part in reliance upon your representations.

**8. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000031

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**10. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Part and any other Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "personal and advertising injury" offense, the aggregate maximum limit of insurance under all the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable limit of insurance under any one Coverage Form, Coverage Part or policy. This condition does not apply to any Coverage Form, Coverage Part or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Part.

**11. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

**2.** "Authorized representative" means:

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are "authorized representatives".

**(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

**(3)** A limited liability company, your members and your managers are "authorized representatives".

**(4)** An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

**(5)** A trust, your trustees are "authorized representatives".

**b.** Your "employees":

**(1)** Assigned to manage your insurance program; or

**(2)** Responsible for giving or receiving notice of an "occurrence", "personal and advertising injury" offense, claim or "suit";

are also "authorized representatives".

**3.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**4.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at

12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**6.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication,

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement to which we agree.

**7.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**8.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**9.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**10.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**11.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**12.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations, within 50 feet of any rail-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000033

road property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities;

**(4)** That indemnifies an advertising, public relations or media consulting firm for "personal and advertising injury" arising out of the planning, execution or failure to execute marketing communications programs. Marketing communications programs include but are not limited to comprehensive marketing campaigns; consumer, trade and corporate advertising for all media; media planning, buying, monitoring and analysis; direct mail; promotion; sales materials; design; presentations; point-of-sale materials; market research; public relations and new product development;

**(5)** Under which the insured, if an advertising, public relations or media consulting firm, assumes liability for "personal and advertising injury" arising out of the insured's rendering or failure to render professional services, including those services listed in Paragraph **(4)**, above;

**(6)** That indemnifies a web-site designer or content provider, or Internet search, access, content or service provider for injury or damage arising out of the planning, execution or failure to execute Internet services. Internet services include but are not limited to design, production, distribution, maintenance and administration of web-sites and web-banners; hosting web-sites; registering domain names; registering with search engines; marketing analysis; and providing access to the Internet or other similar networks; or

    **(7)** Under which the insured, if a web-site designer or content provider, or Internet search, access, content or service provider, assumes liability for injury or damage arising out of the insured's rendering or failure to render Internet services, including those listed in Paragraph **(6)**, above.

**13.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**14.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000034

permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**18.** "Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** The insured uses, generates or produces the "pollutant".

**19.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed; or

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000035

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a schedule, states that products-completed operations are included.

**20.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**21.** "Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

**22.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**23.** "Volunteer worker" means a person who is not your "employee", and who donates his or

her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**24.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of "occurrence".

**25.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**26.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

GA 101 12 04          Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000036          Page 20 of 22

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under this Coverage Part is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this Coverage Part not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured, or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this exclusion:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**A.** Any "nuclear reactor";

**B.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**C.** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000037

**D.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

### SCHEDULE

| COVERAGE | Amount and Basis of Deductible PER CLAIM or PER OCCURRENCE | |
|---|---|---|
| Bodily Injury Liability | $ SEE BELOW | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement.  If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused.)

```
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PREMISES/OPERATIONS FOR CLASS 91580
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PRODUCTS/COMP. OPS FOR CLASS 91580
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PREMISES/OPERATIONS FOR CLASS 91585
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PRODUCTS/COMP. OPS FOR CLASS 91585
```

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis.  Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above.  The deductible amount stated in the Schedule above applies as follows:

**1.** **PER CLAIM BASIS.**  If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage

Combined, to all damages sustained by any one person because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

**2.** **PER OCCURRENCE BASIS.**  If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage

CG 03 00 01 96        Copyright, Insurance Services Office, Inc., 1994        **Page 1 of 2**

000039

Combined, to all damages because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

**1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

000040

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   **a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   **b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

**2.** Subject to Paragraph **3.** below, professional services include:

   **a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   **b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

**3.** Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

© Insurance Services Office, Inc., 2012
000041

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTORS' COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.  Endorsement - Table of Contents:**

| Coverage: | Begins on Page: |
|---|---|
| 1.  Employee Benefit Liability Coverage | 3 |
| 2.  Unintentional Failure To Disclose Hazards | 9 |
| 3.  Damage To Premises Rented To You | 9 |
| 4.  Supplementary Payments | 10 |
| 5.  Medical Payments | 10 |
| 6.  180 Day Coverage For Newly Formed Or Acquired Organizations | 10 |
| 7.  Waiver Of Subrogation | 11 |
| 8.  Automatic Additional Insured - Specified Relationships: | 11 |
| •  Managers Or Lessors Of Premises; | |
| •  Lessor Of Leased Equipment; | |
| •  Vendors; | |
| •  State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations Relating To Premises; and | |
| •  Mortgagee, Assignee Or Receiver | |
| 9.  Property Damage To Borrowed Equipment | 14 |
| 10.  Employees As Insureds - Specified Health Care Services And Good Samaritan Services | 15 |
| 11.  Broadened Notice Of Occurrence | 15 |
| 12.  Nonowned Aircraft | 15 |
| 13.  Bodily Injury Redefined | 15 |
| 14.  Expected Or Intended Injury Redefined | 15 |
| 15.  Former Employees As Insureds | 15 |
| 16.  Voluntary Property Damage Coverage And Care, Custody Or Control Liability Coverage | 16 |
| 17.  Broadened Contractual Liability - Work Within 50' Of Railroad Property | 17 |
| 18.  Alienated Premises | 17 |

**B.  Limits Of Insurance:**

The Commercial General Liability Limits of Insurance apply to the insurance provided by this endorsement, except as provided below:

**1.  Employee Benefit Liability Coverage**

Each Employee Limit:  $1,000,000
Aggregate Limit:       $3,000,000
Deductible Amount:     $     1,000

**3.  Damage To Premises Rented To You**

The lesser of:

**a.**  The Each Occurrence Limit shown in the Declarations; or

**b.**  $500,000 unless otherwise stated $ _____

**4.  Supplementary Payments**

**a.**  Bail Bonds:        $2,500

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000042

**b.**   Loss Of Earnings: $   500

**5.   Medical Payments**

Medical Expense Limit: $ 10,000

**9.   Property Damage To Borrowed Equipment**

Each Occurrence Limit:   $10,000
Deductible Amount:        $    250

**16.   Voluntary Property Damage Coverage** (Coverage **a.**) **And Care**, **Custody Or Control Liability Coverage** (Coverage **b.**)

**Limits Of Insurance**
Coverage **a.**
$1,000 Each Occurrence
$5,000 Aggregate
Coverage **b.** $5,000 Each Occurrence unless otherwise stated $ _____

**Deductible Amount** (Each Occurrence)
Coverage **a.** $250
Coverage **b.** $250 unless otherwise stated $ _____

| COVERAGE | PREMIUM BASIS<br>(a)  Area<br>(b)  Payroll<br>(c)  Gross Sales<br>(d)  Units<br>(e)  Other | RATE<br>(For Limits in Excess of $5,000) | ADVANCE PREMIUM<br>(For Limits in Excess of $5,000) |
|---|---|---|---|
| **b.**  Care,  Custody  Or Control | | | $ |
| TOTAL ANNUAL PREMIUM | | | $ |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000043

## C. Coverages

### 1. Employee Benefit Liability Coverage

**a.** The following is added to **Section I - Coverages:**

**Employee Benefit Liability Coverage**

**(1) Insuring Agreement**

**(a)** We will pay those sums that the insured becomes legally obligated to pay as damages caused by any act, error or omission of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any claim or "suit" that may result. But:

**1)** The amount we will pay for damages is limited as described in **Section III - Limits Of Insurance**; and

**2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments**.

**(b)** This insurance applies to damages only if the act, error or omission, is negligently committed in the "administration" of your "employee benefit program"; and

**1)** Occurs during the policy period; or

**2)** Occurred prior to the "first effective date" of

this endorsement provided:

**a)** You did not have knowledge of a claim or "suit" on or before the "first effective date" of this endorsement.

You will be deemed to have knowledge of a claim or "suit" when any "authorized representative";

**i)** Reports all, or any part, of the act, error or omission to us or any other insurer;

**ii)** Receives a written or verbal demand or claim for damages because of the act, error or omission; and

**b)** There is no other applicable insurance.

**(2) Exclusions**

This insurance does not apply to:

**(a) Bodily Injury, Property Damage Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**(b) Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**(c) Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000044

**(d) Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**(e) Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any claim based upon:

**1)** Failure of any investment to perform;

**2)** Errors in providing information on past performance of investment vehicles; or

**3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**(f) Workers' Compensation And Similar Laws**

Any claim arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**(g) ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**(h) Available Benefits**

Any claim for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**(i) Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**(j) Employment-Related Practices**

Any liability arising out of any:

**(1)** Refusal to employ;

**(2)** Termination of employment;

**(3)** Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment - related practices, acts or omissions; or

**(4)** Consequential liability as a result of **(1)**, **(2)** or **(3)** above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(3) Supplementary Payments**

**Section I - Coverages, Supplementary Payments - Coverages A And B** also apply to this Coverage.

**b. Who Is An Insured**

As respects **Employee Benefit Liability Coverage, Section II - Who Is An Insured** is replaced by the following:

**(1)** If you are designated in the Declarations as:

**(a)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(b)** A partnership or joint venture, you are an insured. Your members, your part-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000045

ners, and their spouses are also insureds but only with respect to the conduct of your business.

**(c)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(d)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(e)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**(2)** Each of the following is also an insured:

**(a)** Each of your "employees" who is or was authorized to administer your "employee benefit program";

**(b)** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed; or

**(c)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**(3)** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organi-

zation. However, coverage under this provision:

**(a)** Is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**(b)** Does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**c. Limits Of Insurance**

As respects **Employee Benefit Liability Coverage**, **Section III - Limits Of Insurance** is replaced by the following:

**(1)** The Limits of Insurance shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** and the rules below fix the most we will pay regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought;

**(c)** Persons or organizations making claims or bringing "suits";

**(d)** Acts, errors or omissions; or

**(e)** Benefits included in your "employee benefit program".

**(2)** The Aggregate Limit shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**(3)** Subject to the limit described in **(2)** above, the Each Employee Limit shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(a)** An act, error or omission; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000046

**(b)** A series of related acts, errors or omissions, regardless of the amount of time that lapses between such acts, errors or omissions;

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program."

**(4) Deductible Amount**

**(a)** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the Deductible Amount stated in the Declarations as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

**(b)** The Deductible Amount stated in the Declarations applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**(c)** The terms of this insurance, including those with respect to:

**1)** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or claim;

apply irrespective of the application of the Deductible Amount.

**(d)** We may pay any part or all of the Deductible Amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the Deductible Amount as we have paid.

**d.    Additional Conditions**

As respects **Employee Benefit Liability Coverage, Section IV - Commercial General Liability Conditions** is amended as follows:

**(1)** Item **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is replaced by the following:

**2.    Duties In The Event Of An Act, Error Or Omission, Or Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a claim. To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000047

ceived in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**(2)** Item **5. Other Insurance** is replaced by the following:

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **c.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

**b. Method Of Sharing**

If all of the other insurance permits contribu-

tion by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**c. No Coverage**

This insurance shall not cover any loss for which the insured is entitled to recovery under any other insurance in force previous to the effective date of this Coverage Part.

**e. Additional Definitions**

As respects **Employee Benefit Liability Coverage, Section V - Definitions** is amended as follows:

**(1)** The following definitions are added:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Interpreting the "employee benefit programs";

**c.** Handling records in connection with the "employee benefit programs"; or

**d.** Effecting, continuing or terminating any "employee's" participation in

any benefit included in the "employee benefit program".

However, "administration" does not include:

**a.** Handling payroll deductions; or

**b.** The failure to effect or maintain any insurance or adequate limits of coverage of insurance, including but not limited to unemployment insurance, social security benefits, workers' compensation and disability benefits.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow "employees" to elect to pay for certain benefits with pre-tax dollars.

**3.** "Employee benefit programs" means a program providing some of all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

**a.** Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

**c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits; and

**d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies.

**4.** "First effective date" means the date upon which coverage was first effected in a series of uninterrupted renewals of insurance coverage.

**(2)** The following definitions are deleted in their entirety and replaced by the following:

**8.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**21.** "Suit" means a civil proceeding in which money damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000049

**2. Unintentional Failure To Disclose Hazards**

**Section IV - Commercial General Liability Conditions, 7. Representations** is amended by the addition of the following:

Based on our dependence upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not reject coverage under this Coverage Part based solely on such failure.

**3. Damage To Premises Rented To You**

**a.** The last Paragraph of **2. Exclusions** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

Exclusions **c.** through **q.** do not apply to "property damage" by fire, explosion, lightning, smoke or soot to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the **Damage To Premises Rented To You** Limit as described in **Section III - Limits Of Insurance.**

**b.** The insurance provided under **Section I - Coverage A - Bodily Injury And Property Damage Liability** applies to "property damage" arising out of water damage to premises that are both rented to and occupied by you.

**(1)** As respects Water Damage Legal Liability, as provided in Paragraph **3.b.** above:

The exclusions under **Section I - Coverage A - Bodily Injury And Property Damage Liability**, **2. Exclusions**, other than **i. War** and the **Nuclear Energy Liability Exclusion (Broad Form)**, are deleted and the following are added:

This insurance does not apply to:

**(a)** "Property damage":

**(i)** Assumed in any contract or agreement; or

**(ii)** Caused by or resulting from any of the following:

**1)** Wear and tear;

**2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**3)** Smog;

**4)** Mechanical breakdown, including rupture or bursting caused by centrifugal force;

**5)** Settling, cracking, shrinking or expansion;

**6)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals; or

**7)** Presence, growth, proliferation, spread or any activity of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**(b)** "Property damage" caused directly or indirectly by any of the following:

**(i)** Earthquake, volcanic eruption, landslide or any other earth movement;

**(ii)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(iii)** Water under the ground surface pressing on, or flowing or seeping through:

**1)** Foundations, walls, floors or paved surfaces;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000050

2) Basements, whether paved or not; or

3) Doors, windows or other openings.

(c) "Property damage" caused by or resulting from water that leaks or flows from plumbing, heating, air conditioning, fire protection systems, or other equipment, caused by or resulting from freezing, unless:

(i) You did your best to maintain heat in the building or structure; or

(ii) You drained the equipment and shut off the water supply if the heat was not maintained.

(d) "Property damage" to:

(i) Plumbing, heating, air conditioning, fire protection systems, or other equipment or appliances; or

(ii) The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet or ice, whether driven by wind or not.

c. **Limit Of Insurance**

With respect to the insurance afforded in Paragraphs **3.a.** and **3.b.** above, the **Damage To Premises Rented To You** Limit as shown in the Declarations is amended as follows:

**(1)** Paragraph **6.** of **Section III - Limits Of Insurance** is replaced by the following:

**6.** Subject to Paragraph **5.** above, the **Damage To Premises Rented To You** Limit is the most we will pay under **Coverage A - Bodily Injury And Property Damage Liability** for damages because of "property damage" to any one premises:

**a.** While rented to you, or temporarily occupied by

you with permission of the owner;

**b.** In the case of damage by fire, explosion, lightning, smoke or soot, while rented to you; or

**c.** In the case of damage by water, while rented to and occupied by you.

**(2)** The most we will pay is limited as described in Section **B. Limits Of Insurance**, **3. Damage To Premises Rented To You** of this endorsement.

**4. Supplementary Payments**

Under **Section I - Supplementary Payments - Coverages A And B:**

**a.** Paragraph **2.** is replaced by the following:

Up to the limit shown in Section **B. Limits Of Insurance**, **4.a.** Bail Bonds of this endorsement for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**b.** Paragraph **4.** is replaced by the following:

All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to the limit shown in Section **B. Limits Of Insurance**, **4.b.** Loss Of Earnings of this endorsement per day because of time off from work.

**5. Medical Payments**

The Medical Expense Limit of Any One Person as stated in the Declarations is amended to the limit shown in Section **B. Limits Of Insurance**, **5. Medical Payments** of this endorsement.

**6. 180 Day Coverage For Newly Formed Or Acquired Organizations**

**Section II - Who Is An Insured** is amended as follows:

Subparagraph **a.** of Paragraph **3.** is replaced by the following:

**a.** Insurance under this provision is afforded only until the 180th day after

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000051

you acquire or form the organization or the end of the policy period, whichever is earlier;

**7.    Waiver Of Subrogation**

**Section IV - Commercial General Liability Conditions, 9. Transfer Of Rights Of Recovery Against Others To Us** is amended by the addition of the following:

We waive any right of recovery we may have against any person or organization against whom you have agreed to waive such right of recovery in a written contract or agreement because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a written contract or agreement with that person or organization and included in the "products-completed operations hazard". However, our rights may only be waived prior to the "occurrence" giving rise to the injury or damage for which we make payment under this Coverage Part. The insured must do nothing after a loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce those rights.

**8.    Automatic Additional Insured - Specified Relationships**

**a.**   The following is added to **Section II - Who Is An Insured**:

**(1)**   Any person(s) or organization(s) described in Paragraph **8.a.(2)** of this endorsement (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of a written contract, written agreement, written permit or written authorization.

**(2)**   Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein:

**(a)   Managers Or Lessors Of Premises**

The manager or lessor of a premises leased to you with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to liability arising out of the ownership, maintenance or

use of that part of the premises leased to you, subject to the following additional exclusions:

This insurance does not apply to:

**(i)**   Any "occurrence" which takes place after you cease to be a tenant in that premises;

**(ii)**   Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

**(b)   Lessor Of Leased Equipment**

Any person or organization from whom you lease equipment when you and such person(s) or organization(s) have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance. Such person(s) or organization(s) are insureds only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s). A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends. However, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**(c)   Vendors**

Any person or organization (referred to below as vendor) with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the

GA 233 09 17                    Includes copyrighted material of Insurance                    Page 11 of 17
Services Office, Inc., with its permission.
000052

vendor's business, subject to the following additional exclusions:

**(i)** The insurance afforded the vendor does not apply to:

**1)** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**2)** Any express warranty unauthorized by you;

**3)** Any physical or chemical change in the product made intentionally by the vendor;

**4)** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**5)** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**6)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**7)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**8)** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**a)** The exceptions contained in Paragraphs **(c) (i) 4)** or **6)** of this endorsement; or

**b)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**(ii)** This insurance does not apply to any insured person or organization:

**1)** From whom you have acquired such products, or any ingredient, part

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000053

or container, entering into, accompanying or containing such products; or

**2)** When liability included within the "products-completed operations hazard" has been excluded under this Coverage Part with respect to such products.

**(d) State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations Relating To Premises**

Any state or governmental agency or subdivision or political subdivision with which you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, subject to the following additional provision:

This insurance applies only with respect to the following hazards for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization in connection with premises you own, rent or control and to which this insurance applies:

**(i)** The existence, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away openings, sidewalk vaults, street banners or decorations and similar exposures; or

**(ii)** The construction, erection or removal of elevators; or

**(iii)** The ownership, maintenance or use of any elevators covered by this insurance.

**(e) Mortgagee, Assignee Or Receiver**

Any person or organization with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you. However, this insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**(3)** The insurance afforded to additional insureds described in Paragraph **8.a.(1)** of this endorsement:

**(a)** Only applies to the extent permitted by law; and

**(b)** Will not be broader than that which you are required by the written contract, written agreement, written permit or written authorization to provide for such additional insured; and

**(c)** Does not apply to any person, organization, vendor, state, governmental agency or subdivision or political subdivision, specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part, provided such other provision or endorsement covers the injury or damage for which this insurance applies.

**b.** With respect to the insurance afforded to the additional insureds described in Paragraph **8.a.(1)** of this endorsement, the following is added to **Section III - Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**(1)** Required by the written contract, written agreement, written permit or written authorization described

in Paragraph **8.a.(1)** of this endorsement; or

**(2)** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**c.** **Section IV - Commercial General Liability Conditions** is amended to include the following:

**Automatic Additional Insured Provision**

This insurance applies only if the "bodily injury" or "property damage" occurs, or the "personal and advertising injury" offense is committed:

**(1)** During the policy period; and

**(2)** Subsequent to your execution of the written contract or written agreement, or the issuance of a written permit or written authorization, described in Paragraph **8.a.(1)**.

**d.** **Section IV - Commercial General Liability Conditions** is amended as follows:

Condition **5. Other Insurance** is amended to include:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured per Paragraph **8.a.(1)** of this endorsement provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract, agreement, permit or authorization described in **8.a.(2)** of this endorsement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

**9.** **Property Damage To Borrowed Equipment**

**a.** The following is added to **Exclusion 2.j. Damage To Property** under Sec-

tion I - Coverage A - Bodily Injury And Property Damage Liability:

Paragraphs **(3)** and **(4)** of this exclusion do not apply to tools or equipment loaned to you, provided they are not being used to perform operations at the time of loss.

**b.** With respect to the insurance provided by this section of the endorsement, the following additional provisions apply:

**(1)** The Limits of Insurance shown in the Declarations are replaced by the limits designated in Section **B. Limits Of Insurance, 9. Property Damage To Borrowed Equipment** of this endorsement with respect to coverage provided by this endorsement. These limits are inclusive of and not in addition to the limits being replaced. The Limits of Insurance shown in Section **B. Limits Of Insurance, 9. Property Damage To Borrowed Equipment** of this endorsement fix the most we will pay in any one "occurrence" regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought; or

**(c)** Persons or organizations making claims or bringing "suits".

**(2)** **Deductible Clause**

**(a)** Our obligation to pay damages on your behalf applies only to the amount of damages for each "occurrence" which are in excess of the Deductible Amount stated in Section **B. Limits Of Insurance, 9. Property Damage To Borrowed Equipment** of this endorsement. The limits of insurance will not be reduced by the application of such deductible amount.

**(b)** **Section IV - Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit,** applies to each claim or "suit" irrespective of the amount.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000055

**(c)** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

## 10. Employees As Insureds - Specified Health Care Services And Good Samaritan Services

Paragraph **2.a.(1)(d)** under **Section II - Who Is An Insured** does not apply to:

**a.** Your "employees" who provide professional health care services on your behalf as a duly licensed nurse, emergency medical technician or paramedic in the jurisdiction where an "occurrence" or offense to which this insurance applies takes place; or

**b.** Your "employees" or "volunteer workers", other than an employed or volunteer doctor, providing first aid or good samaritan services during their work hours for you will be deemed to be acting within the scope of their employment by you or performing duties related to the conduct of your business.

## 11. Broadened Notice Of Occurrence

Paragraph **a.** of Condition **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** under **Section IV - Commercial General Liability Conditions** is replaced by the following:

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

This requirement applies only when the "occurrence" or offense is known to an "authorized representative".

## 12. Nonowned Aircraft

The following is added to **Exclusion 2.g. Aircraft, Auto Or Watercraft** under **Section I - Coverage A - Bodily Injury And Property Damage Liability**:

This exclusion does not apply to an aircraft you do not own, provided that:

**a.** The pilot in command holds a current effective certificate, issued by a duly constituted authority of the United States of America or Canada, designating that person as a commercial or airline transport pilot;

**b.** The aircraft is rented with a trained, paid crew; and

**c.** The aircraft does not transport persons or cargo for a charge.

## 13. Bodily Injury Redefined

**Section V - Definitions, 4.** "Bodily injury" is replaced by the following:

**4.** "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

## 14. Expected Or Intended Injury Redefined

The last sentence of **Exclusion 2.a. Expected Or Intended Injury** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

## 15. Former Employees As Insureds

The following is added to Paragraph **2.** under **Section II - Who Is An Insured:**

**2.** Each of the following is also an insured:

Any of your former "employees", directors, managers, members, partners or "executive officers", including but not limited to retired, disabled or those on leave of absence, but only for acts within the scope of their employment by you or for duties related to the conduct of your business.

16. **Voluntary Property Damage Coverage**

a. **Coverage D - Voluntary Property Damage Coverage**

**Section I - Coverages** is amended to include the following:

(1) **Insuring Agreement**

(a) We will pay the cost to repair or replace "property damage" to property of others arising out of operations incidental to your business when:

1) Damage is caused by you; or

2) Damage occurs while in your possession.

At your written request, we will make this payment regardless of whether you are at fault for the "property damage".

If you, at our request, replace, or make any repairs to, damaged property of others, the amount we will pay under **Voluntary Property Damage Coverage** will be determined by your actual cost to replace or repair the damaged property, excluding any profit or overhead.

Any payment we make under **Voluntary Property Damage Coverage** shall not be interpreted as an admission of liability by you or by us.

It shall be your duty, not our duty, to defend any claim or "suit" to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered.

(b) This insurance applies to "property damage" only if:

1) The "property damage" takes place in the "coverage territory"; and

2) The "property damage" occurs during the policy period.

(2) **Exclusions**

This insurance does not apply to "property damage" that would be excluded by **Coverage A - Bodily Injury And Property Damage Liability, 2. Exclusions**, except for **j. Damage To Property**, paragraphs **(3), (4), (5)** and **(6)**, **k. Damage To Your Product**, and **l. Damage To Your Work**.

(3) **Definitions**

For purposes of **Voluntary Property Damage Coverage** only, the following definitions under **Section V - Definitions** are replaced by the following:

16. "Occurrence" means an incident, including continuous or repeated exposure to substantially the same general harmful conditions that result in "property damage".

20. "Property damage" means physical injury to tangible property. "Electronic data" is not tangible property, and "property damage" does not include disappearance, abstraction or theft.

b. **Care, Custody Or Control Liability Coverage**

For purposes of the coverage provided by **Care, Custody Or Control Liability Coverage** in this endorsement only:

(1) **Section I - Coverage A - Bodily Injury And Property Damage Liability, 2. Exclusions, j. Damage To Property**, Subparagraphs **(3), (4)** and **(5)** do not apply to "property damage" to the property of others described therein.

(2) It shall be your duty, not our duty, to defend any claim or "suit" to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered.

This Paragraph **(2)** supersedes any provision in the Coverage Part to the contrary.

(3) "Property damage" for which **Care, Custody Or Control Liability Coverage** provides cover-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000057

age shall be deemed to be caused by an "occurrence" but shall not serve to limit or restrict the applicability of any exclusion for "property damage" under this Coverage Part.

**c.** **Limits Of Insurance And Deductibles**

For purposes of the coverage provided by **Voluntary Property Damage Coverage** and **Care, Custody Or Control Liability Coverage, Section III – Limits Of Insurance** is amended to include the following:

**(1)** The Limits of Insurance shown in the Declarations are replaced by the limits designated in Section **B. Limits Of Insurance, 16. Voluntary Property Damage Coverage And Care, Custody Or Control Liability Coverage,** in this endorsement. These limits are inclusive of, and not in addition to, the limits being replaced. The Limits of Insurance shown in the Schedule fix the most we will pay regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought; or

**(c)** Persons or organizations making claims or bringing "suits".

**(2)** **(a)** Subject to **(3)** below, the **Voluntary Property Damage Coverage,** Each Occurrence Limit Of Insurance is the most we will pay for the sum of damages under **Voluntary Property Damage Coverage**;

**(b)** The **Care, Custody Or Control Liability Coverage,** Each Occurrence Limit Of Insurance is the most we will pay for the sum of damages under **Care, Custody Or Control Liability Coverage**;

because of all "property damage" arising out of any one "occurrence".

**(3)** The **Voluntary Property Damage Coverage,** Aggregate Limit Of Insurance is the most we will pay for the sum of all damages under **Voluntary Property Damage Coverage.** This limit applies separately to each "coverage term".

**(4)** **Deductible Clause**

**(a)** Our obligation to pay damages on your behalf applies only to the amount of damages for each "occurrence" which are in excess of the Deductible Amount stated for the applicable coverage in the Schedule. The limits of insurance will not be reduced by the application of such Deductible Amount.

**(b)** **Section IV – Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit,** applies to each claim or "suit" irrespective of the amount.

**(c)** We may pay any part or all of the Deductible Amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the Deductible Amount as has been paid by us.

**17.** **Broadened Contractual Liability - Work Within 50' Of Railroad Property**

**Section V - Definitions, 12.** "Insured contract" is amended as follows:

**a.** Paragraph **c.** is replaced by the following:

**c.** Any easement or license agreement;

**b.** Paragraph **f.(1)** is deleted in its entirety.

**18.** **Alienated Premises**

**Exclusion 2.j. Damage to Property,** Paragraph **(2)** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** does not apply if the premises are "your work".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000058

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** Exclusion **2.s.** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is replaced by the following:

    **2. Exclusions**

    This insurance does not apply to:

    **s. Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

    Damages arising out of:

    **(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

    **(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

    This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal and Advertising Injury Liability:**

    **2. Exclusions**

    This insurance does not apply to:

    **Access or Disclosure of Confidential or Personal Information**

    "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

    This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000059

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM WITH SPECIFIED EXCEPTIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability**:

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" that arises out of, is caused by, or is attributable to, whether in whole or in part, an "EIFS/DEFS incident":

2. Exclusion **1.** above also applies to any "bodily injury", "property damage" or "personal and advertising injury":

   **a.** For which an additional insured added by attachment of an endorsement to this Coverage Part is legally obligated to pay damages;

   **b.** For which any insured assumes liability in any part of any contract or agreement, regardless of whether such contract or agreement is an "insured contract";

   **c.** Arising out of, caused by, or attributable to, whether in whole or in part, warranties or representations made at any time with respect to the fitness, quality, durability or performance of a "wall finish system"; and

   **d.** Arising out of, caused by, or attributable to, whether in whole or in part, the providing of or failure to provide any warnings or instructions with regard to a "wall finish system".

3. Exclusions **1.** and **2.** above apply only if the injury or damage is caused, directly or indirectly, in whole or in part, by water-related or moisture-related entry into, or dry rot of, a structure to which a "wall finish system" has been installed and only if that water-related or moisture-related entry, or dry rot, is caused, directly or indi-

rectly, in whole or in part, by the "wall finish system."

4. Regardless of the applicability of Paragraph **3.** above, exclusions **1.** and **2.** above do not apply to an "EIFS/DEFS incident" if all three of the following conditions are met:

   **a.** The "wall finish system" is a "drainable or water managed system"; and

   **b.** The substrate that forms a part of the "wall finish system", or to which the "wall finish system" is attached, is noncombustible, such as gypsum sheathing, or is one of the following types of construction:

   **(1)** Noncombustible construction meaning structures where the exterior walls and the floors are constructed of, and supported by, metal, gypsum or other noncombustible materials; or

   **(2)** Masonry noncombustible construction meaning structures where the exterior walls are constructed of masonry materials such as adobe, brick, concrete, gypsum block, hollow concrete block, stone, tile or similar materials, with the floors and roof being metal or other noncombustible materials; or

   **(3)** Modified fire resistive or fire resistive construction meaning structures where the exterior walls and the floors and roof are constructed of masonry or fire resistive materials having a fire resistance rating of one hour or more; and

   **c.** The structure on which the "wall finish system" is installed is not intended for "residential" occupancy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000060

**B.** For purposes of this endorsement, the following is added to **Section III-Limits Of Insurance**:

**1. Deductible Amount**

**a.** Our obligation to pay damages under this insurance applies only to the amount of damages for each "EIFS/DEFS incident" which are in excess of a deductible amount of $5,000. The limits of insurance will not be reduced by the application of such deductible amount.

**b.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**2. Limit Reduction**

Paragraph **2.**, the General Aggregate Limit, Paragraph **3.**, the Products-Completed Operations Aggregate Limit, Paragraph **5.**, the Each Occurrence Limit, Paragraph **6.**, the Damage To Premises Rented To You Limit, and Paragraph **7.**, the Medical Expense Limit, of **Section III - Limits Of Insurance**, if applicable, will be reduced by the amount of damages we pay for all "bodily injury" and "property damage" arising out of an "EIFS/DEFS incident."

**C.** For purposes of this endorsement only, **Section IV – Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is replaced by the following:

**2. Duties In The Event Of Incident, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "EIFS/DEFS incident" that may result in a claim, irrespective of the amount. To the extent possible, notice should include:

**(1)** What the incident was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the incident.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an incident to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**D.** For the purpose of this endorsement only, **Section V - Definitions** is amended to include the following:

**1.** The following definitions are added:

**a.** "Direct-applied exterior finish system" (commonly referred to as DEFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

**(1)** A rigid or semi-rigid substrate;

**(2)** The adhesive and/or mechanical fasteners used to attach the substrate to the structure including any water-durable exterior wall substrate;

**(3)** A reinforced or unreinforced base coat or mesh;

**(4)** A finish coat providing surface texture to which color may be added; and

**(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000061

that interact to form an energy efficient wall.

**b.** "Drainable or water managed system" means a "wall finish system":

   **(1)** With a secondary weather-resistant barrier that protects the substrate; and

   **(2)** That includes a drainage feature that is specifically designed to channel water to the outside of the "wall finish system".

**c.** "Exterior insulation and finish system" (commonly referred to as synthetic stucco or EIFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

   **(1)** A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

   **(2)** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

   **(3)** A reinforced or unreinforced base coat or mesh;

   **(4)** A finish coat providing surface texture to which color may be added; and

   **(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose;

that interact to form an energy efficient wall.

**d.** "EIFS/DEFS incident" means an incident that would not have occurred, in whole or in part, but for:

   **(1)** The design, manufacture, sale, service, handling, construction, fabrication, preparation, installation, application, maintenance, disposal or repair, including remodeling, service, correction, or replacement, of a "wall finish system", or any part thereof, including any method or procedure used to correct problems with installed or partially installed "wall finish systems"; or

   **(2)** Any work or operations conducted by or on behalf of any insured on or to a "wall finish system", or any component thereof, or any component of a building or struc-

ture to which a "wall finish system" attaches, that results, directly or indirectly, in the intrusion of water or moisture, including any resulting development or presence of "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**e.** "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**f.** "Residential" means:

   **(1)** A structure used, or intended, in whole or in part, for the purpose of human habitation, and includes, but is not limited to, single-family housing, multi-family housing, tract homes, condominiums, cooperatives, townhomes, townhouses, planned-unit developments and timeshares;

   **(2)** A structure converted, or being converted, in whole or in part, into condominiums or cooperatives; and

   **(3)** Common areas and grounds, appurtenant structures and facilities, of the structures described in **D.1.f.(1)** and **(2)** above, except a public street, public road, public right of way, or public utility easement located on or near such common areas and grounds.

"Residential" does not include:

   **(1)** Hospitals, jails or prisons; and

   **(2)** Provided there is no individual ownership of units and that such was not, in whole or in part, at any time, marketed, sold, occupied or used as single-family housing, multi-family housing, or as a condominium, cooperative, townhouse, townhome or timeshare:

      **(a)** Government housing on military bases;

      **(b)** College/university dormitories;

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000062

    **(c)**  Apartments;

    **(d)**  Long-term care facilities;

    **(e)**  Assisted living facilities;

    **(f)**  Nursing homes; and

    **(g)**  Hotels or motels.

**g.**  "Wall finish system" means:

    **(1)**  An "exterior insulation and finish system";

    **(2)**  A "direct-applied exterior finish system"; or

    **(3)**  Any energy efficient exterior cladding or finish system substantially similar to Paragraph **D.1.g.(1)** or **(2)** above.

**2.**  Definition **21.** "Suit" is replaced by the following:

    **21.**  "Suit" means a civil proceeding in which damages because of an "EIFS/DEFS incident" to which this insurance applies are alleged. "Suit" includes:

        **a.**  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

        **b.**  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

        **c.**  An appeal of a civil proceeding.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to Paragraph **2.** Exclusions of **SECTION I - COVERAGES. COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" caused directly or indirectly, in whole or in part, by any actual, alleged or threatened:

 **(1)** Inhalation of;

 **(2)** Ingestion of;

 **(3)** Contact with;

 **(4)** Absorption of;

 **(5)** Exposure to;

 **(6)** Existence of; or

 **(7)** Presence of,

 any "fungi" or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually;

**b.** Any loss, cost or expense associated in any way with, or arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, mitigating or disposing of, or in any way responding to, investigating, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity;

**c.** Any liability, with respect to "fungi" or bacteria, arising out of, resulting from, caused by, contributed to, or in any way related to any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with:

 **(1)** The existence of "fungi" or bacteria;

 **(2)** The prevention of "fungi" or bacteria;

 **(3)** The remediation of "fungi" or bacteria;

 **(4)** Any operation described in Paragraph **A. 2. b.** above;

 **(5)** "Your product"; or

 **(6)** "Your work"; or

**d.** Any obligation to share damages with or repay any person, organization or entity, related in any way to the liability excluded in Paragraphs **A. 2. a., b.** or **c.** above;

regardless of any other cause, event, material, product and / or building component that contributed concurrently or in any sequence to the injury or damage.

However this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for human ingestion.

**B.** The following exclusion is added to Paragraph **2.** Exclusions of **SECTION I - COVERAGES. COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" caused directly or indirectly, in whole or in part, by any actual, alleged or threatened:

 **(1)** Inhalation of;

 **(2)** Ingestion of;

 **(3)** Contact with;

 **(4)** Absorption of;

 **(5)** Exposure to;

 **(6)** Existence of; or

 **(7)** Presence of,

Includes copyrighted material of ISO
Properties, Inc., with its permission.
000064

any "fungi" or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually;

**b.**   Any loss, cost or expense associated in any way with, or arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, mitigating or disposing of, or in any way responding to, investigating, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity;

**c.**   Any liability, with respect to "fungi" or bacteria, arising out of, resulting from, caused by, contributed to, or in any way related to any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with:

**(1)**   The existence of "fungi" or bacteria;

**(2)**   The prevention of "fungi" or bacteria;

**(3)**   The remediation of "fungi" or bacteria;

**(4)**   Any operation described in Paragraph **B. 2. b.** above;

**(5)**   "Your product"; or

**(6)**   "Your work"; or

**d.**   Any obligation to share damages with or repay any person, organization or entity, related in any way to the liability excluded in Paragraphs **B. 2. a.**, **b.** or **c.** above;

regardless of any other cause, event, material, product and / or building component that contributed concurrently or in any sequence to the injury or damage.

However this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for human ingestion.

**C.**   For the purposes of this endorsement, **SECTION V - DEFINITIONS** is amended to include the following:

"Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Includes copyrighted material of ISO Properties, Inc., with its permission.
000065

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g.** Aircraft, Auto or Watercraft is replaced by the following:

This insurance does not apply to:

**g.** **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises that you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.**

**(2)** or **f. (3)** of the definition of "mobile equipment".

**B.** **SECTION II - WHO IS AN INSURED** is amended to include:

**4.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**C.** **SECTION V - DEFINITIONS, 3.** "Auto" and **15.** "Mobile equipment" are replaced by the following:

**3.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

Includes copyrighted material of ISO
Properties, Inc., with its permission
000066

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted;

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**D.** This endorsement does not apply to any liability arising from an "occurrence" caused by or arising from any land vehicle if:

    **1.** You have an Auto Coverage Form in force at the time of the "occurrence"; and

    **2.** The land vehicle meets the definition of auto in your Auto Coverage Form or policy, regardless of whether or not such land vehicle is:

        **a.** A covered auto under such Auto Coverage Form or policy; or

        **b.** Specifically described on a schedule of covered autos on your Auto Coverage Form or policy.

Includes copyrighted material of ISO Properties, Inc., with its permission
000067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTORS ADDITIONAL INSURED - AUTOMATIC STATUS AND AUTOMATIC WAIVER OF SUBROGATION WHEN REQUIRED IN WRITTEN CONTRACT, AGREEMENT, PERMIT OR AUTHORIZATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A. Additional Insured - Owners, Lessees Or Contractors - Automatic Status For Other Parties When Required In Written Contract Or Agreement With You**

1. **Section II - Who Is An Insured** is amended to include as an additional insured any person or organization you have agreed in writing in a contract or agreement to add as an additional insured on this Coverage Part. Such person(s) or organization(s) is an additional insured only with respect to liability for:

   a. "Bodily injury", "property damage" or "personal and advertising injury" *caused, in whole or in part, by* the performance of your ongoing operations by you or on your behalf, under that written contract or written agreement. Ongoing operations does not apply to "bodily injury" or "property damage" occurring after:

      (1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

      (2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project; and

   b. "Bodily injury" or "property damage" *caused, in whole or in part, by* "your work" performed under that written contract or written agreement and in-

cluded in the "products-completed operations hazard", but only if:

   (1) The Coverage Part to which this endorsement is attached provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard"; and

   (2) The written contract or written agreement requires you to provide additional insured coverage included within the "products-completed operations hazard" for that person or organization.

If the written contract or written agreement requires you to provide additional insured coverage included within the "products-completed operations hazard" for a specified length of time for that person or organization, the "bodily injury" or "property damage" must occur prior to the expiration of that period of time in order for this insurance to apply.

If the written contract or written agreement requires you to provide additional insured coverage for a person or organization per only ISO additional insured endorsement form number **CG 20 10**, without specifying an edition date, and without specifically requiring additional insured coverage included within the "products-completed operations hazard", this Paragraph **b.** does not apply to that person or organization.

2. If the written contract or written agreement described in Paragraph **1.** above specifically requires you to provide additional insured coverage to that person or organization:

   a. *Arising out of* your ongoing operations or *arising out of* "your work"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000068

**b.** By way of an edition of an ISO additional insured endorsement that includes *arising out of* your ongoing operations or *arising out of* "your work";

then the phrase *caused, in whole or in part, by* in Paragraph **A.1.a.** and/or Paragraph **A.1.b.** above, whichever applies, is replaced by the phrase *arising out of.*

**3.** With respect to the insurance afforded to the additional insureds described in Paragraph **A.1.**, the following additional exclusion applies:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**a.** The preparing, approving or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of, or the failure to render, any professional architectural, engineering or surveying services.

**4.** This Paragraph **A.** does not apply to additional insureds described in Paragraph **B.**

**B. Additional Insured - State Or Governmental Agency Or Subdivision Or Political Subdivision - Automatic Status When Required In Written Permits Or Authorizations**

**1. Section II - Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision you have agreed in writing in a contract, agreement, permit or authorization to add as an additional insured on this Coverage Part. Such state or governmental agency or subdivision or political subdivision is an additional insured only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision issued, in writing, a contract, agreement, permit or authorization.

**2.** With respect to the insurance afforded to the additional insureds described in Paragraph **B.1.**, the following additional exclusions apply:

This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard."

**C.** The insurance afforded to additional insureds described in Paragraphs **A.** and **B.**:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract, written agreement, written permit or written authorization to provide for such additional insured; and

**3.** Does not apply to any person, organization, state, governmental agency or subdivision or political subdivision specifically named as an additional insured for the same project in the schedule of an endorsement added to this Coverage Part.

**D.** With respect to the insurance afforded to the additional insureds described in Paragraphs **A.** and **B.**, the following is added to **Section III - Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the written contract, written agreement, written permit or written authorization described in Paragraphs **A.** and **B.**; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**E. Section IV - Commercial General Liability Conditions** is amended to add the following:

**Automatic Additional Insured Provision**

This insurance applies only if the "bodily injury" or "property damage" occurs, or the "personal and advertising injury" offense is committed:

**1.** During the policy period; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000069

**2.** Subsequent to your execution of the written contract or written agreement, or the issuance of a written permit or written authorization, described in Paragraphs **A.** and **B.**

**F.** Except when **G.** below applies, the following is added to **Section IV - Commercial General Liability Conditions, 5. Other Insurance,** and supersedes any provision to the contrary:

**When Other Additional Insured Coverage Applies On An Excess Basis**

This insurance is primary to other insurance available to the additional insured described in Paragraphs **A.** and **B.** except:

**1.** As otherwise provided in **Section IV - Commercial General Liability Conditions, 5. Other Insurance, b. Excess Insurance**; or

**2.** For any other valid and collectible insurance available to the additional insured as an additional insured by attachment of an endorsement to another insurance policy that is written on an excess basis. In such case, this insurance is also excess.

**G.** The following is added to **Section IV - Commercial General Liability Conditions, 5. Other Insurance,** and supersedes any provision to the contrary:

**Primary Insurance When Required By Written Contract, Agreement, Permit Or Authorization**

Except when wrap-up insurance applies to the claim or "suit" on behalf of the additional insured, this insurance is primary to any other insurance available to the additional insured described in Paragraphs **A.** and **B.** provided that:

**1.** The additional insured is a Named Insured under such other insurance; and

**2.** You have agreed in writing in a contract, agreement, permit or authorization described in Paragraph **A.** or **B.** that this insurance would be primary to any other insurance available to the additional insured.

As used in this endorsement, wrap-up insurance means any insurance provided by a consolidated (wrap-up) insurance program.

**Primary And Noncontributory Insurance When Required By Written Contract, Agreement, Permit Or Authorization**

Except when wrap-up insurance applies to the claim or "suit" on behalf of the additional insured, this insurance is primary to and will not seek contribution from any other insurance available to the additional insured described in Paragraphs **A.** and **B.** provided that:

**1.** The additional insured is a Named Insured under such other insurance; and

**2.** You have agreed in writing in a contract, agreement, permit or authorization described in Paragraph **A.** or **B.** that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

As used in this endorsement, wrap-up insurance means any insurance provided by a consolidated (wrap-up) insurance program.

**H.** **Section IV - Commercial General Liability Conditions, 9. Transfer Of Rights Of Recovery Against Others To Us** is amended by the addition of the following:

We waive any right of recovery we may have against any additional insured under this endorsement against whom you have agreed to waive such right of recovery in a written contract, written agreement, written permit or written authorization because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a written contract, written agreement, written permit or written authorization. However, our rights may only be waived prior to the "occurrence" giving rise to the injury or damage for which we make payment under this Coverage Part. The insured must do nothing after a loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce those rights.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000070

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

For purposes of insurance provided by this endorsement:

1. **Sudden and Accidental Exception**

   Exclusion **f. Pollutant, (1)(a)** and **(1)(d)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** do not apply to "bodily injury" provided:

   **a.** The "release" of "pollutants" from which the "bodily injury" arises is "sudden" and "accidental"; and

   **b.** The injured person's first exposure to such "pollutants" occurred during the policy period; and

   **c.** The injured person is clinically diagnosed or treated by a physician for the "bodily injury" caused by exposure to such "pollutants" within one year of such first exposure.

2. **Amendment to On Premises Exception**

   The on premises exception to the Pollutant Exclusion, **f.(1)(a)1) c)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, is deleted in its entirety and replaced by the following:

   **c)** Within one year of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

3. **Off Premises Exception**

   Exclusion **f. Pollutant (1)(d)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" that is caused by "gaseous or airborne pollutants" provided:

   **a.** The injured person's first exposure to "gaseous or airborne pollutants" occurred during the policy period; and

   **b.** The injured person is clinically diagnosed or treated by a physician for the "bodily injury" caused by the exposure to "gaseous or airborne pollutants" within one year of such first exposure.

4. **Amended Who Is An Insured**

   As respects the insurance provided by Paragraphs **1.** and **3.** of this endorsement, the **Sudden and Accidental Exception** and the **Off Premises Exception, SECTION II - WHO IS AN INSURED** is deleted in its entirety and replaced by the following:

   The coverage afforded shall apply only to Named Insureds.  We shall have no duty to defend or pay damages for any person or organization that is not a Named Insured.

5. **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS 5.  Other Insurance b. Excess Insurance** is amended to include the following:

   The insurance provided by Paragraphs **1. Sudden and Accidental Exception** and **3. Off Premises Exception**, of this endorsement is excess over any other valid and collectible insurance, whether primary, excess, contingent or on any other basis, except insurance written specifically to cover as excess over the limits of insurance that apply in this endorsement.

6. As respects the insurance provided by Paragraphs **1.** and **3.** of this endorsement, **SECTION V - DEFINITIONS** is amended to add the following:

   1. "Accidental" means unintended and unexpected.

   2. "Gaseous or airborne pollutants" means "pollutants" which:

      **(a)** Are a gas, smoke, fume, vapor or other similar airborne substance; and

      **(b)** Are the result of the "release" of such "pollutants" from materials, machinery or equipment brought on or to the "work site" by any Named Insured or any "employees", contractors or subcontractors working di-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000071

rectly or indirectly on any Named Insured's behalf.

"Gaseous or airborne pollutants" does not include asbestos or lead.

**3.** "Release" means actual discharge, dispersal, seepage, migration, release, escape or emission.

**4.** "Sudden" means abrupt, immediate and brief as well as unexpected and without prior notice. "Sudden" has a temporal element which requires that the "release" of "pollutants" begins and ends within a brief period of time. A "release" of a "pollutant" which results from a series of ongoing events which constitute a course of conduct or course of business is not "sudden".

**5.** "Work site" means any premises, site or location while a Named Insured or a Named Insured's "employees", contractors or subcontractors are performing operations directly or indirectly on the Named Insured's behalf, provided the premises, site or location is not owned or occupied by or rented or loaned to a Named Insured.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000072

# THE CINCINNATI CASUALTY COMPANY
A Stock Insurance Company

# CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Attached to and forming part of POLICY NUMBER: ENP 046 05 30      Effective Date 11-01-2019

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:   10-17-2018**

## Limits of Insurance and Deductible

| | Insuring Agreement | Annual Aggregate | Sublimit | | Deductible |
|---|---|---|---|---|---|
| A | Response Expenses | $50,000 | | | $1,000 |
| | | | Forensic IT Review | $25,000 | |
| | | | Legal Review | $25,000 | |
| | | | PR Services | $25,000 | |
| B | Defense and Liability | $50,000 | | | $1,000 |
| | | | Regulatory Fines and Penalties | $25,000 | |
| | | | PCI Fines and Penalties | $25,000 | |
| C | Identity Recovery | $25,000 | | | $250 |
| | | | Lost Wages and Child and Elder Care | $5,000 | |
| | | | Mental Health Counseling | $1,000 | |
| | | | Miscellaneous Unnamed Costs | $1,000 | |

| TOTAL ANNUAL PREMIUM | $143 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 28 |
| 2 YEAR | 56 |
| 3 YEAR | 74 |
| 4 YEAR | 93 |
| 5 YEAR | 102 |
| 6 YEAR | 111 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| HC102 | 01/18 CINCINNATI DATA DEFENDER™ COVERAGE FORM |
|---|---|
| HC477AL | 08/16 ALABAMA CHANGES - LEGAL ACTION AGAINST US |

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

## TABLE OF CONTENTS

**Coverage Part Provision:** **Begins on Page:**

Preamble ........................................................................................................3

**SECTION I - COVERAGES** ..............................................................................3

A. Insuring Agreements ...................................................................................3

   1. Insuring Agreement A - Response Expenses ........................................3
   2. Insuring Agreement B - Defense and Liability .......................................5
   3. Insuring Agreement C - Identity Recovery ............................................5

B. Exclusions ...................................................................................................5

   1. Applicable to Insuring Agreements **A** and **B** ...................................5

      a. Contractual Liability ............................................................5
      b. Criminal Investigations or Proceedings .............................5
      c. Deficiency Correction .........................................................5
      d. Extortion ..............................................................................6
      e. Fraudulent, Dishonest or Criminal Acts ............................6
      f. Non-monetary Relief ...........................................................6
      g. Previously Reported Data Compromises ...........................6
      h. Prior Data Compromises ....................................................6
      i. Prior or Pending Litigation .................................................6
      j. Reckless Disregard ............................................................6
      k. Uninsurable .........................................................................6
      l. Willful Complicity ................................................................6

   2. Applicable to Insuring Agreement **C** .............................................6

      a. Fraudulent, Dishonest or Criminal Acts ............................6
      b. Professional or Business Identity ......................................6
      c. Unreported Identity Theft ...................................................6

   3. Applicable to Insuring Agreements **A**, **B** and **C** ...........................6

      a. Nuclear ................................................................................6
      b. War ......................................................................................6

**SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE** ........................7

**SECTION III - DEFENSE AND SETTLEMENT** ...........................................8

**SECTION IV - CONDITIONS** ......................................................................8

   1. Bankruptcy ....................................................................................8
   2. Due Diligence ................................................................................8
   3. Duties in the Event of a Claim, Regulatory Proceeding or Loss ........9
   4. Help Line ......................................................................................10
   5. Legal Action Against Us ..............................................................10
   6. Legal Advice .................................................................................10
   7. Liberalization ...............................................................................10
   8. Office of Foreign Assets Control (OFAC) Compliance ....................11
   9. Other Insurance ..........................................................................11
   10. Pre-Notification Consultation .....................................................11
   11. Representations ..........................................................................11
   12. Separation of Insureds ..............................................................11
   13. Service Providers .......................................................................11
   14. Services ......................................................................................11
   15. Subrogation ................................................................................12
   16. Valuation - Settlement ...............................................................12
   17. When We Do Not Renew .............................................................12

## TABLE OF CONTENTS (CONT'D)

**Coverage Part Provision:**                                                    **Begins on Page:**

**SECTION V - EXTENDED REPORTING PERIODS** ................................................................12

**SECTION VI - DEFINITIONS** ................................................................................13

    1.  "Affected individual" ....................................................................13
    2.  "Authorized representative" .........................................................13
    3.  "Claim" ...........................................................................................13
    4.  "Coverage term" ..........................................................................13
    5.  "Coverage territory" ....................................................................14
    6.  "Data compromise liability" ........................................................14
    7.  "Defense costs" ...........................................................................14
    8.  "Employee" ...................................................................................14
    9.  "Executive" ...................................................................................15
  10.  "Identity recovery case manager" ..............................................15
  11.  "Identity recovery expenses" ......................................................15
  12.  "Identity recovery insured" .........................................................16
  13.  "Identity theft" .............................................................................16
  14.  "Insured" .......................................................................................16
  15.  "Loss" ............................................................................................16
  16.  "Named insured" ..........................................................................16
  17.  "Personal data compromise" ......................................................16
  18.  "Personally identifying information" ...........................................17
  19.  "Personally sensitive information" ..............................................17
  20.  "Policy period" .............................................................................17
  21.  "Regulatory proceeding" .............................................................17

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

**1. Insuring Agreement A - Response Expenses**

**a.** Coverage under Insuring Agreement **A** - Response Expenses applies only if all of the following conditions are met:

**(1)** There has been a "personal data compromise"; and

**(2)** Such "personal data compromise" is first discovered by you during the "coverage term"; and

**(3)** Such "personal data compromise" took place in the "coverage territory"; and

**(4)** Such "personal data compromise" is reported to us within 60 days after the date it is first discovered by you.

**b.** If the conditions listed in **a.** above have been met, then we will provide coverage for the following expenses when they arise directly from the "personal data compromise" described in **a.** above and are necessary and reasonable. Coverages **(4)** and **(5)** apply only if there has been a notification of the "personal data compromise" to "affected individuals" as covered under coverage **(3)**.

**(1) Forensic IT Review**

Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

This does not include costs to analyze, research or determine any of the following:

**(a)** Vulnerabilities in systems, procedures or physical security;

**(b)** Compliance with PCI or other industry security standards; or

**(c)** The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(2) Legal Review**

Professional legal counsel review of the "personal data compromise" and how you should best respond to it. If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000077

Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(3)  Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

**(4)  Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals":

**(a)**  The following services apply to any "personal data compromise".

**1)**  Informational Materials

A packet of loss prevention and customer support information.

**2)**  Help Line

A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in **(b)1)** and **2)** below.

Note, calls by "affected individuals" or their representatives to the Help Line do not constitute the making of a "claim" under Insuring Agreement **B** - Defense and Liability.

**(b)**  The following additional services apply to "personal data compromise" events involving "personally identifying information".

**1)**  Credit Report and Monitoring

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

**2)**  Identity Restoration Case Management

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

**(5)  PR Services**

We will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships. We will only pay for such fees and expenses when such a public relations firm review and response is reasonably necessary to avert or mitigate material damage to your business relationships from the "personal data compromise".

Such fees and expenses include costs to implement public relations recommendations of such public relations firm. However, when such recommendations include advertising and special promotions designed to retain your relationship with "affected individuals", we will not pay for promotions:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000078

**(a)** Provided to any of your "executives" or "employees"; or

**(b)** Costing more than $25 per "affected individual".

**2. Insuring Agreement B - Defense and Liability**

**a.** Coverage under Insuring Agreement **B** - Defense and Liability applies only if all of the following conditions are met:

**(1)** During the "coverage term" or any applicable Extended Reporting Period, you first receive notice of a "claim" or "regulatory proceeding" which arises from a "personal data compromise" that:

**(a)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period";

**(b)** Took place in the "coverage territory"; and

**(c)** Was submitted to us and covered under Insuring Agreement **A** - Response Expenses; and

**(2)** Such "claim" or "regulatory proceeding" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" "defense costs" and "data compromise liability" directly arising from the "claim" or "regulatory proceeding".

**c.** All "claims" or "regulatory proceedings" caused by a single "personal data compromise" will be deemed to have been made at the time that notice of the first of those "claims" or "regulatory proceedings" is received by you.

**3. Insuring Agreement C - Identity Recovery**

**a.** Coverage under Insuring Agreement **C** - Identity Recovery applies only if all of the following conditions are met:

**(1)** There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this Coverage Part; and

**(2)** Such "identity theft" is first discovered by the "identity recovery insured" during the "coverage term"; and

**(3)** Such "identity theft" took place in the "coverage territory"; and

**(4)** Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured".

**b.** If the conditions listed in **a.** above have been met, then we will provide the following to the "identity recovery insured":

**(1)** Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

**(2)** Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft".

**B. Exclusions**

**1.** Applicable to Insuring Agreements **A** and **B** only:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Contractual Liability**

An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclusion shall not apply to:

**(1)** Any liability that an "insured" would have incurred in the absence of such contract or agreement; or

**(2)** Any PCI fines or penalties explicitly covered under Insuring Agreement **B** – Defense and Liability.

**b. Criminal Investigations or Proceedings**

Any criminal investigations or proceedings.

**c. Deficiency Correction**

Costs to research or correct any deficiency. This includes, but is not limited to, any deficiency in your sys-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000079

tems, procedures or physical security that may have contributed to a "personal data compromise".

**d. Extortion**

Any extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

**e. Fraudulent, Dishonest or Criminal Acts**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

**f. Non-monetary Relief**

That part of any "claim" seeking any non-monetary relief.

**g. Previously Reported Data Compromises**

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

**h. Prior Data Compromises**

Any "personal data compromise" first occurring before the Retroactive Date shown in the Declarations, or any "claim" arising from a "personal data compromise" that first occurred prior to the Retroactive Date shown in the Declarations.

**i. Prior or Pending Litigation**

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

**j. Reckless Disregard**

Your reckless disregard for the security of "personally identifying information" or "personally sensitive information" in your care, custody or control.

**k. Uninsurable**

Any amount not insurable under applicable law.

**l. Willful Complicity**

The "insured's" intentional or willful complicity in a "personal data compromise".

**2.** Applicable to Insuring Agreement **C** only:

This insurance does not apply to:

**a. Fraudulent, Dishonest or Criminal Acts**

Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any "authorized representative" of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

**b. Professional or Business Identity**

The theft of a professional or business identity.

**c. Unreported Identity Theft**

An "identity theft" that is not reported in writing to the police.

**3.** Applicable to Insuring Agreements **A, B** and **C**:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Nuclear**

Nuclear reaction or radiation or radioactive contamination, however caused.

**b. War**

**(1)** War, including undeclared or civil war or civil unrest;

**(2)** Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000080

## SECTION II - LIMITS OF INSURANCE AND DE-DUCTIBLE

**A.** Insuring Agreement **A** - Response Expenses:

**1.** The most we will pay under Insuring Agreement **A** - Response Expenses is the Response Expenses Limit of Insurance stated in the Declarations.

**2.** The Response Expenses Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Response Expenses arising out of all "personal data compromise" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

**3.** A "personal data compromise" may be first discovered by you in one "coverage term" but cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "personal data compromise" will be subject to the Response Expenses Limit of Insurance applicable to the "coverage term" when the "personal data compromise" was first discovered by you.

**4.** The most we will pay under Insuring Agreement **A** - Response Expenses for Forensic IT Review, Legal Review and PR Services coverages for "loss" arising from any one "personal data compromise" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.** PR Services coverage is also subject to a limit per "affected individual" as described in Section **I., A.1.b.(5)** PR Services.

**5.** Coverage for Services to "affected individuals" is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals" or the period required by law, whichever is longer. Notwithstanding the foregoing, coverage for Identity Restoration Case Management services initiated within such period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

**6.** Response Expenses coverage is subject to the Response Expenses Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this Coverage

Part. We may, at our option, pay any part or all of the deductible amount in order to respond effectively to a "personal data compromise" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**B.** Insuring Agreement **B** - Defense and Liability:

**1.** The most we will pay under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) is the Limit of Insurance stated in the Declarations.

**2.** The Insuring Agreement **B** - Defense and Liability Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for all "loss" covered under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) arising out of all "claims".

**3.** The most we will pay under Insuring Agreement **B** – Defense and Liability for "data compromise liability" and "defense costs" related to Regulatory Fines and Penalties and PCI Fines and Penalties coverages arising from any one "claim" or "regulatory proceeding" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.**

**4.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Defense and Liability Limit for the immediately preceding "coverage term".

**5.** The Insuring Agreement **B** - Defense and Liability coverage is subject to the Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "claim" or "regulatory proceeding" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim", "loss" or "regulatory proceeding" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**C.** Insuring Agreement **C** - Identity Recovery:

**1.** Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the Limit of Insurance available for "identity recovery expenses".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000081

**2.** Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Annual Aggregate Limit of Insurance stated in the Declarations per "identity recovery insured". Regardless of the number of "identity theft" incidents, this limit is the most we will pay for the total of all "loss" arising out of all "identity thefts" suffered by one "identity recovery insured" which are first discovered by the "identity recovery insured" during the "coverage term". If an "identity theft" is first discovered in one "coverage term" and continues into other "coverage terms", all "loss" arising from such "identity theft" will be subject to the aggregate Limit of Insurance applicable to the "coverage term" when the "identity theft" was first discovered.

**3.** Legal costs as provided under Item **d.** of the definition of "identity recovery expenses" are part of, and not in addition to, the aggregate limit described in Paragraph **2.**

**4.** Item **e.** (Lost Wages) and Item **f.** (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

**5.** Item **g.** (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate limit described in Paragraph **2.** Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

**6.** Item **h.** (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

**7.** Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Identity Recovery Deductible stated in the Declarations. Each "identity recovery insured" shall be responsible for such deductible amount only once during each "coverage term". This deductible applies only to "identity recovery expenses".

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

**1.** We will have the right and duty to select counsel and defend the "insured" against any "claim" or "regulatory proceeding" covered by Insuring Agreement **B** - Defense and Liability, regardless of whether the allegations of such "claim" or "regulatory proceeding" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" or "regulatory proceeding" seeking damages or other relief not insured by Insuring Agreement **B** - Defense and Liability.

**2.** We may, with your written consent, make any settlement of a "claim" or "regulatory proceeding" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" or "regulatory proceeding" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

**3.** We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim" or "regulatory proceeding", after the Insuring Agreement **B** - Defense and Liability Limit of Insurance has been exhausted.

**4.** We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance which accrues:

   **a.** After entry of judgment; and

   **b.** Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Defense and Liability Limit of Insurance.

These interest payments shall be in addition to and not part of the Defense and Liability Limit.

## SECTION IV – CONDITIONS

**1. Bankruptcy**

Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

**2. Due Diligence**

You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000082

comply with, reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security;

**c.** Maintaining and updating at appropriate intervals backups of computer data;

**d.** Protecting transactions, such as processing credit card, debit card and check payments; and

**e.** Appropriate disposal of files containing "personally identifying information" or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

**3. Duties in the Event of a Claim, Regulatory Proceeding or Loss**

**a.** If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim" or "regulatory proceeding", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

**(1)** The specific details, including the date, of the circumstance;

**(2)** The alleged injuries or damage sustained or which may be sustained;

**(3)** The names of potential claimants; and

**(4)** The manner in which the "insured" first became aware of the circumstance.

Any subsequent "claim" or "regulatory proceeding" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" or "regulatory proceeding" is brought against any "insured", you must:

**(1)** Immediately record the specifics of the "claim" or "regulatory proceeding" and the date received; and

**(2)** Provide us with written notice, as soon as practicable, but in no event

more than 60 days after the date the "claim" or "regulatory proceeding" is first received by you.

**(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "regulatory proceeding";

**(4)** Authorize us to obtain records and other information;

**(5)** Cooperate with us in the investigation, settlement or defense of the "claim" or "regulatory proceeding";

**(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" or "defense costs" to which this insurance may also apply; and

**(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim" or "regulatory proceeding".

**c.** In the event of a "personal data compromise" covered under Insuring Agreement **A** - Response Expenses, you must see that the following are done:

**(1)** Notify the police if a law may have been broken.

**(2)** Notify us as soon as practicable, but in no event more than 60 days after the "personal data compromise". Include a description of any property involved.

**(3)** As soon as possible, give us a description of how, when and where the "personal data compromise" occurred.

**(4)** As often as may be reasonably required, permit us to:

**(a)** Inspect the property proving the "personal data compromise";

**(b)** Examine your books, records, electronic media and records and hardware;

**(c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

**(d)** Make copies from your books, records, electronic media and records and hardware.

**(5)** Send us signed, sworn proof of loss containing the information we request

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000083

to investigate the "personal data compromise". You must do this within 60 days after our request. We will supply you with the necessary forms.

**(6)** Cooperate with us in the investigation of the "personal data compromise" or settlement of the "loss".

**(7)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

**(8)** Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our prior written consent.

**(9)** Promptly send us any legal papers or notices received concerning the "personal data compromise" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Help Line**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-866-219-9831**. The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

**a.** Information and advice for how to respond to a possible "identity theft"; and

**b.** Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records

that support his or her claim for "identity recovery expenses".

**5. Legal Action Against Us**

**a.** No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

**(2)** To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**6. Legal Advice**

We are not your legal advisor. Our determination of what is or is not covered under this Coverage Part does not represent advice or counsel from us about what you should or should not do.

**7. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000084

will be considered as included until the end of the current "policy period". We will make no additional premium charge for this additional coverage during the interim.

## 8. Office of Foreign Assets Control (OFAC) Compliance

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

## 9. Other Insurance

a. If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part by reference in such other policy to this policy's policy number.

b. When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

## 10. Pre-Notification Consultation

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under this Coverage Part for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under Condition **12.** Service Providers. You must provide the following at our pre-notification consultation with you:

a. The exact list of "affected individuals" to be notified, including contact information.

b. Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

c. The scope of services that you desire for the "affected individuals". For example, coverage may be structured to provide fewer services in order to make those services available to more "affected individuals" without exceeding the available Response Expenses Limit.

## 11. Representations

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

## 12. Separation of Insureds

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom a "claim" is made.

## 13. Service Providers

a. We will only pay under this Coverage Part for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Coverage Part. We will not unreasonably withhold such approval.

b. Prior to the Pre-Notification Consultation described in the Pre-Notification Consultation Condition above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

(1) Such alternate service provider must be approved by us;

(2) Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

(3) Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

## 14. Services

The following conditions apply as respects any services provided to you or any "affected indi-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000085

vidual" or "identity recovery insured" by us, our designees or any service firm paid for in whole or in part under this Coverage Part:

**a.** The effectiveness of such services depends on the cooperation and assistance of you, "affected individuals" and "identity recovery insureds".

**b.** All services may not be available or applicable to all individuals. For example, "affected individuals" and "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

**c.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**d.** Except for the services of an "identity recovery case manager" under Insuring Agreement **C** - Identity Recovery, which we will provide directly, you will have a direct relationship with the professional service firms paid for in whole or in part under this Coverage Part. Those firms work for you.

## 15. Subrogation

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, shall be distributed as follows:

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

## 16. Valuation - Settlement

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

## 17. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - EXTENDED REPORTING PERIODS

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

**a.** You or we cancel this Coverage Part;

**b.** You or we refuse to renew this Coverage Part; or

**c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

**a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Automatic Extended Reporting Period for any "personal data compromise" occurring on or after the Retroactive Date shown on the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

**b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Supplemental Extended Reporting Period

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000086

for any "personal data compromise" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

**c.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods shall be part of, and not in addition to, the Defense and Liability Limit of Insurance for the immediately preceding "coverage term".

## SECTION VI - DEFINITIONS

**1.** "Affected individual" means any person whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this Coverage Part. This definition is subject to the following provisions:

**a.** "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

**b.** An "affected individual" may reside anywhere in the world.

**2.** "Authorized representative" means a person or entity authorized by law or contract to act on behalf of an "identity recovery insured".

**3.** "Claim":

**a.** Means:

**(1)** A civil proceeding in which it is alleged that the claimant suffered damages arising from:

**(a)** A "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses section of this Coverage Part and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses; or

**(b)** The violation of a governmental statute or regulation arising from a "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses.

**(2)** "Claim" includes:

**(a)** An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent;

**(b)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

**(c)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

**b.** Does not include any demand or action brought by or on behalf of someone who is:

**(1)** Your "executive";

**(2)** Your owner or part-owner; or

**(3)** A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action. "Claim" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual".

**4.** "Coverage term" means the following individual increment, or if a multi-year "policy period", increments, of time, which comprise the "policy period" of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000087

address shown in the Declarations on the earlier of:

**(1)** The day the "policy period" shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Coverage territory" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses, anywhere in the world.

**b.** With respect to Insuring Agreement **B** - Defense and Liability, anywhere in the world, however, "claims" must be brought in the United States (including its territories and possessions), Puerto Rico or Canada.

**c.** With respect to Insuring Agreement **C** - Identity Recovery, anywhere in the world

**6.** "Data compromise liability":

**a.** Means the following, when they arise from a "claim" or "regulatory proceeding":

**(1)** Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

**(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

**(3)** Pre-judgment interest on that part of any judgment paid by us.

**b.** Also includes any Payment Card Industry (PCI) fine or penalty imposed under a contract to which you are a party when such fine or penalty arises from a "claim". PCI Fines and Penalties do not include any increased transaction costs.

**c.** Also includes any fine or penalty imposed by law, to the extent such fine or penalty is legally insurable under the law of the applicable jurisdiction when such fine or penalty arises from a "regulatory proceeding".

**d.** Does not include:

**(1)** Civil or criminal fines or penalties imposed by law, except for civil fines and penalties expressly covered under paragraphs **b.** and **c.** above;

**(2)** Taxes; or

**(3)** Matters which may be deemed uninsurable under the applicable law.

**e.** With respect to fines and penalties and punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

**(1)** Is where those fines, penalties or damages were awarded or imposed;

**(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

**(3)** Is where you are incorporated or you have your principal place of business; or

**(4)** Is where we are incorporated or have our principal place of business.

**7.** "Defense costs":

**a.** Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" or "regulatory proceeding" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

**b.** Does not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

**8.** "Employee" means any natural person, other than an "executive", who was, now is or will be:

**a.** Employed on a full- or part-time basis by you;

**b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

**c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties relat-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000088

ed to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **8.b.**; or

**d.** Your volunteer worker, which includes unpaid interns.

**9.** "Executive" means any natural person who was, now is or will be:

**a.** The owner of a sole proprietorship that is a "named insured"; or

**b.** A duly elected or appointed:

**(1)** Director;

**(2)** Officer;

**(3)** Managing Partner;

**(4)** General Partner;

**(5)** Member (if a limited liability company);

**(6)** Manager (if a limited liability company); or

**(7)** Trustee,

of a "named insured".

**10.** "Identity recovery case manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured". This includes, with the permission and cooperation of the "identity recovery insured", written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**11.** "Identity recovery expenses" means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft" suffered by an "identity recovery insured":

**a.** Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft".

**b.** Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft".

**c.** Costs for credit reports from established credit bureaus.

**d.** Fees and expenses for an attorney approved by us for the following:

**(1)** The defense of any civil suit brought against an "identity recovery insured".

**(2)** The removal of any civil judgment wrongfully entered against an "identity recovery insured".

**(3)** Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

**(4)** Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

**(5)** The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured".

**e.** Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self-employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

**f.** Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**g.** Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**h.** Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft".

**(1)** Such costs include:

**(a)** Costs by the "identity recovery insured" to recover control over his or her personal identity.

**(b)** Deductibles or service fees from financial institutions.

**(2)** Such costs do not include:

**(a)** Costs to avoid, prevent or detect "identity theft" or other loss.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000089

**(b)** Money lost or stolen.

**(c)** Costs that are restricted or excluded elsewhere in this Coverage Part or policy.

**12.** "Identity recovery insured" means the following:

**a.** When the entity insured under this Coverage Part is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the "named insured".

**b.** When the "named insured" under this Coverage Part is a partnership, the "identity recovery insureds" are the current partners.

**c.** When the "named insured" under this Coverage Part is a corporation or other form of organization, other than those described in **a.** or **b.** above, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be:

**(1)** The chief executive of the insured entity; or

**(2)** As respects a religious institution, the senior ministerial employee.

**d.** The legally recognized spouse of any individual described in **a.**, **b.** or **c.** above.

An "identity recovery insured" must always be an individual person. The "named insured" under this Coverage Part is not an "identity recovery insured".

**13.** "Identity theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

**14.** "Insured" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses any "named insured".

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** Any "named insured"; and

**(2)** Any "employee" or "executive" of a "named insured", but:

**(a)** Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

**(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

**c.** With respect to Insuring Agreement **C** - Identity Recovery any "named insured".

**15.** "Loss" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses:

Those expenses enumerated in Section **I**, **A.**, Paragraph **1.b.**

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** "Defense costs"; and

**(2)** "Data compromise liability".

**c.** With respect to Insuring Agreement **C** - Identity Recovery, "identity recovery expenses".

**16.** "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

**17.** "Personal data compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss, theft, accidental release or accidental publication involves "personally identifying information", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

**a.** At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

**(1)** You; or

**(2)** A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, pro-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

cessing, transmission or transportation of such information.

**b.** "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

    **(1)** The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

    **(2)** Such disposal or abandonment must take place during the time period for which this Coverage Part is effective.

**c.** "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

**d.** All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

**18.** "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual" or "identity recovery insured". This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

**19.** "Personally sensitive information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

**20.** "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

**21.** "Regulatory proceeding" means an investigation, demand or proceeding alleging a violation of law or regulation brought by, or on behalf of, the Federal Trade Commission, Federal Communications Commission or other administrative or regulatory agency, or any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000091

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - LEGAL
# ACTION AGAINST US

This endorsement modifies insurance provided under the following:

> **CINCINNATI CYBER DEFENSE™ COVERAGE PART**
> **CINCINNATI DATA DEFENDER™ COVERAGE PART**
> **CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

Paragraph **b.** of the Legal Action Against Us Condition is deleted in its entirety and replaced by the following:

**b.**   You may not bring any legal action against us involving "loss":

    **(1)**   Unless you have complied with all the terms of this insurance; and

    **(2)**   Unless the action is brought within the time limitations prescribed by Alabama law.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000092

# THE CINCINNATI CASUALTY COMPANY
### A Stock Insurance Company

# CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Attached to and forming part of POLICY NUMBER: `ENP 046 05 30`      Effective Date `11-01-2019`

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:**  `11-01-2019`

### Limits of Insurance and Deductible

| | Insuring Agreement | Annual Aggregate | Sublimit | | Deductible | |
|---|---|---|---|---|---|---|
| A | Computer Attack | $50,000 | | | $1,000 | 1 |
| | | | Cyber Extortion | $10,000 | $1,000 | 2 |
| | | | Loss of Business | $25,000 | | |
| | | | Public Relations | $25,000 | | |
| B | Network Security and Electronic Media Liability | $50,000 | | | $1,000 | |

| TOTAL ANNUAL PREMIUM | $187 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 60 |
| 2 YEAR | 120 |
| 3 YEAR | 160 |
| 4 YEAR | 200 |
| 5 YEAR | 220 |
| 6 YEAR | 240 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| HC103 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE FORM |
| HC477AL | 08/16 | ALABAMA CHANGES - LEGAL ACTION AGAINST US |

---

[1] Computer Attack Deductible other than Cyber Extortion
[2] Cyber Extortion Deductible

# CINCINNATI NETWORK DEFENDER™ COVERAGE FORM

### TABLE OF CONTENTS

**Coverage Part Provision:**                                                           **Begins on Page:**

Preamble .......................................................................................................................................... 3

**SECTION I - COVERAGES** ............................................................................................................ 3

A.  Insuring Agreements .......................................................................................................... 3

    1.  Insuring Agreement A - Computer Attack ................................................................... 3
    2.  Insuring Agreement B - Network Security and Electronic Media Liability ................... 3

B.  Exclusions ........................................................................................................................... 4

    1.  Contractual Liability .................................................................................................... 4
    2.  Criminal Investigations or Proceedings ..................................................................... 4
    3.  Deficiency Correction .................................................................................................. 4
    4.  Extortion ...................................................................................................................... 4
    5.  Fines or Penalties ....................................................................................................... 4
    6.  Fraudulent, Dishonest or Criminal Acts ..................................................................... 4
    7.  Information Technology Products ................................................................................ 4
    8.  Infrastructure Failure .................................................................................................. 4
    9.  Knowledge of Falsity .................................................................................................. 4
    10. Non-monetary Relief ................................................................................................... 4
    11. Nuclear ....................................................................................................................... 4
    12. Patent or Trade Secret Infringement .......................................................................... 4
    13. Previously Reported Claims ....................................................................................... 4
    14. Prior Wrongful Acts .................................................................................................... 5
    15. Prior or Pending Litigation .......................................................................................... 5
    16. Property Damage or Bodily Injury .............................................................................. 5
    17. War ............................................................................................................................. 5
    18. Willful Complicity ........................................................................................................ 5

**SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE** ......................................................... 5

**SECTION III - DEFENSE AND SETTLEMENT** ............................................................................. 6

**SECTION IV - CONDITIONS** ......................................................................................................... 6

    1.  Bankruptcy .................................................................................................................. 6
    2.  Due Diligence .............................................................................................................. 6
    3.  Duties in the Event of a Claim or Loss ....................................................................... 6
    4.  Legal Action Against Us ............................................................................................. 7
    5.  Liberalization .............................................................................................................. 8
    6.  Office of Foreign Assets Control (OFAC) Compliance ............................................... 8
    7.  Other Insurance .......................................................................................................... 8
    8.  Representations .......................................................................................................... 8
    9.  Separation of Insureds ............................................................................................... 8
    10. Services ...................................................................................................................... 8
    11. Subrogation ................................................................................................................ 8
    12. Valuation - Settlement ................................................................................................ 9
    13. When We Do Not Renew ............................................................................................ 9

**SECTION V - EXTENDED REPORTING PERIODS** ...................................................................... 9

**SECTION VI - DEFINITIONS** ........................................................................................................ 9

    1.  "Actual cash value" ..................................................................................................... 9
    2.  "Bodily injury" .............................................................................................................. 9
    3.  "Business income loss" ............................................................................................... 9
    4.  "Claim" ...................................................................................................................... 10
    5.  "Computer attack" ..................................................................................................... 10
    6.  "Computer system" ................................................................................................... 10
    7.  "Coverage term" ....................................................................................................... 10

Services Office, Inc., with its permission.
000094

## TABLE OF CONTENTS (CONT'D)

**Coverage Part Provision:**                                                                 **Begins on Page:**

**SECTION VI – DEFINITIONS (Cont'd)**.................................................................................................**10**

| | | |
|---|---|---|
| 8. | "Coverage territory".............................................................................................. | **10** |
| 9. | "Cyber extortion expenses"................................................................................... | **10** |
| 10. | "Cyber extortion threat"....................................................................................... | **11** |
| 11. | "Data re-creation costs"...................................................................................... | **11** |
| 12. | "Data restoration costs"...................................................................................... | **11** |
| 13. | "Defense costs".................................................................................................. | **11** |
| 14. | "Denial of service attack".................................................................................... | **11** |
| 15. | "Electronic media incident".................................................................................. | **11** |
| 16. | "Employee"........................................................................................................ | **12** |
| 17. | "Executive"........................................................................................................ | **12** |
| 18. | "Extra expense".................................................................................................. | **12** |
| 19. | "Insured".......................................................................................................... | **12** |
| 20. | "Interrelated"..................................................................................................... | **12** |
| 21. | "Loss".............................................................................................................. | **12** |
| 22. | "Malware attack"................................................................................................ | **12** |
| 23. | "Named insured"................................................................................................ | **12** |
| 24. | "Network security incident"................................................................................. | **12** |
| 25. | "Period of restoration"........................................................................................ | **13** |
| 26. | "Personally identifying information"...................................................................... | **13** |
| 27. | "Personally sensitive information"........................................................................ | **13** |
| 28. | "Policy period".................................................................................................. | **13** |
| 29. | "Property damage".............................................................................................. | **13** |
| 30. | "Ransomware".................................................................................................... | **13** |
| 31. | "Settlement costs".............................................................................................. | **13** |
| 32. | "System restoration costs".................................................................................. | **13** |
| 33. | "Third party corporate data"................................................................................ | **14** |
| 34. | "Unauthorized access incident"........................................................................... | **14** |
| 35. | "Wrongful act".................................................................................................. | **14** |

**HC 103 01 18**                    Includes copyrighted material of Insurance                    **Page 2 of 14**
                                         Services Office, Inc., with its permission.
                                                        000095

# CINCINNATI NETWORK DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DE-DUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

#### 1. Insuring Agreement A - Computer Attack

a. Coverage under Insuring Agreement **A** - Computer Attack applies only if all of the following conditions are met:

(1) There has been a "computer attack"; and

(2) Such "computer attack" is first discovered by you during the "policy period"; and

(3) Such "computer attack" occurred in the "coverage territory"; and

(4) Such "computer attack" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first discovered by you.

b. If all of the conditions in **a.** above have been met, then we will provide you the following coverages for "loss" directly arising from such "computer attack".

(1) **Cyber Extortion**

We will pay your necessary and reasonable "cyber extortion expenses".

(2) **Data Restoration**

We will pay your necessary and reasonable "data restoration costs".

(3) **Data Re-creation**

We will pay your necessary and reasonable "data re-creation costs".

(4) **System Restoration**

We will pay your necessary and reasonable "system restoration costs".

(5) **Loss of Business**

We will pay your actual "business income loss" and your necessary and reasonable "extra expenses".

(6) **Public Relations**

If you suffer covered "business income loss", we will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a professional public relations firm review of and response to the potential impact of the "computer attack" on your business relationships. We will only pay for such fees and expenses when such a public relations firm review and response is reasonably necessary to avert or mitigate material damage to your business relationships from the "computer attack".

#### 2. Insuring Agreement B - Network Security and Electronic Media Liability

a. Coverage under Insuring Agreement **B** - Network Security and Electronic Media Liability applies only if all of the following conditions are met:

(1) During the "coverage term" or any applicable Extended Reporting Period, you first receive no-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000096

tice of a "claim" which arises from a "wrongful act" that:

   **(a)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period"; and

   **(b)** Took place in the "coverage territory"; and

   **(2)** Such "claim" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

   **b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" the "insured's" necessary and reasonable "defense costs" and "settlement costs" directly arising from the "claim".

   **c.** All "claims" caused by a single "wrongful act" or series of "interrelated" "wrongful acts" will be deemed to have been made at the time that notice of the first of those "claims" is received by you.

**B. Exclusions**

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

   **1. Contractual Liability**

   An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclusion shall not apply to any liability that an "insured" would have incurred in the absence of such contract or agreement.

   **2. Criminal Investigations or Proceedings**

   Any criminal investigations or proceedings.

   **3. Deficiency Correction**

   Costs to research or correct any deficiency.

   **4. Extortion**

   Any threat, extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

   This exclusion does not apply to the extent that insurance coverage is provided under **SECTION I - COVERAGES**, Paragraph **A.1.b.(1) Cyber Extortion**.

   **5. Fines or Penalties**

   Any fines or penalties.

   **6. Fraudulent, Dishonest or Criminal Acts**

   Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

   **7. Information Technology Products**

   The propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers in connection with hardware or software created, produced or modified by you for sale, lease or license to third parties.

   **8. Infrastructure Failure**

   Failure or interruption of or damage to any electrical power supply network or telecommunication network not owned and operated by the "insured" including, but not limited to, the internet, internet service providers, DNS service providers, cable and wireless providers, internet exchange providers, search engine providers, tier 1 internet protocol networks and other providers of telecommunications or internet infrastructure.

   **9. Knowledge of Falsity**

   Any oral or written publication of material, if done by the "insured" or at the "insured's" direction with knowledge of its falsity.

   **10. Non-monetary Relief**

   That part of any "claim" seeking any non-monetary relief.

   **11. Nuclear**

   Nuclear reaction or radiation or radioactive contamination, however caused.

   **12. Patent or Trade Secret Infringement**

   Any actual or alleged patent or trade secret violation including any actual or alleged violation of the Patent Act, the Economic Espionage Act of 1996, or the Uniform Trade Secrets Act and their amendments.

   **13. Previously Reported Claims**

   The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000097

### 14. Prior Wrongful Acts

Any "wrongful act" first occurring before the Retroactive Date shown in the Declarations or any "claim" arising from a "wrongful act" that first occurred prior to the Retroactive Date shown in the Declarations.

### 15. Prior or Pending Litigation

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

### 16. Property Damage or Bodily Injury

"Property damage" or "bodily injury" other than "bodily injury" arising from an "electronic media incident".

### 17. War

**a.** War, including undeclared or civil war or civil unrest;

**b.** Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

### 18. Willful Complicity

The "insured's" intentional or willful complicity in a covered "loss" event or your reckless disregard for the security of your "computer system" or data.

## SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE

### A. Insuring Agreement A - Computer Attack

**1.** The most we will pay under Insuring Agreement **A** - Computer Attack for Cyber Extortion coverage for "loss" arising from any one "computer attack" is the Cyber Extortion Sublimit stated in the Declarations. This Limit of Insurance is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

**2.** The most we will pay under Insuring Agreement **A** - Computer Attack for Loss of Business coverage for "loss" arising from any one "computer attack" is the Loss of Business Sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

**3.** The most we will pay under Insuring Agreement **A** - Computer Attack for Public Relations coverage for "loss" arising from any one "computer attack" is the Public Relations Sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

**4.** The Computer Attack Aggregate Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Computer Attack arising out of all "computer attack" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "computer attack" events first discovered during the "coverage term".

**5.** A "computer attack" may be first discovered by you in one "coverage term" but it may cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "computer attack" will be subject to the Computer Attack Aggregate Limit of Insurance applicable to the "coverage term" when the "computer attack" was first discovered by you.

**6.** The Computer Attack coverage is subject to the:

**a.** Computer Attack other than Cyber Extortion; and

**b.** Cyber Extortion;

deductibles stated in the Declarations. In the event that elements of "loss" from the same "computer attack" include "cyber extortion expenses" as well as other insured expenses or costs, then only the single highest deductible will apply. You shall be responsible for the applicable deductible amount as respects "loss" arising from each "computer attack" covered under this Coverage Part.

### B. Insuring Agreement B - Network Security and Electronic Media Liability

**1.** Except for post-judgment interest, the most we will pay under Insuring Agreement **B** - Network Security and Electronic Media Liability is the Network Security and Electronic Media Liability Aggregate Limit of Insurance stated in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000098

**2.** The Network Security and Electronic Media Liability Aggregate Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **B** - Network Security and Electronic Media Liability (other than post-judgment interest) arising out of all "claims".

**3.** The Network Security and Electronic Media Liability Aggregate Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Network Security and Electronic Media Liability Aggregate Limit of Insurance for the immediately preceding "coverage term".

**4.** The Insuring Agreement **B** - Network Security and Electronic Media Liability coverage is subject to the Network Security and Electronic Media Liability Deductible stated in the Declarations. You shall be responsible for the applicable deductible amount as respects "loss" arising from each "claim" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim" or "loss" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Network Security and Electronic Media Liability.

**1.** We will have the right and duty to select counsel and defend the "insured" against any "claim" covered by Insuring Agreement **B** - Network Security and Electronic Media Liability, regardless of whether the allegations of such "claim" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" seeking damages or other relief not insured by Insuring Agreement **B** - Network Security and Electronic Media Liability.

**2.** We may, with your written consent, make any settlement of a "claim" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

**3.** We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim", after the Insuring Agreement **B** - Network Secu-

rity and Electronic Media Liability Limit of Insurance has been exhausted.

**4.** We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance which accrues:

**a.** After entry of judgment; and

**b.** Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance.

These interest payments shall be in addition to and not part of the Network Security and Electronic Media Liability Limit of Insurance.

## SECTION IV - CONDITIONS

**1. Bankruptcy**

Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

**2. Due Diligence**

You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate physical security for your premises, "computer systems" and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security; and

**c.** Maintaining and updating at appropriate intervals backups of computer data.

**3. Duties in the Event of a Claim or Loss**

**a.** If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

**(1)** The specific details, including the date, of the circumstance;

**(2)** The alleged injuries or damage sustained or which may be sustained;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000099

(3) The names of potential claimants; and

(4) The manner in which the "insured" first became aware of the circumstance.

Any subsequent "claim" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" is brought against any "insured", you must:

(1) Immediately record the specifics of the "claim" and the date received; and

(2) Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "claim" is first received by you.

(3) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

(4) Authorize us to obtain records and other information;

(5) Cooperate with us in the investigation, settlement or defense of the "claim";

(6) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" to which this insurance may also apply; and

(7) Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim".

**c.** In the event of a "computer attack" covered under Insuring Agreement **A** - Computer Attack, you must see that the following are done:

(1) Notify the police if a law may have been broken.

(2) Notify us as soon as practicable, but in no event more than 60 days after the "computer attack". Include a description of any property involved.

(3) As soon as possible, give us a description of how, when and where the "computer attack" occurred.

(4) As often as may be reasonably required, permit us to:

(a) Inspect the property proving the "computer attack";

(b) Examine your books, records, electronic media and records and hardware;

(c) Take samples of damaged and undamaged property for inspection, testing and analysis; and

(d) Make copies from your books, records, electronic media and records and hardware.

(5) Send us signed, sworn proof of loss containing the information we request to investigate the "computer attack". You must do this within 60 days after our request. We will supply you with the necessary forms.

(6) Cooperate with us in the investigation or settlement of the "computer attack".

(7) If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

(8) Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our prior written consent.

(9) Promptly send us any legal papers or notices received concerning the "computer attack" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Legal Action Against Us**

**a.** No person or organization has a right:

(1) To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

(2) To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000100

final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**5. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current "policy period". We will make no additional premium charge for this additional coverage during the interim.

**6. Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**7. Other Insurance**

**a.** If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part

by reference in such other policy to this policy's policy number.

**b.** When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

**8. Representations**

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

**9. Separation of Insureds**

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom "claim" is made.

**10. Services**

The following conditions apply as respects any services provided to you by any service firm provided or paid for in whole or in part under this Coverage Part:

**a.** The effectiveness of such services depends on your cooperation and assistance.

**b.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**11. Subrogation**

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, will be distributed as follows:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

000101

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

## 12. Valuation - Settlement

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

## 13. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - EXTENDED REPORTING PERIODS

The provisions contained within this Section apply only to Insuring Agreement **B** - Network Security and Electronic Media Liability.

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

**a.** You or we cancel this Coverage Part;

**b.** You or we refuse to renew this Coverage Part; or

**c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

**a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written no-

tice of a "claim" of which you first receive notice during said Automatic Extended Reporting Period for any "wrongful act" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

**b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" of which you first receive notice during said Supplemental Extended Reporting Period for any "wrongful act" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

**c.** The Network Security and Electronic Media Liability Limit for the Extended Reporting Periods shall be part of, and not in addition to, the Network Security and Electronic Media Liability Limit for the immediately preceding "coverage term".

## SECTION VI - DEFINITIONS

**1.** "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

**2.** "Bodily injury" means bodily harm or injury**,** sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

**3.** "Business income loss" means the sum of the:

**a.** Net income (net profit or loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal and necessary operating expenses incurred, including "employee" and "executive" payroll,

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000102

actually lost by you during the "period of resto-ration".

**4.** "Claim":

**a.** Means a civil proceeding against an "in-sured" in which damages are alleged aris-ing from a "wrongful act" or a series of "in-terrelated" "wrongful acts" allegedly com-mitted by an "insured", including any ap-peal therefrom.

**b.** "Claim" includes:

**(1)** An arbitration or alternative dispute resolution proceeding that the "in-sured" is required to submit to or does submit to with our consent; or

**(2)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

**c.** Does not include any demand or action brought by or on behalf of someone who is:

**(1)** Your "executive";

**(2)** Your owner or part-owner; or

**(3)** A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action.

**5.** "Computer attack" means one of the following involving the "computer system":

**a.** An "unauthorized access incident";

**b.** A "malware attack";

**c.** A "denial of service attack" against a "computer system"; or

**d.** A "cyber extortion threat".

**6.** "Computer system" means a computer or oth-er electronic hardware that:

**a.** Is owned or leased by you and operated under your control; or

**b.** Is operated by a third party service pro-vider and used for the purpose of provid-ing hosted computer application services to you or for processing, maintaining, hosting or storing your electronic data, pursuant to a written contract with you for such services, but such computer or other electronic hardware operated by such third party shall only be considered to be a "computer system" with respect to the specific services provided by such third party to you under such contract.

**7.** "Coverage term" means the following individu-al increment, or if a multi-year "policy period",

increments, of time, which comprise the "poli-cy period" of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive an-nual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the "policy period" shown in the Declarations ends; or

**(2)** The day the policy to which this Cov-erage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Cov-erage Part, any "coverage term" is ex-tended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**8.** "Coverage territory" means:

**a.** With respect to Insuring Agreement **A** - Computer Attack:

Anywhere in the world, but "loss" must in-volve a "computer system" within the United States (including its territories and possessions), Puerto Rico or Canada.

**b.** With respect to Insuring Agreement **B** - Network Security and Electronic Media Li-ability:

Anywhere in the world, however, "claims" must be brought in the United States (in-cluding its territories and possessions), Puerto Rico or Canada.

**9.** "Cyber extortion expenses" means:

**a.** The cost of a negotiator or investigator re-tained by you in connection with a "cyber extortion threat"; and

**b.** Any amount paid by you in response to a "cyber extortion threat" to the party that made the "cyber extortion threat" for the purposes of eliminating the "cyber extor-tion threat";

when such expenses are necessary and rea-sonable and arise directly from a "cyber extor-tion threat". The payment of "cyber extortion expenses" must be approved in advance by us. We will not pay for "cyber extortion ex-penses" that have not been approved in ad-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000103

vance by us. We will not unreasonably with-hold our approval.

10. "Cyber extortion threat" means a demand for money from you based on a credible threat, or series of related credible threats, to:

a. Launch a "denial of service attack" against the "computer system";

b. Gain access to a "computer system" and use that access to steal, release or pub-lish "personally identifying information", "personally sensitive information" or "third party corporate data";

c. Alter, damage or destroy electronic data or software while such electronic data or software is stored within a "computer sys-tem";

d. Launch a "computer attack" against a "computer system" in order to alter, dam-age or destroy electronic data or software while such electronic data or software is stored within a "computer system";

e. Cause the "insured" to transfer, pay or de-liver any funds or property using a "com-puter system" without your authorization; or

f. Inflict "ransomware" on a "computer sys-tem".

"Cyber extortion threat" does not include any threat made in connection with a legitimate commercial dispute.

11. "Data re-creation costs":

a. "Data re-creation costs" means the costs of an outside professional firm hired by you to research, re-create and replace da-ta that has been lost or corrupted and for which there is no electronic source avail-able or where the electronic source does not have the same or similar functionality to the data that has been lost or corrupt-ed.

b. "Data re-creation costs" also means your actual "business income loss" and your necessary and reasonable "extra expens-es" arising from the lack of the lost or cor-rupted data during the time required to re-search, re-create and replace such data.

c. "Data re-creation costs" does not mean costs to research, re-create or replace:

(1) Software programs or operating sys-tems that are not commercially avail-able; or

(2) Data that is obsolete, unnecessary or useless to you.

12. "Data restoration costs":

a. Means the costs of an outside profes-sional firm hired by you to replace elec-tronic data that has been lost or corrupt-ed. In order to be considered "data resto-ration costs", such replacement must be from one or more electronic sources with the same or similar functionality to the da-ta that has been lost or corrupted.

b. Does not include costs to research, re-store or replace:

(1) Software programs or operating sys-tems that are not commercially avail-able; or

(2) Data that is obsolete, unnecessary or useless to you.

13. "Defense costs":

a. Means reasonable and necessary ex-penses resulting solely from the investiga-tion, defense and appeal of any "claim" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, at-tachment bond or similar bond. However, we have no obligation to apply for or fur-nish such bond.

b. Does not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

14. "Denial of service attack" means an intentional attack against a target computer or network of computers designed to overwhelm the capaci-ty of the target computer or network in order to deny or impede authorized users from gaining access to the target computer or network through the internet.

15. "Electronic media incident" means the display of information in electronic form by you on a website or in an "insured's" email that resulted in an allegation of:

a. Infringement of another's copyright, title, slogan, trademark, trade name, trade dress, service mark or service name;

b. Defamation against a person or organiza-tion that is unintended;

c. A violation of a person's right of privacy, including false light and public disclosure of private facts; or

d. Interference with a person's right of pub-licity.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000104

**16.** "Employee" means any natural person, other than an "executive", who was, now is or will be:

   **a.** Employed on a full- or part-time basis by you;

   **b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

   **c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **b.**; or

   **d.** Your volunteer worker, which includes unpaid interns.

**17.** "Executive" means any natural person who was, now is or will be:

   **a.** The owner of a sole proprietorship that is a "named insured"; or

   **b.** A duly elected or appointed:

      **(1)** Director;

      **(2)** Officer;

      **(3)** Managing Partner;

      **(4)** General Partner;

      **(5)** Member (if a limited liability company);

      **(6)** Manager (if a limited liability company); or

      **(7)** Trustee,

   of a "named insured".

**18.** "Extra expense" means the additional cost you incur to operate your business during the "period of restoration" over and above the cost that you normally would have incurred to operate your business during the same period had no "computer attack" occurred.

**19.** "Insured" means:

   **a.** With respect to Insuring Agreement **A** - Computer Attack any "named insured".

   **b.** With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

      **(1)** Any "named insured"; and

      **(2)** Any "employee" or "executive" of a "named insured", but:

         **(a)** Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

         **(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

**20.** "Interrelated" means all events or incidents that have as a common nexus any:

   **a.** Fact, circumstance, situation, event, transaction, cause; or

   **b.** Series of causally connected facts, circumstances, situations, events, transactions or causes.

**21.** "Loss" means:

   **a.** With respect to Insuring Agreement **A** - Computer Attack:

   Those expenses enumerated in Section **I**, **A**, Paragraph **1.b.**

   **b.** With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

      **(1)** "Defense costs"; and

      **(2)** "Settlement costs".

**22.** "Malware attack" means an attack that damages a "computer system" or data contained therein arising from malicious code, including viruses, worms, Trojans, spyware and keyloggers. This does not mean damage from shortcomings or mistakes in legitimate electronic code or damage from code installed on your "computer system" during the manufacturing process or normal maintenance.

**23.** "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

**24.** "Network security incident" means a negligent security failure or weakness with respect to a "computer system" which allowed one or more of the following to happen:

   **a.** The unintended propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers. Malware does not include shortcomings or mistakes in legitimate electronic code.

   **b.** The unintended abetting of a "denial of service attack" against one or more other systems.

   **c.** The unintended loss, release or disclosure of "third party corporate data".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000105

**25.** "Period of restoration" means the period of time that begins at the time that the "computer attack" is discovered by you and continues until the earlier of:

**a.** The date that all data restoration, data re-creation and system restoration directly related to the "computer attack" has been completed; or

**b.** The date on which such data restoration, data re-creation and system restoration could have been completed with the exercise of due diligence and dispatch.

**26.** "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an individual. This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

**27.** "Personally sensitive information" means private information specific to an individual the release of which requires notification of affected individuals under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

**28.** "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

**29.** "Property damage" means:

**a.** Physical injury to or destruction of tangible property including all resulting loss of use; or

**b.** Loss of use of tangible property that is not physically injured.

**30.** "Ransomware" means any software that is used to demand a ransom payment by:

**a.** Restricting access to a "computer system"; or

**b.** Encrypting data held within a "computer system".

**31.** "Settlement costs":

**a.** Means the following, when they arise from a "claim":

**(1)** Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

**(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

**(3)** Pre-judgment interest on that part of any judgment paid by us.

**b.** Does not include:

**(1)** Civil or criminal fines or penalties imposed by law;

**(2)** Taxes; or

**(3)** Matters which may be deemed uninsurable under the applicable law.

**c.** With respect to punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

**(1)** Is where those fines, penalties or damages were awarded or imposed;

**(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

**(3)** Is where you are incorporated or you have your principal place of business; or

**(4)** Is where we are incorporated or have our principal place of business.

**32.** "System restoration costs":

**a.** Means the costs of an outside professional firm hired by you to do any of the following in order to restore your "computer system" to its pre- "computer attack" level of functionality:

**(1)** Replace or reinstall computer software programs;

**(2)** Remove any malicious code; and

**(3)** Configure or correct the configuration of your "computer system".

**b.** Does not include:

**(1)** Costs to increase the speed, capacity or utility of your "computer system";

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** Labor of your "employees" or "executives";

**(3)** Any costs in excess of the "actual cash value" of your "computer system"; or

**(4)** Costs to repair or replace hardware.

**33.** "Third party corporate data" means any trade secret, data, design, interpretation, forecast, formula, method, practice, credit or debit card magnetic strip information, process, record, report or other item of information of a third party not an "insured" under this Coverage Part which is not available to the general public and is provided to the "named insured" subject to a mutually executed written confidential-

ity agreement or which the "named insured" is legally required to maintain in confidence; however, "third party corporate data" shall not include "personally identifiable information" or "personally sensitive information".

**34.** "Unauthorized access incident" means the gaining of access to a "computer system" by:

**a.** An unauthorized person or persons; or

**b.** An authorized person or persons for unauthorized purposes.

**35.** "Wrongful act" means:

**a.** An "electronic media incident"; or

**b.** A "network security incident".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000107

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

Paragraph **b.** of the Legal Action Against Us Condition is deleted in its entirety and replaced by the following:

**b.**   You may not bring any legal action against us involving "loss":

**(1)**   Unless you have complied with all the terms of this insurance; and

**(2)**   Unless the action is brought within the time limitations prescribed by Alabama law.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000108



**THE CINCINNATI CASUALTY COMPANY**
A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# LIABILITY PREMIUM ADJUSTMENT STATEMENT

POLICY NO.: ENP0460530

INSURED:   LUCIDA CONSTRUCTION CO LLC

AGENT:    01113 - Cobbs Allen

| POLICY PERIOD | PREMIUM BASIS | ADDITIONAL PREMIUMS ARE DUE |
|---|---|---|
| From 10/17/2018 to 11/01/2019 | A. Area<br>P. Payroll<br>S. Sales | UPON PRESENTATION OF STATEMENT |
| TERM OF AUDIT | C. Cost | *** DIRECT BILL *** |
| From 11/01/2018 to 11/01/2019 | O. Each/Other | |

| CLASS CODE NUMBER | CLASSIFICATION | | | RATES | | DEPOSIT PREMIUM | | EARNED PREMIUM | | DIFFERENCE | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Prod/ Comp. | All Other | Prod/ Comp. | All Other | Prod/ Comp. | All Other | Prod/ Comp. | All Other |
| 29923 AL | Automatic Additional Insured | O | 4,504 | 0 | 0.035 | 0 | 454 | 0 | 158 | 0 | (296) |
| 91342 AL | CARPENTRY-NOC | P | 20,466 | 8.553 | 10.674 | 0 | 0 | 175 | 218 | 175 | 218 |
| 91560 AL | CONCRETE CONSTRUCTION | P | 4,500 | 7.015 | 14.231 | 0 | 0 | 32 | 64 | 32 | 64 |
| 91580 AL | EXECUTIVE SUPERVISOR | P | 132,900 | 0 | 17.037 | 0 | 6,389 | 0 | 2,264 | 0 | (4,125) |
| 91585 AL | SUBCONTRACTORS-NOC | C | 736,870 | 0.874 | 1.502 | 2,423 | 4,164 | 644 | 1,107 | (1,779) | (3,057) |
| 20410 AL | B.I. EXCEPTIONS TO POLLUTANT EXCLUSIONS | O | 3,653 | 0 | 0.02 | 0 | 211 | 0 | 73 | 0 | (138) |
| 29975 AL | CONTRACTORS BROADENED COVERAGE | O | 4,504 | 0 | 0.035 | 0 | 454 | 0 | 158 | 0 | (296) |

| | | |
|---|---|---|
| Total Earned Premium: | $851 | $4,042 |
| Deposit Premium: | $2,423 | $11,672 |
| Additional/Return Premium: | ($1,572) | ($7,630) |
| Net Refund Due: | ($9,202) | |

Prepared by:          RNEWTON  2/11/2020

**IA 405 03 94**          000109

# THE
# CINCINNATI INSURANCE COMPANIES

☐ THE CINCINNATI INSURANCE COMPANY  ☐ THE CINCINNATI INDEMNITY COMPANY
☒ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**   LUCIDA CONSTRUCTION CO LLC

**Policy Number:**   ENP 046 05 30 / EBA 046 05 30

**Policy Period:**   10-17-2018 to 11-01-2019

**Effective Date of Change:**   09-09-2019

**Endorsement Number:**   9

**Agency Name:**   COBBS ALLEN 01-113
MOUNTAIN BROOK, AL

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies.  Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $**   NONE
This premium  is for the time period of  09-09-2019  to  11-01-2019. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
COBBS ALLEN
115 OFFICE PARK DR STE 200
MOUNTAIN BROOK, AL 35223-2423

205-414-8100

### This is not a bill. No payment is necessary at this time.

**IA 4319 08 07**

000110

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage<br>Policy Number  **EBA 046 05 30** | All Other<br>Policy Number  **ENP 046 05 30** | Effective Date<br>of Endorsement  **09-09-2019** |

Issued to  **LUCIDA CONSTRUCTION CO LLC**

Agent **COBBS ALLEN 01-113**

     **MOUNTAIN BROOK, AL**                                    Endorsement #  **9**

---

## PREMIUM INFORMATION

Premium Due at Endorsement Effective Date **REFER TO IA4319** _____

Subsequent Monthly Installments Increased by          $ _____

Revised Monthly Installment Payment(s)              $ _____

---

**It is agreed that the policy is amended as indicated by**    ☒

☐ **Policy Installment Premium Amended to:**
     ☐ Annual     ☐ Semi-Annual     ☐ Quarterly

☒ **Named Insured**

    **LUCIDA CONSTRUCTION CO LLC**
    **REFER TO IA905**

☐ **Mailing Address**

☒ **Form(s) Added**

    **IA905 02/98**       **NAMED INSURED SCHEDULE**

☐ **Form(s) Deleted**

---

**All Other Reason for Change**

---

**Auto / Garage Reason for Change**

---

**09-18-2019 13:41**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NAMED INSURED SCHEDULE

This Schedule supplements the Declarations.

**SCHEDULE**

Named Insured:

LUCIDA CONSTRUCTION CO LLC
LUCIDA RENTALS, LLC

**IA 905 02 98**

# THE
# CINCINNATI INSURANCE COMPANIES

☐ THE CINCINNATI INSURANCE COMPANY  ☐ THE CINCINNATI INDEMNITY COMPANY
☒ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**   LUCIDA CONSTRUCTION CO LLC

**Policy Number:**   ENP 046 05 30 / EBA 046 05 30

**Policy Period:**   10-17-2018 to 11-01-2019

**Effective Date of Change:**   01-09-2019

**Endorsement Number:**   5

**Agency Name:**   COBBS ALLEN 01-113
MOUNTAIN BROOK, AL

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies.  Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $**   NONE
This premium  is for the time period of  01-09-2019  to  11-01-2019. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
COBBS ALLEN
115 OFFICE PARK DR STE 200
MOUNTAIN BROOK, AL 35223-2423

205-414-8100

### This is not a bill. No payment is necessary at this time.

**IA 4319 08 07**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage<br>Policy Number **EBA 046 05 30** | All Other<br>Policy Number **ENP 046 05 30** | Effective Date<br>of Endorsement **01-09-2019** |

Issued to   **LUCIDA CONSTRUCTION CO LLC**

Agent **COBBS ALLEN 01-113**

**MOUNTAIN BROOK, AL**                                  Endorsement # **5**

---

**PREMIUM INFORMATION**

Premium Due at Endorsement Effective Date **REFER TO IA4319** _____

Subsequent Monthly Installments Increased by                 $ _____

Revised Monthly Installment Payment(s)                       $ _____

**It is agreed that the policy is amended as indicated by    [X]**

☐ **Policy Installment Premium Amended to:**
    ☐ Annual        ☐ Semi-Annual        ☐ Quarterly

☐ **Named Insured**


☐ **Mailing Address**



☐ **Form(s) Added**

☐ **Form(s) Deleted**

---

**All Other Reason for Change**

REINSTATING POLICY

---

**Auto / Garage Reason for Change**


01-10-2019 07:42

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY REINSTATEMENT

Attached to and forming part of Policy Number   ENP 046 05 30 / EBA 046 05 30

Issued to   LUCIDA CONSTRUCTION CO LLC

Effective Date 01-09-2019

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS PACKAGE POLICY**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL AUTO COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL OUTPUT POLICY**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**
**DENTIST'S PACKAGE POLICY**
**EXCESS LIABILITY COVERAGE PART**
**FARM COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**MACHINERY AND EQUIPMENT COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCTS / COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

The Direct Notice of Cancellation which was to be effective   01-09-2019   is declared null and void and coverage is reinstated with no lapse in coverage.

Additional Premium $  SEE BILLING STATEMENT
                              MAILED SEPARATELY

_____ Agent

COBBS ALLEN 01-113
MOUNTAIN BROOK, AL

**IA 475 08 07**

# THE **CINCINNATI INSURANCE COMPANIES**

TO       **COBBS ALLEN 01-113**
           **MOUNTAIN BROOK, AL**

INSURED **LUCIDA CONSTRUCTION CO LLC**

AGENCY CODE: **01-113** POLICY NO. **ENP 046 05 30 / EBA 046 05 30** _____ (MOD) ___ DATE: **01-09-2019**

TRANSACTION # **4**

| Company Use Only |
|---|
| **IR   IN   UN** |
| **NP   OT** |

## CANCELLATION CREDIT MEMO

☐    CORRECTED

☐   FLAT                                        EFFECTIVE DATE
☐   PRO RATA                            OF CANCELLATION **01-09-2019** _____

### RETURN PREMIUMS:

CAP _____           BOILER _____

CPP _____           UMBRELLA _____

AUTO _____           OTHER _____

AUDIT-AP/RP _____     **DIRECT BILL POLICY - REFER TO CINCIBILL**

(circle one)

## TOTAL RETURN / ADDITIONAL PREMIUM DUE NOW $ _____

## (SUBSEQUENT INSTALLMENTS, IF ANY, ARE VOID)

**CANCELLATION CALCULATION:**

☐     REPORTER AUDITABLE FIGURES ARE SUBTRACTED FROM THE CAP / CPP LINE.

☐     GENERAL LIABILITY AUDIT HAS BEEN WAIVED.

☐     GL AUDITABLE FIGURES ARE SUBTRACTED FROM THE CAP / CPP LINE.

☐     PREMIUMS AS STATED ABOVE ARE IN AGREEMENT WITH YOUR CALCULATIONS.

☐     AS YOU HAVE NOT CALCULATED A RETURN PREMIUM, OUR FIGURES WILL APPEAR IN OUR ACCOUNT CURRENT.

☐     WE NOTE THAT OUR FIGURES DO NOT AGREE WITH YOURS. PLEASE CHECK OUR CALCULATIONS AGAINST YOURS AND ADVISE IF YOU STILL DO NOT AGREE.

COMMERCIAL LINES DEPARTMENT

**01-09-2019 00:59**

**MI-1356DB (6/09)**

# THE
# CINCINNATI INSURANCE COMPANIES

☐ **THE CINCINNATI INSURANCE COMPANY** ☐ **THE CINCINNATI INDEMNITY COMPANY**
☒ **THE CINCINNATI CASUALTY COMPANY**

**Named Insured:**   LUCIDA CONSTRUCTION CO LLC

**Policy Number:**   ENP 046 05 30 / EBA 046 05 30

**Policy Period:**   10-17-2018 to 11-01-2019

**Effective Date of Change:**   11-26-2018

**Endorsement Number:**   3

**Agency Name:**   COBBS ALLEN 01-113
                   MOUNTAIN BROOK, AL

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies. Attached to this summary is the endorsement that amends your policy.

**The return premium (credit) for this endorsement is $**19,136
This credit    is for the time period of  11-26-2018  to  11-01-2019. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
COBBS ALLEN
115 OFFICE PARK DR STE 200
MOUNTAIN BROOK, AL 35223-2423

205-414-8100

### This is not a bill. No payment is necessary at this time.

**IA 4319 08 07**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage<br>Policy Number  **EBA 046 05 30** | All Other<br>Policy Number  **ENP 046 05 30** | Effective Date<br>of Endorsement  **11-26-2018** |

Issued to  **LUCIDA CONSTRUCTION CO LLC**
Agent **COBBS ALLEN 01-113**
      **MOUNTAIN BROOK, AL**

Endorsement #  **3**

---

**PREMIUM INFORMATION**

**Return** Premium Due at Endorsement Effective Date    <u>**REFER TO IA4319**</u>

Subsequent Monthly Installments Decreased by    $ <u>           </u>

Revised Monthly Installment Payment(s)    $ <u>           </u>

**It is agreed that the policy is amended as indicated by**  ☒

☐ **Policy Installment Premium Amended to:**
    ☐ Annual    ☐ Semi-Annual    ☐ Quarterly
☐ **Named Insured**

☐ **Mailing Address**

☐ **Form(s) Added**

☒ **Form(s) Deleted**

| | |
|---|---|
| USQ513 05/10 | COMMERCIAL UMBRELLA LIABILITY COVERAGE PART DECLARATIONS |
| US101UM 12/04 | COMMERCIAL UMBRELLA - TABLE OF CONTENTS |
| US3010 09/17 | CONTRACTORS LIMITATIONS - INCLUDING EXCESS WRAP-UP COVERAGE |
| US302 12/04 | POLLUTANT EXCLUSION - OTHER THAN AUTO |
| US3043 09/17 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM WITH SPECIFIED EXCEPTIONS |
| US3048 12/04 | FUNGI OR BACTERIA EXCLUSION |
| US3093 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| US4062 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - LIMITATION |
| US407 12/04 | EMPLOYEE BENEFIT LIABILITY |

---

11-29-2018 10:34

US4098 04/10        OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE
                    ENDORSEMENT

**All Other Reason for Change**

AMENDING GA532 LIMITS PER REVISED ATTACHED

DELETING UMBRELLA COVERAGE

**Auto / Garage Reason for Change**

11-29-2018 10:34

**IA 4329 12 09**                    000119                    **Page   2 of   2**

# THE CINCINNATI CASUALTY COMPANY

**A Stock Insurance Company**

## COMMERCIAL GENERAL LIABILITY COVERAGE
## PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: **ENP 046 05 30**

Named Insured is the same as it appears in the Common Policy Dedarations

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 | |
| GENERAL AGGREGATE LIMIT | $2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 | |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | ANY ONE PERSON OR ORGANIZATION |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | | ANY ONE |
| $100,000 limit unless otherwise indicated herein: | $ SEE GA233 | PREMISES |
| MEDICAL EXPENSE LIMIT | | |
| $5,000 limit unless otherwise indicated herein: | $ SEE GA233 | ANY ONE PERSON |

| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE Products / Completed Operations | RATE All Other | ADVANCE PREMIUM Products / Completed Operations | ADVANCE PREMIUM All Other |
|---|---|---|---|---|---|---|
| | | A - Area B - Payroll C - Gross Sales D - Units E - Other | | | | |
| CONTRACTORS - EXECUTIVE SUPERVISOR (AL) INCL PROD AND/OR COMP OP | 91580 | B 375,000 | | 17.037 | | 6,389 |
| CONTRACTORS - SUBCONTRACTED WORK (AL) | 91585 | E 2,500,000 TOTAL COST | .874 | 1.502 | 2,185 | 3,755 |
| BI EXCEPTIONS TO POLLUTANT EXCLUSION | 20410 | | | 2% | | 203 |
| AUTOMATIC ADD. INSURED - CONTRACTORS OPERATIONS | 29923 | | | 3.5% | | 432 |
| CONTRACTORS BROADENED COVERAGE | 29975 | | | 3.5% | | 432 |

The General Liability Coverage Part is subject to an annual minimum premium.

TOTAL ANNUAL PREMIUM **$ 13,396**

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

| | | |
|---|---|---|
| GA101 | 12/04 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0300 | 01/96 | DEDUCTIBLE LIABILITY INSURANCE |
| CG2279 | 04/13 | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| GA233 | 09/17 | CONTRACTORS' COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT |
| GA3024 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| GA346 | 09/17 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM WITH SPECIFIED EXCEPTIONS |
| GA382 | 03/02 | FUNGI OR BACTERIA EXCLUSION |
| GA4250 | 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS |

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

| | | |
|---|---|---|
| GA472 | 09/17 | CONTRACTORS ADDITIONAL INSURED - AUTOMATIC STATUS WHEN REQUIRED IN WRITTEN CONTRACT, AGREEMENT, PERMIT OR AUTHORIZATION |
| GA478 | 12/04 | BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION |

# THE
# CINCINNATI INSURANCE COMPANIES

☐ THE CINCINNATI INSURANCE COMPANY  ☐ THE CINCINNATI INDEMNITY COMPANY
☒ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**  LUCIDA CONSTRUCTION CO LLC

**Policy Number:**  ENP 046 05 30 / EBA 046 05 30

**Policy Period:**  10-17-2018 to 11-01-2019

**Effective Date of Change:**  11-21-2018

**Endorsement Number:**  2

**Agency Name:**  COBBS ALLEN 01-113
MOUNTAIN BROOK, AL

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies. Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $**   NONE
This premium   is for the time period of  11-21-2018  to  11-01-2019. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
COBBS ALLEN
115 OFFICE PARK DR STE 200
MOUNTAIN BROOK, AL 35223-2423

205-414-8100

### This is not a bill. No payment is necessary at this time.

IA 4319 08 07

000122

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage<br>Policy Number  **EBA 046 05 30** | All Other<br>Policy Number  **ENP 046 05 30** | Effective Date<br>of Endorsement  **11-21-2018** |

Issued to  **LUCIDA CONSTRUCTION CO LLC**

Agent **COBBS ALLEN 01-113**
       **MOUNTAIN BROOK, AL**                                    Endorsement #  **2**

---

## PREMIUM INFORMATION

Premium Due at Endorsement Effective Date **REFER TO IA4319** _____

Subsequent Monthly Installments Increased by           $ _____

Revised Monthly Installment Payment(s)                 $ _____

---

**It is agreed that the policy is amended as indicated by    ☒**

☐ **Policy Installment Premium Amended to:**
     ☐ Annual        ☐ Semi-Annual        ☐ Quarterly

☐ **Named Insured**


☒ **Mailing Address**
   **PO BOX 230607**
   **MONTGOMERY, AL 36123-0607**


☐ **Form(s) Added**


☐ **Form(s) Deleted**

---

**All Other Reason for Change**

---

**Auto / Garage Reason for Change**

---

**11-21-2018 07:47**



**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**Policy Number:** ENP 046 05 30

**Effective Date:** 10-17-2018

**Named Insured:** LUCIDA CONSTRUCTION CO LLC

For professional advice and policy questions or changes, please contact your local independent agency:

COBBS ALLEN
115 OFFICE PARK DR STE 200
MOUNTAIN BROOK, AL 35223-2423

205-414-8100

Dear Policyholder:

**Thank you**
Thank you for trusting The Cincinnati Insurance Companies with your commercial insurance coverage. We recognize that locally based independent agents have the working knowledge to help you choose the right insurance company for your needs. Together with your local independent insurance agency, we are committed to providing you with the highest level of service.

Please review your enclosed policy information to verify your coverage details, as well as deductibles and coverage amounts. Should your needs change, your agent is available to review and update your policy.

**Please promptly report claims**
If you experience a policy-related loss, you may report it by contacting your local professional independent agency representing The Cincinnati Insurance Companies or by directly calling us toll-free at **877-242-2544** and providing your policy number and claim-related information.

Sincerely,

Steve Spray
Senior Vice President - Commercial Lines

**IA 4443 04 14**



The Cincinnati Insurance Company ▪ The Cincinnati Indemnity Company
The Cincinnati Casualty Company ▪ The Cincinnati Specialty Underwriters Insurance Company
The Cincinnati Life Insurance Company

## Notice to Policyholders – Cincinnati Data Defender™
### Data privacy management services and resources added to your insurance policy

To:   LUCIDA CONSTRUCTION CO LLC

Policy Number:   ENP 046 05 30
Expiration Date:  11-01-2019
Agency:           COBBS ALLEN 01-113

Your policy includes Cincinnati Data Defender coverage for an additional premium. This data privacy exposure coverage helps safeguard your business against the potentially costly risk of a data breach and assists you in the event of identity theft. Please save this information so you can access all the tools and resources that come with your cyber protection coverage. Refer to Cincinnati Data Defender Coverage Form, HC102, for a complete statement of coverages, exclusions and limits of insurance.

### Policyholder tools and resources
*Cyber risk management portal* – For your convenience, Cincinnati policyholders who purchase Data Defender coverage gain access to *www.eriskhub.com/cic*, a portal that provides you with the comprehensive, on-demand resources you need to:
-   Create your breach response plan from the template
-   Learn about breach laws that apply to your business
-   Use the compliance reference guide and notification letter examples
-   Locate credit bureau and government agency notification information
-   Learn how to contact data risk management experts for more help

The first time you visit eRiskHub, please complete new user registration using this information:

### Access code = 12116-868

*Identity theft services* – This coverage also includes case management services and reimbursement for covered expenses if you, as a business owner, become the victim of identity theft or account takeover. If you suspect that you may be an identity theft victim or you have questions, please call our Identity Recovery Help Line, 866-219-9831.

### Claims services
If you suspect or know that a data breach may have exposed or compromised your organization's private, customer or personal data, a swift response is critical for your protection. Please note that the cyber risk management portal and help line provide advice and information, and using them does not satisfy any notice of claim requirement. The only way to report a claim is to contact your independent agent or call us directly, 877-242-2544. Your agent and Cincinnati will work with you to help preserve your company's goodwill, prevent regulatory sanctions or fines, avoid civil litigation and safeguard your business reputation.

**IA4465 (1/18)**



The Cincinnati Insurance Company ▪ The Cincinnati Indemnity Company
The Cincinnati Casualty Company ▪ The Cincinnati Specialty Underwriters Insurance Company
The Cincinnati Life Insurance Company

While we believe this is valuable coverage to have in today's world, you may have it removed from your policy by notifying your agent.

**Additional cyberattack coverage**

To round out your cyber risk liability insurance, consider adding Cincinnati Network Defender™ coverage for the computer systems and data that are integral to your business. This valuable protection pays the covered costs associated with restoring computer software and recovering data following a cyberattack. It also protects you against third-party liabilities you may incur as a result of your computer system's security failure. Please see the enclosed brochure for details.

You can purchase Cincinnati Network Defender with a coverage limit of $50,000 for an annual premium of $<u>187</u>. Please contact your independent agent representing Cincinnati to add this coverage to your policy or to request quotes for higher coverage limits. This quote is valid for sixty (60) days from the date of this notice.

Thank you for trusting your agent and Cincinnati to protect your business.

Enclosure: Cincinnati Network Defender brochure, Adv. 715

**IA4465 (1/18)**

Date: `10-18-2018`

Insured: `LUCIDA CONSTRUCTION CO LLC`

Policy Number: `ENP 046 05 30 / EBA 046 05 30`

Dear Agent:

The captioned policy has been issued with the following additional liability exclusion(s)/conditions(s):

[x] **Exterior Insulation and Finish Systems (EIFS) and Direct Applied Exterior Finish Systems (DEFS) Liability Exclusion**

[x] **Fungi or Bacteria Liability Exclusion**

[x] **Bodily Injury and /or Property Damage Deductible**

[ ] **Lead Liability Exclusion**

[ ] **Bodily Injury and/or Property Damage Fungi or Bacteria Deductible**

Please be sure that the insured understands the above.

Cordially,

Commercial Lines Department

**MI 1603 10 03**

# NOTICE TO POLICYHOLDERS
# DIRECT BILL ACCOUNT CREDIT PROCEDURE

This is a notice of how an account credit will be applied to your policy or to all of the policies being billed as single account.

**Account Credits**

**A.** If your account is comprised of **a single policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied to that policy. If your account does not have a future installment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account. If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

**B.** If your account is comprised of **more than one policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied in the following manner:

- Payments previously applied to your account are deferred.

- The credit that results from the endorsement or audit is applied to the policy generating the credit.

- The payments that were deferred are then reapplied to the account in order to satisfy the amount due.

- Any excess payment that results from the credit is applied proportionately to your policies with a future payment or installment due.

- If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

- If your account does not have a future installment or payment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account.

(Does not apply to audit return premium for payors located in New York; Does not apply to premiums due more than 30 days from the date of processing for payors located in New Hampshire. These credits are automatically refunded to the payor)

To request a refund, contact us at:

| Mailing Address | Toll free phone number | Electronic mail |
|---|---|---|
| The Cincinnati Insurance Company<br>PO Box 14529<br>Cincinnati, OH 45250-0529 | 877-942-2455 | CinciBill@cinfin.com |

**IA 4407 03 13**

# DISCLOSURE OF DIRECT BILL FEES AND CHARGES

NO COVERAGE IS PROVIDED BY THIS DISCLOSURE, nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverages provided.

Your insurance premium is being paid directly to us rather than to your insurance agency. We appreciate your prompt payment of the premium. Please note that these fees apply only in the event your payment is late, is returned to us for insufficient funds, or if your policy was previously canceled for nonpayment of premium and has been reinstated at either your or your agents request. We are not required to reinstate a policy once cancellation for nonpayment of premium has become effective. The decision to reinstate coverage is solely at the discretion of the company.

Not all fees are applicable in all states. The types of fees are listed below.  Following the description of each fee, we list the states where the fee applies and the amount of the fee.  Fees are not levied in KY, MD, MT and NC.

**Non-Sufficient Funds (NSF) Charge:** The first time a premium payment is returned due to Non-Sufficient Funds (NSF), the premium due is the installment amount. For each succeeding return of payment while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, NJ, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI, WV and WY.

**Reinstatement Charge:** The first time your account is reinstated for nonpayment of premium, the premium due is the installment amount. For each succeeding reinstatement due to nonpayment of premium while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA and WY.

**Late Charge:** A charge is added to your next account statement each time your payment is received and processed after the due date as shown on the account statement. This fee will not apply to Electronic Funds Transfer (EFT). The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, RI, and SC;

$15 MA; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI and WY.

**IA 4421 03 13**



# The Cincinnati Casualty Company
### A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: **DIRECT BILL**

| POLICY NUMBER | **ENP 046 05 30 / EBA 046 05 30** |
|---|---|

| **NAMED INSURED** | LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC |
|---|---|
| | PO BOX 230607 |
| **ADDRESS** | MONTGOMERY, AL 36123-0607 |

This is a true and certified copy of the
General Liability portion of the policy:

*Jennifer Baker*, Assistant Vice President

**ADDRESS**
(Number & Street,
Town, County,
State & Zip Code)

**Previous Policy Number:**
ENP0460530

**Policy Period:** At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: **ENP 046 05 30**      FROM: **11-01-2020**   TO: **11-01-2021**

**Automobile and / or Garage**
Policy number: **EBA 046 05 30**      FROM: **11-01-2020**   TO: **11-01-2021**

Agency   **COBBS ALLEN 01-113**
City   **MOUNTAIN BROOK, AL**

**Legal Entity / Business Description**

**LIMITED LIABILITY COMPANY**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4521 | 03/20 | NOTICE OF PRIVACY PRACTICES |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4135 | 08/16 | POLICY DELIVERY |
| IA4219AL | 08/16 | ALABAMA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4377AL | 09/07 | ALABAMA CHANGES - ACTUAL CASH VALUE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAQ532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAQ559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MAQ573 | 06/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| CAQ519XCP | 03/09 | CINCIPLUS® CRIME XC+® (EXPANDED COVERAGE PLUS) COVERAGE PART DECLARATIONS |
| AAQ505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |
| HC503 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS |

# NOTICE OF PRIVACY PRACTICES

For additional information on our privacy policies, including state specific information, please visit https://www.cinfin.com/privacy-policy.

# THE **CINCINNATI INSURANCE COMPANY**
# THE **CINCINNATI CASUALTY COMPANY**
# THE **CINCINNATI INDEMNITY COMPANY**

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company. The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

000003



# **The Cincinnati Casualty Company**
A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: **DIRECT BILL**

| POLICY NUMBER | **ENP 046 05 30 / EBA 046 05 30** |
|---|---|

**NAMED INSURED** LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC
PO BOX 230607
**ADDRESS** MONTGOMERY, AL 36123-0607
(Number & Street,
Town, County,
State & Zip Code)

This is a true and certified copy of the
General Liability portion of the policy:

*Jennifer Baker*
Jennifer Baker, Assistant Vice President

**Previous Policy Number:**
ENP0460530

**Policy Period:** At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: **ENP 046 05 30**      FROM: **11-01-2020**   TO: **11-01-2021**

**Automobile and / or Garage**
Policy number: **EBA 046 05 30**      FROM: **11-01-2020**   TO: **11-01-2021**

Agency   **COBBS ALLEN 01-113**
City   **MOUNTAIN BROOK, AL**

**Legal Entity / Business Description**

**LIMITED LIABILITY COMPANY**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:
| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4521 | 03/20 | NOTICE OF PRIVACY PRACTICES |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4135 | 08/16 | POLICY DELIVERY |
| IA4219AL | 08/16 | ALABAMA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4377AL | 09/07 | ALABAMA CHANGES - ACTUAL CASH VALUE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAQ532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAQ559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MAQ573 | 06/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| CAQ519XCP | 03/09 | CINCIPLUS® CRIME XC+® (EXPANDED COVERAGE PLUS) COVERAGE PART DECLARATIONS |
| AAQ505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |
| HC503 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS |

Countersigned _____ By _____
                                (Date)                                              (Authorized Representative)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

**A. Special Per Occurrence Deductible**

  **1.** If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

   **a.** The Commercial Inland Marine Coverage Part, and

   **b.** The Crime and Fidelity Coverage Part;

   the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

  **2.** This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.:**

   **a.** **\* Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible**

   **\* Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement**

   **Windstorm or Hail Percentage Deductible Form**

   **Earthquake and Volcanic Eruption Endorsement**

   **Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)**

   **Flood Coverage Endorsement**

   **Equipment Breakdown Coverage (Including Production Equipment)**

   **Equipment Breakdown Coverage (Excluding Production Equipment)**

   **\* Temperature Change Coverage Form**

   **Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud**

   **Crime Expanded Coverage (XC®) Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration**

   **Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud**

   **\*** Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms

   **b.** **☒ Other**  ELECTRONIC DATA PROCESSING
                        CONTRACTORS EQUIPMENT - SCHEDULED EQUIPMENT
                        CONTRACTORS EQUIPMENT - EQUIPMENT LEASED OR
                        RENTED FROM OTHERS

**IA 4006 07 10**                                        **Page 1 of 2**

**B.   Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1. **COMMERCIAL PROPERTY CONDITIONS,**
2. **COMMERCIAL INLAND MARINE CONDITIONS,**
3. **COMMERCIAL CRIME COVERAGE FORM,**
4. **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5. **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.



## The Cincinnati Casualty Company
A Stock Insurance Company

**Headquarters**: 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address**: P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: DIRECT BILL

| POLICY NUMBER | ENP 046 05 30 / EBA 046 05 30 |
|---|---|

**NAMED INSURED** LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC
PO BOX 230607
**ADDRESS** MONTGOMERY, AL 36123-0607
(Number & Street,
Town, County,
State & Zip Code)

This is a true and certified copy of the
General Liability portion of the policy:

*Jennifer Baker*
Jennifer Baker, Assistant Vice President

**Previous Policy Number:**
ENP0460530

**Policy Period:** At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: **ENP 046 05 30**          FROM: **11-01-2020**   TO: **11-01-2021**

**Automobile and / or Garage**
Policy number: **EBA 046 05 30**          FROM: **11-01-2020**   TO: **11-01-2021**

Agency   COBBS ALLEN 01-113
City   MOUNTAIN BROOK, AL

**Legal Entity / Business Description**

LIMITED LIABILITY COMPANY

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:
| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4521 | 03/20 | NOTICE OF PRIVACY PRACTICES |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4135 | 08/16 | POLICY DELIVERY |
| IA4219AL | 08/16 | ALABAMA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4377AL | 09/07 | ALABAMA CHANGES - ACTUAL CASH VALUE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAQ532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAQ559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MAQ573 | 06/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| CAQ519XCP | 03/09 | CINCIPLUS® CRIME XC+® (EXPANDED COVERAGE PLUS) COVERAGE PART DECLARATIONS |
| AAQ505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |
| HC503 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS |



# The Cincinnati Casualty Company
### A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: DIRECT BILL

| POLICY NUMBER | ENP 046 05 30 / EBA 046 05 30 |
|---|---|

**NAMED INSURED** LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC
PO BOX 230607
**ADDRESS** MONTGOMERY, AL 36123-0607
(Number & Street,
Town, County,
State & Zip Code)

This is a true and certified copy of the
General Liability portion of the policy:

*Jennifer Baker*
Jennifer Baker, Assistant Vice President

**Previous Policy Number:**
ENP0460530

**Policy Period:** At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
  Policy number: **ENP 046 05 30**        FROM: **11-01-2020**  TO: **11-01-2021**

**Automobile and / or Garage**
  Policy number: **EBA 046 05 30**        FROM: **11-01-2020**  TO: **11-01-2021**

Agency   COBBS ALLEN 01-113
City   MOUNTAIN BROOK, AL

**Legal Entity / Business Description**

LIMITED LIABILITY COMPANY

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:
| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4521 | 03/20 | NOTICE OF PRIVACY PRACTICES |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4135 | 08/16 | POLICY DELIVERY |
| IA4219AL | 08/16 | ALABAMA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4377AL | 09/07 | ALABAMA CHANGES - ACTUAL CASH VALUE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAQ532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAQ559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MAQ573 | 06/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| CAQ519XCP | 03/09 | CINCIPLUS® CRIME XC+® (EXPANDED COVERAGE PLUS) COVERAGE PART DECLARATIONS |
| AAQ505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |
| HC503 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS |



# The Cincinnati Casualty Company

A Stock Insurance Company

**Headquarters**: 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address**: P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: **DIRECT BILL**

| POLICY NUMBER | **ENP 046 05 30 / EBA 046 05 30** |
|---|---|

**NAMED INSURED**   LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC
PO BOX 230607
**ADDRESS**   MONTGOMERY, AL 36123-0607
(Number & Street,
Town, County,
State & Zip Code)

This is a true and certified copy of the
General Liability portion of the policy:

*Jennifer Baker*, Assistant Vice President

---

**Previous Policy Number:**
ENP0460530

**Policy Period:**   At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
    Policy number: **ENP 046 05 30**         FROM: **11-01-2020**   TO: **11-01-2021**

**Automobile and / or Garage**
    Policy number: **EBA 046 05 30**         FROM: **11-01-2020**   TO: **11-01-2021**

Agency   **COBBS ALLEN 01-113**
City   **MOUNTAIN BROOK, AL**

---

**Legal Entity / Business Description**

**LIMITED LIABILITY COMPANY**

---

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:
| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4521 | 03/20 | NOTICE OF PRIVACY PRACTICES |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4135 | 08/16 | POLICY DELIVERY |
| IA4219AL | 08/16 | ALABAMA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4377AL | 09/07 | ALABAMA CHANGES - ACTUAL CASH VALUE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAQ532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAQ559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MAQ573 | 06/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| CAQ519XCP | 03/09 | CINCIPLUS® CRIME XC+® (EXPANDED COVERAGE PLUS) COVERAGE PART DECLARATIONS |
| AAQ505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |
| HC503 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS |

---

# THE **CINCINNATI INSURANCE COMPANY**
# THE **CINCINNATI CASUALTY COMPANY**
# THE **CINCINNATI INDEMNITY COMPANY**

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.  The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

000011



# The Cincinnati Casualty Company
A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: **DIRECT BILL**

POLICY NUMBER    **ENP 046 05 30 / EBA 046 05 30**

**NAMED INSURED**  LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC
PO BOX 230607
**ADDRESS**        MONTGOMERY, AL 36123-0607
(Number & Street,
Town, County,
State & Zip Code)

This is a true and certified copy of the
General Liability portion of the policy:

*Jennifer Baker*
Jennifer Baker, Assistant Vice President

**Previous Policy Number:**
ENP0460530

**Policy Period:**  At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: **ENP 046 05 30**         FROM: **11-01-2020**  TO: **11-01-2021**

**Automobile and / or Garage**
Policy number: **EBA 046 05 30**         FROM: **11-01-2020**  TO: **11-01-2021**

Agency   **COBBS ALLEN 01-113**
City   **MOUNTAIN BROOK, AL**

**Legal Entity / Business Description**

LIMITED LIABILITY COMPANY

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:
IL0017      11/98  COMMON POLICY CONDITIONS
IA102A      09/08  SUMMARY OF PREMIUMS CHARGED
IA904       04/04  SCHEDULE OF LOCATIONS
IA4236      01/15  POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE
IA4521      03/20  NOTICE OF PRIVACY PRACTICES
IP446       08/01  NOTICE TO POLICYHOLDERS
IA4006      07/10  SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT
IA4135      08/16  POLICY DELIVERY
IA4219AL    08/16  ALABAMA CHANGES - CANCELLATION AND NONRENEWAL
IA4238      01/15  CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM
IA4338      05/11  SIGNATURE ENDORSEMENT
IA4377AL    09/07  ALABAMA CHANGES - ACTUAL CASH VALUE
FMQ502      07/08  COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS
GAQ532      07/08  COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS
MAQ559      05/10  CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS
MAQ573      06/07  ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS
CAQ519XCP   03/09  CINCIPLUS® CRIME XC+® (EXPANDED COVERAGE PLUS) COVERAGE PART
                   DECLARATIONS
AAQ505      03/06  BUSINESS AUTO COVERAGE PART DECLARATIONS
HC502       01/18  CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS
HC503       01/18  CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS

Countersigned _____ By _____
                        (Date)                              (Authorized Representative)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

**A. Special Per Occurrence Deductible**

   **1.** If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

      **a.** The Commercial Inland Marine Coverage Part, and

      **b.** The Crime and Fidelity Coverage Part;

      the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

   **2.** This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.:**

      **a.** **\* Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible**

         **\* Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement**

         **Windstorm or Hail Percentage Deductible Form**

         **Earthquake and Volcanic Eruption Endorsement**

         **Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)**

         **Flood Coverage Endorsement**

         **Equipment Breakdown Coverage (Including Production Equipment)**

         **Equipment Breakdown Coverage (Excluding Production Equipment)**

         **\* Temperature Change Coverage Form**

         **Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud**

         **Crime Expanded Coverage (XC®) Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration**

         **Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud**

      **\*** Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms

      **b.** ☒ **Other**    `ELECTRONIC DATA PROCESSING`

                      `CONTRACTORS EQUIPMENT - SCHEDULED EQUIPMENT`

                      `CONTRACTORS EQUIPMENT - EQUIPMENT LEASED OR`

                      `RENTED FROM OTHERS`

**IA 4006 07 10**

**Page 1 of 2**

**B.  Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1.  **COMMERCIAL PROPERTY CONDITIONS,**
2.  **COMMERCIAL INLAND MARINE CONDITIONS,**
3.  **COMMERCIAL CRIME COVERAGE FORM,**
4.  **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5.  **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.



# The Cincinnati Casualty Company

A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: **DIRECT BILL**

| POLICY NUMBER | **ENP 046 05 30 / EBA 046 05 30** |
|---|---|

**NAMED INSURED** LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC
PO BOX 230607
**ADDRESS** MONTGOMERY, AL 36123-0607
(Number & Street,
Town, County,
State & Zip Code)

This is a true and certified copy of the
General Liability portion of the policy:

*Jennifer Baker*
Jennifer Baker, Assistant Vice President

**Previous Policy Number:**
ENP0460530

**Policy Period:**   At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
    Policy number:  **ENP 046 05 30**          FROM: **11-01-2020**   TO: **11-01-2021**

**Automobile and / or Garage**
    Policy number:  **EBA 046 05 30**          FROM: **11-01-2020**   TO: **11-01-2021**

Agency   **COBBS ALLEN 01-113**
City   **MOUNTAIN BROOK, AL**

**Legal Entity / Business Description**

**LIMITED LIABILITY COMPANY**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4521 | 03/20 | NOTICE OF PRIVACY PRACTICES |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4135 | 08/16 | POLICY DELIVERY |
| IA4219AL | 08/16 | ALABAMA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4377AL | 09/07 | ALABAMA CHANGES - ACTUAL CASH VALUE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAQ532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAQ559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MAQ573 | 06/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| CAQ519XCP | 03/09 | CINCIPLUS® CRIME XC+® (EXPANDED COVERAGE PLUS) COVERAGE PART DECLARATIONS |
| AAQ505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |
| HC503 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS |

Countersigned _____ By _____
                          (Date)                          (Authorized Representative)

# THE **CINCINNATI INSURANCE COMPANY**
# THE **CINCINNATI  CASUALTY  COMPANY**
# THE **CINCINNATI INDEMNITY COMPANY**

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.  The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

000018



# The Cincinnati Casualty Company

A Stock Insurance Company

**Headquarters**: 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address**: P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: **DIRECT BILL**

| POLICY NUMBER | **ENP 046 05 30 / EBA 046 05 30** |
|---|---|

| **NAMED INSURED** | LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC |
|---|---|

**ADDRESS**
(Number & Street,
Town, County,
State & Zip Code)

PO BOX 230607
MONTGOMERY, AL 36123-0607

This is a true and certified copy of the General Liability portion of the policy:

*Jennifer Baker,* Assistant Vice President

**Previous Policy Number:**
ENP0460530

**Policy Period:**   At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
   Policy number: **ENP 046 05 30**          FROM: **11-01-2020**   TO: **11-01-2021**

**Automobile and / or Garage**
   Policy number: **EBA 046 05 30**          FROM: **11-01-2020**   TO: **11-01-2021**

Agency   COBBS ALLEN 01-113
City   MOUNTAIN BROOK, AL

**Legal Entity / Business Description**

LIMITED LIABILITY COMPANY

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4521 | 03/20 | NOTICE OF PRIVACY PRACTICES |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4135 | 08/16 | POLICY DELIVERY |
| IA4219AL | 08/16 | ALABAMA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4377AL | 09/07 | ALABAMA CHANGES - ACTUAL CASH VALUE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAQ532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAQ559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MAQ573 | 06/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| CAQ519XCP | 03/09 | CINCIPLUS® CRIME XC+® (EXPANDED COVERAGE PLUS) COVERAGE PART DECLARATIONS |
| AAQ505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |
| HC503 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS |

IAQ509 01 12

10-15-2020 09:23                    000019        ENP 046 05 30 / EBA 046 05 30

Countersigned _____ By _____
                          (Date)                          (Authorized Representative)

000020        ENP 046 05 30 / EBA 046 05 30

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

**A. Special Per Occurrence Deductible**

**1.** If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

  **a.** The Commercial Inland Marine Coverage Part, and

  **b.** The Crime and Fidelity Coverage Part;

  the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

**2.** This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.**:

  **a.** * Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible

    * Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement

    Windstorm or Hail Percentage Deductible Form

    Earthquake and Volcanic Eruption Endorsement

    Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)

    Flood Coverage Endorsement

    Equipment Breakdown Coverage (Including Production Equipment)

    Equipment Breakdown Coverage (Excluding Production Equipment)

    * Temperature Change Coverage Form

    Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud

    Crime Expanded Coverage (XC®) Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration

    Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud

  **\*** Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms

  **b.** ☒ **Other**    ELECTRONIC DATA PROCESSING
      CONTRACTORS EQUIPMENT - SCHEDULED EQUIPMENT
      CONTRACTORS EQUIPMENT - EQUIPMENT LEASED OR
      RENTED FROM OTHERS

**B.   Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1. **COMMERCIAL PROPERTY CONDITIONS,**
2. **COMMERCIAL INLAND MARINE CONDITIONS,**
3. **COMMERCIAL CRIME COVERAGE FORM,**
4. **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5. **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.



# The Cincinnati Casualty Company
### A Stock Insurance Company

**Headquarters**: 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address**: P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

## COMMON POLICY DECLARATIONS

Billing Method: **DIRECT BILL**

| POLICY NUMBER | **ENP 046 05 30 / EBA 046 05 30** |
|---|---|

**NAMED INSURED** LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC
PO BOX 230607
**ADDRESS** MONTGOMERY, AL 36123-0607
(Number & Street,
Town, County,
State & Zip Code)

This is a true and certified copy of the
General Liability portion of the policy:

*Jennifer Baker*
Jennifer Baker, Assistant Vice President

**Previous Policy Number:**
ENP0460530

**Policy Period:**   At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: **ENP 046 05 30**        FROM: **11-01-2020**   TO: **11-01-2021**

**Automobile and / or Garage**
Policy number: **EBA 046 05 30**        FROM: **11-01-2020**   TO: **11-01-2021**

Agency   COBBS ALLEN 01-113
City   MOUNTAIN BROOK, AL

**Legal Entity / Business Description**

LIMITED LIABILITY COMPANY

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4521 | 03/20 | NOTICE OF PRIVACY PRACTICES |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4135 | 08/16 | POLICY DELIVERY |
| IA4219AL | 08/16 | ALABAMA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4377AL | 09/07 | ALABAMA CHANGES - ACTUAL CASH VALUE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAQ532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAQ559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MAQ573 | 06/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| CAQ519XCP | 03/09 | CINCIPLUS® CRIME XC+® (EXPANDED COVERAGE PLUS) COVERAGE PART DECLARATIONS |
| AAQ505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |
| HC503 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS |

Countersigned _____ By _____
                              (Date)                                    (Authorized Representative)

000024        ENP 046 05 30 / EBA 046 05 30

Countersigned _____ By _____
                        (Date)                              (Authorized Representative)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections and Surveys

**1.** We have the right to:

    **a.** Make inspections and surveys at any time;

    **b.** Give you reports on the conditions we find; and

    **c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **a.** Are safe or healthful; or

    **b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

## F. Transfer of Your Rights and Duties Under this Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER:  **ENP 046 05 30 / EBA 046 05 30**          Effective Date: **11-01-2020**

Named Insured:  **LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC**

## THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
### PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | | |
|---|---|---|
| Commercial Property Coverage Part | $ | 474 |
| Commercial General Liability Coverage Part | $ | 24,051 |
| Commercial Auto Coverage Part | $ | 200 |
| Commercial Umbrella / Excess Liability Coverage Part | $ | |
| DATA DEFENDER COVERAGE PART | $ | 143 |
| NETWORK DEFENDER COVERAGE PART | $ | 187 |
| CRIME EXPANDED COVERAGE PLUS | $ | 170 |
| CONTRACTORS EQUIPMENT SCHEDULED | $ | 1,112 |
| CONTRACTORS EQUIPMENT SUPPLEMENTAL COVERAGES | $ | 2,813 |
| ELECTRONIC DATA PROCESSING EQUIPMENT | $ | 288 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| Terrorism Coverage | $ | 221 |
| Installment Charge | $ | |
| **ANNUAL TOTAL** | $ | 29,659 |

**PAYMENTS**

| | First Installment | Remaining Installment(s) |
|---|---|---|
| **MONTHLY** | * | * |

**\*SEE BILLING STATEMENT MAILED SEPARATELY**

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IA 102 A 09 08

000027

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 4170 LOMAC ST | | | |
| | MONTGOMERY, AL 36106-3726 | | | |

**IA 904 04 04**

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

Your policy may contain coverage for certain losses caused by terrorism.

## Premium:

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

- Refer to the SUMMARY OF PREMIUMS CHARGED or DECLARATIONS PAGE for the portion of your premium that is attributable to coverage for terrorist acts certified under the Act.

## Federal Participation:

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

- Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals a percentage, as specified in the Schedule below, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

- **Schedule:**

| Federal Share of Terrorism Losses | |
|---|---|
| Percentage | Calendar Year |
| 85% | 2015 |
| 84% | 2016 |
| 83% | 2017 |
| 82% | 2018 |
| 81% | 2019 |
| 80% | 2020 |

## Cap on Insurer Participation:

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**NOTE:** **IF YOUR POLICY IS A RENEWAL POLICY, THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER TO RENEW THE POLICY AND (2) AT THE TIME THE RENEWAL IS COMPLETED.**

**IA 4236 01 15**

# NOTICE OF PRIVACY PRACTICES

For additional information on our privacy policies, including state specific information, please visit https://www.cinfin.com/privacy-policy.

# THE **CINCINNATI INSURANCE COMPANY**
# THE **CINCINNATI  CASUALTY  COMPANY**
# THE **CINCINNATI INDEMNITY COMPANY**

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.  The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**



# The Cincinnati Casualty Company
A Stock Insurance Company

**Headquarters**: 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address**: P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: DIRECT BILL

| POLICY NUMBER | ENP 046 05 30 / EBA 046 05 30 |
|---|---|

**NAMED INSURED** LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC
PO BOX 230607

**ADDRESS** MONTGOMERY, AL 36123-0607
(Number & Street,
Town, County,
State & Zip Code)

This is a true and certified copy of the
General Liability portion of the policy:

*Jennifer Baker* , Assistant Vice President

**Previous Policy Number:**
ENP0460530

**Policy Period:** At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: **ENP 046 05 30**       FROM: **11-01-2020**  TO: **11-01-2021**

**Automobile and / or Garage**
Policy number: **EBA 046 05 30**       FROM: **11-01-2020**  TO: **11-01-2021**

Agency   **COBBS ALLEN 01-113**
City   **MOUNTAIN BROOK, AL**

**Legal Entity / Business Description**

LIMITED LIABILITY COMPANY

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:
| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4521 | 03/20 | NOTICE OF PRIVACY PRACTICES |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4135 | 08/16 | POLICY DELIVERY |
| IA4219AL | 08/16 | ALABAMA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4377AL | 09/07 | ALABAMA CHANGES - ACTUAL CASH VALUE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAQ532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAQ559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MAQ573 | 06/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| CAQ519XCP | 03/09 | CINCIPLUS® CRIME XC+® (EXPANDED COVERAGE PLUS) COVERAGE PART DECLARATIONS |
| AAQ505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |
| HC503 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS |

IAQ509 01 12

Countersigned _____ By _____
                          (Date)                              (Authorized Representative)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

**A.  Special Per Occurrence Deductible**

**1.**  If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

   **a.**  The Commercial Inland Marine Coverage Part, and

   **b.**  The Crime and Fidelity Coverage Part;

   the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

**2.**  This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.**:

   **a.**  **\* Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible**

   **\* Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement**

   **Windstorm or Hail Percentage Deductible Form**

   **Earthquake and Volcanic Eruption Endorsement**

   **Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)**

   **Flood Coverage Endorsement**

   **Equipment Breakdown Coverage (Including Production Equipment)**

   **Equipment Breakdown Coverage (Excluding Production Equipment)**

   **\* Temperature Change Coverage Form**

   **Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud**

   **Crime Expanded Coverage (XC®) Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration**

   **Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud**

   **\***  Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms

   **b.**  ☒ **Other**   ELECTRONIC DATA PROCESSING
   CONTRACTORS EQUIPMENT - SCHEDULED EQUIPMENT
   CONTRACTORS EQUIPMENT - EQUIPMENT LEASED OR
   RENTED FROM OTHERS

**B.   Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1.   **COMMERCIAL PROPERTY CONDITIONS,**
2.   **COMMERCIAL INLAND MARINE CONDITIONS,**
3.   **COMMERCIAL CRIME COVERAGE FORM,**
4.   **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5.   **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.

# THE **CINCINNATI INSURANCE COMPANY**
# THE **CINCINNATI  CASUALTY  COMPANY**
# THE **CINCINNATI INDEMNITY COMPANY**

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.  The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

000036



# The Cincinnati Casualty Company
A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: **DIRECT BILL**

| POLICY NUMBER | **ENP 046 05 30 / EBA 046 05 30** |
|---|---|

**NAMED INSURED** LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC
PO BOX 230607
**ADDRESS** MONTGOMERY, AL 36123-0607
(Number & Street,
Town, County,
State & Zip Code)

This is a true and certified copy of the
General Liability portion of the policy:

*Jennifer Baker*
Jennifer Baker, Assistant Vice President

**Previous Policy Number:**
ENP0460530

**Policy Period:** At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: **ENP 046 05 30**          FROM: **11-01-2020**   TO: **11-01-2021**

**Automobile and / or Garage**
Policy number: **EBA 046 05 30**          FROM: **11-01-2020**   TO: **11-01-2021**

Agency   **COBBS ALLEN 01-113**
City   **MOUNTAIN BROOK, AL**

**Legal Entity / Business Description**

**LIMITED LIABILITY COMPANY**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4521 | 03/20 | NOTICE OF PRIVACY PRACTICES |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4135 | 08/16 | POLICY DELIVERY |
| IA4219AL | 08/16 | ALABAMA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4377AL | 09/07 | ALABAMA CHANGES - ACTUAL CASH VALUE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAQ532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAQ559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MAQ573 | 06/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| CAQ519XCP | 03/09 | CINCIPLUS® CRIME XC+® (EXPANDED COVERAGE PLUS) COVERAGE PART DECLARATIONS |
| AAQ505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |
| HC503 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS |

Countersigned _____ By _____
                        (Date)                        (Authorized Representative)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

**A.  Special Per Occurrence Deductible**

1.  If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

    a.  The Commercial Inland Marine Coverage Part, and

    b.  The Crime and Fidelity Coverage Part;

    the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

2.  This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.:**

    a.  * **Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible**

        * **Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement**

        **Windstorm or Hail Percentage Deductible Form**

        **Earthquake and Volcanic Eruption Endorsement**

        **Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)**

        **Flood Coverage Endorsement**

        **Equipment Breakdown Coverage (Including Production Equipment)**

        **Equipment Breakdown Coverage (Excluding Production Equipment)**

        * **Temperature Change Coverage Form**

        **Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud**

        **Crime Expanded Coverage (XC® Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration**

        **Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud**

    *    Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms

    b.  ☒ **Other**   ELECTRONIC DATA PROCESSING
                      CONTRACTORS EQUIPMENT - SCHEDULED EQUIPMENT
                      CONTRACTORS EQUIPMENT - EQUIPMENT LEASED OR
                      RENTED FROM OTHERS

**IA 4006 07 10**                     000039                     **Page 1 of 2**

**B.   Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1.   **COMMERCIAL PROPERTY CONDITIONS,**
2.   **COMMERCIAL INLAND MARINE CONDITIONS,**
3.   **COMMERCIAL CRIME COVERAGE FORM,**
4.   **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5.   **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

**A.  Special Per Occurrence Deductible**

1.  If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

    a.  The Commercial Inland Marine Coverage Part, and

    b.  The Crime and Fidelity Coverage Part;

    the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

2.  This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.:**

    a.  * **Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible**

        * **Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement**

        **Windstorm or Hail Percentage Deductible Form**

        **Earthquake and Volcanic Eruption Endorsement**

        **Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)**

        **Flood Coverage Endorsement**

        **Equipment Breakdown Coverage (Including Production Equipment)**

        **Equipment Breakdown Coverage (Excluding Production Equipment)**

        * **Temperature Change Coverage Form**

        **Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud**

        **Crime Expanded Coverage (XC® ) Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration**

        **Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud**

    *   Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms

    b.  ☒ **Other**   ELECTRONIC DATA PROCESSING
        CONTRACTORS EQUIPMENT - SCHEDULED EQUIPMENT
        CONTRACTORS EQUIPMENT - EQUIPMENT LEASED OR
        RENTED FROM OTHERS

**B.   Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1.   **COMMERCIAL PROPERTY CONDITIONS,**
2.   **COMMERCIAL INLAND MARINE CONDITIONS,**
3.   **COMMERCIAL CRIME COVERAGE FORM,**
4.   **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5.   **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.

**IA 4006 07 10**

**Page 2 of 2**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY DELIVERY

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS PACKAGE POLICY**
**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL AUTO COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL OUTPUT PROGRAM - PROPERTY COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**CONTRACTOR'S ERRORS AND OMISSIONS COVERAGE PART CLAIMS-MADE**
**CONTRACTOR'S LIMITED POLLUTION LIABILITY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**
**DENTIST'S PACKAGE POLICY**
**ELECTRONIC DATA LIABILITY COVERAGE PART**
**EMPLOYEE BENEFIT LIABILITY COVERAGE PART**
**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE PART**
**EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE PART**
**FARM COVERAGE PART**
**GOLF COURSE CHEMICAL APPLICATION LIMITED LIABILITY COVERAGE PART**
**HOLE-IN-ONE COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**MACHINERY AND EQUIPMENT COVERAGE PART**
**MANUFACTURER'S ERRORS AND OMISSIONS COVERAGE PART CLAIMS-MADE**
**MORTGAGEHOLDERS ERRORS AND OMISSIONS COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCT WITHDRAWAL COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**
**UNDERGROUND STORAGE TANK POLICY**

**Common Policy Declarations** is amended to include the following:

The first Named Insured listed in the Declarations agrees to accept delivery of the policy on behalf of all Named Insureds. Delivery of this policy, any endorsements, or notices pertaining to this policy by us to the first Named Insured shall be deemed delivered to all Named Insureds and Additional Insureds.

**IA 4135 08 16**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance under the following:

**CHEMICAL DRIFT LIMITED LIABILITY COVERAGE FORM – CLAIMS-MADE
CINCINNATI CYBER DEFENSE™ COVERAGE PART
CINCINNATI DATA DEFENDER™ COVERAGE PART
CINCINNATI NETWORK DEFENDER™ COVERAGE PART
CLAIMS-MADE EXCESS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
CONTRACTORS ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE
CONTRACTORS' LIMITED POLLUTION LIABILITY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYEE BENEFIT LIABILITY COVERAGE PART
EXCESS LIABILITY COVERAGE PART
EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE PART
FARM COVERAGE PART
HOLE-IN-ONE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MACHINERY AND EQUIPMENT COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SEPTIC SYSTEMS DESIGN AND INSPECTION ERRORS AND OMISSIONS COVERAGE PART**

**A.** Paragraph **5.** of the **CANCELLATION** Common Policy Condition is replaced by the following:

    **5.** If the policy is cancelled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following condition is added:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least 30 days prior to:

    **a.** The expiration date of this policy; or

    **b.** The anniversary date of this policy, if the policy is written for a term of more than one year.

**IA 4219 AL 08 16**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act and any amendments and extensions thereto**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

    **1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    **2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Cap On Losses from Certified Acts of Terrorism**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that ex- ceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion, does not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or Endorsement such as losses excluded by:

    **1.** Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

    **2.** Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

    **3.** Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss.

**D. Sunset Clause**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

Includes copyrighted material of ISO Properties, Inc. and American Association of Insurance Services, with their permission.

000045

**IA 4238 01 15**

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

Secretary                                              President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

**IA 4338 05 11**

000046

IA 4377 AL 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

      COMMERCIAL INLAND MARINE COVERAGE PART
      CRIME AND FIDELITY COVERAGE PART
      FARM COVERAGE PART
      NETWORK SYSTEM COVERAGE PART

The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

© ISO Properties, Inc., 2006
000047

# THE **CINCINNATI CASUALTY COMPANY**

**A Stock Insurance Company**

# COMMERCIAL GENERAL LIABILITY COVERAGE
# PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: **ENP 046 05 30**

Named Insured is the same as it appears in the Common Policy Declarations

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 | |
| GENERAL AGGREGATE LIMIT | $2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 | |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | ANY ONE PERSON OR ORGANIZATION |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | | ANY ONE |
| $100,000 limit unless otherwise indicated herein: | $ SEE GA233 | PREMISES |
| MEDICAL EXPENSE LIMIT | | |
| $5,000 limit unless otherwise indicated herein: | $ SEE GA233 | ANY ONE PERSON |

| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | A - Area<br>B - Payroll<br>C - Gross Sales<br>D - Units<br>E - Other | Products / Completed Operations | All Other | Products / Completed Operations | All Other |
| CONTRACTORS - EXECUTIVE SUPERVISOR (AL) INCL PROD AND/OR COMP OP | 91580 | B 375,000 | | 29.117 | | 10,919 |
| CONTRACTORS - SUBCONTRACTED WORK (AL) | 91585 | E 2,500,000<br>TOTAL COST | 1.941 | 2.553 | 4,853 | 6,383 |
| BI EXCEPTIONS TO POLLUTANT EXCLUSION | 20410 | | | 2% | | 346 |
| AUTOMATIC ADD. INSURED - CONTRACTORS OPERATIONS | 29923 | | | 3.5% | | 775 |
| CONTRACTORS BROADENED COVERAGE | 29975 | | | 3.5% | | 775 |

The General Liability Coverage Part is subject to an annual minimum premium.

TOTAL ANNUAL PREMIUM  $ 24,051

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

| | | |
|---|---|---|
| GA101 | 12/04 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0300 | 01/96 | DEDUCTIBLE LIABILITY INSURANCE |
| CG2279 | 04/13 | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| GA233 | 09/17 | CONTRACTORS' COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT |
| GA3024 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| GA369 | 09/17 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM WITH SPECIFIED EXCEPTIONS |
| GA382 | 03/02 | FUNGI OR BACTERIA EXCLUSION |
| GA4250 | 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS |

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

| | | |
|---|---|---|
| GA472 | 09/18 | CONTRACTORS ADDITIONAL INSURED - AUTOMATIC STATUS WHEN REQUIRED IN WRITTEN CONTRACT, AGREEMENT, PERMIT OR AUTHORIZATION |
| GA478 | 12/04 | BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**; or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

      No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

   c. "Bodily injury" or "property damage" which:

      (1) Occurs during the "coverage term"; and

      (2) Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

      includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

   d. You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

      (3) First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

      (4) Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

      (5) Becomes aware, or reasonably should have become aware, of a

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000050

condition from which "bodily injury" or "property damage" is substantially certain to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected or Intended Injury

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured sustained in the "workplace";

(2) An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

(3) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraphs (1) or (2) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollutant

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, Paragraph (a) does not apply to:

1) "Bodily injury" to any person injured while on any premises, site or location owned or occupied by, or rented or loaned to, you provided:

**a)** The injury is caused by the inadequate ventilation of vapors;

**b)** The person injured is first exposed to such vapors during the policy period; and

**c)** Within 30 days of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

This exception **1)** shall apply only to Named Insureds; we shall have no duty to defend or pay damages for any person or organization that is not a Named Insured. However, this paragraph does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

For the purpose of the exception granted in Paragraph **1)** only, vapors means any gaseous or airborne irritant or airborne contaminant, including smoke, fumes, vapor or soot, but excluding asbestos, which is discharged, dispersed, emitted, released or escapes from materials, machinery or equipment used in the service or maintenance of the premises. Vapors does not mean any gaseous or

airborne irritants or contaminants used in a manufacturing process or which is the product or by-product of any manufacturing process;

**2)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to this Coverage Part as an additional insured with respect to your ongoing operations or "your work" performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**1)** Any insured; or

**2)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, Paragraph **(d)** does not apply to:

**1)** "Bodily injury" or "property damage" arising out of the discharge, dispersal, seepage, migration, release, es-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000052

cape or emission of fuels, lubricants or other operating fluids, or exhaust gases, which are needed to perform, or are the result of, the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted with the intent to cause "bodily injury" or "property damage" or with the knowledge that "bodily injury" or "property damage" is substantially certain to occur, or if such fuels, lubricants or other operating fluids, or exhaust gases, are brought on or to the premises, site or location with such intent to escape, seep or migrate, or be discharged, dispersed, released or emitted as part of the operations being performed by such insured, contractor or subcontractor;

**2)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the op-

erations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, Paragraphs **(2)(a)** and **(b)** do not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.   Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.   Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000053

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.   Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.   War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.   Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of an insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire or explosion) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days, for which the amount we will pay is limited to the Damage To Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.   Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000054

**l.  Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.  Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.  Asbestos**

"Bodily injury" or "property damage" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q.  Employment-Related Practices**

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**r.  Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, prior to the "coverage term" in which such "bodily injury" or "property damage" occurs or begins to occur.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that "bodily injury" or "property damage" has occurred or has begun to occur at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000055

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

**(3)** First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

**(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

**s.    Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**t.    Distribution of Material in Violation of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **q.** do not apply to "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the Damage to Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

**(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

**b.** This insurance applies to "personal and advertising injury" only if:

**(1)** The "personal and advertising injury" is caused by an offense arising out of your business; and

**(2)** The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and

**(3)** Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph **1.d.** below, that the offense had been committed or had begun to be committed, in whole or in part.

**c.** "Personal and advertising injury" caused by an offense which:

**(1)** Was committed during the "coverage term"; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000056

**(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have been committed;

includes any continuation, change or resumption of that offense after the end of the "coverage term" in which it first became known by you.

**d.** You will be deemed to know that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

**(3)** First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

**(4)** Becomes aware, or reasonably should have become aware, by any means, other than as described in **(3)** above, that the offense had been committed or had begun to be committed; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**2.  Exclusions**

This insurance does not apply to:

**a.  Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b.  Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.  Material Published Prior to Coverage Term**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the later of the following:

**(1)** The inception of this Coverage Part; or

**(2)** The "coverage term" in which insurance coverage is sought.

**d.  Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e.  Contractual Liability**

"Personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" is caused by or arises out of an offense committed subsequent to the execution of the contract or agreement. When a claim for such "personal and advertising injury" is made, we will defend that claim, provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

**f.  Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g.  Quality or Performance of Goods - Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h.  Wrong Description of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i.  Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, pat-

ent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.    Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)**  Advertising, broadcasting, publishing or telecasting;

**(2)**  Designing or determining content of web-sites for others; or

**(3)**  An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **17. a., b.** and **c.** of "personal and advertising injury" under **SECTION V - DEFINITIONS**.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.    Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board any insured hosts, owns, or over which any insured exercises control.

**l.    Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.   Employment Related Practices**

"Personal and advertising injury" to:

**(1)**  A person arising out of any:

  **(a)**  Refusal to employ that person;

  **(b)**  Termination of that person's employment; or

  **(c)**  Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation

or discrimination directed at that person; or

**(2)**  The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)**  Whether the insured may be liable as an employer or in any other capacity; and

**(2)**  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**n.    Pollutant**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

**o.    Pollutant-Related**

Any loss, cost or expense arising out of any:

**(1)**  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)**  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**p.    Asbestos**

"Personal and advertising injury" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q.    Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that a "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part, prior to the "coverage term" in which such offense

was committed or began to be committed.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that a "personal and advertising injury" offense has been committed or has begun to be committed at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

**(3)** First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

**(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that the "personal and advertising injury" offense had been committed or had begun to be committed; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**r. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**s. Distribution of Material in Violation of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C. MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within three years of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000059

**a.  Any Insured**

To any insured, except "volunteer workers".

**b.  Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.  Injury on Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d.  Workers' Compensation and Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.  Athletic Activities**

To any person injured while officiating, coaching, practicing for, instructing or participating in any physical exercises or games, sports, or athletic contests or exhibitions of an athletic or sports nature.

**f.  Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g.  Coverage A Exclusions**

Excluded under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1.  All expenses we incur.

2.  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5.  All costs taxed against the insured in the "suit".

6.  Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay and which falls within the applicable limit of insurance. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    **a.**  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.**  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.**  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.**  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    **e.**  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2.  Each of the following is also an insured:

    **a.**  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000060

you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by; or

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Insurance under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2. a.** The General Aggregate Limit is the most we will pay for the sum of:

**(1)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

**(2)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(3)** Damages under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY.**

This General Aggregate Limit will not apply if either the Location General Aggre-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000061

gate Limit of Insurance, Paragraph **2.b.**, or the Construction Project General Aggregate Limit of Insurance, Paragraph **2.c.** applies.

**b.** A separate Location General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each location owned by, or rented or leased to you and is the most we will pay for the sum of:

**(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS,**

which can be attributed to operations at only a single location owned by, or rented or leased to you.

**c.** A separate Construction Project General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each construction project and is the most we will pay for the sum of:

**(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

which can be attributed only to ongoing operations and only at a single construction project.

**d.** Only for the purpose of determining which General Aggregate Limit of Insurance, **2.a., 2.b.,** or **2.c.**, applies:

**(1)** Location means premises involving the same or connecting lots, or premises, whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**(2)** Construction project means a location you do not own, rent or lease where ongoing improvements, alterations, installation, demolition or maintenance work is performed by you or on your behalf. All connected ongoing improvements, alterations, installation, demolition or maintenance work performed by you or on

your behalf at the same location for the same persons or organizations, no matter how often or under how many different contracts, will be deemed to be a single construction project.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.a.** above, the Personal and Advertising Injury Limit is the most we will pay under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2. or 3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**; and

**b.** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS**;

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage to Premises Rented to You Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire or explosion, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under **COVERAGE C. MEDICAL PAYMENTS** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000062

a "personal and advertising injury" of-
fense which may result in a claim.  To the
extent possible, notice should include:

    **(1)** How, when and where the "occur-
rence" or offense took place;

    **(2)** The names and addresses of any
injured persons and witnesses; and

    **(3)** The nature and location of any injury
or damage arising out of the "occur-
rence" or offense.

**b.** If a claim is made or "suit" is brought
against any insured, you must:

    **(1)** Immediately record the specifics of
the claim or "suit" and the date re-
ceived; and

    **(2)** Notify us as soon as practicable.

You must see to it that we receive written
notice of the claim or "suit" as soon as
practicable.

**c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any
demands, notices, summonses or
legal papers received in connection
with the claim or "suit";

    **(2)** Authorize us to obtain records and
other information;

    **(3)** Cooperate with us in the investiga-
tion or settlement of the claim or de-
fense against the "suit"; and

    **(4)** Assist us, upon our request, in the
enforcement of any right against any
person or organization which may be
liable to the insured because of in-
jury or damage to which this insur-
ance may also apply.

**d.** No insured will, except at that insured's
own cost, voluntarily make a payment,
assume any obligation, or incur any ex-
pense, other than for first aid, without our
consent.

**3. Legal Action Against Us**

No person or organization has a right under
this Coverage Part:

**a.** To join us as a party or otherwise bring
us into a "suit" asking for damages from
an insured; or

**b.** To sue us on this Coverage Part unless
all of its terms have been fully complied
with.

A person or organization may sue us to re-
cover on an agreed settlement or on a final
judgment against an insured; but we will not
be liable for damages that are not payable

under the terms of this Coverage Part or that
are in excess of the applicable limit of insur-
ance.  An agreed settlement means a settle-
ment and release of liability signed by us, the
insured and the claimant or the claimant's le-
gal representative.

**4. Liberalization**

If, within 60 days prior to the beginning of this
Coverage Part or during the policy period, we
make any changes to any forms or endorse-
ments of this Coverage Part for which there is
currently no separate premium charge, and
that change provides more coverage than this
Coverage Part, the change will automatically
apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in
your state; or

**b.** The date this Coverage Part became ef-
fective; and

will be considered as included until the end of
the current policy period.  We will make no
additional premium charge for this additional
coverage during the interim.

**5. Other Insurance**

If other valid and collectible insurance is
available to the insured for a loss we cover
under **COVERAGE A. BODILY INJURY AND
PROPERTY DAMAGE LIABILITY** or **COV-
ERAGE B. PERSONAL AND ADVERTISING
INJURY LIABILITY** of this Coverage Part, our
obligations are limited as follows:

**a. Primary Insurance**

    This insurance is primary except when **b.**
below applies.  If this insurance is pri-
mary, our obligations are not affected
unless any of the other insurance is also
primary.  Then, we will share with all that
other insurance by the method described
in **c.** below.

**b. Excess Insurance**

    This insurance is excess over:

    **(1)** Any of the other insurance, whether
primary, excess, contingent or on
any other basis:

        **(a)** That is Fire, Extended Cover-
age, Builder's Risk, Installation
Risk or similar insurance for
"your work";

        **(b)** That is Fire or Explosion insur-
ance for premises rented to you
or temporarily occupied by you
with permission of the owner;

        **(c)** That is insurance purchased by
you to cover your liability as a
tenant for "property damage" to

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000063

premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g. Aircraft, Auto or Watercraft**.

**(2)** Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations, or the products and completed operations, for which the insured has been added as an additional insured by attachment of an endorsement.

**(3)** Any other insurance:

**(a)** Whether primary, excess, contingent or on any other basis, except when such insurance is written specifically to be excess over this insurance; and

**(b)** That is a consolidated (wrap-up) insurance program which has been provided by the prime contractor/project manager or owner of the consolidated project in which you are involved.

When this insurance is excess, we will have no duty under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance

shown in the Declarations of this Coverage Part.

**c.** **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**6.** **Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If:

**(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

**(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7.** **Representations**

By accepting this Coverage Part, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this Coverage Part in reliance upon your representations.

**8.** **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000064

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**10. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Part and any other Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "personal and advertising injury" offense, the aggregate maximum limit of insurance under all the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable limit of insurance under any one Coverage Form, Coverage Part or policy. This condition does not apply to any Coverage Form, Coverage Part or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Part.

**11. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertisement" means a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

2. "Authorized representative" means:

   a. If you are designated in the Declarations as:

      (1) An individual, you and your spouse are "authorized representatives".

      (2) A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

      (3) A limited liability company, your members and your managers are "authorized representatives".

      (4) An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

      (5) A trust, your trustees are "authorized representatives".

   b. Your "employees":

      (1) Assigned to manage your insurance program; or

      (2) Responsible for giving or receiving notice of an "occurrence", "personal and advertising injury" offense, claim or "suit";

   are also "authorized representatives".

3. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

   a. The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000065

12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**6.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication,

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement to which we agree.

**7.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**8.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**9.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**10.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**11.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**12.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations, within 50 feet of any rail-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000066

road property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities;

**(4)** That indemnifies an advertising, public relations or media consulting firm for "personal and advertising injury" arising out of the planning, execution or failure to execute marketing communications programs. Marketing communications programs include but are not limited to comprehensive marketing campaigns; consumer, trade and corporate advertising for all media; media planning, buying, monitoring and analysis; direct mail; promotion; sales materials; design; presentations; point-of-sale materials; market research; public relations and new product development;

**(5)** Under which the insured, if an advertising, public relations or media consulting firm, assumes liability for "personal and advertising injury" arising out of the insured's rendering or failure to render professional services, including those services listed in Paragraph **(4)**, above;

**(6)** That indemnifies a web-site designer or content provider, or Internet search, access, content or service provider for injury or damage arising out of the planning, execution or failure to execute Internet services. Internet services include but are not limited to design, production, distribution, maintenance and administration of web-sites and web-banners; hosting web-sites; registering domain names; registering with search engines; marketing analysis; and providing access to the Internet or other similar networks; or

    **(7)** Under which the insured, if a web-site designer or content provider, or Internet search, access, content or service provider, assumes liability for injury or damage arising out of the insured's rendering or failure to render Internet services, including those listed in Paragraph **(6)**, above.

**13.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**14.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to

permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**18.** "Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** The insured uses, generates or produces the "pollutant".

**19.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed; or

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000068

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a schedule, states that products-completed operations are included.

**20.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**21.** "Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

**22.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**23.** "Volunteer worker" means a person who is not your "employee", and who donates his or

her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**24.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of "occurrence".

**25.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**26.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000069

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

  **(1)** With respect to which an insured under this Coverage Part is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

  **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this Coverage Part not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

  **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured, or **(b)** has been discharged or dispersed therefrom;

  **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

  **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this exclusion:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**A.** Any "nuclear reactor";

**B.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**C.** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000070

**D.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000071

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**SCHEDULE**

| COVERAGE | Amount and Basis of Deductible PER CLAIM  or  PER OCCURRENCE | |
|---|---|---|
| Bodily Injury Liability | $ | $ SEE BELOW |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement.  If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

```
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PREMISES/OPERATIONS FOR CLASS 91580
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PRODUCTS/COMP. OPS FOR CLASS 91580
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PREMISES/OPERATIONS FOR CLASS 91585
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PRODUCTS/COMP. OPS FOR CLASS 91585
```

**A.**  Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.**  You may select a deductible amount on either a per claim or a per "occurrence" basis.  Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above.  The deductible amount stated in the Schedule above applies as follows:

**1.**  **PER CLAIM BASIS.**  If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

**a.**  Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

**b.**  Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

**c.**  Under Bodily Injury Liability and/or Property Damage Liability Coverage

Combined, to all damages sustained by any one person because of:

**(1)**  "Bodily injury";

**(2)**  "Property damage"; or

**(3)**  "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

**2.**  **PER OCCURRENCE BASIS.**  If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

**a.**  Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

**b.**  Under Property Damage Liability Coverage, to all damages because of "property damage"; or

**c.**  Under Bodily Injury Liability and/or Property Damage Liability Coverage

Combined, to all damages because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

**1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

 Copyright, Insurance Services Office, Inc., 1994

000073

COMMERCIAL GENERAL LIABILITY
CG 22 79 04 13

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph **3.** below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

© Insurance Services Office, Inc., 2012
000074

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTORS' COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A. Endorsement - Table of Contents:**

| Coverage: | Begins on Page: |
|---|---|
| 1. Employee Benefit Liability Coverage | 3 |
| 2. Unintentional Failure To Disclose Hazards | 9 |
| 3. Damage To Premises Rented To You | 9 |
| 4. Supplementary Payments | 10 |
| 5. Medical Payments | 10 |
| 6. 180 Day Coverage For Newly Formed Or Acquired Organizations | 10 |
| 7. Waiver Of Subrogation | 11 |
| 8. Automatic Additional Insured - Specified Relationships: | 11 |

- Managers Or Lessors Of Premises;
- Lessor Of Leased Equipment;
- Vendors;
- State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations Relating To Premises; and
- Mortgagee, Assignee Or Receiver

| | |
|---|---|
| 9. Property Damage To Borrowed Equipment | 14 |
| 10. Employees As Insureds - Specified Health Care Services And Good Samaritan Services | 15 |
| 11. Broadened Notice Of Occurrence | 15 |
| 12. Nonowned Aircraft | 15 |
| 13. Bodily Injury Redefined | 15 |
| 14. Expected Or Intended Injury Redefined | 15 |
| 15. Former Employees As Insureds | 15 |
| 16. Voluntary Property Damage Coverage And Care, Custody Or Control Liability Coverage | 16 |
| 17. Broadened Contractual Liability - Work Within 50' Of Railroad Property | 17 |
| 18. Alienated Premises | 17 |

**B. Limits Of Insurance:**

The Commercial General Liability Limits of Insurance apply to the insurance provided by this endorsement, except as provided below:

**1. Employee Benefit Liability Coverage**

Each Employee Limit:  $1,000,000
Aggregate Limit:        $3,000,000
Deductible Amount:      $     1,000

**3. Damage To Premises Rented To You**

The lesser of:

**a.** The Each Occurrence Limit shown in the Declarations; or

**b.** $500,000 unless otherwise stated $ _____

**4. Supplementary Payments**

**a.** Bail Bonds:        $2,500

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000075

**b.**   Loss Of Earnings: $   500

**5.**   **Medical Payments**

Medical Expense Limit: $ 10,000

**9.**   **Property Damage To Borrowed Equipment**

Each Occurrence Limit:   $10,000
Deductible Amount:       $   250

**16.**   **Voluntary Property Damage Coverage** (Coverage **a.**) **And Care**, **Custody Or Control Liability Coverage** (Coverage **b.**)

**Limits Of Insurance**
Coverage **a.**
$1,000 Each Occurrence
$5,000 Aggregate
Coverage **b.** $5,000 Each Occurrence unless otherwise stated $ _____

**Deductible Amount** (Each Occurrence)
Coverage **a.** $250
Coverage **b.** $250 unless otherwise stated $ _____

| COVERAGE | PREMIUM BASIS<br>**(a)** Area<br>**(b)** Payroll<br>**(c)** Gross Sales<br>**(d)** Units<br>**(e)** Other | RATE<br>(For Limits in Excess of $5,000) | ADVANCE PREMIUM<br>(For Limits in Excess of $5,000) |
|---|---|---|---|
| **b.**   Care,   Custody   Or Control | | | $ |
| TOTAL ANNUAL PREMIUM | | | $ |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000076

## C. Coverages

### 1. Employee Benefit Liability Coverage

**a.** The following is added to **Section I - Coverages:**

**Employee Benefit Liability Coverage**

**(1) Insuring Agreement**

**(a)** We will pay those sums that the insured becomes legally obligated to pay as damages caused by any act, error or omission of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any claim or "suit" that may result. But:

**1)** The amount we will pay for damages is limited as described in **Section III - Limits Of Insurance**; and

**2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments**.

**(b)** This insurance applies to damages only if the act, error or omission, is negligently committed in the "administration" of your "employee benefit program"; and

**1)** Occurs during the policy period; or

**2)** Occurred prior to the "first effective date" of

this endorsement provided:

**a)** You did not have knowledge of a claim or "suit" on or before the "first effective date" of this endorsement.

You will be deemed to have knowledge of a claim or "suit" when any "authorized representative";

**i)** Reports all, or any part, of the act, error or omission to us or any other insurer;

**ii)** Receives a written or verbal demand or claim for damages because of the act, error or omission; and

**b)** There is no other applicable insurance.

**(2) Exclusions**

This insurance does not apply to:

**(a) Bodily Injury, Property Damage Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**(b) Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**(c) Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000077

**(d) Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**(e) Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any claim based upon:

**1)** Failure of any investment to perform;

**2)** Errors in providing information on past performance of investment vehicles; or

**3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**(f) Workers' Compensation And Similar Laws**

Any claim arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**(g) ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**(h) Available Benefits**

Any claim for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**(i) Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**(j) Employment-Related Practices**

Any liability arising out of any:

**(1)** Refusal to employ;

**(2)** Termination of employment;

**(3)** Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment - related practices, acts or omissions; or

**(4)** Consequential liability as a result of **(1)**, **(2)** or **(3)** above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(3) Supplementary Payments**

**Section I - Coverages, Supplementary Payments - Coverages A And B** also apply to this Coverage.

**b. Who Is An Insured**

As respects **Employee Benefit Liability Coverage**, **Section II - Who Is An Insured** is replaced by the following:

**(1)** If you are designated in the Declarations as:

**(a)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(b)** A partnership or joint venture, you are an insured. Your members, your part-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000078

ners, and their spouses are also insureds but only with respect to the conduct of your business.

**(c)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(d)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(e)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**(2)** Each of the following is also an insured:

**(a)** Each of your "employees" who is or was authorized to administer your "employee benefit program";

**(b)** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed; or

**(c)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**(3)** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organi-

zation. However, coverage under this provision:

**(a)** Is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**(b)** Does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**c.** **Limits Of Insurance**

As respects **Employee Benefit Liability Coverage**, **Section III - Limits Of Insurance** is replaced by the following:

**(1)** The Limits of Insurance shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** and the rules below fix the most we will pay regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought;

**(c)** Persons or organizations making claims or bringing "suits";

**(d)** Acts, errors or omissions; or

**(e)** Benefits included in your "employee benefit program".

**(2)** The Aggregate Limit shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**(3)** Subject to the limit described in **(2)** above, the Each Employee Limit shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(a)** An act, error or omission; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000079

**(b)** A series of related acts, errors or omissions, regardless of the amount of time that lapses between such acts, errors or omissions;

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program."

**(4) Deductible Amount**

**(a)** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the Deductible Amount stated in the Declarations as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

**(b)** The Deductible Amount stated in the Declarations applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**(c)** The terms of this insurance, including those with respect to:

**1)** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or claim;

apply irrespective of the application of the Deductible Amount.

**(d)** We may pay any part or all of the Deductible Amount to effect settlement of any claim or "suit" and, upon no-

tification of the action taken, you shall promptly reimburse us for such part of the Deductible Amount as we have paid.

**d. Additional Conditions**

As respects **Employee Benefit Liability Coverage, Section IV - Commercial General Liability Conditions** is amended as follows:

**(1)** Item **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a claim. To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000080

ceived in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**(2)** Item **5. Other Insurance** is replaced by the following:

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **c.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

**b. Method Of Sharing**

If all of the other insurance permits contribu-

tion by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**c. No Coverage**

This insurance shall not cover any loss for which the insured is entitled to recovery under any other insurance in force previous to the effective date of this Coverage Part.

**e. Additional Definitions**

As respects **Employee Benefit Liability Coverage, Section V - Definitions** is amended as follows:

**(1)** The following definitions are added:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Interpreting the "employee benefit programs";

**c.** Handling records in connection with the "employee benefit programs"; or

**d.** Effecting, continuing or terminating any "employee's" participation in

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000081

any benefit included in the "employee benefit program".

However, "administration" does not include:

**a.** Handling payroll deductions; or

**b.** The failure to effect or maintain any insurance or adequate limits of coverage of insurance, including but not limited to unemployment insurance, social security benefits, workers' compensation and disability benefits.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow "employees" to elect to pay for certain benefits with pre-tax dollars.

**3.** "Employee benefit programs" means a program providing some of all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

**a.** Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

**c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits; and

**d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies.

**4.** "First effective date" means the date upon which coverage was first effected in a series of uninterrupted renewals of insurance coverage.

**(2)** The following definitions are deleted in their entirety and replaced by the following:

**8.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**21.** "Suit" means a civil proceeding in which money damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

**2. Unintentional Failure To Disclose Hazards**

**Section IV - Commercial General Liability Conditions, 7. Representations** is amended by the addition of the following:

Based on our dependence upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not reject coverage under this Coverage Part based solely on such failure.

**3. Damage To Premises Rented To You**

**a.** The last Paragraph of **2. Exclusions** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

Exclusions **c.** through **q.** do not apply to "property damage" by fire, explosion, lightning, smoke or soot to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the **Damage To Premises Rented To You** Limit as described in **Section III - Limits Of Insurance.**

**b.** The insurance provided under **Section I - Coverage A - Bodily Injury And Property Damage Liability** applies to "property damage" arising out of water damage to premises that are both rented to and occupied by you.

**(1)** As respects Water Damage Legal Liability, as provided in Paragraph **3.b.** above:

The exclusions under **Section I - Coverage A - Bodily Injury And Property Damage Liability**, **2. Exclusions**, other than **i. War** and the **Nuclear Energy Liability Exclusion (Broad Form)**, are deleted and the following are added:

This insurance does not apply to:

**(a)** "Property damage":

**(i)** Assumed in any contract or agreement; or

**(ii)** Caused by or resulting from any of the following:

**1)** Wear and tear;

**2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**3)** Smog;

**4)** Mechanical breakdown, including rupture or bursting caused by centrifugal force;

**5)** Settling, cracking, shrinking or expansion;

**6)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals; or

**7)** Presence, growth, proliferation, spread or any activity of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**(b)** "Property damage" caused directly or indirectly by any of the following:

**(i)** Earthquake, volcanic eruption, landslide or any other earth movement;

**(ii)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(iii)** Water under the ground surface pressing on, or flowing or seeping through:

**1)** Foundations, walls, floors or paved surfaces;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000083

**2)** Basements, whether paved or not; or

**3)** Doors, windows or other openings.

**(c)** "Property damage" caused by or resulting from water that leaks or flows from plumbing, heating, air conditioning, fire protection systems, or other equipment, caused by or resulting from freezing, unless:

**(i)** You did your best to maintain heat in the building or structure; or

**(ii)** You drained the equipment and shut off the water supply if the heat was not maintained.

**(d)** "Property damage" to:

**(i)** Plumbing, heating, air conditioning, fire protection systems, or other equipment or appliances; or

**(ii)** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet or ice, whether driven by wind or not.

**c.** **Limit Of Insurance**

With respect to the insurance afforded in Paragraphs **3.a.** and **3.b.** above, the **Damage To Premises Rented To You** Limit as shown in the Declarations is amended as follows:

**(1)** Paragraph **6.** of **Section III - Limits Of Insurance** is replaced by the following:

**6.** Subject to Paragraph **5.** above, the **Damage To Premises Rented To You** Limit is the most we will pay under **Coverage A - Bodily Injury And Property Damage Liability** for damages because of "property damage" to any one premises:

**a.** While rented to you, or temporarily occupied by

you with permission of the owner;

**b.** In the case of damage by fire, explosion, lightning, smoke or soot, while rented to you; or

**c.** In the case of damage by water, while rented to and occupied by you.

**(2)** The most we will pay is limited as described in Section **B. Limits Of Insurance, 3. Damage To Premises Rented To You** of this endorsement.

**4.** **Supplementary Payments**

Under **Section I - Supplementary Payments - Coverages A And B:**

**a.** Paragraph **2.** is replaced by the following:

Up to the limit shown in Section **B. Limits Of Insurance, 4.a.** Bail Bonds of this endorsement for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**b.** Paragraph **4.** is replaced by the following:

All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to the limit shown in Section **B. Limits Of Insurance, 4.b.** Loss Of Earnings of this endorsement per day because of time off from work.

**5.** **Medical Payments**

The Medical Expense Limit of Any One Person as stated in the Declarations is amended to the limit shown in Section **B. Limits Of Insurance, 5. Medical Payments** of this endorsement.

**6.** **180 Day Coverage For Newly Formed Or Acquired Organizations**

**Section II - Who Is An Insured** is amended as follows:

Subparagraph **a.** of Paragraph **3.** is replaced by the following:

**a.** Insurance under this provision is afforded only until the 180th day after

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000084

you acquire or form the organization or the end of the policy period, whichever is earlier;

**7.  Waiver Of Subrogation**

**Section IV - Commercial General Liability Conditions, 9. Transfer Of Rights Of Recovery Against Others To Us** is amended by the addition of the following:

We waive any right of recovery we may have against any person or organization against whom you have agreed to waive such right of recovery in a written contract or agreement because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a written contract or agreement with that person or organization and included in the "products-completed operations hazard". However, our rights may only be waived prior to the "occurrence" giving rise to the injury or damage for which we make payment under this Coverage Part. The insured must do nothing after a loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce those rights.

**8.  Automatic Additional Insured - Specified Relationships**

**a.**  The following is added to **Section II - Who Is An Insured**:

**(1)**  Any person(s) or organization(s) described in Paragraph **8.a.(2)** of this endorsement (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of a written contract, written agreement, written permit or written authorization.

**(2)**  Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein:

**(a)  Managers Or Lessors Of Premises**

The manager or lessor of a premises leased to you with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to liability arising out of the ownership, maintenance or

use of that part of the premises leased to you, subject to the following additional exclusions:

This insurance does not apply to:

**(i)**  Any "occurrence" which takes place after you cease to be a tenant in that premises;

**(ii)**  Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

**(b)  Lessor Of Leased Equipment**

Any person or organization from whom you lease equipment when you and such person(s) or organization(s) have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance. Such person(s) or organization(s) are insureds only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s). A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends. However, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**(c)  Vendors**

Any person or organization (referred to below as vendor) with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000085

vendor's business, subject to the following additional exclusions:

**(i)** The insurance afforded the vendor does not apply to:

1) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

2) Any express warranty unauthorized by you;

3) Any physical or chemical change in the product made intentionally by the vendor;

4) Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

5) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

6) Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

7) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

8) "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

a) The exceptions contained in Paragraphs **(c) (i) 4)** or **6)** of this endorsement; or

b) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**(ii)** This insurance does not apply to any insured person or organization:

1) From whom you have acquired such products, or any ingredient, part

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000086

or container, entering into, accompanying or containing such products; or

2) When liability included within the "products-completed operations hazard" has been excluded under this Coverage Part with respect to such products.

**(d) State Or Governmental Agency Or Subdivision Or Political Subdivision – Permits Or Authorizations Relating To Premises**

Any state or governmental agency or subdivision or political subdivision with which you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, subject to the following additional provision:

This insurance applies only with respect to the following hazards for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization in connection with premises you own, rent or control and to which this insurance applies:

**(i)** The existence, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away openings, sidewalk vaults, street banners or decorations and similar exposures; or

**(ii)** The construction, erection or removal of elevators; or

**(iii)** The ownership, maintenance or use of any elevators covered by this insurance.

**(e) Mortgagee, Assignee Or Receiver**

Any person or organization with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you. However, this insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**(3)** The insurance afforded to additional insureds described in Paragraph **8.a.(1)** of this endorsement:

**(a)** Only applies to the extent permitted by law; and

**(b)** Will not be broader than that which you are required by the written contract, written agreement, written permit or written authorization to provide for such additional insured; and

**(c)** Does not apply to any person, organization, vendor, state, governmental agency or subdivision or political subdivision, specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part, provided such other provision or endorsement covers the injury or damage for which this insurance applies.

**b.** With respect to the insurance afforded to the additional insureds described in Paragraph **8.a.(1)** of this endorsement, the following is added to **Section III - Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**(1)** Required by the written contract, written agreement, written permit or written authorization described

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000087

in Paragraph **8.a.(1)** of this endorsement; or

**(2)** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**c.** **Section IV - Commercial General Liability Conditions** is amended to include the following:

**Automatic Additional Insured Provision**

This insurance applies only if the "bodily injury" or "property damage" occurs, or the "personal and advertising injury" offense is committed:

**(1)** During the policy period; and

**(2)** Subsequent to your execution of the written contract or written agreement, or the issuance of a written permit or written authorization, described in Paragraph **8.a.(1)**.

**d.** **Section IV - Commercial General Liability Conditions** is amended as follows:

Condition **5. Other Insurance** is amended to include:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured per Paragraph **8.a.(1)** of this endorsement provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract, agreement, permit or authorization described in **8.a.(2)** of this endorsement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

**9.** **Property Damage To Borrowed Equipment**

**a.** The following is added to **Exclusion 2.j. Damage To Property** under Sec-

tion I - Coverage A - Bodily Injury And Property Damage Liability:

Paragraphs **(3)** and **(4)** of this exclusion do not apply to tools or equipment loaned to you, provided they are not being used to perform operations at the time of loss.

**b.** With respect to the insurance provided by this section of the endorsement, the following additional provisions apply:

**(1)** The Limits of Insurance shown in the Declarations are replaced by the limits designated in Section **B. Limits Of Insurance**, **9. Property Damage To Borrowed Equipment** of this endorsement with respect to coverage provided by this endorsement. These limits are inclusive of and not in addition to the limits being replaced. The Limits of Insurance shown in Section **B. Limits Of Insurance**, **9. Property Damage To Borrowed Equipment** of this endorsement fix the most we will pay in any one "occurrence" regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought; or

**(c)** Persons or organizations making claims or bringing "suits".

**(2)** Deductible Clause

**(a)** Our obligation to pay damages on your behalf applies only to the amount of damages for each "occurrence" which are in excess of the Deductible Amount stated in Section **B. Limits Of Insurance**, **9. Property Damage To Borrowed Equipment** of this endorsement. The limits of insurance will not be reduced by the application of such deductible amount.

**(b)** **Section IV - Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit,** applies to each claim or "suit" irrespective of the amount.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000088

**(c)** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**10. Employees As Insureds - Specified Health Care Services And Good Samaritan Services**

Paragraph **2.a.(1)(d)** under **Section II - Who Is An Insured** does not apply to:

**a.** Your "employees" who provide professional health care services on your behalf as a duly licensed nurse, emergency medical technician or paramedic in the jurisdiction where an "occurrence" or offense to which this insurance applies takes place; or

**b.** Your "employees" or "volunteer workers", other than an employed or volunteer doctor, providing first aid or good samaritan services during their work hours for you will be deemed to be acting within the scope of their employment by you or performing duties related to the conduct of your business.

**11. Broadened Notice Of Occurrence**

Paragraph **a.** of Condition **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** under **Section IV - Commercial General Liability Conditions** is replaced by the following:

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

This requirement applies only when the "occurrence" or offense is known to an "authorized representative".

**12. Nonowned Aircraft**

The following is added to **Exclusion 2.g. Aircraft, Auto Or Watercraft** under **Section I - Coverage A - Bodily Injury And Property Damage Liability**:

This exclusion does not apply to an aircraft you do not own, provided that:

**a.** The pilot in command holds a current effective certificate, issued by a duly constituted authority of the United States of America or Canada, designating that person as a commercial or airline transport pilot;

**b.** The aircraft is rented with a trained, paid crew; and

**c.** The aircraft does not transport persons or cargo for a charge.

**13. Bodily Injury Redefined**

**Section V - Definitions, 4.** "Bodily injury" is replaced by the following:

**4.** "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

**14. Expected Or Intended Injury Redefined**

The last sentence of **Exclusion 2.a. Expected Or Intended Injury** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**15. Former Employees As Insureds**

The following is added to Paragraph **2.** under **Section II - Who Is An Insured:**

**2.** Each of the following is also an insured:

Any of your former "employees", directors, managers, members, partners or "executive officers", including but not limited to retired, disabled or those on leave of absence, but only for acts within the scope of their employment by you or for duties related to the conduct of your business.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000089

### 16. Voluntary Property Damage Coverage

**a. Coverage D - Voluntary Property Damage Coverage**

**Section I - Coverages** is amended to include the following:

**(1) Insuring Agreement**

**(a)** We will pay the cost to repair or replace "property damage" to property of others arising out of operations incidental to your business when:

**1)** Damage is caused by you; or

**2)** Damage occurs while in your possession.

At your written request, we will make this payment regardless of whether you are at fault for the "property damage".

If you, at our request, replace, or make any repairs to, damaged property of others, the amount we will pay under **Voluntary Property Damage Coverage** will be determined by your actual cost to replace or repair the damaged property, excluding any profit or overhead.

Any payment we make under **Voluntary Property Damage Coverage** shall not be interpreted as an admission of liability by you or by us.

It shall be your duty, not our duty, to defend any claim or "suit" to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered.

**(b)** This insurance applies to "property damage" only if:

**1)** The "property damage" takes place in the "coverage territory"; and

**2)** The "property damage" occurs during the policy period.

**(2) Exclusions**

This insurance does not apply to "property damage" that would be excluded by **Coverage A - Bodily Injury And Property Damage Liability, 2. Exclusions**, except for **j. Damage To Property**, paragraphs **(3), (4), (5)** and **(6)**, **k. Damage To Your Product**, and **l. Damage To Your Work**.

**(3) Definitions**

For purposes of **Voluntary Property Damage Coverage** only, the following definitions under **Section V - Definitions** are replaced by the following:

**16.** "Occurrence" means an incident, including continuous or repeated exposure to substantially the same general harmful conditions that result in "property damage".

**20.** "Property damage" means physical injury to tangible property. "Electronic data" is not tangible property, and "property damage" does not include disappearance, abstraction or theft.

**b. Care, Custody Or Control Liability Coverage**

For purposes of the coverage provided by **Care, Custody Or Control Liability Coverage** in this endorsement only:

**(1)** **Section I - Coverage A - Bodily Injury And Property Damage Liability, 2. Exclusions, j. Damage To Property**, Subparagraphs **(3), (4)** and **(5)** do not apply to "property damage" to the property of others described therein.

**(2)** It shall be your duty, not our duty, to defend any claim or "suit" to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered.

This Paragraph **(2)** supersedes any provision in the Coverage Part to the contrary.

**(3)** "Property damage" for which **Care, Custody Or Control Liability Coverage** provides cover-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000090

age shall be deemed to be caused by an "occurrence" but shall not serve to limit or restrict the applicability of any exclusion for "property damage" under this Coverage Part.

**c.** **Limits Of Insurance And Deductibles**

For purposes of the coverage provided by **Voluntary Property Damage Coverage** and **Care, Custody Or Control Liability Coverage, Section III - Limits Of Insurance** is amended to include the following:

**(1)** The Limits of Insurance shown in the Declarations are replaced by the limits designated in Section **B. Limits Of Insurance, 16. Voluntary Property Damage Coverage And Care, Custody Or Control Liability Coverage,** in this endorsement. These limits are inclusive of, and not in addition to, the limits being replaced. The Limits of Insurance shown in the Schedule fix the most we will pay regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought; or

**(c)** Persons or organizations making claims or bringing "suits".

**(2) (a)** Subject to **(3)** below, the **Voluntary Property Damage Coverage,** Each Occurrence Limit Of Insurance is the most we will pay for the sum of damages under **Voluntary Property Damage Coverage**;

**(b)** The **Care, Custody Or Control Liability Coverage,** Each Occurrence Limit Of Insurance is the most we will pay for the sum of damages under **Care, Custody Or Control Liability Coverage**;

because of all "property damage" arising out of any one "occurrence".

**(3)** The **Voluntary Property Damage Coverage,** Aggregate Limit Of Insurance is the most we will pay for the sum of all damages under **Voluntary Property Damage Coverage.** This limit applies separately to each "coverage term".

**(4) Deductible Clause**

**(a)** Our obligation to pay damages on your behalf applies only to the amount of damages for each "occurrence" which are in excess of the Deductible Amount stated for the applicable coverage in the Schedule. The limits of insurance will not be reduced by the application of such Deductible Amount.

**(b)** **Section IV - Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit,** applies to each claim or "suit" irrespective of the amount.

**(c)** We may pay any part or all of the Deductible Amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the Deductible Amount as has been paid by us.

**17. Broadened Contractual Liability - Work Within 50' Of Railroad Property**

**Section V - Definitions, 12.** "Insured contract" is amended as follows:

**a.** Paragraph **c.** is replaced by the following:

**c.** Any easement or license agreement;

**b.** Paragraph **f.(1)** is deleted in its entirety.

**18. Alienated Premises**

**Exclusion 2.j. Damage to Property,** Paragraph **(2)** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** does not apply if the premises are "your work".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000091

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** Exclusion **2.s.** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**s. Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others aris-

ing out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal and Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access or Disclosure of Confidential or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

GA 3024 05 14

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000092

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM WITH SPECIFIED EXCEPTIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability**:

**1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" that arises out of, is caused by, or is attributable to, whether in whole or in part, an "EIFS/DEFS incident":

**2.** Exclusion **1.** above also applies to any "bodily injury", "property damage" or "personal and advertising injury":

  **a.** For which an additional insured added by attachment of an endorsement to this Coverage Part is legally obligated to pay damages;

  **b.** For which any insured assumes liability in any part of any contract or agreement, regardless of whether such contract or agreement is an "insured contract";

  **c.** Arising out of, caused by, or attributable to, whether in whole or in part, warranties or representations made at any time with respect to the fitness, quality, durability or performance of a "wall finish system"; and

  **d.** Arising out of, caused by, or attributable to, whether in whole or in part, the providing of or failure to provide any warnings or instructions with regard to a "wall finish system".

**3.** Exclusions **1.** and **2.** above apply only if the injury or damage is caused, directly or indirectly, in whole or in part, by water-related or moisture-related entry into, or dry rot of, a structure to which a "wall finish system" has been installed and only if that water-related or moisture-related entry, or dry rot, is caused, directly or indirectly, in whole or in part, by the "wall finish system."

**4.** Regardless of the applicability of Paragraph **3.** above, exclusions **1.** and **2.** above do not apply to an "EIFS/DEFS incident" if all three of the following conditions are met:

  **a.** The "wall finish system" is a "drainable or water managed system"; and

  **b.** The substrate that forms a part of the "wall finish system", or to which the "wall finish system" is attached, is noncombustible, such as gypsum sheathing, or is one of the following types of construction:

    **(1)** Noncombustible construction meaning structures where the exterior walls and the floors are constructed of, and supported by, metal, gypsum or other noncombustible materials; or

    **(2)** Masonry noncombustible construction meaning structures where the exterior walls are constructed of masonry materials such as adobe, brick, concrete, gypsum block, hollow concrete block, stone, tile or similar materials, with the floors and roof being metal or other noncombustible materials; or

    **(3)** Modified fire resistive or fire resistive construction meaning structures where the exterior walls and the floors and roof are constructed of masonry or fire resistive materials having a fire resistance rating of one hour or more; and

  **c.** The structure on which the "wall finish system" is installed is not intended for "residential" occupancy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000093

**B.** For purposes of this endorsement, the following is added to **Section III-Limits Of Insurance**:

    **1. Deductible Amount**

        **a.** Our obligation to pay damages under this insurance applies only to the amount of damages for each "EIFS/DEFS incident" which are in excess of a deductible amount of $5,000. The limits of insurance will not be reduced by the application of such deductible amount.

        **b.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

    **2. Limit Reduction**

        Paragraph **2.**, the General Aggregate Limit, Paragraph **3.**, the Products-Completed Operations Aggregate Limit, Paragraph **5.**, the Each Occurrence Limit, Paragraph **6.**, the Damage To Premises Rented To You Limit, and Paragraph **7.**, the Medical Expense Limit, of **Section III - Limits Of Insurance**, if applicable, will be reduced by the amount of damages we pay for all "bodily injury" and "property damage" arising out of an "EIFS/DEFS incident."

**C.** For purposes of this endorsement only, **Section IV – Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is replaced by the following:

    **2. Duties In The Event Of Incident, Claim Or Suit**

        **a.** You must see to it that we are notified as soon as practicable of an "EIFS/DEFS incident" that may result in a claim, irrespective of the amount. To the extent possible, notice should include:

            **(1)** What the incident was and when it occurred; and

            **(2)** The names and addresses of anyone who may suffer damages as a result of the incident.

        **b.** If a claim is made or "suit" is brought against any insured, you must:

            **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

            **(2)** Notify us as soon as practicable.

            You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

        **c.** You and any other involved insured must:

            **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

            **(2)** Authorize us to obtain records and other information;

            **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

            **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an incident to which this insurance may also apply.

        **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**D.** For the purpose of this endorsement only, **Section V - Definitions** is amended to include the following:

    **1.** The following definitions are added:

        **a.** "Direct-applied exterior finish system" (commonly referred to as DEFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

            **(1)** A rigid or semi-rigid substrate;

            **(2)** The adhesive and/or mechanical fasteners used to attach the substrate to the structure including any water-durable exterior wall substrate;

            **(3)** A reinforced or unreinforced base coat or mesh;

            **(4)** A finish coat providing surface texture to which color may be added; and

            **(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000094

that interact to form an energy efficient wall.

**b.** "Drainable or water managed system" means a "wall finish system":

**(1)** With a secondary weather-resistant barrier that protects the substrate; and

**(2)** That includes a drainage feature that is specifically designed to channel water to the outside of the "wall finish system".

**c.** "Exterior insulation and finish system" (commonly referred to as synthetic stucco or EIFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

**(1)** A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

**(2)** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**(3)** A reinforced or unreinforced base coat or mesh;

**(4)** A finish coat providing surface texture to which color may be added; and

**(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose;

that interact to form an energy efficient wall.

**d.** "EIFS/DEFS incident" means an incident that would not have occurred, in whole or in part, but for:

**(1)** The design, manufacture, sale, service, handling, construction, fabrication, preparation, installation, application, maintenance, disposal or repair, including remodeling, service, correction, or replacement, of a "wall finish system", or any part thereof, including any method or procedure used to correct problems with installed or partially installed "wall finish systems"; or

**(2)** Any work or operations conducted by or on behalf of any insured on or to a "wall finish system", or any component thereof, or any component of a building or structure to which a "wall finish system" attaches, that results, directly or indirectly, in the intrusion of water or moisture, including any resulting development or presence of "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**e.** "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**f.** "Residential" means:

**(1)** A structure used, or intended, in whole or in part, for the purpose of human habitation, and includes, but is not limited to, single-family housing, multi-family housing, tract homes, condominiums, cooperatives, townhomes, townhouses, planned-unit developments and timeshares;

**(2)** A structure converted, or being converted, in whole or in part, into condominiums or cooperatives; and

**(3)** Common areas and grounds, appurtenant structures and facilities, of the structures described in **D.1.f.(1)** and **(2)** above, except a public street, public road, public right of way, or public utility easement located on or near such common areas and grounds.

"Residential" does not include:

**(1)** Hospitals, jails or prisons; and

**(2)** Provided there is no individual ownership of units and that such was not, in whole or in part, at any time, marketed, sold, occupied or used as single-family housing, multi-family housing, or as a condominium, cooperative, townhouse, townhome or timeshare:

**(a)** Government housing on military bases;

**(b)** College/university dormitories;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000095

**(c)** Apartments;

**(d)** Long-term care facilities;

**(e)** Assisted living facilities;

**(f)** Nursing homes; and

**(g)** Hotels or motels.

**g.** "Wall finish system" means:

**(1)** An "exterior insulation and finish system";

**(2)** A "direct-applied exterior finish system"; or

**(3)** Any energy efficient exterior cladding or finish system substantially similar to Paragraph **D.1.g.(1)** or **(2)** above.

**2.** Definition **21.** "Suit" is replaced by the following:

**21.** "Suit" means a civil proceeding in which damages because of an "EIFS/DEFS incident" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000096

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to Paragraph **2.** Exclusions of **SECTION I - COVERAGES. COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**2.** **Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" caused directly or indirectly, in whole or in part, by any actual, alleged or threatened:

**(1)** Inhalation of;

**(2)** Ingestion of;

**(3)** Contact with;

**(4)** Absorption of;

**(5)** Exposure to;

**(6)** Existence of; or

**(7)** Presence of,

any "fungi" or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually;

**b.** Any loss, cost or expense associated in any way with, or arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, mitigating or disposing of, or in any way responding to, investigating, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity;

**c.** Any liability, with respect to "fungi" or bacteria, arising out of, resulting from, caused by, contributed to, or in any way related to any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with:

**(1)** The existence of "fungi" or bacteria;

**(2)** The prevention of "fungi" or bacteria;

**(3)** The remediation of "fungi" or bacteria;

**(4)** Any operation described in Paragraph **A. 2. b.** above;

**(5)** "Your product"; or

**(6)** "Your work"; or

**d.** Any obligation to share damages with or repay any person, organization or entity, related in any way to the liability excluded in Paragraphs **A. 2. a., b.** or **c.** above;

regardless of any other cause, event, material, product and / or building component that contributed concurrently or in any sequence to the injury or damage.

However this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for human ingestion.

**B.** The following exclusion is added to Paragraph **2.** Exclusions of **SECTION I - COVERAGES. COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**:

**2.** **Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" caused directly or indirectly, in whole or in part, by any actual, alleged or threatened:

**(1)** Inhalation of;

**(2)** Ingestion of;

**(3)** Contact with;

**(4)** Absorption of;

**(5)** Exposure to;

**(6)** Existence of; or

**(7)** Presence of,

Includes copyrighted material of ISO Properties, Inc., with its permission.
000097

any "fungi" or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually;

**b.** Any loss, cost or expense associated in any way with, or arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, mitigating or disposing of, or in any way responding to, investigating, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity;

**c.** Any liability, with respect to "fungi" or bacteria, arising out of, resulting from, caused by, contributed to, or in any way related to any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with:

**(1)** The existence of "fungi" or bacteria;

**(2)** The prevention of "fungi" or bacteria;

**(3)** The remediation of "fungi" or bacteria;

**(4)** Any operation described in Paragraph **B. 2. b.** above;

**(5)** "Your product"; or

**(6)** "Your work"; or

**d.** Any obligation to share damages with or repay any person, organization or entity, related in any way to the liability excluded in Paragraphs **B. 2. a.**, **b.** or **c.** above;

regardless of any other cause, event, material, product and / or building component that contributed concurrently or in any sequence to the injury or damage.

However this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for human ingestion.

**C.** For the purposes of this endorsement, **SECTION V - DEFINITIONS** is amended to include the following:

"Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** **SECTION I - COVERAGES**, **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, **2. Exclusions**, **g.** Aircraft, Auto or Watercraft is replaced by the following:

This insurance does not apply to:

**g.** **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises that you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.**

**(2)** or **f. (3)** of the definition of "mobile equipment".

**B.** **SECTION II - WHO IS AN INSURED** is amended to include:

**4.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission.  Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**C.** **SECTION V - DEFINITIONS**, **3.** "Auto" and **15.** "Mobile equipment" are replaced by the following:

**3.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

Includes copyrighted material of ISO Properties, Inc., with its permission
000099

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted;

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**D.** This endorsement does not apply to any liability arising from an "occurrence" caused by or arising from any land vehicle if:

    **1.** You have an Auto Coverage Form in force at the time of the "occurrence"; and

    **2.** The land vehicle meets the definition of auto in your Auto Coverage Form or policy, regardless of whether or not such land vehicle is:

        **a.** A covered auto under such Auto Coverage Form or policy; or

        **b.** Specifically described on a schedule of covered autos on your Auto Coverage Form or policy.

Includes copyrighted material of ISO Properties, Inc., with its permission
000100

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTORS ADDITIONAL INSURED - AUTOMATIC STATUS AND AUTOMATIC WAIVER OF SUBROGATION WHEN REQUIRED IN WRITTEN CONTRACT, AGREEMENT, PERMIT OR AUTHORIZATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A. Additional Insured - Owners, Lessees Or Contractors - Automatic Status For Other Parties When Required In Written Contract Or Agreement With You**

1. **Section II - Who Is An Insured** is amended to include as an additional insured any person or organization you have agreed in writing in a contract or agreement to add as an additional insured on this Coverage Part. Such person(s) or organization(s) is an additional insured only with respect to liability for:

   a. "Bodily injury", "property damage" or "personal and advertising injury" *caused, in whole or in part, by* the performance of your ongoing operations by you or on your behalf, under that written contract or written agreement. Ongoing operations does not apply to "bodily injury" or "property damage" occurring after:

      (1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

      (2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project; and

   b. "Bodily injury" or "property damage" *caused, in whole or in part, by* "your work" performed under that written contract or written agreement and in

   cluded in the "products-completed operations hazard", but only if:

      (1) The Coverage Part to which this endorsement is attached provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard"; and

      (2) The written contract or written agreement requires you to provide additional insured coverage included within the "products-completed operations hazard" for that person or organization.

   If the written contract or written agreement requires you to provide additional insured coverage included within the "products-completed operations hazard" for a specified length of time for that person or organization, the "bodily injury" or "property damage" must occur prior to the expiration of that period of time in order for this insurance to apply.

   If the written contract or written agreement requires you to provide additional insured coverage for a person or organization per only ISO additional insured endorsement form number **CG 20 10**, without specifying an edition date, and without specifically requiring additional insured coverage included within the "products-completed operations hazard", this Paragraph **b.** does not apply to that person or organization.

2. If the written contract or written agreement described in Paragraph **1.** above specifically requires you to provide additional insured coverage to that person or organization:

   a. *Arising out of* your ongoing operations or *arising out of* "your work"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000101

**b.** By way of an edition of an ISO additional insured endorsement that includes *arising out of* your ongoing operations or *arising out of* "your work";

then the phrase *caused, in whole or in part, by* in Paragraph **A.1.a.** and/or Paragraph **A.1.b.** above, whichever applies, is replaced by the phrase *arising out of.*

**3.** With respect to the insurance afforded to the additional insureds described in Paragraph **A.1.**, the following additional exclusion applies:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**a.** The preparing, approving or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of, or the failure to render, any professional architectural, engineering or surveying services.

**4.** This Paragraph **A.** does not apply to additional insureds described in Paragraph **B.**

**B. Additional Insured - State Or Governmental Agency Or Subdivision Or Political Subdivision - Automatic Status When Required In Written Permits Or Authorizations**

**1. Section II - Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision you have agreed in writing in a contract, agreement, permit or authorization to add as an additional insured on this Coverage Part. Such state or governmental agency or subdivision or political subdivision is an additional insured only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision issued, in writing, a contract, agreement, permit or authorization.

**2.** With respect to the insurance afforded to the additional insureds described in Paragraph **B.1.**, the following additional exclusions apply:

This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard."

**C.** The insurance afforded to additional insureds described in Paragraphs **A.** and **B.**:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract, written agreement, written permit or written authorization to provide for such additional insured; and

**3.** Does not apply to any person, organization, state, governmental agency or subdivision or political subdivision specifically named as an additional insured for the same project in the schedule of an endorsement added to this Coverage Part.

**D.** With respect to the insurance afforded to the additional insureds described in Paragraphs **A.** and **B.**, the following is added to **Section III - Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the written contract, written agreement, written permit or written authorization described in Paragraphs **A.** and **B.**; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**E. Section IV - Commercial General Liability Conditions** is amended to add the following:

**Automatic Additional Insured Provision**

This insurance applies only if the "bodily injury" or "property damage" occurs, or the "personal and advertising injury" offense is committed:

**1.** During the policy period; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000102

**2.** Subsequent to your execution of the written contract or written agreement, or the issuance of a written permit or written authorization, described in Paragraphs **A.** and **B.**

**F.** Except when **G.** below applies, the following is added to **Section IV - Commercial General Liability Conditions, 5. Other Insurance,** and supersedes any provision to the contrary:

**When Other Additional Insured Coverage Applies On An Excess Basis**

This insurance is primary to other insurance available to the additional insured described in Paragraphs **A.** and **B.** except:

**1.** As otherwise provided in **Section IV - Commercial General Liability Conditions, 5. Other Insurance, b. Excess Insurance**; or

**2.** For any other valid and collectible insurance available to the additional insured as an additional insured by attachment of an endorsement to another insurance policy that is written on an excess basis. In such case, this insurance is also excess.

**G.** The following is added to **Section IV - Commercial General Liability Conditions, 5. Other Insurance,** and supersedes any provision to the contrary:

**Primary Insurance When Required By Written Contract, Agreement, Permit Or Authorization**

Except when wrap-up insurance applies to the claim or "suit" on behalf of the additional insured, this insurance is primary to any other insurance available to the additional insured described in Paragraphs **A.** and **B.** provided that:

**1.** The additional insured is a Named Insured under such other insurance; and

**2.** You have agreed in writing in a contract, agreement, permit or authorization described in Paragraph **A.** or **B.** that this insurance would be primary to any other insurance available to the additional insured.

As used in this endorsement, wrap-up insurance means any insurance provided by a consolidated (wrap-up) insurance program.

**Primary And Noncontributory Insurance When Required By Written Contract, Agreement, Permit Or Authorization**

Except when wrap-up insurance applies to the claim or "suit" on behalf of the additional insured, this insurance is primary to and will not seek contribution from any other insurance available to the additional insured described in Paragraphs **A.** and **B.** provided that:

**1.** The additional insured is a Named Insured under such other insurance; and

**2.** You have agreed in writing in a contract, agreement, permit or authorization described in Paragraph **A.** or **B.** that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

As used in this endorsement, wrap-up insurance means any insurance provided by a consolidated (wrap-up) insurance program.

**H.** **Section IV - Commercial General Liability Conditions, 9. Transfer Of Rights Of Recovery Against Others To Us** is amended by the addition of the following:

We waive any right of recovery we may have against any additional insured under this endorsement against whom you have agreed to waive such right of recovery in a written contract, written agreement, written permit or written authorization because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a written contract, written agreement, written permit or written authorization. However, our rights may only be waived prior to the "occurrence" giving rise to the injury or damage for which we make payment under this Coverage Part. The insured must do nothing after a loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce those rights.

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000103

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

For purposes of insurance provided by this endorsement:

1. **Sudden and Accidental Exception**

   Exclusion **f. Pollutant, (1)(a)** and **(1)(d)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** do not apply to "bodily injury" provided:

   **a.** The "release" of "pollutants" from which the "bodily injury" arises is "sudden" and "accidental"; and

   **b.** The injured person's first exposure to such "pollutants" occurred during the policy period; and

   **c.** The injured person is clinically diagnosed or treated by a physician for the "bodily injury" caused by exposure to such "pollutants" within one year of such first exposure.

2. **Amendment to On Premises Exception**

   The on premises exception to the Pollutant Exclusion, **f.(1)(a)1) c)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, is deleted in its entirety and replaced by the following:

   **c)** Within one year of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

3. **Off Premises Exception**

   Exclusion **f. Pollutant (1)(d)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" that is caused by "gaseous or airborne pollutants" provided:

   **a.** The injured person's first exposure to "gaseous or airborne pollutants" occurred during the policy period; and

   **b.** The injured person is clinically diagnosed or treated by a physician for the "bodily injury" caused by the exposure to "gaseous or airborne pollutants" within one year of such first exposure.

4. **Amended Who Is An Insured**

   As respects the insurance provided by Paragraphs **1.** and **3.** of this endorsement, the **Sudden and Accidental Exception** and the **Off Premises Exception, SECTION II - WHO IS AN INSURED** is deleted in its entirety and replaced by the following:

   The coverage afforded shall apply only to Named Insureds.  We shall have no duty to defend or pay damages for any person or organization that is not a Named Insured.

5. **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS 5.  Other Insurance b. Excess Insurance** is amended to include the following:

   The insurance provided by Paragraphs **1. Sudden and Accidental Exception** and **3. Off Premises Exception,** of this endorsement is excess over any other valid and collectible insurance, whether primary, excess, contingent or on any other basis, except insurance written specifically to cover as excess over the limits of insurance that apply in this endorsement.

6. As respects the insurance provided by Paragraphs **1.** and **3.** of this endorsement, **SECTION V - DEFINITIONS** is amended to add the following:

   1. "Accidental" means unintended and unexpected.

   2. "Gaseous or airborne pollutants" means "pollutants" which:

      **(a)** Are a gas, smoke, fume, vapor or other similar airborne substance; and

      **(b)** Are the result of the "release" of such "pollutants" from materials, machinery or equipment brought on or to the "work site" by any Named Insured or any "employees", contractors or subcontractors working di-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000104

rectly or indirectly on any Named Insured's behalf.

"Gaseous or airborne pollutants" does not include asbestos or lead.

**3.** "Release" means actual discharge, dispersal, seepage, migration, release, escape or emission.

**4.** "Sudden" means abrupt, immediate and brief as well as unexpected and without prior notice. "Sudden" has a temporal element which requires that the "release" of "pollutants" begins and ends within a brief period of time. A "release" of a

"pollutant" which results from a series of ongoing events which constitute a course of conduct or course of business is not "sudden".

**5.** "Work site" means any premises, site or location while a Named Insured or a Named Insured's "employees", contractors or subcontractors are performing operations directly or indirectly on the Named Insured's behalf, provided the premises, site or location is not owned or occupied by or rented or loaned to a Named Insured.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000105

# THE CINCINNATI CASUALTY COMPANY
A Stock Insurance Company

# CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Attached to and forming part of POLICY NUMBER: `ENP 046 05 30`     Effective Date `11-01-2020`

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:** `10-17-2018`

## Limits of Insurance and Deductible

| Insuring Agreement | | Annual Aggregate | Sublimit | | Deductible |
|---|---|---|---|---|---|
| **A** | Response Expenses | $50,000 | | | $1,000 |
| | | | Forensic IT Review | $25,000 | |
| | | | Legal Review | $25,000 | |
| | | | PR Services | $25,000 | |
| **B** | Defense and Liability | $50,000 | | | $1,000 |
| | | | Regulatory Fines and Penalties | $25,000 | |
| | | | PCI Fines and Penalties | $25,000 | |
| **C** | Identity Recovery | $25,000 | | | $250 |
| | | | Lost Wages and Child and Elder Care | $5,000 | |
| | | | Mental Health Counseling | $1,000 | |
| | | | Miscellaneous Unnamed Costs | $1,000 | |

| **TOTAL ANNUAL PREMIUM** | $143 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 28 |
| 2 YEAR | 56 |
| 3 YEAR | 74 |
| 4 YEAR | 93 |
| 5 YEAR | 102 |
| 6 YEAR | 111 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| HC102 | 01/20 | CINCINNATI DATA DEFENDER™ COVERAGE FORM |
|---|---|---|
| HC477AL | 08/16 | ALABAMA CHANGES - LEGAL ACTION AGAINST US |

HC 502 01 18

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

### TABLE OF CONTENTS

| Coverage Part Provision: | Begins on Page: |
|---|---|

Preamble ........................................................................................................................................3

SECTION I - COVERAGES ............................................................................................................3

A.  Insuring Agreements ...............................................................................................................3

    1.  Insuring Agreement A - Response Expenses ...............................................................3
    2.  Insuring Agreement B - Defense and Liability .............................................................5
    3.  Insuring Agreement C - Identity Recovery ..................................................................5

B.  Exclusions ................................................................................................................................5

    1.  Applicable to Insuring Agreements **A** and **B** ...........................................................5

        a.  Contractual Liability .........................................................................................5
        b.  Criminal Investigations or Proceedings ...........................................................5
        c.  Deficiency Correction .......................................................................................5
        d.  Extortion ............................................................................................................6
        e.  Fraudulent, Dishonest or Criminal Acts ..........................................................6
        f.  Non-monetary Relief .........................................................................................6
        g.  Previously Reported Data Compromises ..........................................................6
        h.  Prior Data Compromises ..................................................................................6
        i.  Prior or Pending Litigation ...............................................................................6
        j.  Uninsurable .......................................................................................................6
        k.  Willful Complicity ..............................................................................................6

    2.  Applicable to Insuring Agreement **C** ...........................................................................6

        a.  Fraudulent, Dishonest or Criminal Acts ..........................................................6
        b.  Professional or Business Identity .....................................................................6
        c.  Unreported Identity Theft .................................................................................6

    3.  Applicable to Insuring Agreements **A**, **B** and **C** ....................................................6

        a.  Nuclear ..............................................................................................................6
        b.  War ....................................................................................................................6

SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE ..........................................................6

SECTION III - DEFENSE AND SETTLEMENT ...............................................................................8

SECTION IV - CONDITIONS ...........................................................................................................8

    1.  Bankruptcy ....................................................................................................................8
    2.  Due Diligence ................................................................................................................8
    3.  Duties in the Event of a Claim, Regulatory Proceeding or Loss ................................10
    4.  Help Line .....................................................................................................................10
    5.  Legal Action Against Us .............................................................................................10
    6.  Legal Advice ...............................................................................................................10
    7.  Liberalization ..............................................................................................................10
    8.  Office of Foreign Assets Control (OFAC) Compliance ...............................................11
    9.  Other Insurance ..........................................................................................................11
    10. Pre-Notification Consultation .....................................................................................11
    11. Representations ..........................................................................................................11
    12. Separation of Insureds ...............................................................................................11
    13. Service Providers ........................................................................................................11
    14. Services ......................................................................................................................11
    15. Subrogation ................................................................................................................12
    16. Valuation - Settlement ................................................................................................12
    17. When We Do Not Renew .............................................................................................12

Includes copyrighted material of Insurance
Services Office, Inc. with its permission.
000108

**TABLE OF CONTENTS (CONT'D)**

**Coverage Part Provision:**                                                          **Begins on Page:**

**SECTION V - EXTENDED REPORTING PERIODS** ................................................................12

**SECTION VI - DEFINITIONS** ..........................................................................................13

    1.  "Affected individual"..................................................................................13
    2.  "Authorized representative"........................................................................13
    3.  "Claim" ....................................................................................................13
    4.  "Coverage term".......................................................................................13
    5.  "Coverage territory" ..................................................................................14
    6.  "Cyber terrorism"......................................................................................14
    7.  "Data compromise liability".......................................................................14
    8.  "Defense costs".........................................................................................14
    9.  "Employee"...............................................................................................14
   10.  "Executive" ..............................................................................................15
   11.  "Identity recovery case manager"...............................................................15
   12.  "Identity recovery expenses" .....................................................................15
   13.  "Identity recovery insured" ........................................................................16
   14.  "Identity theft" ..........................................................................................16
   15.  "Independent contractor" ...........................................................................16
   16.  "Insured"..................................................................................................16
   17.  "Loss"......................................................................................................16
   18.  "Named insured" .......................................................................................17
   19.  "Personal data compromise".......................................................................17
   20.  "Personally identifying information" .............................................................17
   21.  "Personally sensitive information" ...............................................................17
   22.  "Policy period" ..........................................................................................17
   23.  "Regulatory proceeding"............................................................................17
   24.  "Subsidiary" .............................................................................................17

HC 102 01 20              Includes copyrighted material of Insurance           **Page 2 of 17**
Services Office, Inc. with its permission.
000109

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DE-DUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

**1. Insuring Agreement A - Response Expenses**

**a.** Coverage under Insuring Agreement **A** - Response Expenses applies only if all of the following conditions are met:

**(1)** There has been a "personal data compromise"; and

**(2)** Such "personal data compromise" is first discovered by you during the "coverage term"; and

**(3)** Such "personal data compromise" took place in the "coverage territory"; and

**(4)** Such "personal data compromise" is reported to us within 60 days after the date it is first discovered by you.

**b.** If the conditions listed in **a.** above have been met, then we will provide coverage for the following expenses when they arise directly from the "personal data compromise" described in **a.** above and are necessary and reasonable. Coverages **(4)** and **(5)** apply only if there has been a notification of the "personal data

compromise" to "affected individuals" as covered under coverage **(3)**.

**(1) Forensic IT Review**

Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

This does not include costs to analyze, research or determine any of the following:

**(a)** Vulnerabilities in systems, procedures or physical security;

**(b)** Compliance with PCI or other industry security standards; or

**(c)** The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(2) Legal Review**

Professional legal counsel review of the "personal data compromise" and how you should best respond to it. If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000110

Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(3)  Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

**(4)  Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals":

**(a)**  The following services apply to any "personal data compromise".

**1)**  Informational Materials

A packet of loss prevention and customer support information.

**2)**  Help Line

A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in **(b)1)** and **2)** below.

Note, calls by "affected individuals" or their representatives to the Help Line do not constitute the making of a "claim" under Insuring Agreement **B** - Defense and Liability.

**(b)**  The following additional services apply to "personal data compromise" events involving "personally identifying information".

**1)**  Credit Report and Monitoring

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

**2)**  Identity Restoration Case Management

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

**(5)  PR Services**

We will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships. We will only pay for such fees and expenses when such a public relations firm review and response is reasonably necessary to avert or mitigate material damage to your business relationships from the "personal data compromise".

Such fees and expenses include costs to implement public relations recommendations of such public relations firm. However, when such recommendations include advertising and special promotions designed to retain your relationship with "affected individuals", we will not pay for promotions:

HC 102 01 20                     Includes copyrighted material of Insurance
Services Office, Inc. with its permission.
000111                                Page 4 of 17

**(a)** Provided to any of your "executives" or "employees"; or

**(b)** Costing more than $25 per "affected individual".

**2. Insuring Agreement B - Defense and Liability**

**a.** Coverage under Insuring Agreement **B** - Defense and Liability applies only if all of the following conditions are met:

**(1)** During the "coverage term" or any applicable Extended Reporting Period, you first receive notice of a "claim" or "regulatory proceeding" which arises from a "personal data compromise" that:

**(a)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period"; and

**(b)** Took place in the "coverage territory"; and

**(2)** Such "claim" or "regulatory proceeding" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" "defense costs" and "data compromise liability" directly arising from the "claim" or "regulatory proceeding".

**c.** All "claims" or "regulatory proceedings" caused by a single "personal data compromise" will be deemed to have been made at the time that notice of the first of those "claims" or "regulatory proceedings" is received by you.

**3. Insuring Agreement C - Identity Recovery**

**a.** Coverage under Insuring Agreement **C** - Identity Recovery applies only if all of the following conditions are met:

**(1)** There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this Coverage Part; and

**(2)** Such "identity theft" is first discovered by the "identity recovery insured" during the "coverage term"; and

**(3)** Such "identity theft" took place in the "coverage territory"; and

**(4)** Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured".

**b.** If the conditions listed in **a.** above have been met, then we will provide the following to the "identity recovery insured":

**(1)** Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

**(2)** Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft".

**B. Exclusions**

**1.** Applicable to Insuring Agreements **A** and **B** only:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Contractual Liability**

An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclusion shall not apply to:

**(1)** Any liability that an "insured" would have incurred in the absence of such contract or agreement; or

**(2)** Any PCI fines or penalties explicitly covered under Insuring Agreement **B** – Defense and Liability.

**b. Criminal Investigations or Proceedings**

Any criminal investigations or proceedings.

**c. Deficiency Correction**

Costs to research or correct any deficiency. This includes, but is not limited to, any deficiency in your systems, procedures or physical security that may have contributed to a "personal data compromise".

**d. Extortion**

Any extortion or blackmail. This includes, but is not limited to, ransom

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000112

payments and private security assistance.

**e.   Fraudulent, Dishonest or Criminal Acts**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

**f.   Non-monetary Relief**

That part of any "claim" seeking any non-monetary relief.

**g.   Previously Reported Data Compromises**

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

**h.   Prior Data Compromises**

Any "personal data compromise" first occurring before the Retroactive Date shown in the Declarations, or any "claim" arising from a "personal data compromise" that first occurred prior to the Retroactive Date shown in the Declarations.

**i.   Prior or Pending Litigation**

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

**j.   Uninsurable**

Any amount not insurable under applicable law.

**k.   Willful Complicity**

The "insured's" intentional or willful complicity in a "personal data compromise".

**2.   Applicable to Insuring Agreement C only:**

This insurance does not apply to:

**a.   Fraudulent, Dishonest or Criminal Acts**

Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any "authorized representative" of an

"identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

**b.   Professional or Business Identity**

The theft of a professional or business identity.

**c.   Unreported Identity Theft**

An "identity theft" that is not reported in writing to the police.

**3.   Applicable to Insuring Agreements A, B and C:**

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a.   Nuclear**

Nuclear reaction or radiation or radioactive contamination, however caused.

**b.   War**

**(1)** War, including undeclared or civil war or civil unrest;

**(2)** Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

Provided, that this exclusion will not apply to "cyber terrorism".

**SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE**

**A.   Insuring Agreement A - Response Expenses:**

**1.** The most we will pay under Insuring Agreement **A** - Response Expenses is the Response Expenses Limit of Insurance stated in the Declarations.

**2.** The Response Expenses Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Response Expenses arising out of all "personal data compromise" events which are first discovered by you

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000113

during the "coverage term". This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

3. A "personal data compromise" may be first discovered by you in one "coverage term" but cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "personal data compromise" will be subject to the Response Expenses Limit of Insurance applicable to the "coverage term" when the "personal data compromise" was first discovered by you.

4. The most we will pay under Insuring Agreement **A** - Response Expenses for Forensic IT Review, Legal Review and PR Services coverages for "loss" arising from any one "personal data compromise" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.** PR Services coverage is also subject to a limit per "affected individual" as described in Section **I., A.1.b.(5)** PR Services.

5. Coverage for Services to "affected individuals" is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals" or the period required by law, whichever is longer. Notwithstanding the foregoing, coverage for Identity Restoration Case Management services initiated within such period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

6. The Response Expenses Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Response Expenses Limit for the immediately preceding "coverage term".

7. Response Expenses coverage is subject to the Response Expenses Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount in order to respond effectively to a "personal data compromise" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**B.** Insuring Agreement **B** - Defense and Liability:

1. The most we will pay under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) is the Limit of Insurance stated in the Declarations.

2. The Insuring Agreement **B** - Defense and Liability Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for all "loss" covered under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) arising out of all "claims".

3. The most we will pay under Insuring Agreement **B** — Defense and Liability for "data compromise liability" and "defense costs" related to Regulatory Fines and Penalties and PCI Fines and Penalties coverages arising from any one "claim" or "regulatory proceeding" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.**

4. The Defense and Liability Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Defense and Liability Limit for the immediately preceding "coverage term".

5. The Insuring Agreement **B** - Defense and Liability coverage is subject to the Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "claim" or "regulatory proceeding" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim", "loss" or "regulatory proceeding" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**C.** Insuring Agreement **C** - Identity Recovery:

1. Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the Limit of Insurance available for "identity recovery expenses".

2. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Annual Aggregate Limit of Insurance stated in the Declarations per "identity recovery insured". Regardless of the number of "identity theft" incidents, this limit is the most we will pay for the total of all "loss" arising out of all "identity thefts" suffered

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000114

by one "identity recovery insured" which are first discovered by the "identity recovery insured" during the "coverage term". If an "identity theft" is first discovered in one "coverage term" and continues into other "coverage terms", all "loss" arising from such "identity theft" will be subject to the aggregate Limit of Insurance applicable to the "coverage term" when the "identity theft" was first discovered.

3. Legal costs as provided under Item **d.** of the definition of "identity recovery expenses" are part of, and not in addition to, the aggregate limit described in Paragraph **2.**

4. Item **e.** (Lost Wages) and Item **f.** (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

5. Item **g.** (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate limit described in Paragraph **2.** Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

6. Item **h.** (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

7. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Identity Recovery Deductible stated in the Declarations. Each "identity recovery insured" shall be responsible for such deductible amount only once during each "coverage term". This deductible applies only to "identity recovery expenses".

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

1. We will have the right and duty to select counsel and defend the "insured" against any "claim" or "regulatory proceeding" covered by Insuring Agreement **B** - Defense and Liability, regardless of whether the allegations of such "claim" or "regulatory proceeding" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" or "regulatory proceeding" seeking damages or other relief not insured by Insuring Agreement **B** - Defense and Liability.

2. We may, with your written consent, make any settlement of a "claim" or "regulatory proceeding" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" or "regulatory proceeding" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

3. We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim" or "regulatory proceeding", after the Insuring Agreement **B** - Defense and Liability Limit of Insurance has been exhausted.

4. We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance which accrues:

   a. After entry of judgment; and

   b. Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Defense and Liability Limit of Insurance.

These interest payments shall be in addition to and not part of the Defense and Liability Limit.

## SECTION IV – CONDITIONS

1. **Bankruptcy**

   Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

2. **Due Diligence**

   You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and industry-accepted protocols for:

   a. Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security;

**c.** Maintaining and updating at appropriate intervals backups of computer data;

**d.** Protecting transactions, such as processing credit card, debit card and check payments; and

**e.** Appropriate disposal of files containing "personally identifying information" or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

**3.** **Duties in the Event of a Claim, Regulatory Proceeding or Loss**

**a.** If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim" or "regulatory proceeding", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

**(1)** The specific details, including the date, of the circumstance;

**(2)** The alleged injuries or damage sustained or which may be sustained;

**(3)** The names of potential claimants; and

**(4)** The manner in which the "insured" first became aware of the circumstance.

Any subsequent "claim" or "regulatory proceeding" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" or "regulatory proceeding" is brought against any "insured", you must:

**(1)** Immediately record the specifics of the "claim" or "regulatory proceeding" and the date received; and

**(2)** Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "claim" or "regulatory proceeding" is first received by you.

**(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "regulatory proceeding";

**(4)** Authorize us to obtain records and other information;

**(5)** Cooperate with us in the investigation, settlement or defense of the "claim" or "regulatory proceeding";

**(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" or "defense costs" to which this insurance may also apply; and

**(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim" or "regulatory proceeding".

**c.** In the event of a "personal data compromise" covered under Insuring Agreement **A** - Response Expenses, you must see that the following are done:

**(1)** Notify the police if a law may have been broken.

**(2)** Notify us as soon as practicable, but in no event more than 60 days after the "personal data compromise". Include a description of any property involved.

**(3)** As soon as possible, give us a description of how, when and where the "personal data compromise" occurred.

**(4)** As often as may be reasonably required, permit us to:

**(a)** Inspect the property proving the "personal data compromise";

**(b)** Examine your books, records, electronic media and records and hardware;

**(c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

**(d)** Make copies from your books, records, electronic media and records and hardware.

**(5)** Send us signed, sworn proof of loss containing the information we request to investigate the "personal data compromise". You must do this within 60 days after our request. We will supply you with the necessary forms.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000116

**(6)** Cooperate with us in the investigation of the "personal data compromise" or settlement of the "loss".

**(7)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

**(8)** Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our prior written consent.

**(9)** Promptly send us any legal papers or notices received concerning the "personal data compromise" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Help Line**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-866-219-9831**. The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

**a.** Information and advice for how to respond to a possible "identity theft"; and

**b.** Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records that support his or her claim for "identity recovery expenses".

**5. Legal Action Against Us**

**a.** No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

**(2)** To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**6. Legal Advice**

We are not your legal advisor. Our determination of what is or is not covered under this Coverage Part does not represent advice or counsel from us about what you should or should not do.

**7. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current "policy period". We will make no

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000117

additional premium charge for this additional coverage during the interim.

### 8. Office of Foreign Assets Control (OFAC) Compliance

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

### 9. Other Insurance

a. If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part by reference in such other policy to this policy's policy number.

b. When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

### 10. Pre-Notification Consultation

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under this Coverage Part for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under Condition **12.** Service Providers. You must provide the following at our pre-notification consultation with you:

a. The exact list of "affected individuals" to be notified, including contact information.

b. Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

c. The scope of services that you desire for the "affected individuals". For example, coverage may be structured to provide fewer services in order to make those services available to more "affected individuals" without exceeding the available Response Expenses Limit.

### 11. Representations

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

### 12. Separation of Insureds

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom a "claim" is made.

### 13. Service Providers

a. We will only pay under this Coverage Part for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Coverage Part. We will not unreasonably withhold such approval.

b. Prior to the Pre-Notification Consultation described in the Pre-Notification Consultation Condition above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

(1) Such alternate service provider must be approved by us;

(2) Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

(3) Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

### 14. Services

The following conditions apply as respects any services provided to you or any "affected individual" or "identity recovery insured" by us, our designees or any service firm paid for in whole or in part under this Coverage Part:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000118

**a.** The effectiveness of such services depends on the cooperation and assistance of you, "affected individuals" and "identity recovery insureds".

**b.** All services may not be available or applicable to all individuals. For example, "affected individuals" and "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

**c.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**d.** Except for the services of an "identity recovery case manager" under Insuring Agreement **C** - Identity Recovery, which we will provide directly, you will have a direct relationship with the professional service firms paid for in whole or in part under this Coverage Part. Those firms work for you.

## 15. Subrogation

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, will be distributed as follows:

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

## 16. Valuation - Settlement

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in

*The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

## 17. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - EXTENDED REPORTING PERIODS

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

**a.** You or we cancel this Coverage Part;

**b.** You or we refuse to renew this Coverage Part; or

**c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

**a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a:

**(1)** "Claim" or "regulatory proceeding" of which you first receive notice during said Automatic Extended Reporting Period for any "personal data compromise" occurring on or after the Retroactive Date shown on the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; or

**(2)** "Personal data compromise" you first discover during said Automatic Extended Reporting Period which first occurred on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

**b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effec-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000119

tive date of cancellation or nonrenewal in which to give to us written notice of a:

**(1)** "Claim" or "regulatory proceeding" of which you first receive notice during said Supplemental Extended Reporting Period for any "personal data compromise" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; or

**(2)** "Personal data compromise" you first discover during said Supplemental Extended Reporting Period which first occurred on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

**c.** The Limits of Insurance for the Extended Reporting Periods shall be part of, and not in addition to, the Limits of Insurance for the immediately preceding "coverage term".

## SECTION VI - DEFINITIONS

**1.** "Affected individual" means any person whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this Coverage Part. This definition is subject to the following provisions:

**a.** "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

**b.** An "affected individual" may reside anywhere in the world.

**2.** "Authorized representative" means a person or entity authorized by law or contract to act on behalf of an "identity recovery insured".

**3.** "Claim":

**a.** Means:

**(1)** A civil proceeding in which it is alleged that the claimant suffered damages arising from:

**(a)** A "personal data compromise"; or

**(b)** The violation of a governmental statute or regulation arising from a "personal data compromise".

**(2)** "Claim" includes:

**(a)** An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent;

**(b)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

**(c)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

**b.** Does not include any demand or action brought by or on behalf of someone who is:

**(1)** Your "executive";

**(2)** Your owner or part-owner; or

**(3)** A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action. "Claim" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual".

**4.** "Coverage term" means the following individual increment, or if a multi-year "policy period", increments, of time, which comprise the "policy period" of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000120

**(1)** The day the "policy period" shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Coverage territory" means anywhere in the world.

**6.** "Cyber terrorism" means the premeditated use of disruptive activities, or threat to use disruptive activities, against a computer system or network with the intention to cause harm, further social, ideological, religious, political or similar objectives, or to intimidate any person(s) in furtherance of such objectives. Provided, however, that such activities shall not be considered "cyber terrorism" when they are committed by or at the express direction of a government simultaneously engaged in an active conflict involving physical combat by one or more military forces of, or operating at the direction of, nation states or factions in the case of a civil war.

**7.** "Data compromise liability":

**a.** Means the following, when they arise from a "claim" or "regulatory proceeding":

**(1)** Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

**(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

**(3)** Pre-judgment interest on that part of any judgment paid by us.

**b.** Also includes any Payment Card Industry (PCI) fine or penalty imposed under a contract to which you are a party when such fine or penalty arises from a "claim". PCI Fines and Penalties do not include any increased transaction costs.

**c.** Also includes any fine or penalty imposed by law, to the extent such fine or penalty is legally insurable under the law of the applicable jurisdiction when such fine or penalty arises from a "regulatory proceeding".

**d.** Does not include:

**(1)** Civil or criminal fines or penalties imposed by law, except for civil fines and penalties expressly covered under paragraphs **b.** and **c.** above;

**(2)** Taxes; or

**(3)** Matters which may be deemed uninsurable under the applicable law.

**e.** With respect to fines and penalties and punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

**(1)** Is where those fines, penalties or damages were awarded or imposed;

**(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

**(3)** Is where you are incorporated or you have your principal place of business; or

**(4)** Is where we are incorporated or have our principal place of business.

**8.** "Defense costs":

**a.** Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" or "regulatory proceeding" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

**b.** Does not include the salaries or wages of your "employees", "executives" or "independent contractors", or your loss of earnings.

**9.** "Employee" means any natural person, other than an "executive" or "independent contractor", who was, now is or will be:

**a.** Employed on a full- or part-time basis by you;

**b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

**c.** Leased to you by a labor leasing firm under an agreement between you and the

labor leasing firm to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **9.b.**; or

**d.** Your volunteer worker, which includes unpaid interns.

**10.** "Executive" means any natural person who was, now is or will be:

**a.** The owner of a sole proprietorship that is a "named insured"; or

**b.** A duly elected or appointed:

**(1)** Director;

**(2)** Officer;

**(3)** Managing Partner;

**(4)** General Partner;

**(5)** Member (if a limited liability company);

**(6)** Manager (if a limited liability company); or

**(7)** Trustee,

of a "named insured".

**11.** "Identity recovery case manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured". This includes, with the permission and cooperation of the "identity recovery insured", written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**12.** "Identity recovery expenses" means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft" suffered by an "identity recovery insured":

**a.** Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft".

**b.** Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft".

**c.** Costs for credit reports from established credit bureaus.

**d.** Fees and expenses for an attorney approved by us for the following:

**(1)** The defense of any civil suit brought against an "identity recovery insured".

**(2)** The removal of any civil judgment wrongfully entered against an "identity recovery insured".

**(3)** Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

**(4)** Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

**(5)** The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured".

**e.** Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self-employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

**f.** Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**g.** Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**h.** Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft".

**(1)** Such costs include:

**(a)** Costs by the "identity recovery insured" to recover control over his or her personal identity.

**(b)** Deductibles or service fees from financial institutions.

**(2)** Such costs do not include:

**(a)** Costs to avoid, prevent or detect "identity theft" or other loss.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000122

    **(b)** Money lost or stolen.

    **(c)** Costs that are restricted or excluded elsewhere in this Coverage Part or policy.

**13.** "Identity recovery insured" means the following:

  **a.** When the entity insured under this Coverage Part is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the "named insured".

  **b.** When the "named insured" under this Coverage Part is a partnership, the "identity recovery insureds" are the current partners.

  **c.** When the "named insured" under this Coverage Part is a corporation or other form of organization, other than those described in **a.** or **b.** above, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be:

    **(1)** The chief executive of the insured entity; or

    **(2)** As respects a religious institution, the senior ministerial employee.

  **d.** The legally recognized spouse of any individual described in **a.**, **b.** or **c.** above.

An "identity recovery insured" must always be an individual person. The "named insured" under this Coverage Part is not an "identity recovery insured".

**14.** "Identity theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

**15.** "Independent contractor" means any natural person who performs labor or service for you under a written contract or agreement with you.  The status of an individual as an "independent contractor" will be determined as of the date of an alleged act, error or omission by such "independent contractor".

**16.** "Insured" means:

  **a.** With respect to Insuring Agreement **A** - Response Expenses any "named insured".

  **b.** With respect to Insuring Agreement **B** - Defense and Liability:

    **(1)** Any "named insured"; and

    **(2)** Any "employee" or "executive" of a "named insured", but:

      **(a)** Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

      **(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

    **(3)** At your option, any "independent contractor", but:

      **(a)** Only for conduct related to the "named insured's" business and within the scope of his or her duties as an "independent contractor"; and

      **(b)** Such "independent contractor" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

  **c.** With respect to Insuring Agreement **C** - Identity Recovery any "named insured".

**17.** "Loss" means:

  **a.** With respect to Insuring Agreement **A** - Response Expenses:

Those expenses enumerated in Section **I**, **A.**, Paragraph **1.b.**

  **b.** With respect to Insuring Agreement **B** - Defense and Liability:

    **(1)** "Defense costs"; and

    **(2)** "Data compromise liability".

  **c.** With respect to Insuring Agreement **C** - Identity Recovery, "identity recovery expenses".

**18.** "Named insured" means the entity or entities shown in the Declarations as a Named Insured and their "subsidiaries".

**19.** "Personal data compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss,

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000123

theft, accidental release or accidental publication involves "personally identifying information", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

**a.** At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

**(1)** You; or

**(2)** A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, processing, transmission or transportation of such information.

**b.** "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

**(1)** The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

**(2)** Such disposal or abandonment must take place during the time period for which this Coverage Part is effective.

**c.** "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

**d.** All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

**20.** "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual" or "identity recovery insured". This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

**21.** "Personally sensitive information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

**22.** "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

**23.** "Regulatory proceeding" means an investigation, demand or proceeding alleging a violation of law or regulation brought by, or on behalf of, the Federal Trade Commission, Federal Communications Commission or other administrative or regulatory agency, or any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity.

**24.** "Subsidiary" means any organization in which more than fifty (50) percent (%) of the outstanding securities or voting rights representing the present right to vote for the election of directors, trustees, managers (if a limited liability company) or persons serving in a similar capacity is owned, in any combination, by one or more "named insured(s)".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000124

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - LEGAL
# ACTION AGAINST US

This endorsement modifies insurance provided under the following:

> **CINCINNATI CYBER DEFENSE™ COVERAGE PART**
> **CINCINNATI DATA DEFENDER™ COVERAGE PART**
> **CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

Paragraph **b.** of the Legal Action Against Us Condition is deleted in its entirety and replaced by the following:

**b.** You may not bring any legal action against us involving "loss":

    **(1)** Unless you have complied with all the terms of this insurance; and

    **(2)** Unless the action is brought within the time limitations prescribed by Alabama law.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000125

# THE CINCINNATI CASUALTY COMPANY
A Stock Insurance Company

# CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

| | |
|---|---|
| Attached to and forming part of POLICY NUMBER: **ENP 046 05 30** | Effective Date **11-01-2020** |

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:   11-01-2019**

## Limits of Insurance and Deductible

| | Insuring Agreement | Annual Aggregate | Sublimit | | Deductible | |
|---|---|---|---|---|---|---|
| A | Computer Attack | $50,000 | | | $1,000 | 1 |
| | | | Cyber Extortion | $10,000 | $1,000 | 2 |
| | | | Loss of Business | $25,000 | | |
| | | | Public Relations | $25,000 | | |
| B | Network Security and Electronic Media Liability | $50,000 | | | $1,000 | |

| | |
|---|---|
| **TOTAL ANNUAL PREMIUM** | $187 |

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 60 |
| 2 YEAR | 120 |
| 3 YEAR | 160 |
| 4 YEAR | 200 |
| 5 YEAR | 220 |
| 6 YEAR | 240 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| HC103 | 01/20 | CINCINNATI NETWORK DEFENDER™ COVERAGE FORM |
| HC477AL | 08/16 | ALABAMA CHANGES - LEGAL ACTION AGAINST US |

---

1 Computer Attack Deductible other than Cyber Extortion
2 Cyber Extortion Deductible

# CINCINNATI NETWORK DEFENDER™ COVERAGE FORM

### TABLE OF CONTENTS

Coverage Part Provision:            Begins on Page:

Preamble ..................................................................................................................3

**SECTION I – COVERAGES** ...................................................................................3

A. Insuring Agreements ..........................................................................................3

     1. Insuring Agreement A – Computer Attack ...........................................3
     2. Insuring Agreement B – Network Security and Electronic Media Liability ..............3

B. Exclusions ...........................................................................................................4

     1. Contractual Liability ..............................................................................4
     2. Criminal Investigations or Proceedings ...............................................4
     3. Deficiency Correction ...........................................................................4
     4. Extortion ...............................................................................................4
     5. Fines or Penalties ................................................................................4
     6. Fraudulent, Dishonest or Criminal Acts ..............................................4
     7. Information Technology Products .........................................................4
     8. Infrastructure Failure ...........................................................................4
     9. Knowledge of Falsity ...........................................................................4
     10. Non-monetary Relief ............................................................................4
     11. Nuclear .................................................................................................4
     12. Patent or Trade Secret Infringement ...................................................4
     13. Previously Reported Claims .................................................................4
     14. Prior Wrongful Acts ..............................................................................5
     15. Prior or Pending Litigation ...................................................................5
     16. Property Damage or Bodily Injury .......................................................5
     17. War ......................................................................................................5
     18. Willful Complicity .................................................................................5

**SECTION II – LIMITS OF INSURANCE AND DEDUCTIBLE** ................................5

**SECTION III – DEFENSE AND SETTLEMENT** ....................................................6

**SECTION IV – CONDITIONS** ...............................................................................6

     1. Bankruptcy ...........................................................................................6
     2. Due Diligence .......................................................................................6
     3. Duties in the Event of a Claim or Loss ................................................7
     4. Legal Action Against Us .......................................................................8
     5. Liberalization .......................................................................................8
     6. Office of Foreign Assets Control (OFAC) Compliance.........................8
     7. Other Insurance ...................................................................................8
     8. Representations ...................................................................................8
     9. Separation of Insureds ........................................................................8
     10. Services ...............................................................................................8
     11. Subrogation ..........................................................................................9
     12. Valuation – Settlement .........................................................................9
     13. When We Do Not Renew ......................................................................9

**SECTION V – EXTENDED REPORTING PERIODS** ..............................................9

HC 103 01 20        Includes copyrighted material of Insurance        Page 1 of 14
Services Office, Inc., with its permission.
000127

**TABLE OF CONTENTS**

**Coverage Part Provision:**                                                                 **Begins on Page:**

**SECTION VI - DEFINITIONS** .................................................................**10**

1.   "Actual cash value"..............................................................................**10**
2.   "Bodily injury"....................................................................................**10**
3.   "Business income loss".........................................................................**10**
4.   "Claim" ...............................................................................................**10**
5.   "Computer attack" ...............................................................................**10**
6.   "Computer system" ..............................................................................**10**
7.   "Coverage term" ..................................................................................**10**
8.   "Coverage territory" ............................................................................**11**
9.   "Cyber extortion expenses"..................................................................**11**
10.  "Cyber extortion threat" ......................................................................**11**
11.  "Cyber terrorism".................................................................................**11**
12.  "Data re-creation costs".......................................................................**11**
13.  "Data restoration costs".......................................................................**11**
14.  "Defense costs"...................................................................................**11**
15.  "Denial of service attack" ....................................................................**12**
16.  "Electronic media incident"..................................................................**12**
17.  "Employee".........................................................................................**12**
18.  "Executive" .........................................................................................**12**
19.  "Extra expense"...................................................................................**12**
20.  "Independent contractor" .....................................................................**12**
21.  "Insured".............................................................................................**12**
22.  "Interrelated".......................................................................................**13**
23.  "Loss"..................................................................................................**13**
24.  "Malware attack" .................................................................................**13**
25.  "Named insured" ..................................................................................**13**
26.  "Network security incident"..................................................................**13**
27.  "Period of restoration".........................................................................**13**
28.  "Personally identifying information" .....................................................**13**
29.  "Personally sensitive information" ........................................................**13**
30.  "Policy period" ....................................................................................**13**
31.  "Property damage" ...............................................................................**13**
32.  "Ransomware" ......................................................................................**13**
33.  "Settlement costs" ................................................................................**13**
34.  "Subsidiary" .........................................................................................**14**
35.  "System restoration costs" ...................................................................**14**
36.  "Third party corporate data" ................................................................**14**
37.  "Unauthorized access incident" ............................................................**14**
38.  "Wrongful act" .....................................................................................**14**

**HC 103 01 20**                        Includes copyrighted material of Insurance                        **Page 2 of 14**
                                         Services Office, Inc., with its permission.
                                                        000128

# CINCINNATI NETWORK DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DE-DUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following In-suring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

**1. Insuring Agreement A - Computer Attack**

   **a.** Coverage under Insuring Agreement **A** - Computer Attack applies only if all of the following conditions are met:

   **(1)** There has been a "computer attack"; and

   **(2)** Such "computer attack" is first discovered by you during the "policy period"; and

   **(3)** Such "computer attack" occurred in the "coverage territory"; and

   **(4)** Such "computer attack" is re-ported to us as soon as practi-cable, but in no event more than 60 days after the date it is first discovered by you.

   **b.** If all of the conditions in **a.** above have been met, then we will provide you the following coverages for "loss" directly arising from such "computer attack".

   **(1) Cyber Extortion**

   We will pay your necessary and reasonable "cyber extortion ex-penses".

**(2) Data Restoration**

   We will pay your necessary and reasonable "data restoration costs".

**(3) Data Re-creation**

   We will pay your necessary and reasonable "data re-creation costs".

**(4) System Restoration**

   We will pay your necessary and reasonable "system restoration costs".

**(5) Loss of Business**

   We will pay your actual "busi-ness income loss" and your nec-essary and reasonable "extra expenses".

**(6) Public Relations**

   If you suffer covered "business income loss", we will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a pro-fessional public relations firm re-view of and response to the po-tential impact of the "computer attack" on your business rela-tionships. We will only pay for such fees and expenses when such a public relations firm re-view and response is reasonably necessary to avert or mitigate material damage to your busi-ness relationships from the "computer attack".

**2. Insuring Agreement B - Network Secu-rity and Electronic Media Liability**

   **a.** Coverage under Insuring Agreement **B** - Network Security and Electronic Media Liability applies only if all of the following conditions are met:

   **(1)** During the "coverage term" or any applicable Extended Report-ing Period, you first receive no-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000129

tice of a "claim" which arises from a "wrongful act" that:

**(a)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period"; and

**(b)** Took place in the "coverage territory"; and

**(2)** Such "claim" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" the "insured's" necessary and reasonable "defense costs" and "settlement costs" directly arising from the "claim".

**c.** All "claims" caused by a single "wrongful act" or series of "interrelated" "wrongful acts" will be deemed to have been made at the time that notice of the first of those "claims" is received by you.

## B. Exclusions

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

### 1. Contractual Liability

An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclusion shall not apply to any liability that an "insured" would have incurred in the absence of such contract or agreement.

### 2. Criminal Investigations or Proceedings

Any criminal investigations or proceedings.

### 3. Deficiency Correction

Costs to research or correct any deficiency.

### 4. Extortion

Any threat, extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

This exclusion does not apply to the extent that insurance coverage is provided under **SECTION I - COVERAGES**, Paragraph **A.1.b.(1) Cyber Extortion**.

### 5. Fines or Penalties

Any fines or penalties.

### 6. Fraudulent, Dishonest or Criminal Acts

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

### 7. Information Technology Products

The propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers in connection with hardware or software created, produced or modified by you for sale, lease or license to third parties.

### 8. Infrastructure Failure

Failure or interruption of or damage to any electrical power supply network or telecommunication network not owned and operated by the "insured" including, but not limited to, the internet, internet service providers, DNS service providers, cable and wireless providers, internet exchange providers, search engine providers, tier 1 internet protocol networks and other providers of telecommunications or internet infrastructure.

### 9. Knowledge of Falsity

Any oral or written publication of material, if done by the "insured" or at the "insured's" direction with knowledge of its falsity.

### 10. Non-monetary Relief

That part of any "claim" seeking any non-monetary relief.

### 11. Nuclear

Nuclear reaction or radiation or radioactive contamination, however caused.

### 12. Patent or Trade Secret Infringement

Any actual or alleged patent or trade secret violation including any actual or alleged violation of the Patent Act, the Economic Espionage Act of 1996, or the Uniform Trade Secrets Act and their amendments.

### 13. Previously Reported Claims

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000130

### 14. Prior Wrongful Acts

Any "wrongful act" first occurring before the Retroactive Date shown in the Declarations or any "claim" arising from a "wrongful act" that first occurred prior to the Retroactive Date shown in the Declarations.

### 15. Prior or Pending Litigation

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

### 16. Property Damage or Bodily Injury

"Property damage" or "bodily injury" other than "bodily injury" arising from an "electronic media incident".

### 17. War

**a.** War, including undeclared or civil war or civil unrest;

**b.** Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

Provided, that this exclusion will not apply to "cyber terrorism".

### 18. Willful Complicity

The "insured's" intentional or willful complicity in a covered "loss" event or your reckless disregard for the security of your "computer system" or data.

## SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE

### A. Insuring Agreement A - Computer Attack

**1.** The most we will pay under Insuring Agreement **A** - Computer Attack for Cyber Extortion coverage for "loss" arising from any one "computer attack" is the Cyber Extortion Sublimit stated in the Declarations. This Limit of Insurance is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

**2.** The most we will pay under Insuring Agreement **A** - Computer Attack for Loss of Business coverage for "loss" arising from any one "computer attack" is the Loss of Business Sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

**3.** The most we will pay under Insuring Agreement **A** - Computer Attack for Public Relations coverage for "loss" arising from any one "computer attack" is the Public Relations Sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

**4.** The Computer Attack Aggregate Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Computer Attack arising out of all "computer attack" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "computer attack" events first discovered during the "coverage term".

**5.** A "computer attack" may be first discovered by you in one "coverage term" but it may cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "computer attack" will be subject to the Computer Attack Aggregate Limit of Insurance applicable to the "coverage term" when the "computer attack" was first discovered by you.

**6.** The Computer Attack Aggregate Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance for the immediately preceding "coverage term".

**7.** The Computer Attack coverage is subject to the:

**a.** Computer Attack other than Cyber Extortion; and

**b.** Cyber Extortion;

deductibles stated in the Declarations. In the event that elements of "loss" from the same "computer attack" include "cyber extortion expenses" as well as other insured expenses or costs, then only the single highest deductible will apply. You shall be responsible for the applicable deductible amount as respects "loss" arising from each "computer attack" covered under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000131

## B. Insuring Agreement B - Network Security and Electronic Media Liability

1. Except for post-judgment interest, the most we will pay under Insuring Agreement **B** - Network Security and Electronic Media Liability is the Network Security and Electronic Media Liability Aggregate Limit of Insurance stated in the Declarations.

2. The Network Security and Electronic Media Liability Aggregate Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **B** - Network Security and Electronic Media Liability (other than post-judgment interest) arising out of all "claims".

3. The Network Security and Electronic Media Liability Aggregate Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Network Security and Electronic Media Liability Aggregate Limit of Insurance for the immediately preceding "coverage term".

4. The Insuring Agreement **B** - Network Security and Electronic Media Liability coverage is subject to the Network Security and Electronic Media Liability Deductible stated in the Declarations. You shall be responsible for the applicable deductible amount as respects "loss" arising from each "claim" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim" or "loss" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Network Security and Electronic Media Liability.

1. We will have the right and duty to select counsel and defend the "insured" against any "claim" covered by Insuring Agreement **B** - Network Security and Electronic Media Liability, regardless of whether the allegations of such "claim" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" seeking damages or other relief not insured by Insuring Agreement **B** - Network Security and Electronic Media Liability.

2. We may, with your written consent, make any settlement of a "claim" which we deem rea-sonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

3. We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim", after the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance has been exhausted.

4. We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance which accrues:

   a. After entry of judgment; and

   b. Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance.

   These interest payments shall be in addition to and not part of the Network Security and Electronic Media Liability Limit of Insurance.

## SECTION IV - CONDITIONS

1. **Bankruptcy**

   Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

2. **Due Diligence**

   You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and industry-accepted protocols for:

   a. Providing and maintaining appropriate physical security for your premises, "computer systems" and hard copy files;

   b. Providing and maintaining appropriate computer and Internet security; and

   c. Maintaining and updating at appropriate intervals backups of computer data.

3. **Duties in the Event of a Claim or Loss**

   a. If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000132

after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

**(1)** The specific details, including the date, of the circumstance;

**(2)** The alleged injuries or damage sustained or which may be sustained;

**(3)** The names of potential claimants; and

**(4)** The manner in which the "insured" first became aware of the circumstance.

Any subsequent "claim" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" is brought against any "insured", you must:

**(1)** Immediately record the specifics of the "claim" and the date received; and

**(2)** Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "claim" is first received by you.

**(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

**(4)** Authorize us to obtain records and other information;

**(5)** Cooperate with us in the investigation, settlement or defense of the "claim";

**(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" to which this insurance may also apply; and

**(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim".

**c.** In the event of a "computer attack" covered under Insuring Agreement **A** - Computer Attack, you must see that the following are done:

**(1)** Notify the police if a law may have been broken.

**(2)** Notify us as soon as practicable, but in no event more than 60 days after the "computer attack". Include a description of any property involved.

**(3)** As soon as possible, give us a description of how, when and where the "computer attack" occurred.

**(4)** As often as may be reasonably required, permit us to:

**(a)** Inspect the property proving the "computer attack";

**(b)** Examine your books, records, electronic media and records and hardware;

**(c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

**(d)** Make copies from your books, records, electronic media and records and hardware.

**(5)** Send us signed, sworn proof of loss containing the information we request to investigate the "computer attack". You must do this within 60 days after our request. We will supply you with the necessary forms.

**(6)** Cooperate with us in the investigation or settlement of the "computer attack".

**(7)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

**(8)** Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our prior written consent.

**(9)** Promptly send us any legal papers or notices received concerning the "computer attack" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4.    Legal Action Against Us**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000133

**a.** No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

**(2)** To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**5. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current "policy period". We will make no additional premium charge for this additional coverage during the interim.

**6. Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**7. Other Insurance**

**a.** If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part by reference in such other policy to this policy's policy number.

**b.** When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

**8. Representations**

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

**9. Separation of Insureds**

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom "claim" is made.

**10. Services**

The following conditions apply as respects any services provided to you by any service firm provided or paid for in whole or in part under this Coverage Part:

**a.** The effectiveness of such services depends on your cooperation and assistance.

**b.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**11. Subrogation**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000134

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, will be distributed as follows:

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

## 12. Valuation - Settlement

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

## 13. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - EXTENDED REPORTING PERIODS

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

**a.** You or we cancel this Coverage Part;

**b.** You or we refuse to renew this Coverage Part; or

**c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

**a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a:

**(1)** "Claim" of which you first receive notice during said Automatic Extended Reporting Period for any "wrongful act" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; or

**(2)** "Computer attack" you first discover during said Automatic Extended Reporting Period which first occurred on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

**b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a:

**(1)** "Claim" of which you first receive notice during said Supplemental Extended Reporting Period for any "wrongful act" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; or

**(2)** "Computer attack" you first discover during said Supplemental Extended Reporting Period which first occurred on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000135

ceive the written request as required, you may not exercise this right at a later date.

**c.** The Limits of Insurance for the Extended Reporting Periods shall be part of, and not in addition to, the Limits of Insurance for the immediately preceding "coverage term".

## SECTION VI - DEFINITIONS

**1.** "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

**2.** "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

**3.** "Business income loss" means the sum of the:

**a.** Net income (net profit or loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal and necessary operating expenses incurred, including "employee", "executive" and "independent contractor" payroll,

actually lost by you during the "period of restoration".

**4.** "Claim":

**a.** Means a civil proceeding against an "insured" in which damages are alleged arising from a "wrongful act" or a series of "interrelated" "wrongful acts" allegedly committed by an "insured", including any appeal therefrom.

**b.** "Claim" includes:

**(1)** An arbitration or alternative dispute resolution proceeding that the "insured" is required to submit to or does submit to with our consent; or

**(2)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

**c.** Does not include any demand or action brought by or on behalf of someone who is:

**(1)** Your "executive";

**(2)** Your owner or part-owner; or

**(3)** A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action.

**5.** "Computer attack" means one of the following involving the "computer system":

**a.** An "unauthorized access incident";

**b.** A "malware attack";

**c.** A "denial of service attack" against a "computer system"; or

**d.** A "cyber extortion threat".

**6.** "Computer system" means a computer or other electronic hardware that:

**a.** Is owned or leased by you and operated under your control; or

**b.** Is operated by a third party service provider and used for the purpose of providing hosted computer application services to you or for processing, maintaining, hosting or storing your electronic data, pursuant to a written contract with you for such services, but such computer or other electronic hardware operated by such third party shall only be considered to be a "computer system" with respect to the specific services provided by such third party to you under such contract.

**7.** "Coverage term" means the following individual increment, or if a multi-year "policy period", increments, of time, which comprise the "policy period" of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the "policy period" shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**8.** "Coverage territory" means anywhere in the world.

**9.** "Cyber extortion expenses" means:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000136

**a.** The cost of a negotiator or investigator retained by you in connection with a "cyber extortion threat"; and

**b.** Any amount paid by you in response to a "cyber extortion threat" to the party that made the "cyber extortion threat" for the purposes of eliminating the "cyber extortion threat";

when such expenses are necessary and reasonable and arise directly from a "cyber extortion threat". The payment of "cyber extortion expenses" must be approved in advance by us. We will not pay for "cyber extortion expenses" that have not been approved in advance by us. We will not unreasonably withhold our approval.

**10.** "Cyber extortion threat" means a demand for money from you based on a credible threat, or series of related credible threats, to:

**a.** Launch a "denial of service attack" against the "computer system";

**b.** Gain access to a "computer system" and use that access to steal, release or publish "personally identifying information", "personally sensitive information" or "third party corporate data";

**c.** Alter, damage or destroy electronic data or software while such electronic data or software is stored within a "computer system";

**d.** Launch a "computer attack" against a "computer system" in order to alter, damage or destroy electronic data or software while such electronic data or software is stored within a "computer system";

**e.** Cause the "insured" to transfer, pay or deliver any funds or property using a "computer system" without your authorization; or

**f.** Inflict "ransomware" on a "computer system".

"Cyber extortion threat" does not include any threat made in connection with a legitimate commercial dispute.

**11.** "Cyber terrorism" means the premeditated use of disruptive activities, or threat to use disruptive activities, against a computer system or network with the intention to cause harm, further social, ideological, religious, political or similar objectives, or to intimidate any person(s) in furtherance of such objectives. Provided, however, that such activities shall not be considered "cyber terrorism" when they are committed by or at the express direction of a government simultaneously engaged in an active conflict involving physical combat by one or more military forces of, or operating at the direction of, nation states or factions in the case of a civil war.

**12.** "Data re-creation costs":

**a.** "Data re-creation costs" means the costs of an outside professional firm hired by you to research, re-create and replace data that has been lost or corrupted and for which there is no electronic source available or where the electronic source does not have the same or similar functionality to the data that has been lost or corrupted.

**b.** "Data re-creation costs" also means your actual "business income loss" and your necessary and reasonable "extra expenses" arising from the lack of the lost or corrupted data during the time required to research, re-create and replace such data.

**c.** "Data re-creation costs" does not mean costs to research, re-create or replace:

**(1)** Software programs or operating systems that are not commercially available; or

**(2)** Data that is obsolete, unnecessary or useless to you.

**13.** "Data restoration costs":

**a.** Means the costs of an outside professional firm hired by you to replace electronic data that has been lost or corrupted. In order to be considered "data restoration costs", such replacement must be from one or more electronic sources with the same or similar functionality to the data that has been lost or corrupted.

**b.** Does not include costs to research, restore or replace:

**(1)** Software programs or operating systems that are not commercially available; or

**(2)** Data that is obsolete, unnecessary or useless to you.

**14.** "Defense costs":

**a.** Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

**b.** Does not include the salaries or wages of your "employees". "executives" or "independent contractors", or your loss of earnings.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000137

**15.** "Denial of service attack" means an intentional attack against a target computer or network of computers designed to overwhelm the capacity of the target computer or network in order to deny or impede authorized users from gaining access to the target computer or network through the internet.

**16.** "Electronic media incident" means the display of information in electronic form by you on a website or in an "insured's" email that resulted in an allegation of:

  **a.** Infringement of another's copyright, title, slogan, trademark, trade name, trade dress, service mark or service name;

  **b.** Defamation against a person or organization that is unintended;

  **c.** A violation of a person's right of privacy, including false light and public disclosure of private facts; or

  **d.** Interference with a person's right of publicity.

**17.** "Employee" means any natural person, other than an "executive" or "independent contractor", who was, now is or will be:

  **a.** Employed on a full- or part-time basis by you;

  **b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

  **c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **b.**; or

  **d.** Your volunteer worker, which includes unpaid interns.

**18.** "Executive" means any natural person who was, now is or will be:

  **a.** The owner of a sole proprietorship that is a "named insured"; or

  **b.** A duly elected or appointed:

    **(1)** Director;

    **(2)** Officer;

    **(3)** Managing Partner;

    **(4)** General Partner;

    **(5)** Member (if a limited liability company);

    **(6)** Manager (if a limited liability company); or

    **(7)** Trustee,

of a "named insured".

**19.** "Extra expense" means the additional cost you incur to operate your business during the "period of restoration" over and above the cost that you normally would have incurred to operate your business during the same period had no "computer attack" occurred.

**20.** "Independent contractor" means any natural person who performs labor or service for you under a written contract or agreement with you. The status of an individual as an "independent contractor" will be determined as of the date of an alleged act, error or omission by such "independent contractor".

**21.** "Insured" means:

  **a.** With respect to Insuring Agreement **A** - Computer Attack any "named insured".

  **b.** With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

    **(1)** Any "named insured"; and

    **(2)** Any "employee" or "executive" of a "named insured", but:

      **(a)** Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

      **(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

    **(3)** At your option, any "independent contractor", but:

      **(a)** Only for conduct related to the "named insured's" business and within the scope of his or her duties as an "independent contractor"; and

      **(b)** Such "independent contractor" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

**22.** "Interrelated" means all events or incidents that have as a common nexus any:

  **a.** Fact, circumstance, situation, event, transaction, cause; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.<br>000138

b. Series of causally connected facts, circumstances, situations, events, transactions or causes.

23. "Loss" means:

a. With respect to Insuring Agreement **A** - Computer Attack:

Those expenses enumerated in Section **I**, **A.**, Paragraph **1.b.**

b. With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

(1) "Defense costs"; and

(2) "Settlement costs".

24. "Malware attack" means an attack that damages a "computer system" or data contained therein arising from malicious code, including viruses, worms, Trojans, spyware and keyloggers. This does not mean damage from shortcomings or mistakes in legitimate electronic code or damage from code installed on your "computer system" during the manufacturing process or normal maintenance.

25. "Named insured" means the entity or entities shown in the Declarations as a Named Insured and their "subsidiaries".

26. "Network security incident" means a negligent security failure or weakness with respect to a "computer system" which allowed one or more of the following to happen:

a. The unintended propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers. Malware does not include shortcomings or mistakes in legitimate electronic code.

b. The unintended abetting of a "denial of service attack" against one or more other systems.

c. The unintended loss, release or disclosure of "third party corporate data".

27. "Period of restoration" means the period of time that begins at the time that the "computer attack" is discovered by you and continues until the earlier of:

a. The date that all data restoration, data re-creation and system restoration directly related to the "computer attack" has been completed; or

b. The date on which such data restoration, data re-creation and system restoration could have been completed with the exercise of due diligence and dispatch.

28. "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an individual. This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

29. "Personally sensitive information" means private information specific to an individual the release of which requires notification of affected individuals under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

30. "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

31. "Property damage" means:

a. Physical injury to or destruction of tangible property including all resulting loss of use; or

b. Loss of use of tangible property that is not physically injured.

32. "Ransomware" means any software that is used to demand a ransom payment by:

a. Restricting access to a "computer system"; or

b. Encrypting data held within a "computer system".

33. "Settlement costs":

a. Means the following, when they arise from a "claim":

(1) Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

(2) Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

(3) Pre-judgment interest on that part of any judgment paid by us.

b. Does not include:

(1) Civil or criminal fines or penalties imposed by law;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000139

**(2)** Taxes; or

**(3)** Matters which may be deemed uninsurable under the applicable law.

**c.** With respect to punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

**(1)** Is where those fines, penalties or damages were awarded or imposed;

**(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

**(3)** Is where you are incorporated or you have your principal place of business; or

**(4)** Is where we are incorporated or have our principal place of business.

**34.** "Subsidiary" means any organization in which more than fifty (50) percent (%) of the outstanding securities or voting rights representing the present right to vote for the election of directors, trustees, managers (if a limited liability company) or persons serving in a similar capacity is owned, in any combination, by one or more "named insured(s)".

**35.** "System restoration costs":

**a.** Means the costs of an outside professional firm hired by you to do any of the following in order to restore your "computer system" to its pre- "computer attack" level of functionality:

**(1)** Replace or reinstall computer software programs;

**(2)** Remove any malicious code; and

**(3)** Configure or correct the configuration of your "computer system".

**b.** Does not include:

**(1)** Costs to increase the speed, capacity or utility of your "computer system";

**(2)** Labor of your "employees" or "executives";

**(3)** Any costs in excess of the "actual cash value" of your "computer system"; or

**(4)** Costs to repair or replace hardware.

**36.** "Third party corporate data" means any trade secret, data, design, interpretation, forecast, formula, method, practice, credit or debit card magnetic strip information, process, record, report or other item of information of a third party not an "insured" under this Coverage Part which is not available to the general public and is provided to the "named insured" subject to a mutually executed written confidentiality agreement or which the "named insured" is legally required to maintain in confidence; however, "third party corporate data" shall not include "personally identifiable information" or "personally sensitive information".

**37.** "Unauthorized access incident" means the gaining of access to a "computer system" by:

**a.** An unauthorized person or persons; or

**b.** An authorized person or persons for unauthorized purposes.

**38.** "Wrongful act" means:

**a.** An "electronic media incident"; or

**b.** A "network security incident".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000140

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - LEGAL
# ACTION AGAINST US

This endorsement modifies insurance provided under the following:

   **CINCINNATI CYBER DEFENSE™ COVERAGE PART**
   **CINCINNATI DATA DEFENDER™ COVERAGE PART**
   **CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

Paragraph **b.** of the Legal Action Against Us Condition is deleted in its entirety and replaced by the following:

**b.**   You may not bring any legal action against us involving "loss":

   **(1)**   Unless you have complied with all the terms of this insurance; and

   **(2)**   Unless the action is brought within the time limitations prescribed by Alabama law.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000141



# THE CINCINNATI CASUALTY COMPANY
### A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# LIABILITY PREMIUM ADJUSTMENT STATEMENT

POLICY NO.:  ENP0460530

INSURED:  LUCIDA CONSTRUCTION CO LLC and LUCIDA RENTALS LLC

AGENT:  01113 - Cobbs Allen

| POLICY PERIOD<br>From 11/01/2019 to 11/01/2020<br>TERM OF AUDIT<br>From 11/01/2019 to 11/01/2020 | PREMIUM BASIS<br>A. Area<br>P. Payroll<br>S. Sales<br>C. Cost<br>O. Each/Other | | ADDITIONAL PREMIUMS ARE DUE<br>UPON PRESENTATION OF STATEMENT<br>*** DIRECT BILL *** | | | | | |

| CLASS CODE NUMBER | CLASSIFICATION | | RATES | | DEPOSIT PREMIUM | | EARNED PREMIUM | | DIFFERENCE | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Prod/Comp. | All Other | Prod/Comp. | All Other | Prod/Comp. | All Other | Prod/Comp. | All Other |
| 29923 AL | Automatic Additional Insured | O | 12,067 | 0 | 0.035 | 0 | 684 | 0 | 422 | 0 | (262) |
| 91560 AL | CONCRETE CONSTRUCTION | P | 18,252 | 10.523 | 21.346 | 0 | 0 | 192 | 390 | 192 | 390 |
| 91580 AL | EXECUTIVE SUPERVISOR | P | 136,618 | 0 | 25.691 | 0 | 9,634 | 0 | 3,510 | 0 | (6,124) |
| 91585 AL | SUBCONTRACTORS-NOC | C | 2,010,810 | 1.713 | 2.253 | 4,283 | 5,633 | 3,445 | 4,530 | (838) | (1,103) |
| 20410 AL | B.I. EXCEPTIONS TO POLLUTANT EXCLUSIONS | O | 8,430 | 0 | 0.02 | 0 | 305 | 0 | 169 | 0 | (136) |
| 29975 AL | CONTRACTORS BROADENED COVERAGE | O | 12,067 | 0 | 0.035 | 0 | 684 | 0 | 422 | 0 | (262) |

| | | |
|---|---|---|
| Total Earned Premium: | $3,637 | $9,443 |
| Deposit Premium: | $4,283 | $16,940 |
| Additional/Return Premium: | ($646) | ($7,497) |
| **Net Refund Due:** | **($8,143)** | |

Prepared by:  MREISIG   2/8/2021



**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**Policy Number:** ENP 046 05 30

**Effective Date:** 11-01-2019

**Named Insured:** LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC

For professional advice and policy questions or changes, please contact your local independent agency:

COBBS ALLEN
115 OFFICE PARK DR STE 200
MOUNTAIN BROOK, AL 35223-2423


205-414-8100

Dear Policyholder:

**Thank you**
Thank you for trusting The Cincinnati Insurance Companies with your commercial insurance coverage. We recognize that locally based independent agents have the working knowledge to help you choose the right insurance company for your needs. Together with your local independent insurance agency, we are committed to providing you with the highest level of service.

Please review your enclosed policy information to verify your coverage details, as well as deductibles and coverage amounts. Should your needs change, your agent is available to review and update your policy.

**Please promptly report claims**
If you experience a policy-related loss, you may report it by contacting your local professional independent agency representing The Cincinnati Insurance Companies or by directly calling us toll-free at **877-242-2544** and providing your policy number and claim-related information.


Sincerely,

Sean M. Givler
Senior Vice President - Commercial Lines

**IA 4443 04 14**



The Cincinnati Insurance Company ▪ The Cincinnati Indemnity Company
The Cincinnati Casualty Company ▪ The Cincinnati Specialty Underwriters Insurance Company
The Cincinnati Life Insurance Company

## Notice to Policyholders – Cincinnati Network Defender™
Computer attack services and resources added to your insurance policy

To:  LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC

Policy Number:  ENP 046 05 30
Expiration Date:  11-01-2020
Agency:  COBBS ALLEN 01-113

Your policy includes Cincinnati Network Defender coverage for an additional premium. This valuable insurance coverage, described in the attached brochure Adv. 715, helps safeguard your business against the rising costs of computer attacks such as ransomware. Please save this information so you can access all of the tools and resources that come with your cyber protection coverage. Refer to Cincinnati Network Defender Coverage Form, HC103, for a complete statement of coverages, exclusions and limits of insurance.

### Policyholder tools and resources
*Cyber risk management portal* – Your Network Defender coverage includes access for no additional charge to *www.eriskhub.com/cic*, a web portal that provides you with news, information and resources you can use to help mitigate a hacking event, virus infection or other cyberattack. This online resource also contains an optional section offering TechQ, a technical support service you can subscribe to for a nominal fee for assistance troubleshooting, diagnosing and fixing common computer problems, including finding and removing viruses.

The first time you visit eRiskHub, please complete new user registration using this information:

### Access code = 12116-868

### Claims services
If you suspect or know that a computer attack may have exposed or compromised your organization's systems, a swift response is critical for your protection. Please note that the eRiskHub portal provides advice and information, and using it does not satisfy any notice of claim requirement. The only way to report a claim is to contact your independent agent or call us directly, 877-242-2544. Your agent and Cincinnati will work with you to preserve your company's goodwill and safeguard your business reputation.

While we believe this is valuable coverage to have in today's world, you may have it removed from your policy by notifying your agent.

Thank you for trusting your agent and Cincinnati to protect your business.

Enclosure: Cincinnati Network Defender brochure, Adv. 715

**IA4494 (1/18)**

Mailing Address: P.O. Box 145496 ▪ Cincinnati, Ohio 45250-5496 ▪ Headquarters: 6200 S. Gilmore Road ▪ Fairfield, Ohio 45014-5141
*www.cinfin.com* ▪ 513-870-2000

000144

Date: 1 0 - 2 2 - 2 0 1 9

Insured: LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC
Policy Number: ENP 046 05 30 / EBA 046 05 30

Dear Agent:

The captioned policy has been issued with the following additional liability exclusion(s)/conditions(s):

☒ **Exterior Insulation and Finish Systems (EIFS) and Direct Applied Exterior Finish Systems (DEFS) Liability Exclusion**

☒ **Fungi or Bacteria Liability Exclusion**

☒ **Bodily Injury and /or Property Damage Deductible**

☐ **Lead Liability Exclusion**

☐ **Bodily Injury and/or Property Damage Fungi or Bacteria Deductible**

Please be sure that the insured understands the above.

Cordially,

Commercial Lines Department

**MI 1603 10 03**

# NOTICE TO POLICYHOLDERS
# DIRECT BILL ACCOUNT CREDIT PROCEDURE

This is a notice of how an account credit will be applied to your policy or to all of the policies being billed as single account.

**Account Credits**

**A.**   If your account is comprised of **a single policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied to that policy. If your account does not have a future installment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account. If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

**B.**   If your account is comprised of **more than one policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied in the following manner:

- Payments previously applied to your account are deferred.

- The credit that results from the endorsement or audit is applied to the policy generating the credit.

- The payments that were deferred are then reapplied to the account in order to satisfy the amount due.

- Any excess payment that results from the credit is applied proportionately to your policies with a future payment or installment due.

- If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

- If your account does not have a future installment or payment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account.

(Does not apply to audit return premium for payors located in New York; Does not apply to premiums due more than 30 days from the date of processing for payors located in New Hampshire. These credits are automatically refunded to the payor)

To request a refund, contact us at:

| Mailing Address | Toll free phone number | Electronic mail |
|---|---|---|
| The Cincinnati Insurance Company PO Box 14529 Cincinnati, OH 45250-0529 | 877-942-2455 | CinciBill@cinfin.com |

**IA 4407 03 13**

# DISCLOSURE OF DIRECT BILL FEES AND CHARGES

NO COVERAGE IS PROVIDED BY THIS DISCLOSURE, nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverages provided.

Your insurance premium is being paid directly to us rather than to your insurance agency. We appreciate your prompt payment of the premium. Please note that these fees apply only in the event your payment is late, is returned to us for insufficient funds, or if your policy was previously canceled for nonpayment of premium and has been reinstated at either your or your agents request. We are not required to reinstate a policy once cancellation for nonpayment of premium has become effective. The decision to reinstate coverage is solely at the discretion of the company.

Not all fees are applicable in all states. The types of fees are listed below.  Following the description of each fee, we list the states where the fee applies and the amount of the fee.  Fees are not levied in KY, MD, MT and NC.

**Non-Sufficient Funds (NSF) Charge:** The first time a premium payment is returned due to Non-Sufficient Funds (NSF), the premium due is the installment amount. For each succeeding return of payment while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, NJ, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI, WV and WY.

**Reinstatement Charge:** The first time your account is reinstated for nonpayment of premium, the premium due is the installment amount. For each succeeding reinstatement due to nonpayment of premium while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA and WY.

**Late Charge:** A charge is added to your next account statement each time your payment is received and processed after the due date as shown on the account statement. This fee will not apply to Electronic Funds Transfer (EFT). The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, RI, and SC;

$15 MA; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI and WY.

**IA 4421 03 13**



Southeast Case Management Center
2200 Century Parkway
Suite 300
Atlanta, GA 30345
Telephone: (404)325-0101
Fax: (877)395-1388

July 19, 2021

John Mastin, Jr., Esq.
Smith Currie & Hancock, LLP
245 Peachtree Center Avenue NE
2700 Marquis 1 Tower
Atlanta, GA 30303-1227
Via Email to: jmmastin@smithcurrie.com

Clark R. Hammond, Esq.
Wallace Jordan Ratliff & Brandt, LLC
800 Shades Creek Parkway, Suite 800
PO Box 530910
Birmingham, AL 35209
Via Email to: chammond@wallacejordan.com

   Re:  Case Number: 02-20-0010-8513
      Morcor Financial, LLC v. Lucida Construction Company, LLC

Dear Parties:

By direction of the arbitrator(s) we herewith transmit to you the duly executed Award in the above matter. This serves as a reminder that there is to be no direct communication with the arbitrator(s). All communication shall be directed to the American Arbitration Association (the AAA).

A financial reconciliation has been conducted and each party will receive a separate financial accounting for this matter.

If a party has an outstanding balance, that party will receive an invoice/statement each month until the balance is paid. Invoice/statements will only reflect credits made as of the date of mailing. You may register, view your balance and make payments on our website at www.adr.org.

Note that the financial reconciliation reflects costs as they were incurred during the course of the proceeding. Any apportionment of these costs by the arbitrator, pursuant to the Rules, will be addressed in the award and will be stated as one party's obligation to reimburse the other party for costs incurred. Any outstanding balances the parties may have with the AAA for the costs incurred during the arbitration proceedings remain due and payable to the AAA even after the final award is issued, and regardless of the apportionment of these costs between the parties in the award.

In the normal course of our administration, the AAA may maintain certain documents in our electronic records system. Such electronic records are not routinely destroyed and do not constitute a complete case file.

We appreciate your selection of the AAA as your alternative dispute resolution provider in this matter. As always, please do not hesitate to contact me if you have any questions.

Sincerely,

/s/ Bryan A. Corbett

Bryan Corbett
Director of ADR Services
Direct Dial: (678)686-6010
Email: bryancorbett@adr.org

cc:    Robert O. Fleming, Jr., Esq.
        Clifford C. Brady, Esq.

        Richard D. Conner, Esq.
        C. Allen Gibson Jr., Esq.
        John T. Blankenship, Esq.

**American Arbitration Association**
**Construction Industry Arbitration Tribunal**

| | | |
|---|---|---|
| **Morcor Financial, LLC,** | ) | |
| **("Morcor"),** | ) | |
| Claimant, | ) | |
| | ) | |
| **v.** | ) | **AAA Case No.: 02-20-0010-8513** |
| | ) | **Before: (the "Panel")** |
| **Lucida Construction Company, LLC,** | ) | |
| **("Lucida"),** | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

## <u>Award</u>

The undersigned Arbitrators having been designated in accordance with the arbitration agreement entered into between the above-named parties, Morcor Financial, LLC ("Morcor", or "Claimant") and Lucida Construction Company, LLC ("Lucida" or "Respondent"), (together "Parties"), and dated November 27, 2018, and having being confirmed by the American Arbitration Association ("AAA") and having been approved by the Parties and having been sworn to hear the evidence and render an award, do hereby issue this Award addressing the claims and counterclaims of the Parties.  This matter is being administered under the Construction Industry Arbitration Rules as amended and in effect July 1, 2015.

**I.     <u>Parties and Counsel</u>**

   A.  Claimant

      1.  Claimant Morcor was represented by Lead Counsel:

         John Mastin, Esq.
         Smith Currie & Hancock, LLP
         245 Peachtree Center Avenue NE
         2700 Marquis 1 Tower
         Atlanta, GA 30303

B. Respondent

    1. Respondent Lucida was represented by Counsel:

        Clark R. Hammond, Esq.
        Wallace Jordan Ratliff & Brandt, LLC
        800 Shades Creek Parkway, Suite 800
        Birmingham, AL 35209

## II.    <u>Arbitrators</u>

A. The Panel for this case was comprised of:

    1. John T. Blankenship, Esq.
       2179 Edward Curd Lane
       Suite 100
       Franklin, TN 37067

    2. Richard Conner, Esq.
       Conner Gwyn Schenk, PLLC
       306 E. Market Street, Suite One
       Greensboro, NC  27401

    3. C. Allen Gibson Jr., Esq.
       PO Box 999
       Charleston, SC 29402

B. Mr. Blankenship served as chair.

## III.    <u>Proceedings</u>

A. The final hearing commenced remotely via the Zoom platform on April 26 and continued on consecutive days until concluding April 29, 2021, as scheduled.

B. During the preliminary stages, the Panel held periodic preliminary hearings/status conferences to establish procedural and scheduling protocols,[1] and addressed several motions filed the Parties.

C. In the final hearing, Morcor called two (2) fact witnesses and an expert witness.

---

[1] For example, Scheduling Order/Procedural Directive No. 3, which memorialized a preliminary hearing conducted on November 20, 2020, established that the Panel would issue a reasoned award in accordance with the parties' request.

      1.  Morcor's fact witnesses were McKay Morley (the Manager of Morcor) and Jason Guffey (the Project Manager).

      2.  Morcor's expert witness was Ryan Ott with Rogers & Willard general contractors.

D.  Lucida called one fact witness, Mike Addison (the CEO of Lucida).  Lucida did not call an expert witness.

E.  All witnesses were each separately duly sworn by the Panel prior to offering their testimony.

F.  The Parties elected to not have a court reporter. The hearings went smoothly albeit remotely, and counsel represented their respective Parties competently and professionally.

      1.  After the hearings concluded, counsel submitted summaries of their respective final damage claims,[2] post-hearing briefs and briefs for and against Morcor's request for an award of attorneys' fees.

      2.  Upon receipt of such submittals the Panel declared the hearings closed on June 3, 2021, but, with consent of the Parties, the closing date was extended to June 18, 2021, establishing an Award due date of July 19, 2021.

G.  During the proceedings in the arbitration and in preparation of the Award the Panel relied on Alabama Law, as provided for in the Contract.

IV.  **Project and Disputes**

A.  The disputes arose out of a contract dated as of November 27, 2018, between Claimant Morcor and Respondent Lucida whereby Lucida was to provide the design services and construction work on a charter school, Woodland Prep., in Washington County, Alabama

---

[2] Each party submitted a final "Claims Matrix" as requested by the Panel.

3

(the "Project").  Morcor and Lucida executed an *AIA Document A141- 2014 Standard Form of Agreement Between Owner and Design Builder* (the "Contract").[3]

B.  Under the Contract Morcor was identified as the Owner and Lucida was identified as the Design-Builder.  In the Contract the term "Owner" means the Owner or the Owner's authorized representative, Jason Guffey – Project Manager.  The term "Design-Builder" means the Design-Builder or the Design-Builder's authorized representative, Mike Addison.

C.  A Design Build Amendment to establish the Contract Sum, referenced in the Contract, was not executed between Morcor and Lucida.  However, throughout the hearing, both Parties referred to the Contract Sum as totaling $4,023,381.25 calculated as follows:

1.  Original Contract (Sitework Allowance and GMP Facility Construction) $3,911,573.00

2.  Total Change Orders (1 through 5) + $111,808.00

3.  Revised Contract Sum = $ 4,023,381.25.

D.  Morcor stated in its Pre-Hearing Brief that the unpaid Contract balance after Lucida Pay App 9 was $1,038,483.97.

E.  The Contract did not establish dates for submission of periodic applications of payment ("Pay Apps") by Lucida, but Lucida submitted at varying intervals a total of nine (9) Pay Apps during its work on the Project.   Morcor paid in full on a timely basis all Pay Apps that were submitted by Lucida.

F.  The Contract at Article 9.5.1 established liquidated damages of $500 per day for failure to achieve substantial completion on time.

---

[3] Exhibit No. M-001. [Morcor Exhibits will be referenced by the prefix "M", and Lucida Exhibits by the prefix "L."]

G.  Among its other provisions, the Contract at Article 13.2.2 sets out the grounds for termination for cause and the applicable damages recoverable as the result of a proper termination for cause.

H.  Morcor entered into a separate agreement with American Charter Development, LLC ("ACD") whereby Morcor was ACD's "Consultant/Owner's Rep." and was to perform all ACD's responsibilities.[4]

I.  The overall Project included design and construction of sitework (including 36 parking spaces) and vertical construction of two (2) one-story buildings on approximately 10.66 acres, consisting of:

   1.  an administrative building containing a lobby, offices, a break room, a reception area, restrooms, a cafeteria/gym, a kitchen, storage, a janitor closet, electrical room, a library, an IT room and a nurse's room (the "Administrative Building"); and

   2.  a classroom building containing classrooms, rest rooms, storage, electrical rooms, a teacher's lounge and offices (the "Classroom Building").

J.  At the time of the Contract Lucida was properly licensed as a general contractor under Alabama law.

K.  Morcor was not licensed as a general contractor under Alabama law.   Although Lucida presented this as a complete defense (voiding the Contract) in motions/briefing early and often (e.g., Lucida's motions for summary judgment and the initial affirmative defense asserted in its Prehearing Brief), there was a dearth of evidence presented on this issue/defense.

---

[4] Exhibit M-068.

L.  Lucida entered into a separate agreement for professional design services with Mussman Architects, Greenville, SC. [5]

M.  Lucida entered into various subcontracts and vendor agreements in performing Lucida's obligations under the Contract.

N.  July 15, 2019 was the original substantial completion date established in the Contract. The Project suffered delays, and the substantial completion date was extended 203 days to February 3, 2020, by Change Orders 1 through 5 to the Contract.

O.  On March 16, 2020, Jason Duffey furnished Mike Addison and the Morleys[6] with a construction schedule update along with photos in which Mr. Duffey pointed out that "he had visited the site, it was wet and muddy and raining, and in spite of the wet weather the crews are continuing to work to push ahead at every point they can." [7]

P.  On April 6, 2020, Mr. Guffey furnished an update for the Project along with photos, in which he noted among other things that the parking area was 100% to grade, that curb and gutter was 15% complete with the first run to be poured on Monday, and that the Admin and Classroom Buildings remained at varying stages of completion.[8]

   1.  That same morning, Mike Morley requested a detailed update on delays and an updated schedule.[9]

---

[5] Exhibit M-069
[6] Meaning/referring to McKay Morley, Manager of Morcor, and Mike Morley, Manager of ACD.
[7] Exhibit No. L-19.
[8] Exhibit L-21, pp. 2-6.
[9] *Id* at pp. 1-2.

    2. On or about May 15, 2020, Lucida furnished its "Completion Schedule Update."[10] The Update forecasted July 20, 2020, as the date for a Certificate of Occupancy for the Project.[11]

Q. On or about May 28, 2020, Morcor received Pay App 9 from Lucida in the amount of $1,135,822.37.[12]

    1. As with prior Pay Apps from Lucida, Pay App 9 included a Conditional Release of Lien ("CRL").  The CRL was signed under oath on April 30, 2020, by Mr. Addison, as President of Lucida.[13]

    2. In the CRL Mr. Addison expressly represented that "… [Lucida} shall, within ten days after receipt of payment [in the amount of $1,135,822.37], pay for all labor, materials, equipment or services furnished to the Project by [Lucida] through [04/30/2020]."[14]

R. On June 25, 2020, Morcor made its final payment to Lucida under Pay App 9 in the amount of $635,822.37.

    1. Earlier, on June 9, 2020, Morcor had advanced a $500,000.00 partial payment to Lucida under Pay App 9.

    2. Thus, as of June 25, 2020, Lucida had received full payment under Pay App 9 in the amount of $1,135,822,37.

---

[10] Exhibit L-27.
[11] *Id.*
[12] Exhibit M-15.
[13] *Id* at p. 4 of 319.
[14] *Id.*

S.   The record indicates the events leading up to payment of Pay App 9 as follows:

    1.   On June 5, 2020, Mr. Addison indicated to Mike Morley that Mr. Addison needed to get the Pay App 9 funded so that Lucida get all of the subs paid.[15]  Mr. Addison indicated that he had every one of them engaged and committed,[16]  and that he would meet with the subs immediately after payment with "checks in hand."[17]

    2.   In response, Mike Morley indicated that Morcor was committed to the project and getting it funded as quickly as possible.[18]

    3.   Mr. Addison responded that he was "tapped out" on the project; and that he had enormous pressures from the subs to get them paid.[19]

    4.   On June 5, 2020, Lorie Addison, Lucida's Treasurer, informed Wendy O'Keefe and Mr. Guffey, both of Morcor, that Ms. Addison had informed the subs today that they would receive payment on Monday.[20]

    5.   On June 9, 2020, Mike Morley informed Mr. Guffey that he (Mike Morley) was planning to send Mike Addison a half million dollars today to cover Mr. Addison's immediate needs with his subcontractors' out-of-pocket.[21]  Mike Morley went on to indicate that Mike Addison needs to perform.[22]

T.   Wire transfers from Morcor to Lucida were verified as follows: $500,000.00 on June 9, 2020;[23] and $635,822.37 on June 25, 2020.[24]

---

[15] Exhibit M-115, p. 2 of 2.
[16] *Id.*
[17] *Id.*
[18] *Id* pp. 1 of 2 and 2 of 2.
[19] *Id,* p. 1 of 2.
[20] Exhibit M-117.
[21] Exhibit M-119.
[22] *Id.8*
[23] Exhibit M-26.
[24] Exhibit M-27.

U. Mr. Addison was asked during the hearing while under cross examination by Morcor's counsel whether the money received by Lucida under Pay App 9 was used by Lucida to pay the subcontractors and suppliers.  Mr. Addison answered "No."  When asked further by Mr. Mastin whether Lucida still had the money that was paid, Mr. Addison answered "No."  Mr. Addison testified that he used the money paid by Morcor under Pay App 9 for Lucida's expenses on the Project.

V. On May 28, 2020, a hearing was held before the Alabama Public Charter School Commission (the "Commission") involving revocation of the charter contract for Woodland Prep.

   1. ACD appeared at the hearing through its attorney Chuck Dauphin.

   2. The transcript of the hearing does not indicate that either of the Parties in this arbitration were represented or offered testimony during the hearing. [25]

W. On June 8, 2020, ACD submitted its first draw request to Wendy Youngblood at Bank of OZK.[26]

X. June 8, 2020 – July 15, 2020, photos taken by Mr. Guffey illustrate site erosion washouts under curb and gutter.[27]

Y. On June 9, 2020, the Commission voted to revoke Woodland Prep's charter.[28] By order of the Circuit Court of Montgomery, Alabama dated March 3, 2021, the Commission's revocation was affirmed.[29]

---

[25] Exhibit L-31.
[26] Exhibits L-34 and L-35.
[27] Exhibit L-108.
[28] Exhibit L-43.
[29] Exhibit L-91.

Z.   Mike Addison testified that on June 11, 2020, he met with Mr. Guffey and McKay Morley and "they talked about reducing the Contract scope of work and a plan going forward to get the Classroom Building into a shell condition."

AA.  On June 22, 2020, Mike Morley, in the context of arranging access to the Project for Bank OZK's inspector, instructed Mr. Guffey to, "Please have Mike just show the Buildings and keep his mouth shut about any action going on between the authorizer in the school."[30]

BB.  On June 22, 2020, Jill Hanson with GLE Associates, Inc. inspected Project status and in her Inspection Field Report Number 1 dated June 23, 2020, informed Wendy Youngblood of Bank OZK that the Project was 77% complete, that a September 30, 2020 Project completion time frame was attainable, and recommended disbursement of $1,135,822.37 to fully fund Pay App 9.[31]

CC.  Salient events on and following the final payment of Pay App 9, June 25, 2020, were:

  1.   The same day, Mike Morley informed Mr. Guffey via email that "MorCor needs to send a demand to get this project completed or we need to terminate Mike For cause and not pay him another dime and find a local contractor to finish the site work and closing in the classroom building."[32]   In the email Mr. Morley instructed Mr. Guffey (cc to McKay Morley and Taft Morley) to advise him on "how we should proceed to protect our interests and to get this contractor either to perform equitably or to move him out of the way and mitigate the damages."[33]

  2.   Four days later, on June 29, 2020, Mr. Guffey informed Taft Morley, Mike Morley and McKay Morley via email that he (Mr. Guffey) had met with Mr. Addison.  Mr.

---

[30] Exhibit L-38; "Mike" meaning Mike Addison.
[31] Exhibit L-39.
[32] Exhibit M-122.
[33] *Id.*

Guffey indicated in the email that Mr. Addison informed him that Lucida's plan would be forthcoming no later than June 30.

DD.  By letter dated June 30, 2020, Mike Addison furnished Mr. Guffey with what Mr. Addison referred to in the letter as Lucida's "preliminary road map in order to get the project back in production and completed to the stage requested in our June 12, 2020 meeting," and Mr. Addison referenced conversations with Mr. Guffey occurring on June 26, 2020.  In the letter Mr. Addison also indicated his intent "to implement the following measures to get the project back in full operation (re-mobilization) and to the desired status (Administration Completed, Site Complete, Classroom Building 'dried in'.)"[34]

EE.  On June 30, McKay Morley indicated to Mr. Guffey via email his dissatisfaction with the plan received from Mr. Addison, characterizing it as "This is the worst recovery plan I have ever seen."[35]

FF.  On July 2, 2020, Mark Morley transmitted via email to Lucida's counsel, Mr. Hammond, and Mike Addison Morcor's Notice of Termination of the Contact. [36]

1.  In the Notice attached to the email, Mr. Morley recited that the termination was given pursuant to Section 13.2.2 the Contract, that the termination was for cause (citing "…repeated failure to supply contractors and/or workers to faithfully and expeditiously complete the Project within the committed contract time, and for Lucida's substantial breaches of the provision of the Construction Contract."). [37]

2.  In the Notice Morcor informed Lucida that: "It is the sincere desire of Morcor to simply have the Project completed pursuant to the Construction Contract.

---

[34] *Exhibit M-124.*
[35] Exhibit M-125.
[36] Exhibit M-126.
[37] *Id.*

Accordingly, in the event that Lucida desires to mitigate its potential damages associated with a termination for cause, you may contact me on or before **2:00 Eastern Time on July 10, 2020**…with a recovery schedule (including dates for the work to be completed) for the completion of the construction."[38]

GG.  On July 9, 2020, at 3:30 p.m., Mark Morley sent a follow up email to Mr. Hammond and Mr. Addison in which he stated, *inter alia,* that: "…it remains the desire of Morcor Financial, LLC ("Morcor") to have Lucida Construction Company, LLC ("Lucida") mitigate its damages and submit a recovery schedule to be reviewed by Morcor.  Morcor has no desire to seek reimbursement for any deficiency on the Project (as defined in the Notice) in the event of a cost increase, if another contractor is employed to complete the Project.  But, in the event that Lucida refuses to mitigate its damages, or does not submit an acceptable recovery plan, Morcor will have no choice but to employ a third party contractor and seek reimbursement for any cost increase from Lucida."[39]

HH.  On July 9, 2020, Lucida responded via email to the Notice, through Lucida's attorney, objecting to the validity of the termination as not in compliance with the terms of the Contract.  Lucida requested in the email, among other things, that Morcor withdraw its "defective termination notice."[40]  Lucida did not submit a recovery schedule.

II.  On July 14, 2020, Mr. Guffey of Morcor furnished to Corey Torres of Bauma Construction ("Bauma") via email a scope of work to finish the Project.  The scope of work included in the email specified finishing all site work, completing the Administration Building and a dry-in of the Classroom Building.  In the email Mr. Guffey stated among other things, "If

---

[38] *Id.*
[39] Exhibit M-127.
[40] Exhibit M-128.

you are interested, let me know and I will schedule to meet you on site so we can tour the facility to finalize the scope."[41]

JJ.   On July 22, 2020, Lucida transmitted a letter via email stating that the "letter shall serve as our official notice of rejection for your stated Termination of Contract (for Cause) … as well as our official Notice of Termination to Owner for breach of contract."[42]

KK.   On August 7, 2020, a Petition Seeking Reversal of Commission's Order Revoking the School's Charter was filed by ACD and others in the Circuit Court of Montgomery County, Alabama.[43]

LL.   On August 14, 2020, Bauma submitted to Taft Morley Bauma's proposal to complete the Project in approximately five (5) months, commencing on September 7, 2020, and reaching substantial completion of Bauma's work by approximately January 31, 2021. [44]

   1.   The scope of work in Bauma's proposal was completion of site work, completion of the Administration Building and completion of the Classroom Building to a "Cold Dark Shell".[45]

   2.   Also, in its submission to Mr. Morley, Bauma proposed to perform its scope of work on a Cost-Plus basis.  Bauma proposed to be paid the direct costs of the work as defined in ConsensusDocs 235, staff travel cost of $33,170.00 monthly, general conditions of $18,471.00 monthly, overhead of $15,000.00 monthly and profit of $25,000.00 monthly.

   3.   Bauma's proposal was based on list of "Assumptions and Qualifications."[46]

---

[41] Exhibit L-45.
[42] Exhibit L-62.
[43] Exhibit L-75.
[44] Exhibit L-76.
[45] *Id.*
[46] *Id.*

4.   An Agreement was executed between Morcor and Bauma as of August 21, 2020 (the "Bauma Agreement"),[47] which was consistent in contract form, scope of work and pricing as contained in Bauma's earlier proposal.

MM.   On August 27, 2020, Joe Durfee informed Mr. Guffey via email that "we [Bauma] see the total cost to complete to be approximately $2mm (that would put our total OH&P between 8-10% depending on a 4 or 5 month duration)."[48]

NN.   On September 14, 2020, Mr. Guffey informed McKay and Taft Morley, and others that, "With Hurricane Sally was "charging at the project, I wanted to confirm that we have hurricane protection on our Woodlands Project in Chatom, AL."[49]

OO.   By letter dated January 14, 2021 to Mr. Guffey, Joe Durfee of Bauma estimated the amount of $204,726.00 for restoring the Project site and removal/replacement of damaged curb and gutter following significant rain events.[50]  Bauma performed the work and invoiced Morcor during November 2020 through March, 2021 under Bauma's Pay Apps 1 – 4 totaling during $235,903.00.[51]

PP.   Under cover letter dated February 3, 2021, Ryan Ott of Rogers & Willard furnished to Morcor's attorney, John Mastin, Mr. Ott's budget pricing in the amount of $3,066,020.00 as being the cost to complete the entire Project per design documents prepared by Mussman Architects dated March 1, 2019.[52]

---

[47] Exhibit M-154.
[48] Exhibit L-81.
[49] Exhibit L-84. By "protection" Mr. Guffey was referring to insurance coverage.
[50] Exhibit L-89.
[51] Exhibits M-156-159.
[52] Exhibit M-29.

1. Under the same letter Mr. Ott furnished an alternate price in the amount of $1,886,705.00 to complete the Project with partial completion of the Classroom Building.[53]

2. Mr. Ott presented and explained his budget pricing during his expert testimony at the hearing on April 28, 2021.   While testifying, Mr. Ott stated that the alternate price included completion of site work, completion of the Administrative Building and complete of the Classroom Building to a "cold dark shell" exclusive of HVAC and upfit.  Mr. Ott pointed out during his testimony that costs for materials and labor had increased since February 3, 2021, the date of his budget pricing.  Further, Mr. Ott testified that his employer Rogers & Willard would not undertake the Project due to difficulty getting vendors and subcontractors and due to neighborhood opposition to the school.

QQ.  By its final judgment filed on March 3, 2021, the Circuit Court affirmed the Commission's order revoking the school's charter.[54]

RR.  On April 2, 2021, Morcor conveyed the amount of $206,191.04 to Bauma via wire transfer.[55]

SS.  The record indicates that on or about July 22, 2020, approximately one (1) month after receiving payment of Pay App 9, Lucida sent a Notice "To All Subcontractors"   as their "…official notification of our Termination of the Contract with the Owner on the…" Woodland Prep Charter School Project.[56]  In the letter Lucida informed the subcontractors,

---

[53] *Id.*
[54] *Supra,* note 26.
[55] Exhibit M-160.
[56] Exhibit M-135.

*inter alia*, that it had "relayed" to the Owner that it wanted to meet with each sub and pay each their current amount due through the end of April.[57]

TT.   The record indicates that from July 16, 2020, through September 21, 2020, Morcor received Mechanics and Materialmen's liens from five (5) subcontractors totaling approximately $342,589.44.[58]

   1.   Additionally, the record indicates that Lucida's subcontractor, Lower Alabama Heating Cooling and Refrigeration, LLC, is seeking an additional $28,201.65 from Morcor and ACD (the amount prayed for in its Cross-Claim against Morcor and ACD of $144,928.40, less the amount of the lien of its supplier, Mingledorff, Inc.'s in the amount of $116,726.75).[59]

   2.   Thus, Morcor has been exposed to potential liability of at least $370,791.09 from downstream subcontractors and/or suppliers of Lucida.[60]

## V.   Contentions/Claims of the Parties

   A.   <u>Morcor Claims</u>.  According to its post-hearing submittal dated May 24, 2021 summarizing damages, Morcor seeks an award of $3,119,581.90 for completion costs, refund of certain payments made to Lucida, liquidated damages, attorneys' fees, costs and expenses and interest.

   B.   <u>Lucida Claims</u>.  Lucida asserts affirmative defenses to Morcor's claims, seeks an award that the termination of Lucida for cause was improper, and, according to is post-hearing

---

[57] *Id.*

[58] Exhibits M-54-65.

[59] *See,* Exhibits M-63, 64, and 66.

[60] It is assumed that the lien amount claimed by Mingledorff is subsumed in the total amount sued for by Lower Alabama.

submittal dated April 25, 2021 summarizing damages, Lucida seeks counterclaim damages of $632,316.63,[61] including interest.

VI.    **Panel Findings and Reasons for the Award**

The following paragraphs summarize the Panel's findings and its reasons for this Award:

A.   **Termination**

1.   The panel finds that substantial completion was not achieved by February 3, 2020. There was no change order extending the Contract substantial completion date beyond February 3, 2020.

2.   During March, April, May and into June 2020 (the "Time Period"), Lucida's completion was further delayed. The evidence at the hearing conflicted as to the causes of such delay. The panel finds that unanticipated wet weather and a failure by Lucida to prosecute and/or expedite the work combined to cause the delays. The record indicates and the Panel finds that during the Time Period, Morcor and Lucida continued working together in an effort to overcome delays, and to mitigate damages.

3.   Neither Morcor nor Lucida offered independent expert analysis of critical path delays during the Time Period or otherwise. The lack of such expert analysis notwithstanding, the Panel finds that during the Time Period:

      a.   Lucida did not expeditiously prosecute the work as it should have;

      b.   Morcor did not threaten or assess LD's;

      c.   Lucida did not request an extension of the substantial completion date;

      d.   the substantial completion date of February 3, 2020 was not extended due to weather conditions or for other reasons;

      e.   Lucida did not request payment for additional compensation for delays or extra work;

      f.   Lucida did not submit separate Pay Apps for periods ending in January, February or March 2020, but instead submitted only one (1) Pay App, No. 9 (dated 05/28/2020) for the period January through April 30, 2020;

      g.   Lucida waited until 5/28/2020 to submit Pay App No. 9, and this inexplicable delay in applying for payment caused a delay and/or failure in

---

[61] Lucida final Claims Matrix received May 24, 2021.

payments by Lucida to subcontractors who had performed work during the Time Period;

h.  such delay and/or failure in payments to subcontractors caused or contributed to controversy between Lucida and its subcontractors whereby some subcontractors would not continue performance pending payment in full; and

i.  as an experienced general contractor Lucida should have anticipated that a delay in billing to Morcor would, at a minimum, delay Lucida's payments to subcontractors, and such delayed payment to subcontractors would interfere with Lucida's obligation and ability to expedite the work.

4.  The Panel finds that in early June 2020 Project circumstances were materially altered when on June 9, 2020, the Commission revoked the school's charter.

5.  The Panel finds that during the Time Period, at least up until June 9, 2020, Morcor and Lucida intended that the Project be fully completed according to the Contract.

6.  The Panel finds that immediately after June 9, 2020:

a.  Morcor took steps to mitigate damages to Morcor that could arise from the revocation;

b.  Morcor decided to reduce the Contract scope of work pertaining to the Classroom Building;

c.  Morcor paid Lucida in full for Pay App 9;

d.  Morcor endeavored for approximately two (2) weeks to work with Lucida to implement a reduction in scope and expedite the work;

e.  on June 30, 2020, Morcor lost trust and confidence in Lucida's ability to expedite the work, and that by said date Lucida, without just cause, had abandoned the work; and

f.  Lucida had failed to pay, contrary to its sworn representations, its subcontractors for non-defective work, despite being paid by Morcor for said work[62]

g.  Accordingly, the Panel finds that Morcor had more than sufficient grounds to terminate Lucida for cause.

---

[62] Exhibits M-122-124.

7.  The Panel finds that the terms of Morcor's Notice of Termination of the Contract dated July 2, 2020[63] substantially complies with the requirements of Article 13.2.2 of the Contract in all material respects.[64]

    a.  Lucida was given effectively eight (8) days to provide a plan to cure its default under the Notice, and within said period, Morcor, under no contractual requirement or mandate to do so, urged Lucida to complete the work and avoid the possibility of deficiency damages.[65]

    b.  Lucida made no effort whatsoever to respond in any reasonable manner to the opportunity to cure ("mitigate") afforded it.

    c.  Accordingly, Lucida's complaint that it was not given the contractually mandated seven (7) days notice and opportunity to cure, and its attendant affirmative defense, ring hollow.

    d.  Under these circumstances, the Panel finds that Morcor properly terminated Lucida for cause and Morcor is entitled to monetary compensation from Lucida.

8.  The Panel finds that, the Contract having been properly terminated for cause, Lucida is not entitled to further payment, and finds that Lucida's counterclaim damages are, therefore, denied in full.

9.  The Panel finds that Lucida, despite making it the battle cry in its defense of this case until the final hearing, failed to carry its burden of proof in the final hearing to establish Morcor's lack of standing and inability to recover any damages due to it being an unlicensed contractor in the state of Alabama.

10. The Panel finds that Morcor did not carry its burden of proof to establish that delays caused **solely** by Lucida during the Time Period were critical to Project completion (on

---

[63] *Supra,* note 32.

[64] The evidence was irrefutable that Lucida failed to pay subcontractors for whom it had been paid by Morcor, which resulted in liens and lawsuits that Morcor was compelled to defend.  Accordingly, though not specifically stated in the Notice of Termination, the Panel finds that said failure was, in part, the cause for its "…repeated failure to supply contractors and/or workers to faithfully and expeditiously complete the Project within the committed contract time, and, moreover, would fall within, "…Lucida's substantial breaches of the provision of the Construction Contract" as stated in the Notice.

[65] *Supra,* note 34.

the critical path), and, therefore, finds that Morcor is not entitled to liquidated damages as claimed by Morcor.

11. Having elected to terminate Lucida for cause, Morcor's recovery against Lucida is governed by Article 13.2.2.4 of the Contract.

B. **Attorney's Fees**

1. The Panel finds that Morcor's argument that the indemnity provisions 3.1.14 authorizes a fee award is not well taken and is, therefore, denied except for fees incurred in defending claims brought by third parties namely, the lien claims, and lawsuits referenced herein pursuant to Section 3.1.16.4 of the Contract. Likewise, any reliance by Morcor on Alabama Code §8-29-6 is not well taken as Morcor is not a qualifying claimant/payee under said statute. Accordingly, the Panel finds that Morcor is entitled to receive the sum of $144,132.16 for fees, costs and expenses reasonably and necessarily incurred in defending said third party claims, consisting of $59,609.68 billed to Morcor by the Brady Radcliff & Brown LLP firm ("BRB") and $84,522.48 billed to Morcor by the Smith, Currie & Hancock LLP firm ("SCH"). The Panel examined in detail the contents of Morcor's request for attorneys' fees, including a detailed review and analysis of every attorneys' fee invoice. It was determined that all of BRB's work related to defending third party claims. SCH's invoices often included more than one activity in each time entry, some being related to third party claims and others to work associated with the arbitration proceeding. Since these combined/grouped time entries were not broken out between activities, the Panel's calculation of the fees of SCH that are recoverable was based on the Panel's collaborative efforts to reasonably determine what amount of time was related to the third-party claims. Once this analysis was completed, the Panel extrapolated the requisite fee amounts accordingly. The fees of Rogers & Willard, Inc., Morcor's expert for the arbitration proceeding, are not recoverable under the Contract and are, therefore, denied.

C. **Damage Award to Morcor**

1. The contractual starting point for determining the damages or compensation for Morcor is the costs of finishing the Work and other damages incurred by Morcor and not

expressly waived, as required under Article 13.2.2.4.   The problem is that Morcor introduced no evidence of actual costs to finish the original scope of work.

2.   However, it would be wholly inequitable to deny any compensation to Morcor for its proper termination of the Contract due to Lucida's myriad substantial breaches of same. Therefore, the Panel develops an equitable remedy pursuant to the AAA Rules. Specifically, Rule R-48 (a) of the Construction Industry Rules of the AAA states, "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, **equitable relief** and specific performance of a contract." (emphasis supplied).

3.   Our analysis of an equitable remedy starts with considering Morcor's evidence of the potential costs of finishing the project.  The sole evidence of the potential costs is that submitted by Mr. Ott in his budget estimate on behalf of Morcor.  The Panel finds that Mr. Ott's alternate price is based on partial completion of the Classroom Building.  The Panel finds that Mr. Ott's alternate price in the amount of $1,886,705.00 is based on a detailed analysis performed by a qualified and experienced expert construction cost estimator, that it substantially satisfies and establishes in all material respects the Owner's "…costs of finishing the Work…" in accordance with §13.2.2.4 of the Contract, and that it is, therefore, properly considered by the Panel as evidence in determining the costs to finish. Additionally, the Panel takes notice that Lucida offered no appreciable evidence to contradict Mr. Ott's expert opinions and alternate price.

4.   The Panel finds that the unpaid balance of the Contract is $1,038,483.00.  The Panel finds that the costs to finish the Work (as that term is used in the Contract) is $1,886,705.00.  The Panel finds that "other damages incurred by the Owner" (Morcor) "and not expressly waived…" are $187,681.00 comprised of the amounts unpaid by Lucida to Bagby & Russell and Lower Alabama.   The damages calculation is as follows:

| | |
|---|---|
| Costs to finish the Work: | $1,886,705.00 |
| Other damages: | $   187,681.00 |
| | |
| Sub-Total | $ 2,074,386.00 |
| Unpaid balance of the Contract: | ($1,038,483.00) |
| | |
| **Total:** | **$ 1,035,903.00** |

The Sub-Total exceeds the unpaid balance of the Contract by the amount of $1,035,903.00—the "Total." Therefore, under Article 13.2.2.4 of the Contract, $1,035,903.00 shall be paid by Lucida to Morcor.

D. **Prejudgment Interest**

1. Morcor is entitled to recover from Lucida Pre-Award Interest in the amount of $42,363.37. This is calculated as follows:

   a. the net cost to complete is $848,222.00 ($1,886,705.00 less $1,038,483.00) which was determined as of February 12, 2021 - the date of the Rogers and Willard estimate;

   b. February 12 – July 19 is 157 days;

   c. $848,222.00 x 0.075[66] divided by 365 = $174.29/day x 157 = $27,363.53;

   d. the unpaid subcontractors amount of $187,681.00 accrued as of June 25, 2020;

   e. June 25, 2020 – July 19 is 389 days;

   f. $187,681.00 x 0.075 divided by 365 = $38.56/day x 389 = $14,999.84.[67]

E. **Arbitration Costs**

The Panel determines that the administrative fees and expenses of the American Arbitration Association totaling $25,900.00 should be borne AS INCURRED, and the compensation and expenses of the Panel totaling $120,240.50 should be borne EQUALLY, provided, however, that Morcor should remit $24,140.50, representing the overage of Panel compensation and expenses (amount of final Panel invoices in excess of the amount on deposit with AAA) in accordance with its prior agreement to advance said

---

[66] The 0.075 is equivalent to 7.5% interest per annum per Ala. Code Section 8-8-10.
[67] *Id.*

Panel fees.  Therefore, Lucida should reimburse Morcor the sum of $53,295.25, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Morcor, upon demonstration by Morcor that these incurred costs have been paid.

F. **<u>Award</u>**

Accordingly, the Panel Awards as follows:

1. Lucida shall pay to Morcor on its claims, the sum of ONE MILLION THIRTY-FIVE THOUSAND NINE HUNDRED THREE DOLLARS AND NO CENTS ($1,035,903.00), on or before August 19, 2021;

2. Lucida shall pay Morcor prejudgment interest in the amount of FORTY-TWO THOUSAND THREE HUNDRED SIXTY-THREE DOLLARS AND THIRTY-SEVEN CENTS ($42,363.37), on or before August 19, 2021;

3. Lucida shall pay Morcor attorney's fees in the amount of ONE HUNDRED FORTY-FOUR THOUSAND ONE HUNDRED THIRTY-TWO DOLLARS AND SIXTEEN CENTS ($144,132.16), on or before August 19, 2021;

4. The Panel determines that the administrative fees and expenses of the American Arbitration Association totaling $25,900.00 shall be borne AS INCURRED, and the compensation and expenses of the Panel totaling $120,240.50 shall be borne EQUALLY, provided, however, that Morcor shall remit $24,140.50, representing the overage of Panel compensation and expenses (amount of final Panel invoices in excess of the amount on deposit with AAA) in accordance with its prior agreement to advance said Panel fees.  Therefore, Lucida shall reimburse Morcor the sum of $53,295.25, representing that portion of said fees and expenses in excess of the apportioned costs

previously incurred by Morcor, upon demonstration by Morcor that these incurred costs have been paid.

5. In the event that all or any of the sums specified in the above paragraphs of this Award are not paid as provided herein, the unpaid sums shall bear interest from August 19, 2021, at the statutory rate on judgments in Alabama of 7.5% per annum until paid; and

6. This Award is in full settlement of all claims and counterclaims submitted to this arbitration. All claims and counterclaims not expressly granted herein are denied.

This Award may be executed in counterparts by either an original, electronic, facsimile, or scanned pdf signature, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.

July 18, 2021
_____
Date                                John T. Blankenship, Panel Chair


_____           _____
Date                                Richard Conner, Panel Member


_____           _____
Date                                C. Allen Gibson Jr., Panel Member

_____                 _____
Date                                     John T. Blankenship, Panel Chair


_July 19, 2021_                          _Richard Conner_
_____                 _____
Date                                     Richard Conner, Panel Member


_July 19, 2021_                          _C. Allen Gibson Jr._
_____                 _____
Date                                     C. Allen Gibson Jr., Panel Member

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MORCOR FINANCIAL, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 21-00370-KD-B** |
| | ) | |
| **LUCIDA CONSTRUCTION** | ) | |
| **COMPANY, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### <u>JUDGMENT</u>

In accordance with the Order entered this date, granting the petition to confirm arbitration

award and motion for default judgment (docs. 1, 10), it is ORDERED, ADJUDGED and

DECREED that the Award issued by the Arbitration Panel of the American Arbitration

Association, dated July 19, 2021 (doc. 1-3) is CONFIRMED and JUDGMENT is entered in

favor of Plaintiff Morcor Financial LLC and against Defendant Lucida Construction Company

LLC, as follows:

> 1. Lucida shall pay to Morcor on its claims, the sum of ONE MILLION THIRTY-
> FIVE THOUSAND NINE HUNDRED THREE DOLLARS AND NO CENTS
> ($1,035,903.00), on or before August 19, 2021;

> 2. Lucida shall pay Morcor prejudgment interest in the amount of FORTY-TWO
> THOUSAND THREE HUNDRED SIXTY-THREE DOLLARS AND
> THIRTYSEVEN CENTS ($42,363.37), on or before August 19, 2021;

> 3. Lucida shall pay Morcor attorney's fees in the amount of ONE HUNDRED
> FORTYFOUR THOUSAND ONE HUNDRED THIRTY-TWO DOLLARS AND
> SIXTEEN CENTS ($144,132.16), on or before August 19, 2021;

> 4. The Panel determines that the administrative fees and expenses of the
> American Arbitration Association totaling $25,900.00 shall be borne AS
> INCURRED, and the compensation and expenses of the Panel totaling

$120,240.50 shall be borne EQUALLY, provided, however, that Morcor shall remit $24,140.50, representing the overage of Panel compensation and expenses (amount of final Panel invoices in excess of the amount on deposit with AAA) in accordance with its prior agreement to advance said Panel fees. Therefore, Lucida shall reimburse Morcor the sum of $53,295.25, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Morcor, upon demonstration by Morcor that these incurred costs have been paid.

5. In the event that all or any of the sums specified in the above paragraphs of this Award are not paid as provided herein, the unpaid sums shall bear interest from August 19, 2021, at the statutory rate on judgments in Alabama of 7.5% per annum until paid.

**DONE** and **ORDERED** this 17th day of December 2021.


<u>/s / Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

Eric P. Lee (4870)
Matt J. Pugh (16139)
HOGGAN LEE HUTCHINSON
1225 Deer Valley Drive, Suite 201
Park City, Utah 84060
Telephone: (435) 615-2264
eric@hlhparkcity.com
mpugh@hlhparkcity.com

*Attorneys for Plaintiff American Charter Development, LLC*

---

### IN THE FOURTH JUDICIAL DISTRICT COURT FOR UTAH COUNTY
### STATE OF UTAH

| | |
|---|---|
| AMERICAN CHARTER DEVELOPMENT, LLC, | **COMPLAINT** |
| Plaintiff, | Case No. 210401539 |
| vs. | Judge Sean Petersen |
| MORCOR FINANCIAL, LLC, | Tier 3 |
| Defendant. | |

Plaintiff American Charter Development, LLC complains of Defendant Morcor Financial, LLC as follows:

### PARTIES

1.  Plaintiff American Charter Development, LLC ("ACD") is an Arizona limited liability company authorized to conduct business in Utah.

2.  Defendant Morcor Financial, LLC ("Morcor") is a Utah limited liability company with its principal place of business in Springville, Utah.

## JURISDICTION AND VENUE

3.   The Court has jurisdiction over this dispute pursuant to Utah Code Section 78A-5-102(2).

4.   Venue is proper in this Court under Utah Code Sections 78B-3-304(2), 78B-3-305, and 78B-3-307(2).

## GENERAL ALLEGATIONS

5.   ACD is in the business of financing and developing charter schools across the country.

6.   Washington County Students First ("WCSF") received a charter from the Alabama Charter Public School Commission to open a charter school.

7.   ACD agreed to develop the facilities in Chantom, Alabama in which WCSF would operate a charter school named Woodland Prep.

8.   ACD hired Morcor as the owner's representative for the construction of the Woodland Prep facilities (the "Project") under the terms of a contract dated January 16, 2019 (the "Owner's Rep Contract"). A copy of the Contract is attached to this Complaint as **Exhibit A**.

9.   The Project included an academic building with classrooms, an administrative building, and all parking and related improvements necessary for the operation of the school.

10. As ACD's representative on the Project, Morcor was responsible for coordinating the construction work and working with the design-builder to ensure that the Project was completed in a professional, timely, and workmanlike manner.

11. Under the Contract, ACD agreed to pay Morcor eight percent (8%) of the total cost of the work on the Project.

12. Consistent with its duties under the Contract, Morcor hired Lucida Construction Company, LLC ("Lucida") as the design-builder for the Project, executing a written agreement

2

(the "Design-Build Contract") under which Lucida was to provide design and construction services related to the Project.

13. The original contract sum for the Design-Build Contract was $3,911,573. During the course of construction, Morcor and Lucida executed change orders bringing the contract sum to $4,023,381.25.

***Morcor's Failure to Manage and Coordinate the Work on the Project.***

14. The Owner's Rep Contract required Morcor to manage Lucida's work on the Project, including advising ACD as to the work that had been completed and was ready for payment and coordinating those payments from ACD to ensure Lucida paid the proper parties for their work on the Project.

15. As ACD's representative on the Project, Morcor was responsible for relaying communications between relevant parties, handling some of the financial transactions, and performing other administrative and professional services on behalf of ACD.

16. For example, Morcor was responsible for reviewing Lucida's pay applications, verifying their accuracy, and submitting those applications to ACD with directions regarding payment.

17. Morcor failed to verify that the work listed on the pay applications had been satisfactorily completed by the responsible parties and was ready for payment prior to requesting payment from ACD.

18. Morcor also failed to verify that the materials listed on the pay applications had been supplied to the Project and required immediate payment prior to advising ACD to submit payment for such items.

19. Morcor also failed to ensure Lucida secured lien releases from subcontractors and material suppliers before releasing payments to Lucida.

20. Morcor's failure to properly verify and coordinate payments for work on the Project resulted in Lucida receiving payments for work which was not completed and Lucida failing to pay its subcontractors and suppliers.

21. Five of the subcontractors and material suppliers on the Project filed liens totaling approximately $342,589.44. Other subcontractors made demands for payment and stopped work because Lucida did not pay them even though Lucida had already received payment from ACD.

22. Lucida abandoned the Project as a result of Morcor's failure to properly manage the Project and coordinate payments.

23. ACD incurred substantial costs to stabilize and secure the Project site as a direct result of Lucida abandoning the unfinished Project.

24. ACD's bank halted funding of the Project due to Morcor's failure to properly manage the construction process and the filing of liens against the property.

25. ACD was forced to find alternative funding for the Project at great time and expense.

26. ACD was forced to re-bid the Project and find a new contractor to complete construction. In the time period since the Project was originally bid, both labor and materials prices increased substantially. The costs for completing the Project were much higher due to the failures of Morcor and the resulting delays.

*Morcor's Failure to Timely Complete the Project for Occupation.*

27. The Owner's Rep Contract required Morcor to develop and submit for ACD's approval a schedule for the construction of the Project consistent with the commencement and substantial completion dates set forth in the Owner's Rep Contract and in accordance with other agreements.

28. The Owner's Rep Contract set February 4, 2019 as the date for commencement of work on the Project, and a substantial completion date of July 15, 2019.

29. On July 2, 2020, Morcor terminated its contract with Lucida because the Project still had not reached substantial completion and Lucida failed to develop a plan to cure its defaults and get the Project back on track.

30. The work on the Project was not timely completed and Morcor was forced to bring in other contractors to complete the work that should have been completed by Lucida.

31. WCSF had agreed to lease the facility from ACD for a period of twenty years but refused to proceed with the lease because Morcor failed to ensure Lucida completed the Project on time and delays caused WCSF to lose its state charter authorization.

32. ACD has been unable to find another tenant to lease the Project at the rate agreed to by WCSF.

33. ACD suffered lost revenue in the form of lease payments from WCSF and may suffer additional future losses if a suitable tenant cannot be found to lease the facility at the price previously agreed to by WCSF.

34. Morcor could not resolve its dispute with Lucida and the dispute between the parties was forced to proceed to arbitration.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

35. ACD incorporates by reference all preceding allegations.

36. ACD fully performed all of its obligations under the Owner's Rep Contract and otherwise satisfied any conditions precedent to Morcor's performance.

37. Morcor breached its obligations under the Owner's Rep Contract by:

a) failing to properly supervise and coordinate construction of the Project in a manner consistent with standards of care for owner's representatives on similar projects;

b) failing to control Project costs and the quality of Lucida's work in a manner consistent with standards of care for owner's representatives on similar projects;

c) failing to ensure Project completion by Lucida on the required schedule;

d) failing to properly manage the payment of Project costs, including failing to take industry standard steps necessary to ensure subcontractors were paid with the funds disbursed to Lucida for that purpose;

e) failing to manage Lucida and the Project in a manner consistent with standards of care for owner's representatives on similar projects; and

f) acting and failing to act in the manner described in greater detail in the general allegations set forth above.

38. As a direct and proximate result of Morcor's breaches, ACD has suffered damages and losses in an amount to be proven at trial, which amount exceeds $300,000.

**SECOND CLAIM FOR RELIEF**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

39. ACD incorporates by reference all preceding allegations.

40. Morcor owed ACD a duty of good faith and fair dealing.

41. Morcor breached its duty of good faith and fair dealing by its acts and omissions described in greater detail in the allegations set forth above, which deprived ACD of its right to receive some of the benefits of the Owner's Rep Contract.

42. Morcor breached its duty of good faith and fair dealing by its acts and omissions described in greater detail in the allegations set forth above, which acts and omissions were inconsistent with the purposes of the Owner's Rep Contract.

43. Morcor breached its duty of good faith and fair dealing by its acts and omissions described in greater detail in the allegations set forth above, which acts and omissions were inconsistent with ACD's justified expectations.

44. As a direct and proximate cause of Morcor's breaches of the duty of good faith and fair dealing, ACD has suffered damages and losses in an amount to be proven at trial, which amount exceeds $300,000.

**THIRD CLAIM FOR RELIEF**
**(Breach of Fiduciary Duties)**

45. ACD incorporates by reference all preceding allegations.

46. A principal-agent relationship existed between ACD as the owner of the Project and Morcor as the owner's representative in connection with the Project.

47. Morcor acted as ACD's agent in selecting and hiring Lucida, supervising and managing Lucida's work, entering into a contract with Lucida for the design and construction of the Project

and fulfilling all obligations under that contract, appropriating and handling ACD's funds, informing Lucida and others as to the relationship between the relevant parties involved in the Project, ensuring that it was properly licensed in the state of Alabama and that the Project was compliant with all other laws and regulations, communicating with Lucida and others on the Project, keeping ACD apprised of progress on the Project, resolving its conflict with Lucida, and performing other administrative and professional services as an agent of ACD related to the Project.

48. Morcor had a fiduciary duty to act loyally for ACD's benefit in all matters connected to the agency relationship that existed between the parties. These fiduciary duties are independent of and in addition to the duties owed by Morcor to ACD under the Owner's Rep Contract.

49. Morcor breached its fiduciary duties owed to ACD by not acting only for the benefit of ACD and failing to exercise prudence and skill in managing the Project and performing related professional services.

50. As a direct and proximate cause of Morcor's breaches of its fiduciary duties owed to ACD, ACD has suffered damages and losses in an amount to be proven at trial, which amount exceeds $300,000.

WHEREFORE, ACD asks that judgment be entered against Morcor as follows:

A.  On the first claim for relief, ACD requests that the Court enter a monetary award in favor of ACD and against Morcor that includes the following amounts that were directly or proximately caused by Morcor's breach of the Owner's Rep Contract:

    a. $248,215.92 to ACD for resolution of all subcontractor and material supplier claims, whether asserted by lien or otherwise, together with interest and attorneys' fees related to these claims;

    b. $307,354 in Project costs and expenses to secure and stabilize the site once Lucida abandoned the Project;

    c. $2,027,308 estimated increased costs to complete the Project;

    d. $45,000 estimated increased financing costs;

    e. $385,000 due to loss of the developer fee caused by the delay in completion and problems with the Project;

    f. lost lease revenue over the 20-year lease term previously agreed to by WCSF in an amount to be determined at trial;

    g. $125,553.58 in attorneys' fees to respond to third-party claims against ACD and the attorneys' fees incurred in this action; and

    h. interest on the above-stated amounts to the extent recoverable by law.

B. On the second claim for relief, ACD requests that the Court enter a monetary award in favor of ACD and against Morcor that includes the following amounts that were directly or proximately caused by Morcor's breach of the implied covenant of good faith and fair dealing:

    a. $248,215.92 to ACD for resolution of all subcontractor and material supplier claims, whether asserted by lien or otherwise, together with interest and attorneys' fees related to these claims;

    b. $307,354 in Project costs and expenses to secure and stabilize the site once Lucida abandoned the Project;

    c.  $2,027,308 estimated increased Project costs to complete the Project;

    d.  $45,000 estimated increased financing costs;

    e.  $385,000 due to loss of the developer fee caused by the delay in completion and problems with the Project;

    f.  lost lease revenue over the 20-year lease term previously agreed to by WCSF in an amount to be determined at trial;

    g.  $125,553.58 in attorneys' fees to respond to third-party claims against ACD and the attorneys' fees incurred in this action; and

    h.  interest on the above-stated amounts to the extend recoverable by law.

C.  On the third claim for relief, ACD requests that the Court enter a monetary award in favor of ACD and against Morcor that includes the following amounts that were directly or proximately caused by Morcor's breach of its fiduciary duties owed to ACD:

    a.  $248,215.92 to ACD for resolution of all subcontractor and material supplier claims, whether asserted by lien or otherwise, together with interest and attorneys' fees related to these claims;

    b.  $307,354 in Project costs and expenses to secure and stabilize the site once Lucida abandoned the Project;

    c.  $2,027,308 estimated increased Project costs to complete the Project;

    d.  $45,000 estimated increased financing costs;

    e.  $385,000 due to loss of the developer fee caused by the delay in completion and problems with the Project;

      f.   lost lease revenue over the 20-year lease term previously agreed to by WCSF

          in an amount to be determined at trial;

      g.  $125,553.58 in attorneys' fees to respond to third-party claims against ACD

          and the attorneys' fees incurred in this action; and

      h.  interest on the above-stated amounts to the extent recoverable by law.

D.  On all claims for relief, ACD seeks an award of its attorneys' fees and costs incurred in this action to the extent permitted by law.

E.  ACD requests such other relief as the Court deems appropriate in the circumstances.

DATED this 10th day of November 2021.

HOGGAN LEE HUTCHINSON


_____*/s/ Eric P. Lee*_____
Eric P. Lee
Matt J. Pugh

*Attorneys for Plaintiff American Charter Development, LLC*

JS 44 (Rev. 08/18)    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

THE CINCINNATI CASUALTY COMPANY

**DEFENDANTS**

MORCOR FINANCIAL, LLC; AMERICAN CHARTER DEVELOPMENT, LLC, and LUCIDA CONSTRUCTION CO., LLC

**(b)** County of Residence of First Listed Plaintiff    Fairfield, Ohio
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Utah County, Utah
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Brandon Clapp and Lane Finch, Swift Currie McGhee & Hiers, LLP
2 North 20th Street, Ste. 1405 Birmingham, AL 35203 (205) 314-2406

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*    Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☒ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. § 2201 and 28 U.S.C. §1332

Brief description of cause:
CCC seeks a declaration of coverage with respect to two underlying actions.

**VII. REQUESTED IN COMPLAINT:**
- ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $    0.00

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

**VIII. RELATED CASE(S) IF ANY**    *(See instructions):*    JUDGE    Judge DuBose    DOCKET NUMBER    21-00370-KD-B

DATE    02/11/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____