Eric P. Lee (4870)
Matt J. Pugh (16139)
HOGGAN LEE HUTCHINSON
1225 Deer Valley Drive, Suite 201
Park City, Utah 84060
Telephone: (435) 615-2264
eric@hlhparkcity.com
mpugh@hlhparkcity.com

*Attorneys for Plaintiff American Charter Development, LLC*

## IN THE FOURTH JUDICIAL DISTRICT COURT FOR UTAH COUNTY
## STATE OF UTAH

| | |
|---|---|
| AMERICAN CHARTER DEVELOPMENT, LLC, <br><br> Plaintiff, <br> vs. <br><br> MORCOR FINANCIAL, LLC, <br><br> Defendant. | **COMPLAINT** <br><br> Case No. 210401539 <br><br> Judge Sean Petersen <br><br> Tier 3 |

Plaintiff American Charter Development, LLC complains of Defendant Morcor Financial, LLC as follows:

### PARTIES

1. Plaintiff American Charter Development, LLC ("ACD") is an Arizona limited liability company authorized to conduct business in Utah.

2. Defendant Morcor Financial, LLC ("Morcor") is a Utah limited liability company with its principal place of business in Springville, Utah.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this dispute pursuant to Utah Code Section 78A-5-102(2).

4. Venue is proper in this Court under Utah Code Sections 78B-3-304(2), 78B-3-305, and 78B-3-307(2).

## GENERAL ALLEGATIONS

5. ACD is in the business of financing and developing charter schools across the country.

6. Washington County Students First ("WCSF") received a charter from the Alabama Charter Public School Commission to open a charter school.

7. ACD agreed to develop the facilities in Chantom, Alabama in which WCSF would operate a charter school named Woodland Prep.

8. ACD hired Morcor as the owner's representative for the construction of the Woodland Prep facilities (the "Project") under the terms of a contract dated January 16, 2019 (the "Owner's Rep Contract"). A copy of the Contract is attached to this Complaint as **Exhibit A**.

9. The Project included an academic building with classrooms, an administrative building, and all parking and related improvements necessary for the operation of the school.

10. As ACD's representative on the Project, Morcor was responsible for coordinating the construction work and working with the design-builder to ensure that the Project was completed in a professional, timely, and workmanlike manner.

11. Under the Contract, ACD agreed to pay Morcor eight percent (8%) of the total cost of the work on the Project.

12. Consistent with its duties under the Contract, Morcor hired Lucida Construction Company, LLC ("Lucida") as the design-builder for the Project, executing a written agreement

(the "Design-Build Contract") under which Lucida was to provide design and construction services related to the Project.

13. The original contract sum for the Design-Build Contract was $3,911,573. During the course of construction, Morcor and Lucida executed change orders bringing the contract sum to $4,023,381.25.

*Morcor's Failure to Manage and Coordinate the Work on the Project.*

14. The Owner's Rep Contract required Morcor to manage Lucida's work on the Project, including advising ACD as to the work that had been completed and was ready for payment and coordinating those payments from ACD to ensure Lucida paid the proper parties for their work on the Project.

15. As ACD's representative on the Project, Morcor was responsible for relaying communications between relevant parties, handling some of the financial transactions, and performing other administrative and professional services on behalf of ACD.

16. For example, Morcor was responsible for reviewing Lucida's pay applications, verifying their accuracy, and submitting those applications to ACD with directions regarding payment.

17. Morcor failed to verify that the work listed on the pay applications had been satisfactorily completed by the responsible parties and was ready for payment prior to requesting payment from ACD.

18. Morcor also failed to verify that the materials listed on the pay applications had been supplied to the Project and required immediate payment prior to advising ACD to submit payment for such items.

19. Morcor also failed to ensure Lucida secured lien releases from subcontractors and material suppliers before releasing payments to Lucida.

20. Morcor's failure to properly verify and coordinate payments for work on the Project resulted in Lucida receiving payments for work which was not completed and Lucida failing to pay its subcontractors and suppliers.

21. Five of the subcontractors and material suppliers on the Project filed liens totaling approximately $342,589.44. Other subcontractors made demands for payment and stopped work because Lucida did not pay them even though Lucida had already received payment from ACD.

22. Lucida abandoned the Project as a result of Morcor's failure to properly manage the Project and coordinate payments.

23. ACD incurred substantial costs to stabilize and secure the Project site as a direct result of Lucida abandoning the unfinished Project.

24. ACD's bank halted funding of the Project due to Morcor's failure to properly manage the construction process and the filing of liens against the property.

25. ACD was forced to find alternative funding for the Project at great time and expense.

26. ACD was forced to re-bid the Project and find a new contractor to complete construction. In the time period since the Project was originally bid, both labor and materials prices increased substantially. The costs for completing the Project were much higher due to the failures of Morcor and the resulting delays.

***Morcor's Failure to Timely Complete the Project for Occupation.***

27. The Owner's Rep Contract required Morcor to develop and submit for ACD's approval a schedule for the construction of the Project consistent with the commencement and substantial completion dates set forth in the Owner's Rep Contract and in accordance with other agreements.

28. The Owner's Rep Contract set February 4, 2019 as the date for commencement of work on the Project, and a substantial completion date of July 15, 2019.

29. On July 2, 2020, Morcor terminated its contract with Lucida because the Project still had not reached substantial completion and Lucida failed to develop a plan to cure its defaults and get the Project back on track.

30. The work on the Project was not timely completed and Morcor was forced to bring in other contractors to complete the work that should have been completed by Lucida.

31. WCSF had agreed to lease the facility from ACD for a period of twenty years but refused to proceed with the lease because Morcor failed to ensure Lucida completed the Project on time and delays caused WCSF to lose its state charter authorization.

32. ACD has been unable to find another tenant to lease the Project at the rate agreed to by WCSF.

33. ACD suffered lost revenue in the form of lease payments from WCSF and may suffer additional future losses if a suitable tenant cannot be found to lease the facility at the price previously agreed to by WCSF.

34. Morcor could not resolve its dispute with Lucida and the dispute between the parties was forced to proceed to arbitration.

## **FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

35. ACD incorporates by reference all preceding allegations.

36. ACD fully performed all of its obligations under the Owner's Rep Contract and otherwise satisfied any conditions precedent to Morcor's performance.

37. Morcor breached its obligations under the Owner's Rep Contract by:

   a) failing to properly supervise and coordinate construction of the Project in a manner consistent with standards of care for owner's representatives on similar projects;

   b) failing to control Project costs and the quality of Lucida's work in a manner consistent with standards of care for owner's representatives on similar projects;

   c) failing to ensure Project completion by Lucida on the required schedule;

   d) failing to properly manage the payment of Project costs, including failing to take industry standard steps necessary to ensure subcontractors were paid with the funds disbursed to Lucida for that purpose;

   e) failing to manage Lucida and the Project in a manner consistent with standards of care for owner's representatives on similar projects; and

   f) acting and failing to act in the manner described in greater detail in the general allegations set forth above.

38. As a direct and proximate result of Morcor's breaches, ACD has suffered damages and losses in an amount to be proven at trial, which amount exceeds $300,000.

## SECOND CLAIM FOR RELIEF
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

39. ACD incorporates by reference all preceding allegations.

40. Morcor owed ACD a duty of good faith and fair dealing.

41. Morcor breached its duty of good faith and fair dealing by its acts and omissions described in greater detail in the allegations set forth above, which deprived ACD of its right to receive some of the benefits of the Owner's Rep Contract.

42. Morcor breached its duty of good faith and fair dealing by its acts and omissions described in greater detail in the allegations set forth above, which acts and omissions were inconsistent with the purposes of the Owner's Rep Contract.

43. Morcor breached its duty of good faith and fair dealing by its acts and omissions described in greater detail in the allegations set forth above, which acts and omissions were inconsistent with ACD's justified expectations.

44. As a direct and proximate cause of Morcor's breaches of the duty of good faith and fair dealing, ACD has suffered damages and losses in an amount to be proven at trial, which amount exceeds $300,000.

## THIRD CLAIM FOR RELIEF
### (Breach of Fiduciary Duties)

45. ACD incorporates by reference all preceding allegations.

46. A principal-agent relationship existed between ACD as the owner of the Project and Morcor as the owner's representative in connection with the Project.

47. Morcor acted as ACD's agent in selecting and hiring Lucida, supervising and managing Lucida's work, entering into a contract with Lucida for the design and construction of the Project

and fulfilling all obligations under that contract, appropriating and handling ACD's funds, informing Lucida and others as to the relationship between the relevant parties involved in the Project, ensuring that it was properly licensed in the state of Alabama and that the Project was compliant with all other laws and regulations, communicating with Lucida and others on the Project, keeping ACD apprised of progress on the Project, resolving its conflict with Lucida, and performing other administrative and professional services as an agent of ACD related to the Project.

48. Morcor had a fiduciary duty to act loyally for ACD's benefit in all matters connected to the agency relationship that existed between the parties. These fiduciary duties are independent of and in addition to the duties owed by Morcor to ACD under the Owner's Rep Contract.

49. Morcor breached its fiduciary duties owed to ACD by not acting only for the benefit of ACD and failing to exercise prudence and skill in managing the Project and performing related professional services.

50. As a direct and proximate cause of Morcor's breaches of its fiduciary duties owed to ACD, ACD has suffered damages and losses in an amount to be proven at trial, which amount exceeds $300,000.

WHEREFORE, ACD asks that judgment be entered against Morcor as follows:

A. On the first claim for relief, ACD requests that the Court enter a monetary award in favor of ACD and against Morcor that includes the following amounts that were directly or proximately caused by Morcor's breach of the Owner's Rep Contract:

  a. $248,215.92 to ACD for resolution of all subcontractor and material supplier claims, whether asserted by lien or otherwise, together with interest and attorneys' fees related to these claims;

  b. $307,354 in Project costs and expenses to secure and stabilize the site once Lucida abandoned the Project;

  c. $2,027,308 estimated increased costs to complete the Project;

  d. $45,000 estimated increased financing costs;

  e. $385,000 due to loss of the developer fee caused by the delay in completion and problems with the Project;

  f. lost lease revenue over the 20-year lease term previously agreed to by WCSF in an amount to be determined at trial;

  g. $125,553.58 in attorneys' fees to respond to third-party claims against ACD and the attorneys' fees incurred in this action; and

  h. interest on the above-stated amounts to the extent recoverable by law.

B. On the second claim for relief, ACD requests that the Court enter a monetary award in favor of ACD and against Morcor that includes the following amounts that were directly or proximately caused by Morcor's breach of the implied covenant of good faith and fair dealing:

  a. $248,215.92 to ACD for resolution of all subcontractor and material supplier claims, whether asserted by lien or otherwise, together with interest and attorneys' fees related to these claims;

  b. $307,354 in Project costs and expenses to secure and stabilize the site once Lucida abandoned the Project;

    c. $2,027,308 estimated increased Project costs to complete the Project;

    d. $45,000 estimated increased financing costs;

    e. $385,000 due to loss of the developer fee caused by the delay in completion and problems with the Project;

    f. lost lease revenue over the 20-year lease term previously agreed to by WCSF in an amount to be determined at trial;

    g. $125,553.58 in attorneys' fees to respond to third-party claims against ACD and the attorneys' fees incurred in this action; and

    h. interest on the above-stated amounts to the extend recoverable by law.

C. On the third claim for relief, ACD requests that the Court enter a monetary award in favor of ACD and against Morcor that includes the following amounts that were directly or proximately caused by Morcor's breach of its fiduciary duties owed to ACD:

    a. $248,215.92 to ACD for resolution of all subcontractor and material supplier claims, whether asserted by lien or otherwise, together with interest and attorneys' fees related to these claims;

    b. $307,354 in Project costs and expenses to secure and stabilize the site once Lucida abandoned the Project;

    c. $2,027,308 estimated increased Project costs to complete the Project;

    d. $45,000 estimated increased financing costs;

    e. $385,000 due to loss of the developer fee caused by the delay in completion and problems with the Project;

  f. lost lease revenue over the 20-year lease term previously agreed to by WCSF in an amount to be determined at trial;

  g. $125,553.58 in attorneys' fees to respond to third-party claims against ACD and the attorneys' fees incurred in this action; and

  h. interest on the above-stated amounts to the extent recoverable by law.

D. On all claims for relief, ACD seeks an award of its attorneys' fees and costs incurred in this action to the extent permitted by law.

E. ACD requests such other relief as the Court deems appropriate in the circumstances.

DATED this 10th day of November 2021.

       HOGGAN LEE HUTCHINSON

       _____/s/ Eric P. Lee_____
      Eric P. Lee
      Matt J. Pugh
      *Attorneys for Plaintiff American Charter Development, LLC*