IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MORCOR FINANCIAL LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 21-00370-KD-B |
| | ) |
| LUCIDA CONSTRUCTION CO., LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This action is before the Court on the Motion to Vacate Arbitration Award filed by Defendant Lucida Construction Co., LLC. (doc. 17), the response filed by Plaintiff Morcor Financial LLC (doc. 19), and Lucida's reply (doc. 20-1).[1] Upon consideration, and for the reasons set forth herein, the Motion to Vacate is DENIED.

I. Background

Morcor, as owner, and Lucida, as design-builder, entered into an AIA Document A141 Standard Form of Agreement between Owner and Design Builder, (the contract) whereby Lucida would provide design services and construction for a charter school in Washington County, Alabama. Morcor terminated Lucida's services alleging that Lucida breached the contract.

Pursuant to an arbitration provision in the contract, the parties selected arbitration for binding dispute resolution and the matter was heard by a three-member panel of the American Arbitration Association. The Panel found in favor of Morcor and entered an award on July 19, 2021 (doc. 1-3). In August 2021, Morcor filed a petition to confirm the arbitration award

---

[1] Lucida's motion for leave to file a reply is GRANTED (doc. 20). The proposed reply (doc. 20-1) is deemed filed.

pursuant to the Federal Arbitration Act (doc. 1). Morcor stated that Lucida did not pay the Award by the deadline and requested confirmation of the award and entry of judgment.

Lucida was served with notice of the petition (docs. 5, 6) but did not answer or otherwise respond. Morcor applied for entry of default and the Clerk entered default (doc. 9). Morcor moved for default judgment on the petition (doc. 10). In December 2021, the Court granted Morcor's motion for default judgment, granted the petition to confirm, and entered judgment in favor of Morcor (docs. 11, 12).

II. The parties' arguments

The motion to vacate focuses on Morcor's alleged fraud regarding its obligation, under Alabama law, to obtain a general contractors license. During the arbitration, Lucida raised the defense that Morcor was acting as a general contractor but had not obtained the license. Under Alabama law "a contract with an unlicensed general contractor to provide general contracting services is void." Mt. Hebron Dist. Missionary Baptist Ass'n of Alabama, Inc. v. Alexander, 835 Fed. Appx. 415, 417 (11th Cir. 2020) (citing Ala. Code § 34-8-1(a) and citing Cooper v. Johnston, 283 Ala. 565, 219 So. 2d 392, 396 (1969)).[2] The Arbitration Panel decided that

> K. Morcor was not licensed as a general contractor under Alabama law. Although Lucida presented this as a complete defense (voiding the Contract) in motions/briefing early and often (e.g., Lucida's motions for summary judgment

---

[2] "The Alabama General Contractor's Practice Act (the "AGCPA"), Ala. Code § 34–8–1 *et seq.*, 'is ... regulatory legislation designed to protect the public against incompetent contractors and to assure properly built structures that are free from defects and dangers to the public.'" ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (citations omitted). To prove that an entity or person was performing work as an unlicensed general contractor, the movant must show that the entity or person was unlicensed, that the work to be performed was covered by the licensure statute, and the cost of the work was $50,000 or more. Triple D Trucking, Inc. v. Am. Petroleum Equip. & Const., Inc., 865 So. 2d 1234, 1237 (Ala. Civ. App. 2003).

> and the initial affirmative defense asserted in its Prehearing Brief), there was a dearth of evidence presented on this issue/defense.

(Doc. 17-5, p. 8). The Panel found that

> 9. The Panel finds that Lucida, despite making it the battle cry in its defense of this case until the final hearing, failed to carry its burden of proof in the final hearing to establish Morcor's lack of standing and inability to recover any damages due to it being an unlicensed contractor in the state of Alabama.

(Id., p. 22). The Panel entered an award in favor of Morcor.[3]

Lucida now moves to vacate the judgment confirming the Panel's arbitration award. However, Lucida did not move to vacate the default judgment pursuant to Rule 60(b). Instead, Lucida moves the Court pursuant to 9 U.S.C. § 10(a)(1), of the Federal Arbitration Act, to "vacate the arbitration award in favor of [Morcor] and this Court's corresponding entry of judgment" (doc. 17, p. 1, 15-17). Section 10(a)(1) provides that an arbitration award may be vacated "where the award was procured by corruption, fraud, or undue means[.]" 9 U.S.C. § 10(a)(1). Lucida asserts that it was recently made aware of "additional circumstances which warrant vacatur of the arbitration award on grounds of fraud" regarding Morcor's status as an unlicensed general contractor (doc. 17, p. 1). Lucida points to an allegation in a complaint as a

---

[3] As background, Lucida filed a "complaint against Morcor with the Alabama Licensing Board for General Contractors [ ], alleging that Morcor was acting as a general contractor or contract manager without a license. The investigator found sufficient cause to conclude that Morcor was acting without a license, in violation of the rules and laws of Alabama" (doc. 17, p. 2, doc. 17-4, Exhibit D, January 2021 Investigative Summary: "A Notice of Violation was prepared and issued to Morcor Financial, LLC via email. … Each individual was informed that a violation report would be generated and submitted to the Licensing Board for further review and action"). Morcor reports that the "Licensing Board considered the alleged violation at its meeting on February 17, 2021" and "[a]fter hearing from both Morcor and Lucida, the Board decided to table the matter" until its next meeting in April 2021 (doc. 19, p. 11). At that meeting, the Board learned that Lucida raised the licensing issue in the arbitration, and "voted to defer to the decision of the arbitration panel." (Id.).

recently discovered admission by Morcor that Morcor should have been licensed as a general contractor, and Morcor fraudulently argued otherwise during the arbitration.

As to "recently discovered", the relevant history begins in November 2021 with a breach of contract lawsuit filed in Utah by American Charter Development, LLC (ACD) against Morcor. ACD, an entity that builds charter schools, had contracted with Morcor to be ACD's agent on the charter school construction project (the "owner's representative for the construction of Woodland Prep…" (doc. 17-7, p. 2, Utah complaint). ACD alleged that Morcor breached the contract, breached the implied covenant of good faith and fair dealing, and breached its fiduciary duties (Id.). Then in February 2022, Cincinnati Casualty Company filed a declaratory judgment action against its named insured Lucida, ACD and Morcor in this district court.[4] Cincinnati seeks a declaration that under Lucida's policy, Cincinnati does not owe a duty to defend or indemnify Morcor in the Utah lawsuit and has no obligation to indemnify the arbitration award confirmed by this Court (doc. 17-6, Cincinnati complaint). Lucida argues that Morcor's "admission" came to light after Cincinnati filed the declaratory judgment action, and therefore, Lucida could not have raised evidence of this admission during the arbitration.[5]

As to Morcor's alleged "admission", Lucida relies upon an agency theory. Lucida asserts that ACD, was Morcor's affiliate and agent when ACD filed the complaint against Morcor in Utah. As grounds to support the affiliation/agency theory, Lucida points to intertwined or

---

[4] The Cincinnati Casualty Company v. Morcor Financial LLC, Civil Action No, 22-00066-KD-M (S.D. Ala. 2022). ACD was dismissed on stipulation of the parties.

[5] As to the three-month period for moving to vacate an arbitration award "after the award is filed or delivered", 9 U.S.C. § 12, Lucida argues that equitable tolling applies because it filed the motion within three-months of discovering Morcor's fraud (doc. 17, p. 9, p. 18-20). Morcor argues that the doctrine of equitable tolling does not apply because Lucida has not established the alleged fraud or any other affirmative misconduct by Morcor" (doc. 19, p. 21-22).

4

overlapping managers, member or owners of several limited liability companies including Morcor and ACD (doc. 17, p. 4-7, 11-15). Lucida argues that

> [t]he allegation in the [Utah] Complaint by *ACD, an agent of Morcor*, regarding Morcor's failure to obtain appropriate licensure constitutes an admission under Rule 801(d)(2)(D) of the Federal Rules of Evidence and demonstrates that Morcor committed fraud in the arbitration proceedings. Defendant thus seeks to vacate the arbitration award, confirmed by this Court, pursuant to 9 U.S.C. § 10(a)(1).

(Doc. 17, p. 7) (italics added).[6]  The alleged admission by ACD as Morcor's agent is found at the "Third Claim for Relief (Breach of Fiduciary Duties)". Specifically, in paragraph 47:

> 47. Morcor acted as ACD's agent in selecting and hiring Lucida, supervising and managing Lucida's work, entering into a contract with Lucida for the design and construction of the Project and fulfilling all obligations under that contract, appropriating and handling ACD's funds, informing Lucida and others as to the relationship between the relevant parties involved in the Project**,** *ensuring that it was properly licensed in the state of Alabama* and that the Project was compliant with all other laws and regulations*,* communicating with Lucida and others on the Project, keeping ACD apprised of progress on the Project, resolving its conflict with Lucida, and performing other administrative and professional services as an agent of ACD related to the Project.

(Doc. 17-7, p. 7-8, Utah complaint) (italicization indicates the "admission").

Lucida argues that "it" in the phrase "ensuring that it was properly licensed" means Morcor and that the "only required license to which ACD could be referring is the one provided by" the Alabama Licensing Board for contractors such as Morcor (doc. 17, p. 4). Then, Lucida argues that in paragraphs 48-50 ACD claims that Morcor breached these fiduciary duties (Id.). From this allegation of duty and claim of breach, Lucida reasons that ACD as Morcor's agent

---

[6] "d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay: . . . (2) An Opposing Party's Statement. The statement is offered against an opposing party and: . . . (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]" Fed. R. Evid. 801(d)(2)(D).

"admits . . . that Morcor failed to obtain the required general contractor's license in Alabama for the Project." (Id.). And that

> Vacatur is warranted in this case by the clear and convincing evidence that Morcor committed fraud in the arbitration proceedings. *ACD's allegation in the ACD Complaint, attributable to Morcor through the agency relationship of these entities,* constitutes an admission that Morcor is indeed subject to Ala. Code § 34-8-1, a fact which Morcor fraudulently argued against in the arbitration proceedings.

(Doc. 17, p. 9) (italics added).   Lucida also argues that under Utah law, this "admission of fact in a pleading is normally treated as a conclusive admission that the party is not later permitted to contradict, even with evidence from other sources" (doc. 17, p. 10) (citation omitted), and that "[s]uch an admission is a judicial admission" which "once it has been made, the party cannot present any evidence that contradicts that statement." (Id.).

In response, Morcor argues that Lucida's position that "ACD's unsworn allegation shows fraud is speculation" that is "contradicted by competent evidence before the Court" (doc. 19, p. 13-17).  Morcor argues that paragraph 47 of the Utah complaint, appears to be

> ACD's attempt in its complaint to summarize Morcor's obligations under its contract with ACD in a way that bolsters both the principal-agent allegation that precedes it and the fiduciary duty allegation that follows it. But Lucida speculates that the allegation of a contractual duty of "ensuring it was properly licensed" can only mean "that Morcor failed to obtain the required general contractor's license in Alabama for the Project."

(Doc. 19, p. 14).  As such, Morcor argues that Lucida's speculative interpretation of paragraph 47 is not clear and convincing evidence of fraud.  Morcor argues that the "best reading" of paragraph 47 "is that Morcor was contractually responsible for ensuring that *Lucida* was properly licensed in Alabama" and that "Morcor did that." (Id., p. 15) (italics in original).

As evidence in support, Morcor points to the terms of the design-build contract between

6

Morcor and Lucida which require that Lucida, the design-builder, comply with licensing requirements for the project and states that Morcor assumed no responsibility for or control over construction (Id., p. 15-16). Morcor states that Lucida was properly licensed as the general contractor and that Lucida does not explain why "Morcor would also be required to obtain its own general contractor's license." (Id., p. 16). Morcor also points out that in the owner's representative contract with ACD, Morcor "*did not* contract 'to construct or superintend or engage in the construction of' the Project" (Id.) (italics in original). Instead, that contract expressly provides that Morcor did not assume responsibility for or have control over construction (Id.)[7]

Morcor also argues that the unsworn allegation in the Utah complaint is not a judicial admission binding on Morcor (doc. 19, p. 17). First, Morcor points out that it denied the allegations in the answer (Id., doc. 17-9). Second, Morcor states that a judicial admission must be distinct, deliberate, clear, unequivocal, and unconditional, but Lucida's speculation as to the meaning of ACD's allegation in paragraph 47 does not meet this standard. Third, judicial admissions are binding only in the action in which the admission is made, and thus, cannot bind Morcor in this action. (Id.)

Morcor also argues that the allegation "is not admissible under Fed. R. Evid. 801(d)(2)(D)" because it is hearsay (doc. 19, p. 18-19). Morcor argues ACD is not a party in this action and "ACD is not an agent of Morcor, who is a party" (Id., p. 18). Morcor argues that under the owner's representative contract, ACD is the principal and Morcor is ACD's agent, and

---

[7] Morcor also argues that Morcor and Lucida agreed to be bound by the AAA Construction Industry Arbitration Rules and that under those rules, even with Lucida's argument, the Panel "would maintain jurisdiction to reach the merits of the parties' dispute" and thus, this Court "cannot revisit the legal merits or factual determinations of the arbitration award." (doc. 19, p. 16-17).

that in no context was ACD an agent for Morcor (Id., p. 18-19). Without agency, Rule 801(d)(2)(D) cannot apply (Id., p. 19). Morcor also argues that ACD and Morcor's principal-agent relationship, ended when the project ended, and Lucida neither contends nor shows that the relation existed in November 2021 when ACD sued Morcor in Utah. Thus, if the allegation in paragraph 47 could bind Morcor, the allegation was not made while the agency relation existed as required by Rule 801(d)(2)(D).

Morcor also argues that even if the allegation in the Utah complaint were admissible, Lucida still could not meet the three prongs of the test developed in Bonar v. Dean Witter Reynolds, Inc., 835 F. 2d 1378 (11th Cir. 1988), for vacating an arbitration award (doc. 19 p. 5-6, 20). Specifically, that Lucida cannot establish the alleged fraud by clear and convincing evidence, cannot establish that the alleged fraud was not discoverable upon due diligence before or during the arbitration, and cannot establish that the alleged fraud is materially related to an issue in the arbitration.

III. Analysis

The Court of Appeals for the Eleventh Circuit has held that "[t]he exclusive method for attacking a default judgment in the district court is by way of a Rule 60(b) motion." Nat'l Loan Acquisitions Co. v. Pet Friendly, Inc., 743 Fed. Appx. 390, 391 (11th Cir. 2018) (citing Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc., 740 F.2d 1499, 1507 (11th Cir. 1984)); see Fed. R. Civ. P. 55(c) the court "may set aside a final default judgment under Rule 60(b)").

Rule 60(b) provides as follows:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

    (1) mistake, inadvertence, surprise, or excusable neglect;

  (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

  (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

  (4) the judgment is void;

  (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

  (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

  Lucida did not move to vacate the default judgment under Rule 60(b) as required by the Eleventh Circuit. Lucida did not provide argument or case law indicating that a judgment confirming an arbitration award is subject to an exception to the procedure under Rule 55(c) and Rule 60(b). Thus, before the Court may address whether to vacate the arbitration award, Lucida must first convince the Court to vacate the judgment by argument based upon grounds identified in Rule 60(b). Based on the parties' arguments, the Court will evaluate whether there are grounds for relief from judgment under Rule 60(b), based on newly discovered evidence[8] and fraud.

  First, Lucida's argument hinges on a finding that ACD was Morcor's agent when ACD filed the complaint in Utah which contains the alleged admission. But the Court is not convinced that affiliation, familial relationships, or intertwining managers, member, or owners, support

---

[8] For purpose of this analysis only, the Court applies Lucida's theory that it did not know about the Utah complaint until February 2022 when Cincinnati filed its action in this Court and made Lucida a defendant in that action. The Utah complaint was filed in November 2021, before this Court entered its order and judgment confirming the arbitration award.

Lucida's agency theory that ACD was acting as Morcor's agent when ACD sued Morcor in Utah.  And as Morcor points out, it denied the allegation in in the answer.

Second, the contract at issue in Utah shows that the parties contracted for Morcor to act as ACD's agent, not that ACD was Morcor's agent.  Morcor and ACD are separate entities.  Because ACD is neither an agent or an employee of Morcor, it cannot speak for Morcor or bind Morcor. See Fed. R. Evid. 801(d)(2)(D). Thus, ACD's allegation is not evidence of fraud on the part of Morcor.

Third, the Court is not convinced that the pronoun "it" refers to Morcor.  The pronoun could refer to Lucida. In other words, that "Morcor acted as ACD's agent in . . . ensuring that "[Lucida] was properly licensed in the state of Alabama."  In context, Lucida is expressly mentioned in the preceding and following phrases: "Morcor acted as ACD's agent in . . .

> informing Lucida and others as to the relationship between the relevant parties involved in the Project**,** ensuring that it was properly licensed in the state of Alabama and that the Project was compliant with all other laws and regulations, communicating with Lucida and others on the Project

(Doc. 17-7, p. 7-8, Utah complaint).

Lucida argues that "it" in the phrase "ensuring that it was properly licensed" means Morcor and that the "only required license to which ACD could be referring is the one provided by" the Alabama Licensing Board for contractors such as Morcor (doc. 17, p. 4).  But this interpretation presupposes that Morcor was acting as a contractor.  However, the owner's representative contract at issue in Utah indicates that Morcor contracted to act as the owner's representative for ACD on the charter school project and the design-build contract for the charter school project indicates that Lucida was the design-builder and Morcor was the owner.  Nothing

indicates that Morcor ever contracted as the general contractor.[9]

As previously stated, the Panel decided that although Lucida argued that Morcor was not licensed as a general contractor under Alabama law, "as a complete defense (voiding the Contract) in motions/briefing early and often . . . there was a dearth of evidence presented on this issue/defense" (doc. 17-5, p. 8).  The Panel found that "Lucida, despite making it the battle cry in its defense of this case until the final hearing, failed to carry its burden of proof in the final hearing to establish Morcor's lack of standing and inability to recover any damages due to it being an unlicensed contractor in the state of Alabama" (Id.).  Lucida's arguments based upon the allegation in paragraph 47 of the Utah complaint do not persuade this Court that Morcor committed any fraud in the arbitration proceedings or before this Court.  Accordingly, the Court finds there are no grounds for relief under either the standard to vacate an arbitration or under Rule 60(b).

**DONE** and **ORDERED** this 15th day of August 2022.

                                                  <u>/s / Kristi K. DuBose</u>
                                                **KRISTI K. DuBOSE**
                                                **UNITED STATES DISTRICT JUDGE**

---

[9] The Court notes that the Panel found that Lucida did not carry its burden of showing that Morcor acted as an unlicensed contractor on the Project.

> 9. The Panel finds that Lucida, despite making it the battle cry in its defense of this case until the final hearing, failed to carry its burden of proof in the final hearing to establish Morcor's lack of standing and inability to recover any damages due to it being an unlicensed contractor in the state of Alabama.

(Doc. 17-5, p. 8).